1

**AKIN GUMP STRAUSS HAUER & FELD LLP**
CATHERINE A. CONWAY (SBN 98366)

2

cconway@akingump.com
REX S. HEINKE (SBN 66163)

3

rheinke@akingump.com
JOANNA H. KIM (SBN 183799)

E-FILED 12/02/09

4

jkim@akingump.com
2029 Century Park East, Suite 2400

5

Los Angeles, California 90067
Telephone:  310.229.1000

6

Facsimile:  310.229.1001

7

**YUHL STONER CARR LLP**
ERIC F. YUHL (SBN 102051)

8

eyuhl@ysclawyers.com
601 South Figueroa Street, Suite 2340

9

Los Angeles, California 90017
Telephone:  213.687.2640

10

Facsimile:  213.827.4200

11

Attorneys for Plaintiff CHRISTOPHER O'SHEA,
GISELE ROGERS and JEFF ADAMS

12

UNITED STATES DISTRICT COURT

13

CENTRAL DISTRICT OF CALIFORNIA

14

CHRISTOPHER O'SHEA, GISELE

15

ROGERS and JEFF ADAMS,
individuals, on behalf of themselves

16

and all others similarly situated,

17

Plaintiffs,

18

v.

19

EPSON AMERICA, INC., a California
corporation; EPSON ACCESSORIES,

20

INC., a California corporation; and
DOES 1-100, inclusive,

21

Defendants.

22

23

24

25

26

27

28

6411529

Case No. CV09-8063 PSG (CWx)

[The Honorable Philip S. Gutierrez]

**CLASS ACTION**

**SECOND AMENDED CLASS ACTION COMPLAINT FOR:**

1.  UNFAIR BUSINESS PRACTICES IN VIOLATION OF CAL. BUS. & PROF. CODE § 17200, *et seq.*;

2.  FALSE ADVERTISING IN VIOLATION OF CAL. BUS. & PROF. CODE § 17500, *et seq.*;

3.  BREACH OF IMPLIED WARRANTY;

4.  LOSS LEADER VIOLATION OF CAL. BUS. & PROF. CODE § 17044, *et seq.;*

5. CONSUMER LEGAL REMEDIES ACT VIOLATIONS OF CAL. CIV. CODE § 1750, *et seq.;* and

6. FRAUD.

**DEMAND FOR A JURY TRIAL**

Plaintiffs Christopher O'Shea, Gisele Rogers and Jeff Adams (collectively, "Plaintiffs"), bring this Class Action Complaint against defendants Epson America, Inc. ("Epson America") and Epson Accessories, Inc. ("Epson Accessories") (collectively, "Epson" or "Defendants"), on Plaintiffs' behalf and all others similarly situated, and alleges, on information and belief, except as to their own actions, as follows:

## NATURE OF THE ACTION

1.      This lawsuit is about a printer manufacturer, Epson, which preys on their captured consumers by misrepresenting product quality information about Epson's printers and ink cartridges. Epson marketed and sold their supposed low cost inkjet printers with a requirement to use only Epson ink cartridges to maintain warranty, while misrepresenting and concealing the grossly inefficient print yields generated by its ink cartridges, which are well below reasonable consumer expectations and the yields of other manufacturers' printers.

2.      Despite numerous complaints from individuals and despite knowing of a method to mitigate ink loss, Epson concealed such method and refused to take steps to inform consumers of it. Epson had constructed a business model to sell inkjet printers at or below cost while maximizing profits on the sale of inefficient ink cartridges for such printers. Epson had no motivation to disseminate the more efficient method. That would only decrease Epson's sales of ink cartridges. Instead, Epson hoped that most consumers would simply not notice the ink waste, and thereby continue to purchase more and more of these wasteful ink cartridges, all to Epson's profit.

3.      Accordingly, Plaintiffs bring this action for injunctive and equitable relief, damages, restitution, and/or disgorgement of profits and all such additional relief as may be appropriate, on behalf of themselves and all others similarly situated who purchased, not for resale, inkjet printers and printer ink cartridges manufactured, marketed, and/or sold by Epson.

**PARTIES**

4.    Defendant Epson America, Inc. ("Epson America") is a California corporation engaged in the business of, *inter alia*, manufacturing, marketing, and selling inkjet printers and printer ink cartridges.

5.    Epson America has its principal place of business and corporate headquarters in Long Beach, County of Los Angeles, California.

6.    Epson America has conducted and continues to conduct substantial and regular business both in the State of California and throughout the United States.

7.    Epson America's policies and operations within the United States are principally made and dictated by and/or through Epson America's corporate headquarters in the County of Los Angeles in the State of California.

8.    Epson America is a California company planning and disseminating marketing and advertising from California throughout the United States.  Such advertising and marketing was planned in California with and through Epson America's California-based advertising agencies.

9.    Epson America regularly conducted and conducts its distribution and sales business within the County of Los Angeles, State of California.

10.    In the "Terms of Use" for its website, Epson America states that its website "is controlled and operated by Epson from its offices within the State of California, United States of America."  Epson America further states that the "Terms of Use" for its website "shall be governed by and construed in accordance with the laws of the State of California."

11.    Defendant Epson Accessories, Inc. ("Epson Accessories") is a California corporation engaged in the business of marketing and selling inkjet printers and printer ink cartridges.

12.    Epson Accessories has its principal place of business and corporate headquarters in the County of Los Angeles in the State of California.

6411529

2

1   13.   Epson Accessories has conducted and continues to conduct substantial and

2   regular business in the State of California and throughout the United States.

3   14.   Epson Accessories' policies and operations within the United States are

4   principally made and dictated by and/or through Epson Accessories' corporate

5   headquarters in Long Beach, County of Los Angeles, California.

6   15.   Epson Accessories is a California company planning and disseminating

7   marketing and advertising from California throughout the United States.  Such

8   advertising and marketing was planned in California.

9   16.   Epson Accessories regularly conducted and conducts its distribution and

10   sales business within the County of Los Angeles, State of California.

11   17.   In the "Terms and Conditions of Sale" on Defendants' website, Epson

12   Accessories states the following: "You agree that any dispute between us will be

13   governed by the laws of the State of California without regard to its conflict of law

14   principles. The sole jurisdiction and venue for any legal proceeding will be the

15   appropriate federal or state court located in Los Angeles County, California."

16   18.   At all relevant times, Defendants participated in, authorized, ratified,

17   and/or directed the manufacture, production, marketing, promotion, and sales of the

18   defective inkjet printers and/or ink cartridges when they knew or should have known of

19   the damages that Defendants' misrepresentations, material omissions, acts of

20   concealment, inherently defective products, and wrongful business practices would have

21   on consumers and thereby actively participated in the conduct which resulted in the

22   damages described herein.

23   19.   At all relevant times, California was and is the site of Defendants' United

24   States headquarters and the place where all significant decision-making occurred with

25   respect to the advertising, marketing, distribution, and sale of Defendants' inkjet printers

26   and cartridges within the United States.

27   20.   At all times relevant to this action Defendants were the controlling and

28   decision-making entities responsible for the wrongful conduct alleged herein.

6411529                                             3

21.    Whenever this Complaint refers to any act or acts of Defendants, the references shall also be deemed to mean the directors, officers, employees, affiliates, or agents of the Defendants who authorized or ratified such act or acts while actively engaged in the management, direction, or control of the affairs of Defendants, and by persons who are parents or alter egos of Defendants while acting within the scope of their agency, affiliation or employment, jointly or severally.

22.    Plaintiff Christopher O'Shea is a California resident.  In November of 2008, Plaintiff purchased an Artisan 800 inkjet printer and thereafter purchased additional replacement printer ink cartridges manufactured, marketed, and/or sold by Defendants for his personal and/or household use.

23.    Plaintiff Gisele Rogers is a California resident.  In May of 2009, Rogers purchased an Epson NX 200 inkjet printer and thereafter purchased additional replacement printer ink cartridges manufactured, marketed, and/or sold by Defendants for her personal and/or household use.

24.    Plaintiff Jeff Adams is a California resident.  In July of 2009, Adams purchased an Epson Workforce 310 inkjet printer and thereafter purchased additional replacement printer ink cartridges manufactured, marketed, and/or sold by Defendants for his personal and/or household use.

25.    Plaintiffs collectively bring this action on behalf of a class of all consumers throughout the United States that have purchased an inkjet printer and printer ink cartridges manufactured, marketed, and/or sold by Defendants during the relevant time period.  Plaintiff Rogers bring this action on behalf of a subclass of all consumers throughout the United States that have purchased an Epson NX series of inkjet printers and associated printer ink cartridges manufactured, marketed, and/or sold by Defendants during the relevant time period.

26.    Plaintiffs were and are persons within the class further described and defined below.  Plaintiff Rogers was and is a person within the subclass further described and defined below.

6411529                                                    4

27.     The true names and capacities, whether individual, corporate, associate, or otherwise, of Does 1-100, inclusive ("Does"), are unknown to Plaintiffs, who therefore sue said Does by such fictitious names. Plaintiffs will seek leave of court to amend this Complaint to show the true names and capacities when the same have been ascertained.

28.     Each of the Doe Defendants is responsible in some manner for the conduct alleged herein and for the injuries suffered by Plaintiffs and the members of the class and subclass as defined below. The Doe Defendants were the agents, servants and/or employees of the other defendants and in doing the things alleged here, and at all times, were acting within the scope of their authority as such agents, servants and employees, and with the permission and consent of the other defendants.

29.     At all relevant times, Defendants, and each of them, were members of, and engaged in, a joint venture, partnership and common enterprise, and acting within the course and scope of, and in pursuance of, said joint venture, partnership and common enterprise.

30.     At all relevant times, the acts and omissions of various Defendants, and each of them, concurred and contributed to the various acts and omissions of each and all of the other Defendants in proximately causing the injuries and damages alleged here.

31.     At all relevant times, Defendants, and each of them, ratified each and every act or omission complained of here. At all relevant times, Defendants, and each of them, aided, abetted, and consented to the acts and omissions of each and all of the other Defendants in proximately causing the injuries and damages alleged here.

## FACTUAL ALLEGATIONS

32.     Plaintiffs and class members are the current and/or previous owners of inkjet printers manufactured and/or marketed by Defendants.

33.     Defendants manufacture, market, and/or offer for sale numerous models of inkjet printers and/or ink cartridges.

34.    Throughout all relevant times, Defendants have engaged in an untrue, misleading, or deceptive marketing and sales campaign, in which they concealed and/or omitted from Plaintiffs and class members material information regarding inkjet printers and/or ink cartridges manufactured, marketed, and/or sold by Defendants, including, but not limited to, the fact that (1) actual ink efficiency for use by a consumer was far worse than claimed by Defendants; (2) ink efficiency of Defendants' inkjet printers was far below industry norms and/or standards; (3) ink yield statistics claimed by Defendants were not based on typical usage and were designed to conceal the amount of ink wasted during typical usage; (4) Defendants' inkjet printers were defective; (5) ink waste by Defendants' inkjet printers was far greater than industry norms and/or standards; (6) Defendants were selling inkjet printers at or below cost to induce sales of the defective printers so that Defendants could profit from their printers' defects and excessive ink waste; (7) Defendants' color inkjet printers were designed to be received by the consumer in a default mode in which the greatest amount of ink waste took place; and (8) there was a method to reduce, but not to eliminate, some of the ink waste by changing modes on Defendants' color inkjet printers while printing in black-and-white, which Defendants concealed and did not reveal.

35.    Defendants' marketing and sales representations about inkjet printers were false, untrue, or misleading because Defendants made misrepresentations, omissions, and/or failed to disclose material information to consumers, including, but not limited to, Plaintiffs and class members regarding the defects with Defendants' printers, the true ink efficiency and ink waste of such printers, and potential methods to partially reduce excessive ink waste.

36.    Defendants' misrepresentations and material omissions regarding their inkjet printers and/or ink cartridges are consistent and uniform.

37.    Consumers, including Plaintiffs, who purchased Defendants' inkjet printers considered Defendants' marketing and sales statements concerning the printers and/or ink cartridges before sale and relied upon same in deciding to make their purchases.

1    38.    Defendants' deceptive marketing and sales practices, including
2  misrepresentations, omissions, and/or acts of concealment were material and substantial,
3  and were made in the form of common misrepresentations.

4    39.    Defendants' marketing and sales campaign was directed to all consumers
5  and potential consumers in the United States intending to result in the sales of
6  Defendants' inkjet printers and then of Defendants' ink cartridges.

7    40.    For example, but without limitation, Defendants engaged in a campaign
8  known as "Epsonality" in which Defendants "wanted to sell the printers by selling the
9  Epsonality experience." Defendants have stated that an "Epsonality" website was
10  created to "cut through meaningless model names and complicated spec lists." As part
11  of the "Epsonality" campaign, Defendants sought, in part, to convince consumers that
12  Defendants' printers were "precision printing tools." During their "Epsonality"
13  campaign, or any other advertising campaign, Defendants did not state in their
14  advertisements that consumers were required to buy only ink manufactured and/or
15  marketed by Defendants in order to maintain the warranty on their printer. Moreover,
16  during their "Epsonality" campaign, Defendants did not state that their printers
17  excessively wasted ink, used color ink during printing in black-and-white, used black
18  ink during color printing, or that the printers were defective. Defendants bragged that as
19  a result of the "Epsonality" campaign Defendants received a strong boost in visits to
20  Defendants' website and enjoyed "one of its biggest Black Fridays ever."

21    41.    In Defendants' advertising and marketing they direct consumers to their
22  website (www.epson.com).

23    42.    On their website Defendants extensively refer to testing on ink yields but
24  do not provide any information on ink yields that may be achieved with their printers
25  during typical consumer usage.

26    43.    On their website Defendants do not identify ink yields in comparison to
27  other manufacturers' and/or sellers' printers during typical consumer usage.

28

6411529

7

44.     On their website Defendants do not inform consumers, in certain instances, that color ink is used during black-and-white printing or that black ink is used during color printing. In other instances, Defendants trivialize or attempt to minimize such usage, concealing the true extent of such usage and waste.

45.     On their website Defendants claim that their ink yields outperformed "third-party" inks but do not identify the manufacturers of such "third-party" ink or on what brand of printers such inks were tested. Further, Defendants do not state to consumers in their marketing statements about "third-party" ink that consumers may not use such "third-party" ink without voiding Defendants' warranty.

46.     On their website Defendants repeatedly brag that their inkjet and ink products achieve "more prints per [ink] cartridge."

47.     On their website, Defendants answer an "FAQ" regarding why Defendants' ink cartridges do not feature tools to measure ink volume remaining in the ink cartridges by claiming that such information regarding volume of ink is not useful to consumers.

48.     On their website, Defendants answer an "FAQ" regarding yields varying cartridge to cartridge by claiming that some ink is wasted from the first cartridge but that "[s]ubsequent cartridges will deliver the yields specified in accordance with the ISO standard."

49.     On their website, Defendants highlight ink yield testing done "in accordance with the ISO standard" that is based on continuous printing, *i.e.*, continuing to print without stopping from the first page until all ink is exhausted. Defendants are aware that such continuous test printing does not reflect typical customer usage and is designed to minimize the ink waste that a typical consumer would suffer. Indeed, Defendants are well aware that the vast majority of consumers do not use continuous printing but instead are considered 'non-continuous' users, which significantly exacerbates ink loss/waste and printing inefficiencies alleged herein.

50.     Defendants nonetheless claim that their testing of ink yields is designed to "assure reliability and accuracy."

51.   Contrary to Defendants' assertions and marketing and advertising statements, Defendants knew, but failed to disclose, or acted in reckless disregard in not knowing, that their inkjet printers and/or ink cartridges were defective.

52.   Contrary to Defendants' assertions and marketing and advertising statements, Defendants knew, but failed to disclose, or acted in reckless disregard in not knowing that their inkjet printers and/or ink cartridges excessively wasted ink.

53.   Contrary to Defendants' assertions and marketing and advertising statements, Defendants knew, but failed to disclose, or acted in reckless disregard in not knowing, that their inkjet printers wasted ink far greater than industry standards and/or norms, and below reasonable customer expectations particularly for the vast majority of consumers who are "non-continuous" print users.

54.   Contrary to Defendants' assertions and marketing and advertising statements, Defendants knew, but failed to disclose, or acted in reckless disregard in not knowing, that their testing of ink yield was not designed to assure reliability and accuracy.

55.   Contrary to Defendants' assertions and marketing and advertising statements, Defendants knew, but failed to disclose, or acted in reckless disregard in not knowing, that because of the ink waste of their printers, customers would not achieve more printing per cartridge than would be achieved with other brands of printers.

56.   Defendants' marketing and advertising statements were part of a scheme by which Defendants sought to drive sales of their printers so as to take advantage of the printers' defects and/or ink waste to profit from increased sales of ink with high profit margins.

57.   Despite numerous consumer complaints and knowledge of the defects inherent in their inkjet printers, Defendants have never informed customers, warned customers, or taken steps to remedy the defects. Instead, Defendants continue to manufacture, market, promote, and/or sell the defective printers to the public.

58. Defendants' scheme to wrongfully profit from sales of ink resulting from ink waste included selling their printers at or below cost to further drive sales of the printers and thus the ink. Because Defendants' conditions their printers' warranties on exclusive use of their ink, and because Defendants also attempt to further induce customers to exclusively rely on and use their ink, Defendants knew or should have known that increased sales of its ink-wasting printers would lead to increased sales of their ink, and that consumers would be damaged by being required to unnecessarily purchase additional ink resulting from the ink waste and defective printers.

59. By failing to disclose the waste of ink by their printers, Defendants conceal and misrepresent the true cost of owning and operating their printers. Moreover, Defendants' attempt to increase their own profits through the exploitation of their own products' defects through selling such defective and/or wasteful products at or below cost is wrongful.

60. Defendants also advertised on the packaging, including, but not limited to, the packaging of the Epson NX 515 and NX 200 printers, the statement that such printers could print with only the color ink cartridge desired. Such statements, include, but are not limited to, "Individual ink cartridges –replace only the color you need," and "Replace only the color that you need with individual ink cartridges." Such statements were false, untrue, and/or misleading. Defendants failed to disclose that the printers did not operate unless all of the ink cartridges were used and that ink from all of the color ink cartridges was used every time an individual printed. Consumers, such as Plaintiff Rogers and members of the Subclass, relied upon such non-disclosures in making their purchase, as they would not have purchased, or would have paid significantly less for, the inkjet printers and/or ink cartridges if they had known such material information.

## CLASS ACTION ALLEGATIONS

61. On November 18, 2008 Plaintiff O'Shea purchased an Epson inkjet printer with the model name, "Artisan 800." Similarly, on May 13, 2009, Plaintiff Rogers purchased an Epson inkjet printer with the model name, "NX 200." Likewise, on July

6411529

10

29, 2009, Plaintiff Adams purchased an Epson inkjet printer with the model name, "Workforce 310." Concurrently and/or thereafter their purchase, Plaintiffs purchased numerous ink cartridges manufactured and/or marketed by Defendants for use in their respective Epson inkjet printers.

62.    This action may be properly maintained as a class action pursuant to Rule 23(b)(3) of the Federal Rules of Civil Procedure. The class is comprised of, and defined as:

> All persons throughout the United States that purchased an inkjet printer and/or ink cartridges manufactured, marketed, and/or sold by Epson America, Inc. and/or Epson Accessories, Inc. at any time within four years of filing this complaint.

Additionally, a subclass is comprised of, and defined as:

> All persons throughout the United States that purchased an inkjet printer and/or ink cartridges manufactured, marketed, and/or sold by Epson America, Inc. and/or Epson Accessories, Inc. under the NX series at any time within four years of filing this complaint.

63.    The proposed Class and Subclass are ascertainable in that their members can be identified through sales records, warranty records, and product registration records.

64.    The Class and Subclass each are comprised of at least tens of thousands of individuals throughout the United States. The members of the proposed Class and Subclass are sufficiently numerous such that joinder of all members would be impracticable. Further, the disposition of the claims of the Class and Subclass in a class action will provide substantial benefits to both parties and the Court.

65.    The provisions of California law upon which Plaintiffs base their claims are broadly remedial in nature. These laws serve an important public interest in protecting consumers.

66.    A class action is superior to other available methods for the fair and efficient adjudication of the controversy. The nature of this action and the format of

6411529

11

1   laws available to Plaintiffs and the Class and Subclass make the class action format a

2   particularly appropriate and efficient procedure to redress the wrongs alleged here.

3   Further, this case involves a large number of individual consumers, many of whom have

4   small claims.

5        67.    Requiring each member of the Class and/or Subclass to pursue an

6   individual remedy would also discourage the assertion of lawful claims by consumers

7   that would be disinclined to file an action against a large corporation when their

8   individual claims are small.

9        68.    There is a well-defined community of interest in the questions of law and

10  fact involved affecting the parties to be represented.  The questions of law and fact

11  common to the Class and Subclass predominate over questions which may affect

12  individual class members.  These questions of law and fact include, but are not limited

13  to, the following:

14        (a)    Whether, by the misconduct alleged here, Defendants have engaged in

15               unfair, deceptive, untrue, or misleading advertising of their inkjet

16               printers and/or ink cartridges;

17        (b)    Whether Defendants knew or should have known that their

18               representations and statements about their inkjet printers and/or ink

19               cartridges were false and/or misleading;

20        (c)    Whether Defendants' inkjet printers and/or ink cartridges are defective,

21               whether Defendants knew or should have known that their inkjet

22               printers and/or ink cartridges were defective, and whether Defendants

23               concealed or failed to disclose that their inkjet printers and/or ink

24               cartridges were defective;

25        (d)    Whether Defendants omitted material facts from their communications

26               and disclosures to the Class and public at large regarding Defendants'

27               inkjet printers and/or ink cartridges;

28

6411529

12

SECOND AMENDED CLASS ACTION COMPLAINT
Case No. CV09-8063 PSG (CWx)

(e)   Whether Defendants knew, or were reckless in not knowing, that their statements about their inkjet printers and/or ink cartridges were false and/or misleading;

(f)   Whether, as a result of Defendants' misconduct, Plaintiffs and class members are entitled to compensatory, exemplary, equitable relief, and/or other relief, and, if so, the nature of such relief; and

(g)   Whether Defendants should be ordered to disgorge, for the benefit of the Class, all or part of the ill-gotten profits they received from the sale of the inkjet printers and/or ink cartridges, including, but not limited to, ill-gotten profits received from sales of ink cartridges resulting from waste caused by the inkjet printers.

69.   Plaintiffs will fairly and adequately protect the interests of the Class. Plaintiff Rogers will fairly and adequately protect the interests of the Subclass. Plaintiffs do not have any interest antagonistic to those of the Class or Subclass.

70.   Plaintiffs have retained competent and experienced counsel.

71.   Plaintiffs assert claims that are typical of the Class. Plaintiff Rogers asserts claims that are typical of the Subclass.

72.   Plaintiffs and the Class have all suffered similar irreparable harm and damages as a result of Defendants' unlawful and wrongful conduct. Plaintiff Rogers and the Subclass have all suffered similar irreparable harm and damages as a result of Defendants' unlawful and wrongful conduct.

73.   Defendants' conduct as described above and below is unlawful, continuing, and capable of repetition and will continue unless restrained and enjoined by the Court.

74.   Plaintiffs contemplate providing notice to the Class and Subclass through electronic mail, to the extent contact information is available, publication and/or notice on Epson's website.

# FIRST CAUSE OF ACTION

## (Violation of Cal. Bus. & Prof. Code § 17200, *et seq.*)

75.    The preceding paragraphs of this Complaint are re-alleged and incorporated by reference.

76.    Plaintiffs bring this cause of action on behalf of themselves and the Class. Plaintiff Rogers also brings this cause of action on behalf of herself and the Subclass.

77.    California's Unfair Business Practices Act, Cal. Bus. & Prof. Code §17200, *et seq.* ("Unfair Business Practices Act"), prohibits acts of "unfair competition" including any "unlawful, unfair, or fraudulent business act or practice."

78.    Defendants have engaged in unfair, unlawful, and/or fraudulent business acts or practices as described in this Complaint, including, but not limited to, disseminating or causing to be disseminated from the State of California, unfair, deceptive, untrue, and/or misleading advertising; marketing and/or selling from California supposed low cost printers requiring the use of Epson ink cartridges to maintain warranty, while concealing their grossly inefficient print yields, which are well below reasonable consumer expectations and the yields of other manufacturer's printers; concealing an existing method to mitigate ink loss; and concealing material facts that would have corrected and/or qualified their misleading partial representations, as set forth above in this Complaint.

79.    By engaging in the above described conduct, Defendants have engaged in a fraudulent business act or practice in that the representations and omissions of material facts described above have deceived or are likely to continue to deceive Members of the Class and Subclass throughout the United States.

80.    Defendants' acts and practices are unlawful because they breach the warranty of merchantability.

81.    Defendants' acts and practices are unlawful because they violate California Civil Code §§ 1572, 1709, 1710, 1770(a)(2), 1770(a)(5), 1770(a)(7), 1770(a)(9),

1   1770(a)(14). Defendants' acts and practices are also unlawful because they violate Cal.

2   Bus. & Prof. Code §§17044, 17500, 17508(a), and/or 17509.

3       82. Defendants violated Unfair Business Practices Act when they sold inkjet

4   printers at less than cost with the purpose to induce, promote or encourage the purchase

5   of ink cartridges, and/or with the effect of creating a tendency or capacity to mislead or

6   deceive purchasers or prospective purchasers.

7       83. Defendants violated Unfair Business Practices Act when they represented,

8   through their advertising, warranties, and other representations, that their inkjet printers

9   and/or ink cartridges had characteristics and benefits which they did not have.

10      84. Defendants violated Unfair Business Practices Act when they falsely

11  represented and/or omitted material information, through their marketing and sales

12  advertisement campaign, and other representations, that their inkjet printers and/or ink

13  cartridges were of a certain quality or standard when they were not.

14      85. Defendants violated Unfair Business Practices Act by making false and/or

15  misleading advertising claims and/or omitting material facts about their inkjet printers

16  and/or ink cartridges purporting to be based on factual, objective, or clinical evidence,

17  and comparing their inkjet printers' and/or ink cartridges' effectiveness to that of other

18  brands or products.

19      86. Defendants violated Unfair Business Practices Act by soliciting the

20  purchase of inkjet printers that required the further purchase of Defendants' inkjet

21  cartridges without conspicuously disclosing the true price to consumers of having to

22  purchase such additional inkjet cartridges.

23      87. Defendants violated Cal. Bus. & Prof. Code §17200, *et seq*., by actively

24  misrepresenting and/or concealing and omitting from their marketing and sales

25  advertising campaign, and other communications, material information about their

26  inkjet printers and/or ink cartridges in a manner that has deceived and is likely to

27  deceive consumers and the public.

28

6411529

15

88.     The injury to consumers by Defendants' conduct greatly outweighs any alleged countervailing benefit to consumers under all of the circumstances.

89.     Defendants' deceptive marketing and sales practices, including misrepresentations and/or omissions or acts of concealment, were material and substantial, such that a reasonable person would have considered them important in deciding whether or not to purchase Defendants inkjet printers and/or ink cartridges.

90.     As a direct and proximate result of Defendants' violation of the Unfair Business Practices Act, Plaintiffs and Class and Subclass members have suffered injury in fact and/or actual damages. Had Defendants disclosed the true quality, nature, and drawbacks of Defendants' inkjet printers and/or ink cartridges, Plaintiffs and Class and Subclass members would not have purchased, or would have paid significantly less for, the inkjet printers and/or ink cartridges.

91.     As a direct and proximate result of Defendants' violation of the Unfair Business Practices Act, Plaintiffs and Class and Subclass members have suffered and will continue to suffer actual damages.

92.     As a direct and proximate result of Defendants' violation of the Unfair Business Practices Act Defendants have been unjustly enriched and should be required to make restitution to Plaintiffs and Class and Subclass members or to disgorge Defendants' ill-gotten profits pursuant to Cal. Bus. & Prof. Code § 17203.

93.     Pursuant to Cal. Bus. & Prof. Code § 17203, Plaintiffs, both individually and on behalf of Class and Subclass members, seek an order of this Court requiring Defendants to immediately cease such acts of unfair competition and enjoining Defendants from continuing to conduct business via the unlawful, fraudulent, or unfair business acts and practices complained of here and from failing to fully disclose the true nature of their misrepresentations.

94.     Plaintiffs, on behalf of themselves and all others similarly situated, further requests injunctive relief in the form of restitution and/or disgorgement and all other

1   relief allowed under §17200, plus interest, attorneys' fees, and costs pursuant to, *inter*

2   *alia*, Cal. Code of Civ. Proc. § 1021.5.

3                            **SECOND CAUSE OF ACTION**

4              **(Violation of California's Bus. & Prof. Code § 17500, *et seq.*)**

5        95.    The preceding paragraphs of this Complaint are re-alleged and

6   incorporated by reference.

7        96.    Plaintiffs bring this cause of action on behalf of themselves and the Class.

8   Plaintiff Rogers also brings this cause of action on behalf of herself and the Subclass.

9        97.    Through their marketing and/or sales advertising campaign, Defendants

10  offered to the public for sale inkjet printers and/or ink cartridges throughout the United

11  States, including California.

12       98.    Defendants disseminated and engaged in unfair, deceptive, untrue, or

13  misleading advertising when they falsely represented, through their advertising,

14  marketing, and other representations that their inkjet printers and/or ink cartridges had

15  qualities and benefits which the inkjet printers and/or ink cartridges did not have.

16       99.    Defendants made a false or misleading advertising claim when they made

17  claims regarding ink yield and efficiency that were purported to be based on factual,

18  objective, or clinical evidence.

19       100.   Defendants also made a false or misleading advertising claim when they

20  made claims regarding the ability of their printers, including, but not limited to, the NX

21  series of printers, to be able print with only the color ink cartridge desired.

22       101.   Defendants disseminated or caused to be disseminated the materially

23  untrue, and misleading and/or omitted advertising statements with the intent to either

24  directly or indirectly induce members of the public, including Plaintiffs and Class and

25  Subclass members, to purchase inkjet printers and/or ink cartridges.

26       102.   The misrepresentations and/or facts concealed or not disclosed by

27  Defendants to Plaintiffs and Class and Subclass members are material facts that a

28

1  reasonable person would have considered important in deciding whether or not to
2  purchase (or to pay the same price for) Defendants' inkjet printers and/or ink cartridges.

3      103.   Defendants' advertisements and marketing statements regarding their inkjet
4  printers and/or ink cartridges were false, untrue, misleading, and/or deceptive as set
5  forth in this Complaint.

6      104.   When Defendants disseminated the advertising described here, they knew,
7  or by exercise of reasonable care should have known, that the statements concerning the
8  inkjet printers and/or ink cartridges were untrue or misleading, or omitted to state the
9  truth about the inkjet printers and/or ink cartridges, in violation of the Fair Advertising
10  Law, Cal. Bus. & Prof. Code § 17500, *et seq.*

11      105.   As a direct and proximate result of Defendants' false and misleading
12  advertising, Plaintiffs and Class and Subclass members have suffered injury in fact
13  and/or actual damages.  Had Defendants disclosed the true quality, nature, and
14  drawbacks of Defendants' inkjet printers and/or ink cartridges, Plaintiffs and Class and
15  Subclass members would not have purchased, or would have paid significantly less for,
16  the inkjet printers and/or ink cartridges.

17      106.   Plaintiffs, on behalf of themselves and all others similarly situated, demand
18  judgment against Defendants for restitution, disgorgement, injunctive relief, and all
19  other relief afforded under Bus. & Prof. Code § 17500, *et seq.*, plus interest, attorneys'
20  fees, and costs pursuant to, *inter alia*, Cal. Code of Civ. Proc. § 1021.5.

21  **THIRD CAUSE OF ACTION**
22  **(Breach of Implied Warranty)**

23      107.   The preceding paragraphs of this Complaint are re-alleged and
24  incorporated by reference.

25      108.   Plaintiffs bring this cause of action on behalf of themselves and the Class.

26      109.   At all relevant time periods, Epson was the manufacturer, seller, distributor,
27  and/or supplier of the inkjet printers and/or ink cartridges purchased by Plaintiffs and
28  members of the Class.

6411529          18

110. Defendant's inkjet printers and/or ink cartridges are defective in that they excessively and unnecessarily waste ink.

111. By placing their inkjet printers and/or ink cartridges in the stream of commerce, Defendant impliedly warranted that the inkjet printers and/or ink cartridges were reasonably fit for their intended uses, that such inkjet printers and/or ink cartridges were of merchantable quality, and that they were not defective.

112. Defendant breached said implied warranties because said inkjet printers and/or ink cartridges were not reasonably fit for their intended uses, were not of merchantable quality, were defective, and they failed to perform as an ordinary user would expect when used in an intended or reasonably foreseeable manner, and caused damages to Plaintiffs and class members as described here.

113. As a direct and proximate result of Defendant's breaches of implied warranties, Plaintiffs and class members were caused to unnecessarily and/or excessively waste ink during printing and were caused to be forced to expend monies to purchase additional ink to compensate for such unnecessary and/or excessive waste of ink.

114. Plaintiffs, on behalf of themselves and all others similarly situated, demands judgment against Defendants for all damages suffered as a result of Defendants' breach of implied warranty.

115. Plaintiffs, on behalf of themselves and all others similarly situated, further requests injunctive relief in the form of restitution and/or disgorgement, plus interest, attorneys' fees, and costs pursuant to, *inter alia*, Cal. Code of Civ. Proc. § 1021.5.

## FOURTH CAUSE OF ACTION

### (Violation of California's Bus. & Prof. Code § 17044, *et seq.*)

116. The preceding paragraphs of this Complaint are re-alleged and incorporated by reference.

117. Plaintiffs bring this cause of action on behalf of themselves and the Class.

118. Defendants sell some or all of their inkjet printers at less than the cost of manufacturing, wholesale purchase, and/or marketing of such inkjet printers.

119. Defendants do so with the purpose of inducing, promoting, or encouraging the purchase of additional ink cartridges.

120. Defendants know or should know that their inkjet printers are defective and/or excessively waste ink.

121. Defendants engage in a business strategy of selling some or all of their inkjet printers below cost and requiring and/or encouraging the exclusive use of Defendants' ink cartridges in order to profit from the sale of ink cartridges.

122. Defendants know or reasonably should know that because of the defects and/or excessive ink waste of their inkjet printers that consumers having purchased Defendants' inkjet printers will purchase a greater number of Defendants' ink cartridges, thus allowing Defendants to derive greater profit from the defects and/or excessive ink waste of their inkjet printers.

123. Defendants conceal information from consumers regarding ink waste, ink efficiency, and the true cost of ownership of their inkjet printers. Defendants' sale of some or all of their inkjet printers below cost has the effect of a tendency and/or capacity to mislead purchasers and prospective purchasers.

124. Plaintiffs and the Class members have suffered damages as a result of Defendants' wrongful actions in violation of California's Loss Leader Statute.

125. Plaintiffs, on behalf of themselves and all others similarly situated, demand judgment against Defendant for injunctive relief, actual damages and three times actual damages sustained as a result of Defendant's wrongful conduct, plus interest, attorneys'

6411529

20

fees and costs, in accordance with Cal. Bus. & Prof. Code § 17082 as well as pursuant to Cal. Code of Civ. Proc. § 1021.5.

## FIFTH CAUSE OF ACTION

### (Violation of Cal. Civ. Code §1750, *et seq.*)

126.   Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this Complaint, except for the definition of the Class and Subclass in Paragraph 62.  For purposes of this Fifth Cause of Action, the Class shall be defined as:

> All persons or entities in the United States who purchased or leased, not for resale, inkjet printers and/or ink cartridges manufactured, sold, and/or marketed by Epson America, Inc. and/or Epson Accessories, Inc. for personal, family, or household purposes.

Likewise, for purposes of this Fifth Cause of Action, the Subclass shall be defined as:

> All persons or entities in the United States who purchased or leased, not for resale, inkjet printers, including, but not limited to, the NX series of printers, and/or ink cartridges manufactured, sold, and/or marketed by Epson America, Inc. and/or Epson Accessories, Inc. for personal, family, or household purposes.

127.   Defendants are "person[s]" as that term is defined by Civil Code § 1761(c).

128.   Plaintiffs and Class and Subclass members are "consumers" within the meaning of Civil Code § 1761(d).

129.   Defendants inkjet printers and ink cartridges constitute "goods" as that term is defined by Civil Code § 1761(a).

130.   Plaintiffs' and Class and Subclass members' purchases of Defendants' inkjet printers and ink cartridges are "transaction[s]" as that term is defined by Civil Code § 1761(e).

131.   Defendants provided or purported to provide "services" to Plaintiffs and Class and Subclass members as defined by Civil Code § 1761(b).

132.   The transactions, policies, acts, and practices engaged in by Defendants and alleged here were intended and/or did result in the sale of the products and services at issue here to Plaintiffs and Class and Subclass members and violated the Consumer Legal Remedies Act, Civ. Code §1750, *et seq.*, ("CLRA") in at least the following respects:

    (a)    In violation of Cal. Civ. Code § 1770(a)(2), Defendants' acts and practices constitute misrepresentations as to the source, sponsorship, approval, or certification of inkjet printers and/or ink cartridges manufactured, marketed, and/or sold by Defendants;

    (b)    In violation of Cal. Civ. Code § 1770(a)(5), Defendants' acts and practices constitute misrepresentations that their inkjet printers and/or ink cartridges have characteristics, benefits, or uses that they do not have;

    (c)    In violation of Cal. Civ. Code § 1770(a)(7), Defendants' acts and practices constitute misrepresentations that their inkjet printers and/or ink cartridges are of a particular standard, quality and/or grade, when they are of another;

    (d)    In violation of Cal. Civ. Code § 1770(a)(9), Defendants advertised and marketed their inkjet printers and/or ink cartridges with the intent not to sell them as advertised or represented; and

    (e)    In violation of Cal. Civ. Code § 1770(a)(14), Defendants represented that that the purchases of their inkjet printers and/or ink cartridges conferred or involve rights, remedies, or obligations which they do not have or involve, or which are prohibited by law.

133.   At all relevant times, Defendants concealed material facts regarding their inkjet printers' and/or ink cartridges' attributes before sale, and thereby violated the CLRA.

134.   Defendants engaged in deceptive practices, in violation of the CLRA, that were designed to induce Plaintiffs and Class and Subclass members to purchase

1  Defendants' inkjet printers and/or ink cartridges.  Defendants' unfair and/or deceptive

2  acts or practices occurred repeatedly in Defendants' trade or business.

3       135.  In engaging in the foregoing unfair or deceptive conduct, the facts

4  concealed or not disclosed by Defendants to Plaintiffs and Class and Subclass members

5  are material facts about Defendants' inkjet printers and/or ink cartridges that a

6  reasonable person would have considered important in deciding whether or not to

7  purchase the inkjet printers and/or ink cartridges.

8       136.  Plaintiffs and Class and Subclass suffered injury in fact and/or actual

9  damages as a direct result of Defendants' concealment of material facts in violation of

10  the CLRA.  Had Defendants disclosed the true quality, nature, and drawbacks of the

11  inkjet printers and/or ink cartridges, Plaintiffs and Class and Subclass members would

12  not have purchased, or would have paid less for, the inkjet printers and/or ink cartridges.

13      137.  To this day, Defendants continue to violate the CLRA by concealing the

14  true nature of their inkjet printers and/or ink cartridges in continuing to market and sell

15  the inkjet printers and/or ink cartridges without disclosing to Plaintiffs or Class and

16  Subclass members the true nature of Defendants' inkjet printers and/or ink cartridges.

17      138.  As a result of the foregoing, Plaintiffs and Class and Subclass members had

18  their legal rights infringed upon and suffered irreparable harm, entitling them to both

19  injunctive relief and restitution as detailed here.

20      139.  Plaintiffs, on behalf of themselves and all others similarly situated, demand

21  judgment against Defendants under the CLRA for monetary damages and injunctive

22  relief in the form of restitution and/or proportional disgorgement of funds paid to

23  Defendants for the purchase of their inkjet printers and/or ink cartridges, and injunction

24  to cease all misleading advertisements regarding the inkjet printers and/or ink

25  cartridges, a Court order requiring Defendants to provide notice to Class and Subclass

26  members and the public at large of the true nature of Defendants' inkjet printers and/or

27  ink cartridges, an award of attorneys' fees, punitive damages, and any other relief

28  deemed appropriate and proper by the Court under Civil Code § 1780.

1    140.   Epson America and Epson Accessories were each served via certified mail
2   with return receipt requested CLRA notification and demand letter relating to the CLRA
3   claims for the Class (the "Class CLRA Letter").  After 30 days of the receipt of the
4   notification letter, Epson failed to provide appropriate relief for its violation of the
5   CLRA.

6    141.   Epson America and Epson Accessories were each served via certified mail
7   with return receipt requested a CLRA notification and demand letter relating to the
8   CLRA claims for the Subclass (the "Subclass CLRA Letter").  After 30 days of the
9   receipt of the Subclass CLRA Letter, Epson failed to provide appropriate relief for its
10  violation of the CLRA.

11

12                       **SIXTH CAUSE OF ACTION**
13                              **(Fraud)**

14    142.   Plaintiffs hereby incorporate by reference the allegations contained in the
15  preceding paragraphs of this Complaint.

16    143.   Plaintiffs bring this cause of action on behalf of themselves and the Class.
17  Plaintiff Rogers also brings this cause of action on behalf of herself and the Subclass.

18    144.   As described herein, Defendants made partial representations through their
19  advertising and marketing campaigns, on their Internet site, and on their product
20  packaging, concerning the functionality and efficiency of their printers and ink
21  cartridges.

22    145.   Defendants further represented that their printers, including, but not limited
23  to, the NX series of printers, operated using only the color ink cartridge desired.
24  Specifically, in Defendants' NX series printer packaging, Defendants made
25  representations, including, but are not limited to, "Individual ink cartridges –replace
26  only the color you need" and "Replace only the color that you need with individual ink
27  cartridges."

28

6411529                                    24

146.   Defendants' partial representations were deceptive and misleading. As described herein, Defendants concealed material facts that would have corrected and/or qualified their misleading partial representations. Further, despite having exclusive knowledge of such material facts unknown to Plaintiffs and members of the Class and Subclass, Defendants' actively concealed and suppressed such information and failed to disclose it to Plaintiffs and members of the Class and Subclass.

147.   Defendants actively concealed and suppressed such information knowing that such information was material to Plaintiffs and members of the Class and Subclass in deciding to purchased Defendants printers and/or ink cartridges. Nonetheless, Defendants actively concealed and suppressed such material information with the intent to induce consumers to purchase Epson printers and ink cartridges.

148.   Plaintiff and members of the Subclass actually and justifiably relied upon Defendants non-disclosures. Had Defendants disclosed the true quality, nature, and drawbacks of Defendants' inkjet printers and/or ink cartridges, Plaintiffs and Class and Subclass members would not have purchased, or would have paid significantly less for, the inkjet printers and/or ink cartridges.

149.   As a result of Defendants' active concealment and suppression of material information, Plaintiffs and the members of the Class and Subclass have suffered damages in an amount to be determined at trial.

150.   Defendants' active concealment and suppression of material facts was done solely for their own benefit and at the expense of Plaintiffs and members of the Class and Subclass, wrongfully inducing them to purchase Defendants' printers and/or ink cartridges. Defendants' misrepresentations were willful, malicious, despicable and undertaken with a conscious disregard for Plaintiffs' and members of the Class and Subclass' rights. Plaintiffs and members of the Class and Subclass are entitled to an award of punitive damages that is sufficient to punish Defendants and to deter them from engaging in similar misconduct in the future.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs prays for judgment and relief as follows:

1.     An Order certifying that the action shall be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure.

2.     An Order requiring Defendants to immediately cease the wrongful conduct as set forth above; enjoining Defendants from continuing to falsely advertise or conceal material information and conduct business via the unlawful and unfair business acts and practices complained of here.

3.     That a Judgment be entered against Defendants in an amount to be determined, including for restitution and/or disgorgement of profits received by Defendants as a result of said purchases, appropriate equitable relief and costs of suit including attorneys' fees.

4.     That a Judgment be entered against Defendants for damages, statutory damages, punitive damages, and costs of suit and attorneys' fees.

5.     That any Judgment for damages entered against Defendants as a result of Defendants' violations of Cal. Bus. & Prof. Code § 17044 be trebled in accord with Cal. Bus. & Prof. Code §17082.

6.     All other damages and relief, equitable or otherwise, including, but not limited to pre- and post-judgment interest, as the Court may deem just and proper.

Dated: November 20, 2009

**AKIN GUMP STRAUSS HAUER & FELD LLP**

**YUHL STONER CARR LLP**

By _____
          Rex S. Heinke
     Attorneys for Plaintiffs
CHRISTOPHER O'SHEA, GISELE
ROGERS and JEFF ADAMS

6411529

26

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a trial by jury of all causes of action that are triable by jury.

Dated: November 30, 2009

**AKIN GUMP STRAUSS HAUER & FELD LLP**

**YUHL STONER CARR LLP**

By _____
      Rex S. Heinke
      Attorneys for Plaintiffs
      CHRISTOPHER O'SHEA, GISELE
      ROGERS and JEFF ADAMS