1   QUINN EMANUEL URQUHART & SULLIVAN, LLP
      Shon Morgan (Bar No. 187736)
2     shonmorgan@quinnemanuel.com
      Ryan S. Goldstein (Bar No. 208444)
3     ryangoldstein@quinnemanuel.com
      Valerie Roddy (Bar No. 235163)
4     valerieroddy@quinnemanuel.com
    865 South Figueroa Street, 10th Floor
5   Los Angeles, California 90017-2543
    Telephone: (213) 443-3000
6   Facsimile: (213) 443-3100

7   Attorneys for Defendants Epson America,
    Inc. and Epson Accessories, Inc.

8

9                UNITED STATES DISTRICT COURT

10              CENTRAL DISTRICT OF CALIFORNIA

11

12  CHRISTOPHER O'SHEA, GISELE          CASE NO. CV 09-8063 PSG (CWx)
    ROGERS and JEFF ADAMS,
13  individuals, on behalf of themselves and   **REDACTED FOR PUBLIC FILING**
    all others similarly situated,
14                                      **DEFENDANTS EPSON AMERICA,**
                                        **INC.'S AND EPSON**
15          Plaintiffs,                 **ACCESSORIES, INC.'S**
                                        **NOTICE OF MOTION AND**
16          vs.                         **MOTION TO DISQUALIFY**
                                        **PLAINTIFFS' COUNSEL;**
17  EPSON AMERICA. INC., a California
    corporation; EPSON ACCESSORIES,     **MEMORANDUM OF POINTS AND**
18  INC., a California corporation; and  **AUTHORITIES**
    DOES 1-100, inclusive,
19                                       *[Confidential Declaration of Alf R.*
            Defendants.                   *Andersen; Declarations of Genevieve*
20                                        *Walker, Michael Wang, Nancy Yaffe,*
                                          *Donna D. Melby, Shon Morgan, and*
21                                        *Valerie Roddy filed/lodged concurrently*
                                          *herewith]*
22

23                                      Hon. Philip S. Gutierrez

24
                                        Date:   May 17, 2010
25                                      Time:   1:30 p.m.
                                        Crtrm.: Roybal, 880
26                                      Filing Date: August 28, 2009

27

28

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that, on May 17, 2010 at 1:30 p.m., or as soon thereafter as the matter may be heard, defendants Epson America, Inc. and Epson Accessories, Inc. ("Epson") will and hereby do move the above-entitled Court for an Order:

(1)     disqualifying Eric F. Yuhl, William Stoner and the Yuhl Stoner Carr LLP law firm from acting as counsel for plaintiffs or any other party in this matter;

(2)     disqualifying Catherine A. Conway, Rex S. Heinke, Joanna H. Kim, David Nelson and the Akin Gump Strauss Hauer & Feld LLP law firm from acting as counsel for plaintiffs or any other party in this matter;

(3)     enjoining plaintiffs, the attorneys and firms listed in (1) and (2) above, and any person subject to plaintiffs' authority or control or acting in concert with them, from using, disclosing or otherwise disseminating Epson's privileged or confidential communications or work product without prior Court authorization;

(4)     requiring plaintiffs, the attorneys and firms listed in (1) and (2) above, and any person subject to plaintiffs' authority or control, or acting in concert with them, to (i) return all of Epson's attorney-client privileged, work product and trade secret materials; (ii) return any documents reflecting Epson's privileged or confidential communications or work product; and (iii) identify all persons who have interacted with Fabrice Commelin or have reviewed or been exposed to any of Epson's privileged or confidential communications or work product in connection with this litigation;

(5)     precluding plaintiffs from offering any fact or expert testimony derived from privileged or confidential information or documents provided directly or indirectly by Fabrice Commelin; and

(6)     for an award of the attorney's fees and costs of preparing this Motion.

This Motion is made on the grounds that the Mr. Yuhl, Mr. Stoner, and the Yuhl Stoner law firm are counsel of record for former Epson executive Fabrice

Commelin in litigation against Epson arising out of Commelin's termination.  Ms. Conway of the Akin Gump firm, along with the Yuhl Stoner firm, also represented Commelin in that matter and met with and received documents from Commelin. Through this representation of Commelin, plaintiffs' counsel have acquired Epson's privileged and confidential information regarding the subjects of this lawsuit that Commelin owes duties to Epson not to disclose.  Plaintiffs' counsel must be disqualified because: (1) their duty, as Commelin's agents, to protect Epson's confidential and privileged information irremediably conflicts with their duty to vigorously prosecute plaintiffs' claims; (2) they have acted unethically in using another party's privileged information for their own benefit in filing and prosecuting this lawsuit, thereby causing irreparable harm to Epson; (3) their access to Epson's confidential information outside formal discovery procedures threatens the integrity and fairness of these proceedings; and (4) their duty to protect Commelin's interests conflicts irremediably with their duty to vigorously prosecute plaintiffs' claims.

This motion is based upon this Notice of Motion and Motion, the attached Memorandum of Points and Authorities in support thereof, the Confidential Declaration of Alf R. Andersen in support thereof lodged concurrently herewith; the Declarations of Genevieve Walker, Michael Wang, Nancy Yaffe, Donna D. Melby, Shon Morgan, and Valerie Roddy in support thereof, all pleadings and papers on file in this action, such other evidence or arguments as may be presented to the Court, and such other matters of which this Court may take judicial notice.

1

## Certification of Local Rule 7-3 Compliance

2      This motion is made following the conference of counsel pursuant to Local

3 Rule 7-3, on February 25, 2010.

4

5 DATED:  April 13, 2010          Respectfully submitted,

6                                 QUINN EMANUEL URQUHART &

7                                 SULLIVAN, LLP

8

9                                 By  *Shon Morgan / vk*

10                                   Shon Morgan
                                     Attorneys for Defendants Epson America, Inc.
11                                   and Epson Accessories, Inc.

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# <u>TABLE OF CONTENTS</u>

<u>Page</u>

Preliminary Statement ............................................................... 1

Statement of Facts.................................................................... 3

Argument ................................................................................ 10

I.     COURTS HAVE INHERENT POWER TO DISQUALIFY COUNSEL ...... 10

II.    PLAINTIFFS' COUNSEL'S CONFLICTING DUTIES TO EPSON
       AND THE CLASS REQUIRE DISQUALIFICATION ................................. 11

       A.    Plaintiffs' Counsel Cannot Use The Confidential Epson
             Information It Obtains From Commelin Against Epson Here.............. 11

       B.    Counsel Owes Conflicting Duties to Epson and the Class ................. 13

III.   COUNSEL'S INTENTIONAL COURSE OF ETHICAL
       MISCONDUCT REQUIRES DISQUALIFICATION ................................. 15

IV.    COUNSEL'S ACCESS TO EPSON'S CONFIDENTIAL
       INFORMATION OUTSIDE THE FORMAL DISCOVERY PROCESS
       IMPUGNS THE INTEGRITY OF THESE PROCEEDINGS ...................... 19

V.     COUNSEL HAS AN IRRECONCILABLE CONFLICT IN
       REPRESENTING BOTH COMMELIN AND THE CLASS........................ 22

VI.    DISQUALIFICATION IS THE ONLY APPROPRIATE REMEDY TO
       CURE THE TAINT TO THESE PROCEEDINGS ........................................ 24

Conclusion ............................................................................... 25

1

# <u>TABLE OF AUTHORITIES</u>

2
<u>Page</u>

3
<u>Cases</u>

4
*American Airlines, Inc. v. Sheppard Mullin Richter & Hampton,*
   96 Cal. App. 4th 1017 (2d Dist. 2002) ................................................ 11

5

6
*Cal Pak Delivery, Inc. v. United Parcel Serv., Inc.,*
   52 Cal. App. 4th 1 (1st Dist. 1997)............................................... 22, 23

7
*Cargill Inc. v. Budine,*
   2007 WL 1813762 (E.D. Cal. June 22, 2007)............................... 20, 22

8

9
*Chugach Elec. Ass'n v. U.S. Dist. Court,*
   370 F.2d 441 (9th Cir. 1966) ........................................................... 24

10
*Colyer v. Smith,*
   50 F. Supp. 2d 966 (C.D. Cal. 1999) ............................................ 14, 15

11

12
*Costco Wholesale Corp. v. Superior Court,*
   47 Cal. 4th 725 (2009) .................................................................... 15

13
*In re Data Gen. Corp. Antitrust Lit.,*
   1986 U.S. Dist. LEXIS 21923  9-10, Fed. R. Serv. 3d (Callaghan)
14  510 (N.D. Cal. 1986) ....................................................................... 19

15
*Erickson v. Newmar Corp.,*
   87 F.3d 298 (9th Cir. 1996) ............................................................ 10

16

17
*Gilbert v. Nat'l Corp. for Hous. P'ships,*
   71 Cal. App. 4th 1240 (1st Dist. 1999) ............................................ 22

18
*Goldstein v. Lees,*
   46 Cal. App. 3d 614 (2d Dist. 1975) ................................................ 14

19

20
*Gregori v. Bank of America,*
   207 Cal. App. 3d 291 (1st Dist. 1989)............................................... 25

21
*Huston v. Imperial Credit Commercial Mortgage Inv. Corp.,*
   179 F. Supp. 2d 1157 (C.D. Cal. 2001).......................... 11, 14, 22, 24, 25

22
*MMR/Wallace Power & Indus., Inc. v. Thames Assocs.,*
23  764 F. Supp. 712 (D. Conn. 1991) ................................................... 10

24
*Packard Bell NEC, Inc. v. Aztech Sys. Ltd.,*
   2001 WL 880957 (C.D. Cal. Jan. 22, 2001)...................... 11, 13, 14, 15

25

26
*Richards v. Jain,*
   168 F. Supp. 2d 1195 (W.D. Wash. 2001) ............................. 16, 17, 18, 19, 24

27
*Rico v. Mitsubishi Motors Co.,*
   42 Cal. 4th 807 (2007)................................................................. 15, 16

28

*State Comp. Ins. Fund. v. WPS, Inc.*,
    70 Cal. App. 4th 644 (1999) ........................................................ 15

*Sullivan v. Chase Inv. Servs. of Boston, Inc.*,
    79 F.R.D. 246 (N.D. Cal. 1978) .................................................. 24

*William H. Raley Co. v. Superior Court*,
    149 Cal. App. 3d 1042 (4th Dist. 1983) ...................................... 13

*Williams v. Trans World Airlines, Inc.*,
    588 F. Supp. 1037 (W.D. Mo. 1984) ........................................... 19

**Rules/Statutes**

Cal. Rules Prof. Conduct, Rule 1-500(A) ......................................... 15

Cal. Rules Prof. Conduct, Rule 3-310(C)(1) .................................... 13

Cal. Rules Prof. Conduct, Rule 3-700(B) ......................................... 24

Cal. Labor Code Section 2860 ......................................................... 16

**Other Authorities**

C.D. Cal. L.R. 83-3.1.2 ................................................................... 11

State Bar Formal Ethics Op. No. 2003-163 ...................................... 15

State Bar of California Standing Committee on Professional Responsibility and
    Conduct, Formal Opinion No. 1988-104 .................................... 24

# MEMORANDUM OF POINTS AND AUTHORITIES

## Preliminary Statement

This class action has been permeated from inception by the ethical improprieties of the Yuhl Stoner and Akin Gump firms, in concert with their client, Fabrice Commelin. The genesis of this suit was not the concerns of the three ostensible consumer plaintiffs. Rather, all key allegations were fed to counsel by Commelin, a disgruntled former Epson executive himself suing Epson and thus all too willing to spill Epson's protected, confidential information. His counsel then improperly exploited that information to threaten this parallel consumer class action as an "800-pound gorilla" (in their words) to extort a settlement from Epson in Commelin's wrongful termination suit. Their message was unmistakable: settle with Commelin for eight figures now and we won't file the class action. Epson refused, but counsel's offer to trade the class claims for Commelin's benefit compounded a mounting series of ethical breaches now far beyond any remedy short of disqualification.

The twin ethical principles necessitating this motion are straightforward: **Rule 1**: A lawyer cannot use privileged or confidential information obtained in one representation to benefit a different client (or for the lawyer's own gain); and **Rule 2**: A lawyer cannot undertake a dual representation where obligations arising in one action would limit the ability to advocate fully on behalf of the other client. Although these principles are undoubtedly well known to plaintiffs' counsel, their zeal to prosecute two simultaneous suits against Epson has resulted in grave violations of both rules:

• Commelin was privy to Epson's attorney-client privileged and confidential communications regarding ink cartridge performance issues, the very subject of this lawsuit, and ██████████████████████████ ██████████████. Having received this protected, confidential information (and likely more), plaintiffs' counsel became duty-bound to limit its use to Commelin's

employment action.  Instead, they improperly used it to file this class action, both to benefit other clients and themselves as contingency-fee lawyers, in violation of Rule 1 above.

• Counsel's violation of Rule 1 was not limited to formulating the allegations of the Complaint.  They have also used Epson's confidential information to solicit their puppet named plaintiffs; as a basis for their discovery requests; to question Commelin at deposition despite their own commitment of confidentiality; and even submitted a document with the Magistrate Judge over Epson's privilege and work product objections, taking it upon themselves to "self-adjudicate" that the document was not protected.

• Counsel's dual representation of Commelin and the purported class also runs afoul of Rule 2.  On the one hand, counsel owes Epson a duty to *not* use the protected information obtained while representing Commelin for any other purpose (a duty they have thus far ignored), but on the other hand they owe the purported class a duty to *exploit for the class members' benefit* all information in counsel's possession (the duty they have elected to favor).  Courts consistently find this fundamental, uncorrectable conflict requires disqualification precisely because—as counsel's actions show—one duty invariably prevails.

For these and other reasons discussed below, plaintiffs' counsel's improper access to Epson's privileged information has tainted this case from the start.  It defies common sense to assume Commelin could somehow segregate privileged and non-privileged information on a specific topic while huddled with his attorneys in private.  Just as plaintiffs' counsel cannot unlearn that information once shared, there is no way to purge these proceedings of the risk those firms will continue to use Epson's privileged, confidential and protected information against it here. Justice and fairness thus require plaintiffs' counsel's disqualification.

1

**Statement of Facts**

2      **Former Executive Fabrice Commelin.**  Fabrice Commelin began working

3  for Epson in December 1983.  Like all Epson employees, he signed an Employee

4  Confidentiality Agreement precluding him from disclosing or using Epson's

5  confidential information even after his employment.[1]  In 1992, Epson promoted

6  Commelin to Vice President for International Operations with responsibility for

7  Epson's Latin America business.  In 1993, Commelin's job title changed to Vice

8  President Latin America, a position he held until Epson terminated him in early

9  2009.[2]  Commelin contends he was wrongfully terminated because he allegedly

10  complained about the marketing of allegedly defective printers and payments made

11  to two foreign executives outside their countries of residence.[3]

12      **Commelin Was Exposed To—And Wrongfully Kept—Epson's Privileged**

13  **and Confidential Information.**  Commelin was a high-ranking officer routinely

14  exposed to privileged attorney-client communications between Epson's in-house

15  counsel and business and technical personnel.[4]

16

17

18

19

20

21

_____

22      [1]   Declaration of Genevieve Walker, dated April 12, 2010 ("Walker Decl.")

23  ¶¶ 3-4 & Ex. A.
       [2]   *Id.* ¶ 5.

24      [3]   Declaration of Donna D. Melby, dated April 12, 2010 ("Melby Decl.") Ex. A

25  at ¶¶ 2-5.  Ink cartridge performance more accurately describes what plaintiffs have
   referred to as "ink efficiency."  Declaration of Alf M. Andersen, dated April 13,

26  2010 ("Andersen Decl.") ¶ 11.

27      [4]   *Id.* ¶¶ 4-9 & Ex. A; *see generally id.*
       [5]   *Compare id.* Ex. C at 170:5-171:22 (Commelin Tr.) *with id.* ¶¶ 6-7 & Ex. A.

28

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISQUALIFY

1 ███████████████████████████████████████

2 ████████████████████████████████████████████

3     █████████████████████████████████████████████

4 ███████████████████████████████████████████

5 ████████ These issues are of paramount importance to all major inkjet

6 manufacturers as the industry strives to educate consumers about the technology and

7 minimize the omnipresent threat of consumer class actions.[7] █████████████

8 ████████████████████████████████████████████

9 ████████████████████████████████████████████

10 ████████████████████████████████████████████████

11 █████████████████████████████████████████████

12 █████████████████████████████████████████

13 ████████████████████████████████████████████

14 ███████████████████████████████████████████████

15 █████ [10]

16     Commelin's access to Epson's privileged information did not cease with his

17 termination.  Unbeknownst to Epson, and in violation of his Confidentiality

18 Agreement, Commelin retained proprietary Epson documents, including both

19 facially privileged and highly confidential documents for which Epson has asserted

---

20

21     [6]  *Id.* ¶¶ 6-19, 22-29 & Ex. A.

    [7]  *Id.* ¶¶ 12-13, 17.  The mere existence of privileged communications regarding

22 these issues is by no means unusual or probative of the merits of the claims in this

23 case. ████████████████████████████████████████

                         *Id.* ¶ 13; Declaration of

24 Valerie Roddy, dated April 12, 2010 ("Roddy Decl.") ¶ 3 (surveying cases).

25     [8]████████████████████████████████████████

26 ████████████████████████████████████. Andersen Decl. Ex. C at 178:9-182:14.

27     [9]  *Id.* Ex. ¶¶ 17-18 & Ex. A.

    [10]  *Id.* ¶¶ 6-8.

28

1  the attorney-client privilege and work product and trade secret protection, ████████

2  ██████████████████████████, documents he has refused to return.[11]

3  **Commelin Provides Confidential Epson Information to Counsel**. ████████

4  ███████████████████████████████████████████████████████████

5  ██████████████████████████████████████████████████

6  ██████████████████████████████████████████████████████████

7  ███████████████████████████████████████████████████████████

8  ██████████████████████████████████████████████████████████

9  ██████████████████████████████████████████████████████

10 ████████████████████████████████████████████████

11  **Counsel's Class Action Threat.**  On July 29, 2009, Commelin's counsel

12 expressly tied settlement of his employment claims to their threat to of a costly

13 consumer class action based on the information Commelin disclosed:

---

15  [11]  *Id.* ¶ 32; Roddy Decl. ¶ 4; Melby Decl. ¶¶ 9-10.  Plaintiffs dispute Epson's

16 assertion of the attorney-client privilege and work product immunity over one such

17 document, identified by Bates range FC330-343.  ████████████████████

18 ████████████████████████████████████████████████████████████

19 ██████████████  Andersen Decl. ¶¶ 32-33; Melby Decl. ¶ 9.  Commelin thus had

20 ample reason to know he should treat the document as privileged.  However,

    whether this one document is attorney-client privileged, work product, or trade

21 secret is not dispositive of this motion because, as shown above and in the Andersen

    declaration, Commelin and plaintiffs' counsel are privy to many other privileged

22 communications regarding ink cartridge performance and, as shown below,

23 improper access to a party's confidential information can also require

    disqualification.  Epson respectfully requests that any determination regarding this

24 document be made only after full and separate briefing on its privileged nature.

25  [12]  Andersen Decl. Ex. C at 142:19-143:7.

    [13]  Melby Decl. Ex. B (noting joint representation); *id.* Ex. C (cc'ing Akin

26 Gump's Ms. Conway on *Commelin* correspondence); Declaration of Nancy Yaffe,

27 dated April 7, 2010 ("Yaffe Decl.") ¶ 3.

    [14]  Andersen Decl. Ex. C at 150:2-16; 199:4-208:12.

28

> [W]e both know if Fabrice [Commelin] files this case ***[Epson] runs the risk of class action exposure*** when the legal community tumbles onto the allegations of consumer fraud albeit in the whistleblower [wrongful termination] context — ***I have not expressed that risk i[n] these unmistakable terms but it is the 800LB gorilla in the room and frankly if [Epson] wants to settle this case, thus removing Fabrice and my firm from that entire playing field, that is a legitimate consideration for [Epson]*** from an exposure standpoint and part of why I see this as an eight figure case for purposes of a negotiated compromise.[15]

Epson declined Mr. Yuhl's offer to abandon the class action in return for Epson's agreement to pay Commelin "eight figures."[16]

## Counsel Solicits Class Representatives Using Confidential Information.

Extortion having failed and armed with the privileged and highly confidential information counsel received from Commelin, counsel sought to file the class action but apparently lacked an actual plaintiff.  In early August 2009, they began trolling for one.  On August 9, "Bill" of the Yuhl Stoner firm emailed potential plaintiffs:

> My firm is putting together a large class action case against Epson concerning its printers and we are trying to find end users who, whether they knew it or not, have been damaged on ink replacement needs due to defects in the Epson printer product line. . . . Ultimately we are looking for some potential class representatives.  The most affected printers are listed below . . . Shirakami B300 and B500 DN.[17]

Significantly, "Shirakami"—a "most affected" model listed by "Bill"—is a confidential *internal* project name Epson never made public that no true consumer would recognize, evidencing counsel's direct (and total) reliance on Commelin's information in initiating this lawsuit.[18]  By the end of August, counsel found a ceremonial plaintiff to attach to the lawsuit they had already constructed based on the protected information Commelin fed them.  The Complaint alleges Epson

---

[15]   Yaffe Decl. ¶ 4 & Ex. A (emphasis added).

[16]   *Id.* ¶ 5.

[17]   Declaration of Michael Wang, dated April 8, 2010 ("Wang Decl.") ¶¶ 3-5 & Ex. A.

[18]   Andersen Decl. ¶ 31.

Case No. CV 09-8063 PSG (CWx)
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISQUALIFY

violated state unfair competition laws and the common law by failing to disclose that Epson's inkjet printers waste ink and that certain Epson inkjet printers will not print if one or more cartridges is missing or empty.  The Complaint is cast in general terms and carefully avoids tell-tale giveaways like the use of internal project names such as "Shirakami," ████████████████████████████████████████ ████████████████████████████████████████████████ ███████   Moreover, the internal project name "Shirakami" soon surfaced in discovery the Akin Gump firm propounded.[20]

**Counsel's Pattern of Improper Disclosures.**  Epson has repeatedly warned plaintiffs' counsel of the dangers posed by their dual representation of Commelin and the class, and reminded them of their continuing duty to protect Epson's privileged and confidential information from improper disclosure or misuse.[21] These warnings have gone unheeded, however, forcing Epson to battle the improper disclosure and use of its privileged information on numerous fronts:

1.     The *Commelin* Complaint.  In late November 2009, the Yuhl Stoner firm provided Epson with a copy of the complaint it would file in *Commelin*.  On its face, the complaint divulged privileged, work product, and trade secret information such as the results of supposed internal Epson product testing, internal high-level discussions regarding potential legal risks that included Epson's in-house counsel, and Commelin's alleged internal complaints regarding potential legal liability.[22]

2.     Commelin's Document Production in *Commelin*.  On February 8, 2010 Commelin produced documents in his employment case.[23]  After months of evasion

---

[19]   *Id*. ¶¶ 20-21.
[20]   Roddy Decl. Ex. A at 14-15 (Nos. 78-79).
[21]   Melby Decl. ¶¶ 7-9 & Ex. D; Declaration of Shon Morgan, dated April 12, 2010 ("Morgan Decl.") ¶¶ 3-5 & Exs. A-B.
[22]   Melby Decl. ¶ 5; Andersen Decl. ¶ 30.
[23]   Melby Decl. ¶ 9.

about what documents he took from Epson, this production revealed Commelin had secreted Epson's privileged documents, two of which are from Epson's legal in-house counsel and a document identified as FC330-343, which bears a "confidential" stamp and which Commelin should know consists of Epson's attorney-client privileged, work product and trade secret information.[24]  Plaintiffs' counsel refused to return copies of all the privileged and confidential documents despite Epson's repeated requests.[25]

3. <u>Plaintiffs' Third Party Subpoena to Commelin.</u>  The first deposition plaintiffs' counsel noticed in this case was Fabrice Commelin's.[26]  The subpoena to their *own client* included 72 document requests, all related to Epson's business and many that sought documents that would require Commelin to violate his Confidentiality Agreement and violate the attorney-client privilege.[27]  Epson immediately reiterated its serious concerns regarding plaintiffs' counsel's conflicts of interest and the preservation of Epson's attorney-client privilege, work product and confidentiality.[28]  Epson also requested an opportunity to review Commelin's documents before production to plaintiffs so it could interpose any privilege objections.  This request was ignored, and plaintiffs' counsel "produced" Commelin's documents to themselves.[29]  Significantly, the document production also broke Mr. Stoner's commitment to Epson's employment counsel only nine days before that he would hold the same documents in confidence pending entry of a confidentiality order.[30]  Plaintiffs' counsel also refused to confirm if they intended to

---

[24]   *Id.*; Andersen Decl. ¶¶ 32-33.
[25]   Melby Decl. ¶¶ 7-10.
[26]   Roddy Decl. ¶ 10 & Ex. E.
[27]   *Id.*
[28]   Morgan Decl. ¶ 4 & Ex. A.
[29]   *Id.*; *id.* ¶ 6 & Ex. C.
[30]   Melby Decl. ¶ 10 & Ex. E.

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISQUALIFY

1  represent Commelin at deposition.  ████████████████████████

2  ██████████████████████████████████████████████████████████

3  ████████████████████████████████████████████████

4  ████████████████████████████████████████████████████

5  ██████████████████[31]

6       The purpose of subpoenaing their own client was clear:  counsel was trying to

7  "cleanse" their improper access to and use of Epson's confidential and privileged

8  information through the artifice of a subpoena "requiring" Commelin to disclose

9  these communications.  That the deposition was counsel's effort to launder

10  information already received became obvious when Commelin produced every

11  document produced in the employment case—including two Epson attorney-client

12  privileged memoranda that were not responsive to *any* request.[32]  At the deposition,

13  ██████████████████████████████████████████████████████████

14  ██████████████████████████████████████████████████████████

15  ████████████████████████████████████████████████[33].

16       4.    Plaintiffs' Filing of Epson's Privileged Document.  By a March 1, 2010

17  Order, the Court entered an interim attorneys' eyes only protective order over the

18  Commelin deposition and documents, and invited the parties to seek an extension of

19  that protection.[34]  In opposing Epson's extension request, and without advance

20  notice to Epson, plaintiffs' counsel filed FC330-343, a privileged document

21

22

23 _____

24  [31]    Morgan Decl. ¶¶ 7-10 & Ex. C; Andersen Decl. Ex. C at 2:9-15, 3:3-8, 4:4-5.

25  The result of this imitation of the adversary process was surreal.  *See, e.g.*, *id.* at
    147:15-149:17, 155:11-156:21.

26  [32]    *Id.* at 166:18-167:13.

27  [33]    *Id.* at 109:13-132:17.

    [34]    Roddy Decl. Ex. B.

28

1  produced by Commelin that Epson had repeatedly demanded plaintiffs return as

2  containing attorney-client privileged and work product information.[35]

3  **Commelin's Role in this Case.** ████████████████████████

4  ████████████████████████████████████████████████

5  ████████████████████████████████████████████████

6  ████████████████████████████████████████████████

7  ████████████████[37]  Left unchecked, Commelin will continue to collude

8  with his counsel in this case to misuse Epson's privileged information: He was the

9  only witness identified in plaintiffs' initial disclosures other than the three named

10  plaintiffs, and has been touted by plaintiffs as their key witness.[38]

**Argument**

**I.   COURTS HAVE INHERENT POWER TO DISQUALIFY COUNSEL**

A court's inherent power to control attorneys who appear before it authorizes disqualification for unethical conduct.  *Erickson v. Newmar Corp.*, 87 F.3d 298, 303 (9th Cir. 1996).  Where the "asserted course of conduct by counsel threatens to affect the integrity of the adversarial process, [the court] should take appropriate measures, including disqualification, to eliminate such taint."  *MMR/Wallace Power & Indus., Inc. v. Thames Assocs.*, 764 F. Supp. 712, 718 (D. Conn. 1991).

Here, as shown below, plaintiffs' counsel's dual representation of Commelin in *Commelin* and the putative class requires disqualification because it creates

_____

[35]   Morgan Decl. ¶ 11.  Although plaintiffs dispute whether this document is privileged, there is no dispute they were on notice of Epson's privilege assertions when they filed the document.  Morgan Decl. Ex. C; Melby Decl. Ex. D.  Similarly, it defies reason that Commelin was unaware of the document's privileged nature when he provided it to his counsel ██████████████████████  Andersen Decl. ¶¶ 17-18, 33.

[36]   *Id.* Ex. C at 151:9-19, 154:11-12.

[37]   *Id.* at 151:21-158:4.

[38]   Roddy Decl. Exs. C at 1-2 & E.

1   irreconcilable conflicts among Epson, Commelin, and the purported class.  In

2   addition, their improper use of Epson's privileged and confidential information, and

3   their continued access to this information outside formal discovery procedures also

4   irremediably taints these proceedings, warranting disqualification.

5   **II.   PLAINTIFFS' COUNSEL'S CONFLICTING DUTIES TO EPSON AND**

6   **THE CLASS REQUIRE DISQUALIFICATION**

7          The conflict at the core of this motion can be succinctly stated:  On one hand,

8   the Yuhl Stoner and Akin Gump firms are duty-bound *not* to use Epson's privileged

9   and confidential information learned through representing Commelin for any other

10   purpose, but on the other hand the firms simultaneously owe the class here a

11   conflicting duty *to exploit* that same information to prosecute the class claims.

12   Counsel have thus "placed [themselves] in a position of trust where [they] could be

13   compelled to choose which of two conflicting loyalties [they] would honor."

14   *American Airlines, Inc. v. Sheppard Mullin Richter & Hampton*, 96 Cal. App. 4th

15   1017, 1035 (2d Dist. 2002).  The Rules of Professional Conduct resolve that conflict

16   by mandating that class counsel withdraw or be disqualified.[39]

17       **A.   Plaintiffs' Counsel Cannot Use The Confidential Epson**

18       **Information It Obtains From Commelin Against Epson Here**

19          As an agent of a client, an attorney steps into the client's shoes with respect to

20   any obligations to maintain confidentiality.  *See, e.g.*, *Huston v. Imperial Credit*

21   *Commercial Mortgage Inv. Corp.*, 179 F. Supp. 2d 1157, 1179-80 (C.D. Cal. 2001)

22   (former attorney-officer's duty to maintain confidentiality of former client extended

23   to his counsel); *Packard Bell NEC, Inc. v. Aztech Sys. Ltd.*, 2001 WL 880957 at *8

24   (C.D. Cal. Jan. 22, 2001) (former employee's continuing duty to preserve employer's

25   privilege imputed to counsel).

26   ―――――――――――――

27   [39]    Attorneys practicing before this Court must comply with the ethical
     obligations imposed upon California attorneys.  C.D. Cal. L.R. 83-3.1.2.

28

1    The record clearly establishes Commelin was privy to numerous privileged

2 and confidential communications concerning ink cartridge performance issues and

3 other subjects related to this class action.[40]  Epson holds those privileges and does

4 not intend to waive them.  Furthermore, Commelin is subject to a confidentiality

5 agreement that bars disclosure or use of this protected information.[41]

6    That Commelin will share this information with his counsel is not

7 hypothetical but inevitable, because these same substantive issues are implicated by

8 allegations in his employment lawsuit against Epson.  Commelin's operative

9 Complaint there alleges:

10    Epson America preyed on their captured consumers in California by
      misrepresenting product quality information about Epson America's
11    printers and ink cartridges.  Knowing Epson America marketed and
      sold their purported low cost inkjet printers with a requirement to use
12    only Epson ink cartridges to maintain warranty, Plaintiff became
      aware that Epson America was misrepresenting and concealing grossly
13    inefficient print yields generated by its ink cartridges, which were well
      below reasonable consumer expectations and the yields of other
14    manufacturers' printers.[42]

15 The *O'Shea* plaintiffs' allegations echo virtually verbatim Commelin's complaint:

16    This lawsuit is about a printer manufacturer, Epson, which preys on
      their captured consumers by misrepresenting product quality
17    information about Epson's printers and ink cartridges.  Epson
      marketed and sold their supposed low cost inkjet printers with a
18    requirement to use only Epson ink cartridges to maintain warranty,
      while misrepresenting and concealing the grossly inefficient print
19    yields generated by its ink cartridges, which are well below consumer
      expectations and the yields of other manufacturers' printers.[43]

20

21

22

23

24

_____

25    [40]   Andersen Decl. ¶¶ 4-21 & Ex. A.

26    [41]   Walker Decl. ¶ 4 & Ex. A.

27    [42]   Melby Decl. Ex. A at ¶ 4.
      [43]   Roddy Decl. Ex. D at ¶ 1.

28

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISQUALIFY

1 Indeed, ████████████████████████████████████████

2 ██████████████████, and it defies credulity that he somehow could segregate

3 privileged sources of that knowledge from any non-privileged sources.[44]

4      Having come into possession of this information through Commelin, his

5 attorneys owe Epson the same duty to maintain its confidentiality and refrain from

6 using it outside the employment suit.  *See Packard Bell NEC*, 2001 WL 880957 at

7 *8 (under *Cal. Rule of Professional Conduct* 3-310(C)(1), **attorneys have ethical**

8 **obligations to preserve the confidentiality of information that originates with**

9 **someone other than the client**).  If that duty means anything, it prohibits counsel

10 from using this information *against* Epson to benefit other clients (the named

11 plaintiffs and class) or for their own benefit in trying reap a contingency payday.  As

12 explained below, this duty creates the antecedent for an irreconcilable conflict.

13           **B.     Counsel Owes Conflicting Duties to Epson and the Class**

14      Although Epson is a non-client, the duty of confidentiality plaintiffs' attorneys

15 owe to Epson conflicts directly with the class' interests.  "'A conflict of interest may

16 arise from an attorney's relationship with a non-client.'"  *William H. Raley Co. v.*

17 *Superior Court*, 149 Cal. App. 3d 1042 (4th Dist. 1983) (conflicts of interest may

18 arise where "'attorney has acquired confidential information in the course of [a

19 relationship creating an expectation of a duty of fidelity] which will be, or may

20 appear to the person or entity to be, useful in the attorney's representation in an

21 action on behalf of a client'").

22      From Commelin's employment action, plaintiffs' counsel have acquired, and

23 will continue to acquire, Epson's confidential and privileged information about the

24 subject of this litigation.[45]  As Commelin's agents, plaintiffs' counsel owe Epson the

25 _____

26    [44]  Andersen Decl. Ex. C at 151:9-19, 154:11-12.

27    [45]  Commelin's production of the FC330-343 document, a confidential,
   privileged, work product, and trade-secret document, and plaintiffs' counsel's

28    (footnote continued)

1  same duty as Commelin to maintain confidentiality, yet their duties to the class

2  require them to use *all* available information to prosecute the class claims.  This

3  creates a disabling conflict.  *Huston*, 179 F. Supp. 2d at 1179-80 (disqualifying

4  conflict created by duty owed to plaintiff and class to prosecute their claims and

5  duty owed to defendant, by virtue of representing defendant's former officer-

6  attorney, to keep confidential defendant's protected information); *Packard Bell*

7  *NEC,* 2001 WL 880957 at *8 (disqualifying defendant's counsel who represented

8  plaintiff's former employee, where "[i]t reasons that [plaintiff's former employee]

9  owes [plaintiff] a continuing fiduciary obligation to keep [its] privileged information

10  confidential and that the Levy Firm as agent of [plaintiff's former employee] owes

11  [plaintiff] the same fiduciary duties . . . and must not be in a position to disclose or

12  use [plaintiff's] confidential information to assist [defendant]."); *cf. Goldstein v.*

13  *Lees*, 46 Cal. App. 3d 614, 620 (2d Dist. 1975) ("'It is difficult to believe that a

14  counsel who scrupulously attempts to avoid the revelation of former client

15  confidences—*i.e.*, who makes every effort to steer clear of the danger zone—can

16  offer the kind of undivided loyalty that a client has every right to expect and that our

17  legal system demands.'").

18       The conflict of interest here does not fit neatly with the commonplace

19  paradigm of a lawyer trying to sue a client on behalf of another client, but it raises

20  equally serious ethical concerns requiring disqualification.[46]  On similar facts, the

21  _____

22  ██████████████████████, as well as their use of privileged and confidential

23  information to draft the complaint and the use of "Shirakami," an internal Epson
project—are but four confirmed examples that have already surfaced.

24  [46]  Epson has standing to seek disqualification because it is *Epson's* privileged

25  and confidential information that has been and will continue to be improperly used
and disclosed by plaintiffs' counsel (creating a personal stake in the conflict of

26  interest).  *See, e.g., Colyer v. Smith*, 50 F. Supp. 2d 966, 971 (C.D. Cal. 1999) (non-
client litigant can establish standing to seek disqualification where it has a personal

27  stake in conflict of interest).  The disclosure of a party's attorney-client privileged

28     (footnote continued)

court in *Packard Bell NEC* disqualified defendant's counsel because of its prior representation of plaintiff's former long-time, high-ranking executive. Finding that representing the executive gave counsel access to the plaintiff corporation's privileged information, the court found disqualification necessary to prevent the conflicted counsel—who, as the former executive's agent, owed plaintiff a duty to maintain its confidentiality—from gaining an improper advantage. *Packard Bell NEC*, 2001 WL 880957 at *8-9.

The irremediable conflict between plaintiffs' counsel's duties to maintain the confidentiality of Epson's confidential and privileged information—which they have demonstrably failed to do—and their duties to vigorously represent plaintiffs and the class requires disqualification. It is as simple as that. Cal. Rules Prof. Conduct, Rule 3-700(B); *see also* State Bar Formal Ethics Op. No. 2003-163, at *3 ("Lawyer's inability to fulfill simultaneously her duties to [multiple clients] ... would result in a violation of the duties stated in the rules and the State Bar Act and would therefore trigger Lawyer's duty to withdraw").

## III.  COUNSEL'S INTENTIONAL COURSE OF ETHICAL MISCONDUCT REQUIRES DISQUALIFICATION

Plaintiffs' counsel must also be disqualified for their improper misuse of Epson's privileged information. Under California law, an attorney who receives another party's privileged information must refrain from examining the materials any more than is essential to ascertain if the material is privileged and immediately notify the opposing counsel or sender that he possesses the privileged material. *See Rico v. Mitsubishi Motors Co.*, 42 Cal. 4th 807, 817 (2007) (adopting standard

---

communications and attorney work product information constitutes irreparable harm, *Costco Wholesale Corp. v. Superior Court*, 47 Cal. 4th 725, 733 (2009), and therefore the requisite stake for standing. Epson also has standing because "the ethical breach so infects the litigation. . . that it impacts [Epson's] interest in a just and lawful determination of [its] claims." *Colyer*, 50 F. Supp. 2d at 971.

articulated in *State Comp. Ins. Fund. v. WPS, Inc.*, 70 Cal. App. 4th 644, 656 (2d Dist. 1999)). Disqualification is appropriate when the lawyer fails to do so, and "act[s] unethically in making full use of the confidential document" to place opposing counsel at a disadvantage. *Rico*, 42 Cal. 4th at 819. Federal courts have acknowledged the same principle. *Richards v. Jain*, 168 F. Supp. 2d 1195, 1200-01 (W.D. Wash. 2001) ("An attorney who receives privileged documents has an ethical duty upon notice of the privileged nature of the documents to cease review of the documents, notify the privilege holder, and return the documents. A failure by an attorney to abide by these rules is grounds for disqualification.").

Before this action was ever filed and at frequent intervals since, Epson has cautioned plaintiffs' attorneys against the improper use or disclosure of the privileged and confidential information to which Commelin had been privy while at Epson.[47] Plaintiffs' counsel's irresponsible misuse of that information on repeated occasions is both perplexing and egregious.

For example, when Epson learned Commelin retained Epson documents after his termination, it demanded he immediately return them as required by his Epson Employee Confidentiality Agreement.[48] Return of these materials was also mandated by Labor Code Section 2860, which provides that everything an employee acquires by virtue of his employment belongs to the employer. In breaches of that provision and his Agreement that were apparently sanctioned and facilitated by Yuhl Stoner, they refused. When Commelin finally made a formal document production in the employment case, Epson identified Epson proprietary and privileged documents and demanded that counsel return their copies. ██████████

████████████████████████████████████████████████████████

---

[47] Melby Decl. ¶¶ 7-8 & Ex. D.
[48] *Id.* Ex. D.

1   ████████████████████████████████████████[49]   As a result,

2   Mr. Stoner introduced into this action the very same documents Epson was

3   demanding Commelin return on privilege, work product and trade secret grounds.[50]

4          This interference with Epson's protection of its privileged information was no

5   accident.  First, Mr. Stoner, who produced the documents on Commelin's behalf,

6   had ample notice that Epson's privileged and confidential documents were included

7   in the production—indeed, Mr. Stoner had agreed just days before the production to

8   keep the documents confidential.  Second, ████████████████████████

9   ██████████████████████████████████, notwithstanding

10  Epson's privilege assertions, requests to postpone the deposition to allow for full

11  briefing of the inherent privilege concerns, and ██████████████████████

12  ██████████████████████████.  Plaintiffs' counsel then submitted that

13  document to the Court in a filing to oppose Epson's motion to extend the interim

14  "attorneys' eyes only" protective order the Court issued over Commelin's deposition

15  testimony and exhibits even though they *knew* Epson was asserting that the

16  document was attorney-client privileged and work product.  Finally, plaintiffs'

17  attorneys' charade of issuing a third party subpoena *to their own client* confirms

18  they knew using the information obtained from their representation of Commelin

19  was improper.  Counsel's use of the Court's formal process was nothing more than a

20  clumsy and bizarre attempt to "launder" this information for use in *O'Shea*.

21         Plaintiffs' counsel's improper access to and use of Epson's privileged and

22  confidential information compels their disqualification, as the district court's

23  decision in *Richards v. Jain* illustrates.  In *Richards*, the plaintiff was the

24  defendant's former vice president who, like Commelin, was subject to a non-

25  disclosure agreement.  As here, before filing his suit, the *Richards* plaintiff provided

26  _____

27  [49]   Andersen Decl. Ex. C at 165:3-168:9.
    [50]   *Id.* at 186:11-194:3.

28

Case No. CV 09-8063 PSG (CWx)
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISQUALIFY

his counsel documents that contained information subject to the defendant's privilege and relevant to the case. *Id.* at 1198-1200. The court found the plaintiff's firm's access to the defendant's privileged attorney-client communications, by itself, warranted disqualification. First, the court noted that "[o]nce [plaintiff's counsel] knew of the . . . privileged documents he had an affirmative duty not to review the contents of the Disk and to return the Disk." *Id.* at 1201. The court then found that plaintiff's counsel's failure to inquire or consider that the plaintiff's emails may have contained defendant's privileged communications was "a failure of reasonable care, approaching recklessness." *Id.* at 1202. The court ultimately concluded:

> [A]lthough [plaintiff's counsel] has gone to great lengths and argued stridently that no confidences were revealed to or used by the firm, the undisputed facts of the case create a substantial taint on any future proceedings. Simply returning the Disk and removing the possibility of any future impingement on [defendant's] attorney-client privilege will not remove the taint. 'A reasonable member of the bar or the public would share . . . the nagging suspicion that plaintiffs' trial preparation and presentation of their case had benefitted from confidential information obtained from [the Disk]."

*Id.* at 1209.

Here, plaintiffs' counsel have had the same improper access to Epson's privileged information as the counsel in *Richards*, not through the plaintiffs themselves but through another client, Commelin. Whether he recognizes it or not, Commelin was privy to numerous attorney-client privileged communications between Epson's in-house counsel and key business and technical personnel when he worked at Epson ███████████████████████████████ ████████████████████████████████████ █████████████████████████████ not surprisingly given that they are the subject not only of this lawsuit but also his own.

Here, there is thus far more than a "nagging suspicion" that plaintiffs' counsel's trial preparation and strategy has benefited and will continue to benefit from access to Epson's privileged information. Commelin *must* share everything he

knows—which includes Epson's privileged information—about ink cartridge performance issues with plaintiffs' counsel so they can prosecute his claims in *Commelin*. ***Critically, this direct, extra-judicial access to Commelin and the privileged and confidential information he possesses gives the class attorneys an improper advantage that no other counsel representing plaintiffs would have***. Whatever right plaintiffs' counsel had, if any, to receive Epson's privileged information from Commelin for the purpose of prosecuting his lawsuit, plaintiffs' counsel acted unethically when they then *misused* that privileged information to file *this* case for their own benefit.  As in *Richards*, "[t]he disclosure of privileged information cannot be undone," *id.* at 1209, and disqualification is required.

## IV.   COUNSEL'S ACCESS TO EPSON'S CONFIDENTIAL INFORMATION OUTSIDE THE FORMAL DISCOVERY PROCESS IMPUGNS THE INTEGRITY OF THESE PROCEEDINGS

Of course, it is not only privileged information but also the access Commelin gives plaintiffs' counsel to Epson's *confidential and trade secret* information wholly outside of formal discovery channels that threatens the integrity of these proceedings.  Courts have long recognized the danger of such unfettered extra-judicial access to confidential or privileged information.  That counsel might have eventually acquired this information through formal discovery is irrelevant.  For example, in *In re Data Gen. Corp. Antitrust Lit.*, 1986 U.S. Dist. LEXIS 21923 at *3-4, 9-10, Fed. R. Serv. 3d (Callaghan) 510 (N.D. Cal. 1986), the court rejected a party's attempt to retain as experts its adversary's former employees who were subject to confidentiality agreements regarding the adversary's trade secrets.  Even though the requesting party could have obtained the same testimony through discovery, the court found "the potential for abuse and mischief" and danger that protected information would be disclosed was too great.

Similarly, as here, in *Williams v. Trans World Airlines, Inc.*, 588 F. Supp. 1037, 1045 (W.D. Mo. 1984), the plaintiffs' counsel simultaneously represented the

defendant's former employee, and claimed the employee was a key witness.  The court disqualified plaintiffs' counsel for this dual representation because "the potential for unfair discovery of information through private consultation rather than through normal discovery procedures threatens the integrity of the trial process" and "[a] reasonable member of the public or of the bar would share with [defendant] the nagging suspicion that plaintiffs' trial preparation and presentation of their cases had benefitted from confidential information obtained from [the former employee]."[51]

The district court's disqualification order in *Cargill Inc. v. Budine*, 2007 WL 1813762 (E.D. Cal. June 22, 2007) is also instructive regarding extrajudicial access to an adversary's confidential information.  There, as here, Cargill was a party to two actions: a trade secret misappropriation action against former Cargill employees including Budine, and a class action, *Burford v. Cargill Inc.*, alleging Cargill's dairy pellets injured plaintiffs' cows.  While at Cargill, Budine was privy to privileged communications regarding *Burford*, although the extent was disputed.

The two cases became interrelated when the *Burford* class plaintiffs moved for a protective order allowing the former employees in *Budine* to testify notwithstanding their confidentiality agreements with Cargill.  In so moving, they relied on the pleadings in *Budine* to argue that the *Budine* defendants had information relevant to their claims.  Meanwhile, the *Budine* defendants relied on the plaintiffs' claims in *Burford* in pleading their counterclaim against Cargill.  The

---

[51]   The improper sharing of information can work in both actions.  Notably, plaintiffs have refused to stipulate to "attorneys' eyes only" designation in any protective order in this case.  Roddy Decl. ¶ 5.  Although plaintiffs contend they should be able to share Epson's highly confidential trade secret documents with their plaintiffs—whose only connection to this suit is that they purchased an Epson inkjet printer around the time the Yuhl Stoner firm began soliciting plaintiffs—the more likely reason is their desire to share this information with Commelin and obtain his insights as an undisclosed consultant with inside knowledge.

1  *Budine* defendants had meetings with the *Burford* plaintiffs' counsel, who appeared

2  *pro hac vice* in *Budine* shortly thereafter.  *Budine*, 2007 WL 1813762 at *1-6.

3     The court disqualified the *Burford* plaintiffs' counsel from representing the

4  *Budine* defendants in part because the representation of Budine and other former

5  employees gave the *Burford* class counsel improper access to Cargill's privileged

6  information.  The court noted the concern that the former employees and counsel

7  could not completely segregate the employer's privileged from non-privileged

8  information, a concern heightened by the attorney-client relationship—in which

9  "privileged and confidential information is presumed to be exchanged"—between

10  the *Burford* plaintiffs' counsel and the former employees.  *Id.* at *8, 12.[52]

11     Critically, however, the court also was troubled by the potential for

12  impropriety arising from counsel's access to confidential and highly confidential

13  documents produced under a protective order solely for use in *Burford*.

14  Recognizing that the dual representation of clients against the same adversary did

15

16

---

17  [52]  *Cargill's* reasoning applies with even greater force here, where (1) Commelin

18  has already provided his counsel with three privileged and confidential documents,

19  including FC330-343 and two Epson memoranda authored by Alf Andersen, who

   both Commelin and plaintiffs' counsel knew to be in-house counsel for Epson, *see,*

20  *e.g.*, Melby Decl. Ex. F at 24 (No. 117) (requesting communications with Alf

21  Andersen in discovery); (2) Commelin and plaintiffs' counsel refuse to return, and

   have filed with the Court, FC330-343, a document over which Epson has asserted

22  the attorney-client privilege and work product immunity and which Commelin had

23  every reason to know was attorney-client privileged, Melby Decl. ¶¶ 9-10 & Ex. D;

   Morgan Decl. ¶¶ 6, 8, 11 & Ex. C; Andersen Decl. ¶¶ 32-33; and (3) where

24  Commelin has little grasp of the extent of the privileged communications to which

25  he was a party, ███████████████████████████████, *compare*

26  Andersen Decl. Ex. C at 170:5-171:22 *with id.* at Ex. A.  There is abundant reason

   to believe Commelin and his counsel cannot separate what Commelin may freely

27  share from what he may not, or what counsel may freely use from what they may

   not.

28

not present a traditional disqualification scenario, the court nevertheless found the

dual representation an impermissible affront to justice:

> The Court generally will defer to a party's choice of counsel.  In this case, however, the policy concerns raised by participation of Burford counsel outweigh this right; namely, the appearance of impropriety and the threat to the integrity of the trial process, because of the confidential and privileged information involved, and the risk of unfair advantage.

*Id.* at \*14 (emphasis added).  Here, there is no question the idea for this class action came from Commelin.  His retention of plaintiffs' counsel predates both the filing of this action (by several months) and the Yuhl Stoner firm's email solicitations for potential representative plaintiffs using an *internal* project name.  Like the conflicted counsel in *Budine*, plaintiffs' counsel here already has an unfair advantage from its unfettered access to Epson's confidential information (in addition to its privileged information) via Commelin, thus requiring disqualification.

## V.    COUNSEL HAS AN IRRECONCILABLE CONFLICT IN REPRESENTING BOTH COMMELIN AND THE CLASS

A "heightened standard" applies to conflicts that might compromise class counsel's loyalty to the class because courts must protect absent class members who have no say in forming the attorney-client relationship and cannot practicably waive potential or existing conflicts.  *Cal Pak Delivery, Inc. v. United Parcel Serv., Inc.*, 52 Cal. App. 4th 1, 11-12 (1st Dist. 1997); *Huston*, 179 F. Supp. 2d at 1167.

Counsel's duty to zealously prosecute the class claims—including use of improperly obtained information that would advance those claims—conflicts with their duty to protect Commelin's interests, which are not served by inducing him to breach his Confidentiality Agreement and his fiduciary duty to Epson.  *See, e.g.*, *Gilbert v. Nat'l Corp. for Hous. P'ships*, 71 Cal. App. 4th 1240, 1252-54 (1st Dist. 1999) (recognizing irreconcilable conflict where counsel owed duty to one client to utilize available witnesses to support her claims and duty to other clients—the witnesses in question—to avoid potential liability for breaching confidentiality

1  provision of settlement agreement by testifying).  Here, as in *Gilbert*, plaintiffs'

2  counsel's representation of one client prevents them from fully advocating on behalf

3  of the other.  Commelin, of course, can consent to this compromised representation.

4  Millions of absent class members cannot.

5       This concern is paramount where, as here, plaintiffs' counsel has already

6  demonstrated its willingness to sell out the class to benefit their first client,

7  Commelin.  Specifically, in a July 29, 2009, e-mail to Epson's counsel discussing a

8  possible resolution of Commelin's employment claims counsel stated that:

9

10      [W]e both know that if Fabrice files this case EAI runs the risk of class
    action exposure. . . . I have not expressed that risk i[n] these
    unmistakable terms but it is the 800LB gorilla in the room and frankly

11      if EAI wants to settle this case, thus removing Fabrice and my firm
    from that entire playing field, that is a legitimate consideration for EAI

12      from an exposure standpoint and a part of why I see this again as an
    eight figure case for purposes of a negotiated compromise.

13

14  The intent of this threat was clear:  Epson should make Commelin an offer he can't

15  refuse and thereby avoid class action exposure by "removing [the Yuhl Stoner] firm

16  from that entire playing field."  Although the *O'Shea* complaint was not yet on file it

17  was clearly in the works, and the mere suggestion of tying resolution of the two

18  actions evidences a disqualifying willingness to act to the detriment of the class.

19  For example, in *Cal Pak Delivery, Inc. v. United Parcel Service, Inc.*, 52 Cal. App.

20  4th 1 (1st Dist. 1997), the court affirmed disqualification of class counsel who

21  proposed a settlement structure that put his own interests before that of the class.

22  The factual context in *Cal Pak* differed somewhat but the principles underlying

23  disqualification—that class counsel must act first and always for the benefit of the

24  class—are nonetheless implicated here.  The *Cal Pak* court reasoned that:

25      We believe Khourie's unethical conduct is likely to have a continuing
    effect in this litigation adverse to the interests of the class he purports to

26      represent. . . [I]n this case, [counsel] seeks to represent a large,
    unenumerated and as yet unidentified class of plaintiffs.  Unidentified

27      class members cannot waive a potential conflict of interest. . . . In the
    instant case, we would be surprised if members of the putative class

28      aware of Khourie's attempted betrayal of their interests did not harbor

continuing doubts about his loyalty and the integrity of the judicial proceedings in which he participated. (internal quotations omitted).

*Id.* at 11-12. As in *Cal Pak,* the Court and absent class members here would justifiably "harbor continuing doubts about [counsel's] loyalty" to the class given the overtures to forego the class claims for an attractive settlement of Commelin's dispute, particularly while Commelin's suit is ongoing. *See Sullivan v. Chase Inv. Servs. of Boston, Inc.,* 79 F.R.D. 246, 258 (N.D. Cal. 1978) ("With respect to the qualifications of the class counsel, '[c]ourts may take into account any prior failure to proceed in the best interests of the putative class'") (internal citations omitted).[53]

## VI.   DISQUALIFICATION IS THE ONLY APPROPRIATE REMEDY TO CURE THE TAINT TO THESE PROCEEDINGS

A court "must not hesitate to disqualify an attorney when it is satisfactorily established that he or she wrongfully acquired an unfair advantage that undermines the integrity of the judicial process and will have a continuing effect on the proceedings before the court." *Huston,* 179 F. Supp. 2d at 1168. In cases involving violation of the attorney-client privilege, "the Court should resolve any doubts in favor of disqualification." *Richards,* 168 F. Supp. 2d at 1209; *see also Chugach Elec. Ass'n v. U.S. Dist. Court,* 370 F.2d 441, 444 (9th Cir. 1966) ("Where conflict of interest or abuse of professional confidence is asserted, the right of an attorney

_____

[53]   Mr. Yuhl's July, 29, 2009 email also raises a related concern. California Rule of Professional Conduct Rule 1-500(A) provides that "[a] member shall not be a party to or participate in offering or making an agreement, whether in connection with the settlement of a lawsuit or otherwise, if the agreement restricts the right of a member to practice law [barring exceptions not applicable here]." *See also* State Bar of California Standing Committee on Professional Responsibility and Conduct, Formal Opinion No. 1988-104 (violates ethical rules for attorney to offer or accept a provision as a condition of settlement that would preclude plaintiff's attorney from subsequently suing the settling defendant). Mr. Yuhl's suggestion that settlement of Commelin's individual claims could remove "my firm from that entire [class action] playing field" constitutes an impermissible offer to agree not to sue.

1  freely to practice his profession must, in the public interest, give way in cases of
2  doubt.").

3          Counsel's improperly obtained knowledge of Epson's privileged and
4  confidential information will continue to infect every stage of this proceeding.
5  Nothing short of disqualification will remove the taint to these proceedings because
6  plaintiffs' counsel cannot "unlearn" what it has already improperly learned from
7  Commelin. *See, e.g., Gregori v. Bank of America*, 207 Cal. App. 3d 291, 309 (1st
8  Dist. 1989) ("[D]isqualification is proper where, as a result of a prior representation
9  or through improper means, there is a reasonable probability counsel has obtained
10 information the court believes would likely be used advantageously against an
11 adverse party during the course of the litigation.  Though such information cannot
12 be unlearned . . . disqualification still serves the useful purpose of eliminating from
13 the case the attorney who could most effectively exploit the unfair advantage.");
14 *Huston*, 179 F. Supp. 2d at 1178 (same).  Epson respectfully requests that this Court
15 protect Epson's privileged and confidential communications and uphold and protect
16 established ethical requirements from further disregard and abuse by disqualifying
17 plaintiffs' counsel immediately.

18                                    **Conclusion**
19          For the foregoing reasons, Epson respectfully requests that its motion be
20 granted in full.

21 DATED: April 13, 2010              Respectfully submitted,

22                                    QUINN EMANUEL URQUHART &
23                                    SULLIVAN, LLP

24

25                                    By   Shon Morgan   /vc
26                                         Shon Morgan
                                           Attorneys for Defendants Epson America,
27                                         Inc. and Epson Accessories, Inc.

28