1  QUINN EMANUEL URQUHART & SULLIVAN, LLP
    Shon Morgan (Bar No. 187736)
2    shonmorgan@quinnemanuel.com
    Ryan S. Goldstein (Bar No. 208444)
3    ryangoldstein@quinnemanuel.com
    Valerie Roddy (Bar No. 235163)
4    valerieroddy@quinnemanuel.com
    865 South Figueroa Street, 10th Floor
5  Los Angeles, California 90017-2543
    Telephone:  (213) 443-3000
6  Facsimile:   (213) 443-3100

7  Attorneys for Defendants Epson America,
    Inc. and Epson Accessories, Inc.

8

9              UNITED STATES DISTRICT COURT

10             CENTRAL DISTRICT OF CALIFORNIA

11

| | |
|---|---|
| 12  CHRISTOPHER O'SHEA, GISELE ROGERS and JEFF ADAMS, | CASE NO. CV 09-8063 PSG (CWx) |
| 13  individuals, on behalf of themselves and all others similarly situated, | |
| 14         Plaintiffs, | **DECLARATION OF DONNA D. MELBY IN SUPPORT OF** |
| 15       vs. | **DEFENDANTS EPSON AMERICA, INC.'S AND EPSON** |
| 16  EPSON AMERICA. INC., a California | **ACCESSORIES, INC.'S MOTION TO DISQUALIFY PLAINTIFFS'** |
| 17  corporation; EPSON ACCESSORIES, INC., a California corporation; and | **COUNSEL** |
| 18  DOES 1-100, inclusive, | |
| 19         Defendants. | |
| 20  | Judge:           Hon. Philip S. Gutierrez |
| 21  | Courtroom:    880, Roybal |
| 22  | Filing Date:        August 28, 2009 |
| 23  | Discovery Cutoff:  None set Pretrial Conference: None set |
| 24  | Trial Date:          None set |
| 25  | |
| 26  | |
| 27  | |
| 28  | |

## DECLARATION OF DONNA D. MELBY

I, Donna D. Melby, declare as follows:

1.    I am a member of the bar of the State of California and a partner in the law firm of Paul, Hastings, Janofsky & Walker LLP.  I have personal knowledge of the facts set forth in this declaration, and, if called as a witness, I would and could testify competently thereto.

2.    I am the attorney of record for Epson America, Inc. ("Epson") in *Commelin v. Epson America, Inc.*, Case No. BC 427254 in Los Angeles Superior Court.  I am familiar with the procedural history of the *Commelin* case.

3.    Fabrice Commelin is suing Epson for wrongful termination.  Eric Yuhl and William Stoner of Yuhl Stoner Carr LLP are counsel of record for Mr. Commelin in that action.

4.    Attached hereto as Exhibit **A** is a true and correct copy of Mr. Commelin's Second Amended Complaint for (1) Wrongful Termination (Labor Code Section 1102.5 Subd. (C)); (2) Wrongful Termination (Public Policy); [and] (3) Wrongful Termination (Retaliation), filed in *Commelin* on March 22, 2010.

5.    On November 19, 2009, Mr. Yuhl sent me a copy of the complaint he intended to file in the *Commelin* matter.  This complaint, in its unredacted form, contained allegations which I understood to be based on and reflecting Epson's attorney-client privileged, attorney work product and trade secret information.

6.    I took over representation of Epson in *Commelin* from Nancy Yaffe in the summer of 2009.  During the summer of 2009 communicated with Mr. Commelin's counsel.  Attached hereto as Exhibit **B** is a true and correct copy of a May 20, 2009 letter, redacted to remove non-pertinent material, from Eric Yuhl to Epson from my file in *Commelin* indicating that both Mr. Yuhl and Ms. Conway were representing Mr. Commelin.  Attached hereto as Exhibit **C** is a true and correct copy of a September 23, 2009 letter from Mr. Yuhl to me, which copies Ms. Conway, regarding Mr. Commelin's claims against Epson.

7.    I have repeatedly communicated with Yuhl Stoner and with Akin Gump about the continuing duty to protect Epson's privileged and confidential information from improper disclosure or misuse. I have also repeatedly demanded that Mr. Commelin and his counsel return any Epson property—including documents—that Mr. Commelin took from Epson. Attached hereto as Exhibit **D** are true and correct copies of five of my many communications with Mr. Commelin's counsel reminding them of their duties to protect Epson's privileged and confidential information and demanding the return of Epson's property.

8.    I sent a letter to Mr. Commelin's counsel reminding them of their duties not to disclose or misuse Epson's privileged or work product on August 21, 2009, just seven days before Mr. Commelin's counsel filed the *O'Shea* class action in the Los Angeles Superior Court. My August 21, 2009 letter followed up on and confirmed prior communication with Mr. Yuhl on the same subject.

9.    On or about February 8, 2010, Mr. Commelin produced 1,125 documents in response to Epson's document requests in *Commelin*. Included among the 1,125 page production was FC330-343, a privileged, work product, and trade secret document which bears the stamp "confidential," as well as two attorney client privileged memorandum from Alf Andersen, Epson's Assistant General Counsel. Following discovery of the privileged documents among the volume of documents produced, I again sent a letter requesting return of Epson's property.

10.    Yuhl Stoner refused to return Epson's property, but promised to keep the entire production as confidential. Attached hereto as Exhibit **E** is a February 17, 2010 letter from William Stoner to me.

/ / /

/ / /

/ / /

/ / /

/ / /

Case No. CV 09-8063 PSG (CWx)
DECLARATION OF DONNA D. MELBY IN SUPPORT OF MOTION TO DISQUALIFY

1    11.    Attached hereto as Exhibit **F** is a true and correct copy of Plaintiff's

2   Request for Production of Documents to Defendant Epson America, Inc., Set One,

3   dated December 23, 2009.

4         I declare under penalty of perjury under the laws of the United States of

5   America that the foregoing is true and correct.

6         Executed April 12, 2010, at Los Angeles, California.

7

8                                                                    _____
                                                                     Donna D. Melby
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

EXHIBIT    A

Eric F. Yuhl  SBN 102051
William E. Stoner  SBN 101418
George K. Rosenstock  SBN 117515
**YUHL STONER CARR LLP**
601 S. Figueroa, Suite 2340
Los Angeles, California 90017
Telephone: 213-687-2640
Facsimile: 213-687-2644
eyuhl@ysclawyers.com
wstoner@ysclawyers.com
grosenstock@ysclawyers.com

Attorneys for Plaintiff Fabrice Commelin

CONFORMED COPY
OF ORIGINAL FILED
Los Angeles Superior Court

MAR 2 2 2010

John A. Clarke, Executive Officer/Clerk
By _____, Deputy

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

## FOR THE COUNTY OF LOS ANGELES, CENTRAL DISTRICT

| | |
|---|---|
| FABRICE COMMELIN, an individual,<br><br>Plaintiff,<br><br>vs.<br><br>EPSON AMERICA, INC., a California Corporation, and Does 1 through 100, inclusive,<br><br>Defendants. | Case No. BC427254  D - 23<br><br>**SECOND AMENDED COMPLAINT**<br><br>1. **WRONGFUL TERMINATION (LABOR CODE SECTION 1102.5 SUBD. (C))**<br><br>2. **WRONGFUL TERMINATION (PUBLIC POLICY)**<br><br>3. **WRONGFUL TERMINATION (RETALIATION)**<br><br>**DEMAND FOR JURY TRIAL** |

SECOND AMENDED COMPLAINT FOR WRONGFUL TERMINATION

EXHIBIT ___4___
PAGE ___4___

## NATURE OF THE ACTION

1.      Plaintiff Fabrice Commelin ("Plaintiff") brings this wrongful termination Complaint against Epson America, Inc. ("Epson America" or "Defendant"), his former employer of twenty-five years, predicated upon his termination for refusing to participate in, and retaliation for reporting, unlawful, and wrongful activities.

2.      This lawsuit is about Plaintiff's attempt to warn Epson America about potential violations of United States and Latin American tax laws and to prevent Epson America from violating California consumer protection laws.

3.      Plaintiff reasonably believed that payments in the United States as part of a deferred compensation plan to foreign nationals working outside of the United States violated United States and Latin American tax laws.  Plaintiff reported this reasonable belief to Epson America management resulting in retaliation.

4.      Additionally, Epson America preyed on their captured consumers in California by misrepresenting product quality information about Epson America's printers and ink cartridges. Knowing Epson America marketed and sold their purported low cost inkjet printers with a requirement to use only Epson ink cartridges to maintain warranty, Plaintiff became aware that Epson America was misrepresenting and concealing grossly inefficient print yields generated by its ink cartridges, which were well below reasonable consumer expectations and the yields of other manufacturers' printers.  Plaintiff reported to management and refused to participate in such misrepresentations and concealment.

5.      Plaintiff's reporting of potential violation of tax laws and refusal to participate in, and thereafter reporting, unfair business practices, false advertising, fraud and related wrongful acts resulted in his termination, after devoting virtually his entire working life to Epson America.

## PARTIES

6.      Plaintiff is an individual who was at all times relevant herein a resident of the City of Rancho Palos Verdes, in the County of Los Angeles, in the State of California.

1

EXHIBIT ___ A
PAGE ___ 5

7.     Defendant Epson America, a subsidiary of Seiko Epson Company ("SEC"), a foreign company headquartered in Suwa, Japan. Epson America was and is a corporation duly organized under the laws of State of California, headquartered in the City of Long Beach and licensed to do and doing business in the City of Long Beach, County of Los Angeles, and the State of California.

8.     Epson America is engaged in the business of, *inter alia*, manufacturing, marketing, and selling inkjet printers and printer ink cartridges.

9.     Epson America has conducted and continues to conduct substantial and regular business both in the State of California and throughout the United States, Canada, and Latin America.

10.     Epson America is a global company with subsidiaries and affiliated companies in countries throughout the world, including China, Europe, and Singapore.

11.     Epson America's policies and operations are principally made and dictated by and/or through Epson America's corporate headquarters in the County of Los Angeles in the State of California.

12.     Epson America is a California company planning and disseminating marketing and advertising from California throughout the United States, Canada, and Latin America. Such advertising and marketing is planned in California with and through Epson America's California-based advertising agencies.

13.     Epson America regularly conducts its distribution and sales business within the County of Los Angeles, State of California.

14.     In the "Terms of Use" for its website, Epson America states that its website "is controlled and operated by Epson America from its offices within the State of California, United States of America." Epson America further states that the "Terms of Use" for its website "shall be governed by and construed in accordance with the laws of the State of California."

15.     Written agreements between Plaintiff and Epson America provide that they shall be governed by the laws of the State of California.

2

EXHIBIT ___ A
PAGE ___ 6

16.     Whenever this Complaint refers to any act or acts of Defendant, the references shall also be deemed to mean the directors, officers, employees, affiliates, or agents of the Defendants who authorized or ratified such act or acts while actively engaged in the management, direction, or control of the affairs of Defendant and by persons who are parents or alter egos of Defendant while acting within the scope of their agency, affiliation or employment, jointly or severally.

17.     The true names and capacities, whether individual, corporate, associate, or otherwise of DOES 1-100, inclusive ("DOES"), are unknown to Plaintiff, who therefore sues said DOES by such fictitious names. Plaintiff will seek leave of court to amend this Complaint to show the true names and capacities when the same have been ascertained.

18.     Each of the DOE Defendants is responsible in some manner for the conduct alleged herein and for the injuries suffered by Plaintiff. The DOE Defendants were the agents, servants and/or employees of the other defendants and in doing the things alleged here, and at all times, were acting within the scope of their authority as such agents, servants and employees, and with the permission and consent of the other defendants.

19.     At all relevant times, Defendant and DOES, and each of them, were members of, and engaged in, a joint venture, partnership, and common enterprise, and acting within the course and scope of, and in pursuance of, said joint venture, partnership, and common enterprise.

20.     At all relevant times, the acts and omissions of various Defendant and DOES, and each of them, concurred and contributed to the various acts and omission of the Defendant and other DOES in proximately causing the injuries and damages alleged here.

21.     At all relevant times, Defendant and DOES, and each of them, ratified each and every act or omission complained of here. At all relevant times, Defendant and DOES, and each of them, aided abetted, and consented to the acts and omissions of each and all of the other DOES in proximately causing the injuries and damages alleged here.

3

SECOND AMENDED COMPLAINT FOR WRONGFUL TERMINATION

EXHIBIT ___A___

PAGE ___7___

## PROCEDURAL PRE-REQUISITE

22.     On August 24, 2009, Plaintiff filed an administrative complaint with the California Department of Fair Employment and Housing ("DFEH") (Exhibit 1) against Epson America.  Thereafter Plaintiff received a right to sue letter dated September 17, 2009 from the DFEH (Exhibit 2).

## FACTUAL ALLEGATIONS

23.     Plaintiff began his employment with Epson America twenty five years ago in 1984 as Manager of Financial Planning.  Plaintiff held that post for approximately three years.

24.     In 1987 Plaintiff was promoted to Director of Finances and Taxes.  Plaintiff held that post for approximately four years.

25.     In 1991 Plaintiff was promoted, to General Manager of Latin America, a position he held for 18 months.

26.     By mid-1992 Plaintiff was again promoted.  In that year Plaintiff was promoted to Vice President of Latin America, a position Plaintiff held for 17 years until his termination from Epson America on February 23, 2009.

27.     Plaintiff's responsibilities for Epson Latin America included the countries of Argentina, Bolivia, Brazil, Chile, Colombia, Costa Rica, Ecuador, Nicaragua, Panama, Paraguay, Peru, Uruguay, Mexico, and Venezuela.

28.     As Vice President Plaintiff's responsibilities included being in charge of all of Latin America operations.  Plaintiff's job responsibilities as of his termination for each of these countries in the Latin America division and for Latin America as a whole included strategic and financial planning, organizational developments, sales, marketing, customer/channel relations, market research, operations, subsidiary business management, performance analysis, and product management.

29.     Upon assuming responsibilities as General Manager for overseeing and managing the Latin America division of Epson America in 1991, Latin America gross revenues were $50

4

million. As a direct result of Plaintiff's continuous stewardship over the next 18 years, Latin America division revenues grew 1,100 %, to $600 million by 2008, twice the percentage increase of revenue as compared to markets in the United States and Canada. In essence, Latin America's gross revenue grew at eight times the rate of the United States and Canada during Plaintiff's Vice-Presidency in charge of Latin America.

30.    During his twenty five years of employment for Epson America, Plaintiff worked for and under the tutelage of several executives including Per Tonnesen (Director of Financial Planning), Alan Pound (Vice President of Finance), Eugene Kunde (President), and Norio Niwa (Chief Executive Officer). Without exception, Plaintiff received accolades and excellent reviews ("exceeds" ratings) from these superiors.

31.    In stark contrast, when Plaintiff was a subordinate to John Lang ("Lang" or "CEO" hereinafter), who ultimately orchestrated Plaintiff's February 23, 2009 termination as alleged in further detail below, Lang's ratings appear to relate to an entirely different executive than rated by the Director of Financial Planning Tonnesen, Vice President of Finance Pound, President Kunde and Chief Executive Officer Niwa.

32.    Specifically, Lang was Plaintiff's immediate superior for approximately two years when Plaintiff was the Director of Finance and Taxes from 1987 to approximately 1991. During that time, without justification and in bad faith, Lang did not rate Plaintiff as favorably as Plaintiff had been rated by others and in reality deserved and would enjoy again under future superiors.

33.    Confirming Plaintiff's deserving of the high ratings he received from other executives and superiors Epson America promoted Plaintiff - away from Lang - to the position of General Manager for Latin America, a comparatively nascent market in 1991 that included various Spanish and Portuguese speaking countries with multifarious business cultures. This promotion resulted in a substantial increase in duties and responsibilities, and commensurate compensation. Plaintiff was to hold this position for nearly two decades of commercial success that saw Latin America significantly outstrip the percentage revenue increases in North America.

5

EXHIBIT ___A___

PAGE ___9___

34.     Illustrative of Lang's "bad faith," arbitrary and capricious attitude toward Plaintiff, Lang cavalierly admitted to Plaintiff that he would not rate Plaintiff appropriately – despite outstanding ratings in many of the assessment categories – because Lang wanted to "fire" Plaintiff any time he "felt like it." Lang therefore admitted providing "bad faith" and inaccurate reviews of Plaintiff so that a termination of Plaintiff for any political, fabricated, or inaccurate reason could be justified after-the-fact by intentionally inaccurate historical subpar ratings of Plaintiff.

35.     It was manifest to Plaintiff as early as 1990 that Lang was actively threatened by Plaintiff's competence, and, further, disliked Plaintiff for reasons unrelated to job performance, a dislike that festered until Lang finally assumed the position of CEO of Epson America and in a position to orchestrate Plaintiff's wrongful termination as further alleged herein.

## EPSON'S WRONGFUL ACTS

36.     In approximately 2002, Epson America per Lang implemented a deferred compensation plan ("Plan") for certain Latin America executives, including Plaintiff and his direct reports Pedro Carmona and Marcelo San Pedro.

37.     When the first deferred payment under the Plan came due in April 2007, Plaintiff cautioned Lang against paying Carmona and San Pedro outside their countries of residence as Plaintiff reasonably suspected and concluded that this would violate the tax laws of the countries in which Carmona and San Pedro resided and performed their employment responsibilities for Epson America and its subsidiaries and affiliates. Plaintiff also reasonably suspected and concluded that such practice would constitute aiding and abetting violation of foreign and domestic tax laws.

38.     Plaintiff also cautioned Lang that by including Carmona and San Pedro in the Plan it would cost Epson America higher potential severance payments in the future.

39.     CEO Lang resented Plaintiff's addressing these potentially illegal and counter-productive practices in which Lang was involved.

6

EXHIBIT    A
PAGE    10

40.     Plaintiff is further informed and believes and thereon alleges that Lang had sought out and established personal friendships with both Carmona and San Pedro, in part to undermine Plaintiff's authority and relationship with these immediate reports.

41.     After Plaintiff reiterated to CEO Lang that Plaintiff had reasonably concluded that by failing to pay Carmona and San Pedro their Plan disbursements in their countries of residence, Epson America was potentially aiding and abetting in the illegal avoidance of foreign income taxes, Lang informed Plaintiff that this was "not his business, that he (Lang) had checked with the CFO and outside consultants, and that this was perfectly acceptable". CEO Lang then admonished Plaintiff that Plaintiff was not to "challenge" CEO Lang on this issue any further.

42.     In April, 2008, when the second Plan disbursement came due, Epson America paid Carmona and San Pedro outside their residence countries of Mexico and Argentina, respectively.  Plaintiff again informed CEO Lang that Plaintiff was very concerned about the legality of these out-of-country payments under Mexican and Argentina tax laws.

43.     Plaintiff informed CEO Lang that he had reasonably concluded that there was a substantial probability that payment of Plan disbursements in the manner described was unlawfully engaging in foreign income tax evasion.

44.     Plaintiff further informed CEO Lang that he was extremely concerned that he not be held indirectly responsible for this course of action because Carmona and San Pedro were his direct reports in the Latin America division.  CEO Lang was outraged that, despite the prior warning, Plaintiff had "the nerve" to raise this issue again, telling Plaintiff "I have a letter from the auditors saying it is perfectly fine," all the while waiving a purported letter to that effect in Plaintiff's face.  CEO Lang told Plaintiff point blank "do not raise this issue again" adding "you cannot be trusted, Fabrice".

45.     In February of 2009 days before Plaintiff's termination, Epson America Chief Financial Officer Alan Pound informed Plaintiff that Epson America could no longer pay the Plan compensation in the U.S. to Carmona and San Pedro as it had before.

7

SECOND AMENDED COMPLAINT FOR WRONGFUL TERMINATION

EXHIBIT ___ 4

PAGE ___ 11

46.     Plaintiff reasonably concluded and is informed and believes and thereon alleges that Lang's decision *not* to pay Carmona and San Pedro "in country" constituted a violation of the tax laws of Mexico and Argentina, and further that Epson America was in violation of United States Tax Laws and Internal Revenue Service Regulations by aiding and abetting a foreign tax evasion scheme.  Thus, by the time in late 2008 and early 2009 Plaintiff again confronted CEO Lang regarding potentially illegal conduct and wrongdoing by Epson America, this time relative to the serious ink issues described below, CEO Lang had had enough of what he considered to be Plaintiff's refusal to ignore and participate in illegal actions and thereby be a 'team player', hence the unequivocal statement by CEO Lang on February 23, 2009 when summarily terminating Plaintiff that he "could not be trusted", i.e., once a whistleblower, always a whistleblower, not something CEO Lang would tolerate at Epson America.

47.     In approximately 2007 and 2008, Epson had a roadmap in place and was rolling out new printers for sale in its various markets, including the Epson Shirakami (B500) inkjet printer ("Shirakami"), Epson Artisan models, including the Artison 800 inkjet printer, Epson NX 200 inkjet printer, and Epson Workforce models (collectively, "Defective Printers")

48.     Testing conducted by Epson America in Argentina revealed serious performance deficiencies that were not disclosed to consumers.  These performance deficits included ink wastage ("ink inefficiency") and black ink page yields ("yield gap") (collectively "ink inefficiency" and "yield gap" shall be referred to as "Performance Deficits").

49.     With full knowledge of the Performance Deficits in the Defective Printers, Lang authorized and engineered an aggressive pre-launch marketing plan and marketing for North America, and ultimately marketed the Defective Printers in California and the United States, Canada and Latin America, concealing and omitting material information regarding the Defective Printers from the consumer-public, including, but not limited to, the fact that (1) actual ink efficiency for use by a consumer was far worse than claimed by Defendant; (2) ink efficiency of Defendant's inkjet printers was far below industry norms and/or standards; (3) ink yield statistics claimed by Defendant were not based on typical usage and were designed to conceal

8

SECOND AMENDED COMPLAINT FOR WRONGFUL TERMINATION

EXHIBIT ___A___

PAGE ___12___

the amount of ink wasted during typical usage; (4) Defendant's inkjet printers were defective; (5) ink waste by Defendant's inkjet printers was far greater than industry norms and/or standards; (6) Defendant was selling inkjet printers at or below cost to induce sales of the defective printers so that Defendant could profit from its printers' defects and excessive ink waste; (7) Defendant's color inkjet printers were designed to be received by the consumer in a default mode in which the greatest amount of ink waste took place; and (8) there was a method to reduce, but not eliminate, some of the ink waste by changing modes on Defendant's color inkjet printers while printing in black-and-white, which Defendant concealed and did not reveal to consumers.

50.     A extended group of Epson America and SEC executives were in possession of the test data which revealed the Performance Deficits. Certain executives were instructed to "manage" this information given its potential ramifications for legal liability of Epson America in the United States, including California, and Epson America's Latin America subsidiaries and potential disastrous impact upon revenue if disclosed to the public and/or its competitors. Those Epson America executives included, bur were not limited to, Alf Andersen (Director/Internal Counsel), Liz Leung (Director of Consumables), Agustin Chacon (Director of Marketing, Latin America), Keith Kratzberg (Vice President, Marketing), Marcelo San Pedro (Director of Southern Region), and John Lang, CEO of Epson America. These executives controlled the launching of the Defective Printers in North America, including the State of California.

51.     CEO Lang wanted Plaintiff to sell the Defective Printers in Latin America. As Vice President of Latin America, Plaintiff wanted confidence he had been fully informed about the Shirakami test results and whether there were similar issues in the other new lines being launched.

52.     Upon being informed of the "Argentina" test results, Plaintiff made a series of inquiries, pressing Epson America's parent, SEC, for explanations and answers for the reasons for the Argentina test results relating to the Shirakami, specifically, whether the other new lines utilizing the same new print-head technology were similarly defective.

9

EXHIBIT ___ A

PAGE ___ 13

53.     Simultaneously with Plaintiff's inquiries concerning the scope of the Performance Deficits and which product lines were defective, CEO Lang continually pressured Plaintiff to move forward with the pre- launch marketing of the Shirakami in the Latin America market.  As noted, CEO Lang, who had authority over the United States and Canadian markets, had already aggressively pushed ahead with the pre-launch marketing of the Shirakami in the United States, including California.

54.     Plaintiff reasonably and in good faith suspected and concluded that the pre-launch marketing plan and strategy for the Defective Printers authorized and approved by Lang for North America, including California, was materially misleading and that the same or similar pre-launch marketing plan and marketing plan could not be utilized without risking detrimental results in the United States and, in particular, California, and alienating Epson America's Latina America customer base.

55.     Plaintiff's concern was heightened by his knowledge that the business practices in the Latin America would underscore and exacerbate the ink inefficiency and yield gap issues potentially resulting in a commercial disaster for Epson America.

56.     Plaintiff reasonably and in good faith suspected and ultimately became convinced that the Epson America pre-launch marketing of the Shirakami in North America, including California, as authorized by Lang could expose the Epson America to widespread consumer complaints of misrepresentation, fraud, and other wrongdoing in connection printer product performance and characteristics.  Plaintiff further reasonably and in good faith suspected and ultimately concluded that marketing the Shirakami as authorized by Lang in North America, including California, would constitute a violation of (a) Unfair Business Practices, California Business & Professions Code Section 17200, *et. seq.*; (b) False Advertising, California Business & Professions Code Section 17500, et. seq.; and the (c) Consumer Legal Remedies Act, California Civil Code Section 1750, *et. seq.* as well as fraud and breach of implied warranties.

57.     Plaintiff's concern was further heightened by the knowledge that the Shirakami had been marketed and sold in Europe for approximately one year when Plaintiff was requested

EXHIBIT ___4___
PAGE ___14___

to manage the sale of the Shirakami in Latin America in comportment with the pre-launch
marketing in the United States, including California.

58.    Plaintiff informed CEO Lang that he would not market or sell the Shirakami in
Latin America or acquiesce and participate in the marketing or selling of the Shirakami in North
America, including California.  CEO Lang was visibly angered by Plaintiff's decision and the
basis for that decision.  Lang informed Plaintiff that Plaintiff was to "keep quiet," and not create
"any market ripple effects" in North America, including California, and globally.  Lang was well
aware that public disclosure of the Performance Deficits would adversely impact Epson
America's sales in North America, including California, Latin America, as well as Europe.

59.    Despite the pre-launch of the Defective Printers already underway in North
America, as part of Plaintiff's refusal to participate in the Illegal Activity Plaintiff halted the pre-
launch of Defective Printers in Latin America.  However, CEO Lang decided to move forward
with aggressively marketing and selling the Shirakami in the United States over Plaintiff's
objections.

60.    In September of 2008, Plaintiff spoke face to face with CEO Lang about the fact
Epson America had decided to move forward with the marketing and sales of the Defective
Printers in the United States, including California.  Although Lang's geographical area of
responsibility, Plaintiff nonetheless expressed his deep concern to CEO Lang that Epson
America was at serious risk for consumer backlash due to the known but undisclosed defects in
the Defective Printers.  Plaintiff inquired if CEO Lang was similarly concerned.  CEO Lang once
again become visibly red faced and agitated with Plaintiff, telling him to "stop asking questions
and be a team player" *and that he (Lang) had decided to market the new lines as color printers
since there was less ink waste and yield gap for the color ink.*  Plaintiff reasonably and in good
faith suspected and concluded this constituted an attempt by Epson America to limit its liability
for concealing the Performance Deficits, secretly limit the loss experienced by the consumer due
to the Performance Deficits, and indirectly acknowledged the materiality of the Performance
Deficits.

11

SECOND AMENDED COMPLAINT FOR WRONGFUL TERMINATION

EXHIBIT    4
PAGE    15

61.     In late January of 2009, at least two video-conferences took place between Epson
America and its parent SEC in which the Epson America-SEC strategy for addressing the
Performance Deficits in the Defective Printers was addressed.  ("Meetings")  During the
Meetings, SEC disclosed that most of the new lines of consumer and business printers that had
been globally launched in August and September 2008 were defective because of Performance
Deficits.  This included the launch of the new lines of consumer and business printers in the
United States, including California.  It was concluded that because of the technology utilized,
and the time involved in re- engineering the printers, however, that there would be no
modifications in the existing print-head technology, and thus for the next fiscal year the
Defective Printers would continue to be sold worldwide, including in California, with the
Performance Deficits without informing the customer base in any geographic market.

62.     During the second video-conference Plaintiff again expressed his deep concern
that marketing the Defective Printers without modifying the representations to the customer base
revealing the Performance Deficits would be detrimental.

63.     Plaintiff is informed and believes, and thereon alleges, that his deep concerns and
comments made at the second video-conference as described above were communicated to CEO
Lang.

64.     After the second videoconference, Plaintiff inquired of CEO Lang if he was aware
of the scope of the Performance Deficits as it was now clear the many product lines marketed
and sold globally, including in the United States and California, were impacted.  CEO Lang
again became very agitated upon Plaintiff's report of his concerns, and informed Plaintiff that he
would not discuss the issue with him and that Plaintiff was to "stop asking questions and become
a 'team player' or he (Plaintiff) simply could not be trusted."  This exchange occurred just prior
to CEO Lang performing an annual review of Plaintiff in mid-February of 2009 at which time
CEO Lang verbally abused Plaintiff in the review for not being trustworthy, a team player, along
with a written litany of perceived performance deficiencies directed to Plaintiff, all of which

12

were patently false and invented to facilitate and effectuate the termination of Plaintiff for declining to participate in defrauding consumers.

65.    On February 23, 2009 CEO Lang summoned Plaintiff to his office and summarily informed Plaintiff that he was being terminated because he "could not be trusted."  Plaintiff left Epson America that same day, never returned to work, though for payroll purposes his last date of employment was deemed by Human Resources to be March 6, 2009.

### FIRST CAUSE OF ACTION

#### WRONGFUL TERMINATION IN VIOLATION OF LABOR CODE SECTION 1102.5 SUBD. (C) (AGAINST DEFENDANT AND DOES 1-100)

66.    Plaintiff incorporates by reference each and every allegation contained in paragraphs 1 through 65 above as though fully set forth herein.

67.    An Employer-Employee relationship existed between Plaintiff and Epson America from 1984 to the date of his termination on February 23, 2009.

68.    Plaintiff was terminated from his employment with Epson America on or about February 23, 2009 for reporting what he reasonably concluded were illegal activities such as violations of tax laws of the United States and Latin American countries and California's consumer protection laws, and refusing to participate in such illegal activity.

69.    Plaintiff's discharge by Epson America violated express statutory objectives and undermined firmly established principles of public policy as embodied by the tax laws of the United States and Latin American countries as well as California consumer protection laws designed to protect California consumers from false and misleading advertising, fraud, and other illegal business practices.  Such California consumer protection laws include:  (a) Unfair Business Practices, California Business & Professions Code Section 17200, *et. seq.*; (b) False Advertising, California Business & Professions Code Section 17500, *et. seq.*; and (c) Consumer Legal Remedies Act, California Civil Code Section 1750, *et. seq.*  These statutory causes of action [(a) - (c)] form the basis of a nationwide class action presently pending in the United States District Court for the Central District of California.

13

SECOND AMENDED COMPLAINT FOR WRONGFUL TERMINATION

EXHIBIT _____ A

PAGE _____ 17

70.     Termination of Plaintiff's employment was a violation of California Labor Code Section 1102.5, subdivision (c), which provides that "an employer may not retaliate against an employee for refusing to participate in an activity that would result in a violation of state of federal statute or a violation or noncompliance with a state or federal rule or regulation" as the termination was caused by - and there exists a nexus between - Plaintiff's termination and Plaintiff's being requested to participate in the illegal activity, Plaintiff's refusal to do so, and Plaintiff's reporting his reasonable good faith suspicions to CEO Lang about, *inter alia*, violation of Unites States and Latin American tax laws, Performance Deficits and Defective Printers and the continued marketing/selling of the Defective Printers to consumers in the U.S. and globally. Plaintiff was and is entitled to protection under California law from being wrongfully terminated due to his refusal to participate in wrongful and illegal activities by his employer Epson America and reporting to management what he reasonably believed to be illegal activities.

71.     Plaintiff was requested by CEO Lang to engage in illegal activity, including, without limitation, false and misleading advertising and knowingly selling printers that did not perform as represented to end users and consumers. Just weeks later, on February 23, 2009, CEO Lang informed Plaintiff he was fired effectively immediately in that he "could not be trusted." Plaintiff alleges that such termination was wrongful, without good cause, was based on pre-text, and violated California Labor Code Section 1102.5, subd. (c).

72.     Plaintiff further alleges that if Plaintiff had participated in the marketing of Defective Printers in the United States and sold the Defective Printers in Latin America pursuant to the demand and request of Lang, such obedience would have been unlawful and would have imposed new and unreasonable burdens upon Plaintiff, including exposing Plaintiff to liability for wrongful conduct. Plaintiff therefore alleges that he was within his rights pursuant to Labor Code Section 2856 ["An employee shall substantially comply with all the directions of his employer concerning the service on which he is engaged, except where such obedience is impossible or unlawful, or would impose new and unreasonable burdens upon the employee."] in

SECOND AMENDED COMPLAINT FOR WRONGFUL TERMINATION

EXHIBIT A PAGE 18

declining to participate in illegal activity by participation in the marketing and selling of the

Shirakami and Defective Printers in the United States, including California, and Latin America.

73.    The termination of Plaintiff was a legal cause of his damages; in particular,

Plaintiff has suffered, and will continue to suffer in the future, damages in the form of economic

losses stemming from lost income and wages, lost benefits, options, and stock shares, among

other losses, in an amount according to proof at trial.

74.    As a further legal result of being wrongfully terminated by the Defendants,

Plaintiff has suffered, and will continue to suffer, damages in the form of non-economic harm for

emotional distress, anxiety, and mental anguish in an amount according to proof at trial.

75.    Plaintiff further alleges that in doing the acts alleged hereinabove Defendant was

guilty of oppression, fraud, and malice as those terms are defined in California Civil Code

Section 3294(a)-(d).

76.    Plaintiff further alleges that the Defendant ratified the conduct for which

exemplary damages are sought and that the ratification and acts of oppression, fraud, and malice

were on the part of an officer, CEO and director and managing agent, as those terms are used in

California Civil Code Section 3294(b), and that ratification of and acts of oppression, fraud and

malice were on the part of officer-director John Lang.

## SECOND CAUSE OF ACTION

### WRONGFUL TERMINATION (*TAMENY* CLAIM: PUBLIC POLICY)
### (AGAINST DEFENDANT AND DOES 1-100)

77.    Plaintiff incorporates by reference each and every allegation contained in

paragraphs 1 through 76 above as though fully set forth herein.

78.    An Employer-Employee relationship existed between Plaintiff and Epson

America from 1984 to the date of his termination on February 23, 2009.

79.    Plaintiff was terminated from his employment with Epson America on or about

February 23, 2009 for reporting what he reasonably concluded were illegal activities such as

15

SECOND AMENDED COMPLAINT FOR WRONGFUL TERMINATION EXHIBIT ___ A

PAGE ___ 19

1    violations of tax laws of the United States and Latin American countries and California's

2    consumer protection laws, and refusing to participate in such illegal activity.

3          80.     Plaintiff's discharge by Epson America violated an express statutory objective

4    and undermined firmly established principles of public policy as embodied by the tax laws of the

5    United States and Latin American countries as well as California consumer protection laws

6    designed to protect California consumers from false and misleading advertising, fraud, and other

7    illegal business practices. These California consumer protection laws include: (a) Unfair

8    Business Practices, California Business & Professions Code Section 17200, *et. seq.*; (b) False

9    Advertising, California Business & Professions Code Section 17500, *et. seq.*; and (c) Consumer

10    Legal Remedies Act, California Civil Code Section 1750, *et. seq.* These statutory causes of

11    action [(a) – (c)] form the basis of a nationwide class action presently pending in the United

12    States District Court for the Central District of California.

13          81.     Termination of Plaintiff's employment was a violation of public policy as the

14    termination was caused by and there exists a nexus between Plaintiff's termination and

15    Plaintiff's being requested to participate in the illegal activity, his refusal to do so, and his

16    reporting his reasonable good faith suspicions of illegal activity to CEO Lang about, *inter alia*,

17    Performance Deficits and Defective Printers and the continued marketing/selling of the

18    Defective Printers to consumers in the U.S. and globally. Plaintiff was and is entitled to

19    protection under California law from being wrongfully terminated due to his refusal to

20    participate in wrongful activities by his employer Epson America and reporting to management

21    what he reasonably believed to be illegal activities.

22

23          82.     Plaintiff was requested by CEO Lang that Epson America to engage in false and

24    misleading advertising and knowingly sell printers that did not perform as represented to end

25    users and consumers. Just weeks later, on February 23, 2009, CEO Lang informed Plaintiff he

26    was fired effectively immediately in that he "could not be trusted." Plaintiff alleges that such

27    termination was wrongful, without good cause, was based on pre-text, and violated fundamental

28    public policies of the State of California.

SECOND AMENDED COMPLAINT FOR WRONGFUL TERMINATION

83.     Plaintiff further alleges that if Plaintiff had participated in the marketing of Defective Printers in the United States and sold the Defective Printers in Latin America pursuant to the demand and request of Lang, such obedience would have been unlawful and would have imposed new and unreasonable burdens upon Plaintiff, including exposing Plaintiff to liability for wrongful conduct.  Plaintiff therefore alleges that he was within his rights pursuant to Labor Code Section 2856 ["An employee shall substantially comply with all the directions of his employer concerning the service on which he is engaged, except where such obedience is impossible or unlawful, or would impose new and unreasonable burdens upon the employee."] in declining to participate in illegal activity by participation in the marketing and selling of the Shirakami and Defective Printers in the United States, including California, and Latin America.

84.     The termination of Plaintiff was a legal cause of his damages; in particular, Plaintiff has suffered, and will continue to suffer in the future, damages in the form of economic losses stemming from lost income and wages, lost benefits, options, and stock shares, among other losses, in an amount according to proof at trial.

85.     As a further legal result of being wrongfully terminated by the Defendants, Plaintiff has suffered, and will continue to suffer, damages in the form of non-economic harm for emotional distress, anxiety, and mental anguish in an amount according to proof at trial.

86.     Plaintiff further alleges that in doing the acts alleged hereinabove Defendant was guilty of oppression, fraud, and malice as those terms are defined in California Civil Code Section 3294(a)-(d).

87.     Plaintiff further alleges that the Defendant ratified the conduct for which exemplary damages are sought and that the ratification and acts of oppression, fraud, and malice were on the part of an officer, CEO and director and managing agent, as those terms are used in California Civil Code Section 3294(b), and that ratification of and acts of oppression, fraud and malice were on the part of officer-director John Lang.

SECOND AMENDED COMPLAINT FOR WRONGFUL TERMINATION

EXHIBIT ___4___
PAGE ___21___

### THIRD CAUSE OF ACTION

#### WRONGFUL TERMINATION (TAMENY CLAIM: RETALIATION)
#### (AGAINST DEFENDANT AND DOES 1-100)

88.     Plaintiff incorporates by reference each and every allegation contained in paragraphs 1 through 87 as though fully set forth.

89.     An Employer-Employee relationship existed between Plaintiff and Epson America from 1984 to the date of his termination on February 23, 2009.

90.     Plaintiff was terminated from his employment with Epson America on or about February 23, 2009 in retaliation for Plaintiff's reporting his reasonable and good faith suspicion of express statutory violations being committed by Epson America, its officers, directors and managing agents including violation of the tax laws of the United States and Latin American countries and California's consumer protection laws. The reports of Plaintiff's reasonable and good faith suspicion of express statutory violations being committed were made to Epson America officer and director John Lang. Plaintiff is protected against retaliation by an employer against an employee not only for refusing *to participate* in wrongful activities or for refusing to violate state or federal statutes as alleged in Plaintiff's First and Second Causes of Action, but also for reporting such activities to Epson America management. As alleged in paragraphs 1-87 above, Plaintiff engaged in protected activities by reporting his reasonable and good faith suspicion of illegal activity and was retaliated against and wrongfully terminated as a result of such protected activities.

91.     Plaintiff's discharge by Epson America clearly violated an express statutory objective and undermined a firmly established principle of public policy as embodied by the tax laws of the United States and Latin American countries and California consumer protection laws all designed to protect California consumers from false and misleading advertising, fraud, and other illegal business practices. These California consumer protection laws include: **(a)** Unfair Business Practices, California Business & Professions Code Section 17200, *and et. seq.*; **(b)** False Advertising, California Business & Professions Code Section 17500, *et. seq.*; **(c)** Consumer

18

EXHIBIT _____A_____

PAGE _____22_____

Legal Remedies Act, California Civil Code Section 1750, *et. seq.*; as well as **(d)** Fraud; and **(f)** Breach of Implied Warranty. These statutory and common law causes of action form the basis of a nationwide class action presently pending in the United States District Court for the Central District of California.

92.     Termination of Plaintiff's employment for reporting his reasonable good faith suspicion of violations of United States and Latin American tax laws and California consumer protection statutes was a violation of public policy as Plaintiff's termination was in direct retaliation for Plaintiff's reporting his reasonable and good faith suspicions of illegal activity to CEO Lang about, *inter alia*, United States and Latin America tax laws, Performance Deficits and Defective Printers and the continued marketing/selling of the Defective Printers to consumers in the U.S. and globally combined with Plaintiff's refusal to market the Shirakami and Defective Printers in Latin America; Plaintiff was and is entitled to protection under California law from being wrongfully terminated due to his reporting wrongful activities by his employer Epson America to CEO and director, John Lang.

93.     Specifically, Plaintiff reported to CEO Lang his reasonable and good faith suspicions and conclusions that Epson America was engaged in false and misleading advertising and knowingly selling printers that did not perform as represented to end users and consumers. Just weeks later, on February 23, 2009, CEO Lang informed Plaintiff he was fired effectively immediately in that he "could not be trusted." Plaintiff alleges that such termination was retaliatory, wrongful, without good cause, was based on pre-text, and violated fundamental public policies of the State of California as embodied in United States and Latin American tax laws, and California consumer protection statutes, to wit: (a) Unfair Business Practices, California Business & Professions Code Section 17200, *et. seq.*; (b) False Advertising, California Business & Professions Code Section 17500, *et. seq.*; and (c) Consumer Legal Remedies Act, California Civil Code Section 1750, *et. seq.*

94.     Plaintiff further alleges that if Plaintiff had participated in the marketing of Defective Printers in the United States and sold the Defective Printers in Latin America pursuant

19

EXHIBIT _____ A

PAGE _____ 23

to the demand and request of Lang, instead of reporting to Lang his reasonable and good faith suspicion that such activity would be unlawful, such obedience would in fact have been unlawful and would have imposed new and unreasonable burdens upon Plaintiff, including exposing Plaintiff to liability for wrongful conduct.  Plaintiff therefore alleges that he was within his rights pursuant to Labor Code Section 2856 ["An employee shall substantially comply with all the directions of his employer concerning the service on which he is engaged, except where such obedience is impossible or unlawful, or would impose new and unreasonable burdens upon the employee."] in declining to participate in Illegal Activity by participation in the marketing and selling of the Shirakami and Defective Printers in the United States, including California, and Latin America.

95.     The retaliatory termination of Plaintiff was a legal cause of his damages; in particular, Plaintiff has suffered, and will continue to suffer in the future, damages in the form of economic losses stemming from lost income and wages, lost benefits, options, and stock shares, among other losses, in an amount according to proof at trial.

96.     As a further legal result of being wrongfully retaliatorily terminated by the Defendant, Plaintiff has suffered, and will continue to suffer, damages in the form of non-economic harm for emotional distress, anxiety, and mental anguish in an amount according to proof at trial.

97.     Plaintiff further alleges that in doing the acts alleged hereinabove Defendant was guilty of oppression, fraud, and malice as those terms are defined in California Civil Code Section 3294(a)-(d).

98.     Plaintiff further alleges that the Defendant ratified the conduct for which exemplary damages are sought and that the ratification and acts of oppression, fraud, and malice were on the part of an officer, CEO and director and managing agent, as those terms are used in California Civil Code Section 3294(b), and that ratification of and acts of oppression, fraud and malice were on the part of officer-director John Lang.

20

EXHIBIT _____ A

PAGE _____ 24

**PRAYER**

WHEREFORE, Plaintiff prays for the following:

1.      Economic damages according to proof;

2.      Non-economic damages according to proof;

3.      Punitive and exemplary damages according to proof;

4.      Attorney's fees as provided by law;

5.      Pre-judgment interest;

6.      Post-judgment interest; and

7.      For such other further relief as the Court may deem just and proper.

Date:   March 19, 2010              **YUHL STONER CARR LLP**


                                    _____
                                    William E. Stoner
                                    Attorneys for Plaintiff


**DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a trial by jury of this matter.

Date:   March 19, 2010              **YUHL STONER CARR LLP**


                                    _____
                                    William E. Stoner
                                    Attorneys for Plaintiff


21

SECOND AMENDED COMPLAINT FOR WRONGFUL TERMINATION

EXHIBIT  A
PAGE  25

# PROOF OF SERVICE
## STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

I, Elizabeth Dempsey, am employed in the aforesaid County, State of California. I am over the age of 18 years and not a party to the within action. My business address is 601 S. Figueroa St., Suite 2340, Los Angeles, California 90017.

On March 19, 2010. I served the foregoing **SECOND AMENDED COMPLAINT** on the interested parties in this action as follows: **SEE ATTACHED SERVICE LIST**

☐ **(BY PERSONAL SERVICE) [C.C.P. § 1011]** Delivery of such envelope to the party(ies) listed on the attached service list was accomplished by _____ to the receptionist or person in charge thereof between the hours of 9:00 a.m. and 5:00 p.m.

☒ **(BY MAIL) [C.C.P. § 1013(a)(3)]** I placed such envelope for collection, deposit, and mailing with the United States Postal Service following ordinary business practices at my place of business. I am readily familiar with the business practice of my place of business for collection and processing of correspondence for mailing with the United States Postal Service. Correspondence so collected and processed is deposited with the United States Postal Service that same day in the ordinary course of business. I am aware that, on motion of party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing an affidavit.

☐ **(BY FACSIMILE) [C.C.P. § 1013(e)(f)]** I caused a true copy of the document(s) to be transmitted via facsimile to a facsimile machine maintained by the person on whom the document(s) is served. Facsimile service has been agreed upon by the parties. I am aware that the service is complete at the time of transmission, but any period of notice shall be extended after service by facsimile transmission by two <u>court</u> days

☐ **(BY OVERNIGHT DELIVERY) [C.C.P. § 1013(c)]** I enclosed the documents in an envelope or package provided by an overnight delivery carrier and addressed to the persons at the addresses listed on the attached service list. I placed the envelope or package for collection and overnight delivery at an office or a regularly utilized drop box of the overnight delivery carrier.

☐ **(BY ELECTRONIC SERVICE):** Based on a court order or an agreement of the parties to accept service by electronic transmission, I caused the documents to be sent to the persons at the electronic notification addresses listed in the attached service list. I did not receive, within a reasonable time after the transmission, any electronic message, or other indication that the transmission was unsuccessful.

☐ **(STATE)** I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

☐ **(FEDERAL)** I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

Executed on March 19, 2010 at Los Angeles, California.

_____
Elizabeth Dempsey

EXHIBIT _A_
PAGE _26_

SERVICE LIST

1

2   Donna Melby
Paul, Hastings, Janofsky & Walker LLP
3   515 S. Flower St., 25th Flr.
Los Angeles, CA 90071
4   **Attorneys for Defendant
Epson America Inc.**
5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

EXHIBIT ___4___
PAGE ___27___

# EXHIBIT 1

EXHIBIT ___4___
PAGE ___28___

310-827-4200      Yuhl Atkinson Law                          12:30:50 p.m.    08-19-2009        3/4
  19-08-09;19:01  ;                                          ;0442376111            #  3/  4

# * * * EMPLOYMENT * * *

**COMPLAINT OF DISCRIMINATION UNDER THE PROVISIONS OF THE CALIFORNIA FAIR EMPLOYMENT AND HOUSING ACT**

DFEH # E 200809 R 0062 010c
DFEH USE ONLY

## CALIFORNIA DEPARTMENT OF FAIR EMPLOYMENT AND HOUSING

| YOUR NAME (indicate Mr. or Ms.) | TELEPHONE NUMBER (INCLUDE AREA CODE) |
|---|---|
| Fabrice Jean Commelin | 310-373-3518 |

ADDRESS
3460 Via Campesina

| CITY/STATE/ZIP | COUNTY | COUNTY CODE |
|---|---|---|
| Rancho Palos Verdes, CA 90275 | | |

NAMED IS THE EMPLOYER, PERSON, LABOR ORGANIZATION, EMPLOYMENT AGENCY, APPRENTICESHIP COMMITTEE, OR STATE OR LOCAL GOVERNMENT AGENCY WHO DISCRIMINATED AGAINST ME:

| NAME | TELEPHONE NUMBER (Include Area Code) |
|---|---|
| Epson America Inc. | 562-981-3840 |

| ADDRESS | DFEH USE ONLY |
|---|---|
| 3840 Kilroy Airport Way | |

| CITY/STATE/ZIP | COUNTY | COUNTY CODE |
|---|---|---|
| Long Beach, CA 90806 | | |

| NO. OF EMPLOYEES/MEMBERS (if known) | DATE MOST RECENT OR CONTINUING DISCRIMINATION TOOK PLACE (month, day, and year) March 6, 2009 | RESPONDENT CODE |
|---|---|---|

THE PARTICULARS ARE:

I allege that on __March 6, 2009__ the following conduct occurred:

- [X] termination
- [ ] lay-off
- [ ] demotion
- [ ] harassment
- [ ] genetic characteristics testing
- [ ] constructive discharge (forced to quit)
- [ ] impermissible non-job-related inquiry

- [ ] denial of employment
- [ ] denial of promotion
- [ ] denial of transfer
- [ ] denial of accommodation
- [X] failure to prevent discrimination or retaliation
- [X] retaliation
- [ ] other (specify) _____

- [ ] denial of family or medical leave
- [ ] denial of pregnancy leave
- [ ] denial of equal pay
- [ ] denial of right to wear pants
- [ ] denial of pregnancy accommodation

by __John Lang, Chief Executive Officer__

Name of Person                          Job Title (supervisor/manager/personnel director/etc.)

because of:
- [X] sex
- [X] age
- [ ] religion
- [ ] exercise of
- [ ] national origin/ancestry
- [ ] marital status
- [ ] sexual orientation
- [ ] association
- [ ] disability (physical or mental)
- [ ] medical condition (cancer)
- [ ] or genetic characteristic(s)
- [ ] other (specify)
- [X] retaliation for engaging in protected activity or requesting a protected leave or accommodation

State what you believe to be the reason(s) for discrimination

I was fired in retaliation for reporting illegal activities to the CEO affecting the public interest.

I was 54 years old at the time and believe my age played a part in the pre-textual firing.

I wish to pursue this matter in court. I hereby request that the Department of Fair Employment and Housing provide a right-to-sue notice. I understand that if I want a federal notice of right-to-sue, I must visit the U.S. Equal Employment Opportunity Commission (EEOC) to file a complaint within 30 days of receipt of the DFEH "Notice of Case Closure," or within 300 days of the alleged discriminatory act, whichever is earlier.

I have not been coerced into making this request, nor do I make it based on fear of retaliation if I do not do so. I understand it is the Department of Fair Employment and Housing's policy to not process or reopen a complaint once the complaint has been closed on the basis of "Complainant Elected Court Action."

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct of my own knowledge except as to matters stated on my information and belief, and as to those matters I believe it to be true.

Dated __08-19-2009__

COMPLAINANT'S SIGNATURE

Fabrice Jean Commelin

At _____
        City

RECEIVED

AUG 2 4 2009

Department of Fair Employment and Housing

DATE FILED:

DFEH-300-03 (04/09)
DEPARTMENT OF FAIR EMPLOYMENT AND HOUSING

STATE OF CALIFORNIA

EXHIBIT ___A___
PAGE ___29___

# EXHIBIT 2

EXHIBIT  A
PAGE  30

STATE OF CALIFORNIA - STATE AND CONSUMER SERVICES AGENCY                                    ARNOLD SCHWARZENEGGER, Governor

**DEPARTMENT OF FAIR EMPLOYMENT & HOUSING**
1055 West Seventh Street, Suite 1400 ,Los Angeles, CA 90017
(213) 439-6770 (800) 700-2320 Fax (213) 439-6780

September 17, 2009

Eric Yuhl
Attorney
Yuhl Stoner Carr
601 S Figueroa St. #2340
Los Angeles, CA 90017

RE: E200910R0062-01-arc
COMMELIN/EPSON AMERICA, INC.

Dear Eric Yuhl:

## NOTICE TO COMPLAINANT'S ATTORNEY

Enclosed is a copy of your client's complaint of discrimination filed with the
Department of Fair Employment and Housing on 8/24/2009 pursuant to the
California Fair Employment and Housing Act, Government Code section 12900 et
seq.  Also enclosed is a copy of your client's Notice of Case Closure, which
constitutes your client's right-to-sue notice.

Please note that under Government Code section 12962, you are responsible for
service of the complaint on respondent(s). You should also enclose a copy of the
Notice of Case Closure along with the complaint.  These documents must be
served within 60 days of the filing date of the complaint.  Government Code
section 12962(b) further provides that complaints must be served either personally
or by certified mail with return receipt requested.

For additional information, please read the enclosed Notice of Case Closure that
explains the conditions for filing a private lawsuit in the State of California.

Sincerely,

*Tina Walker*

Tina Walker
District Administrator

Enclosure:   Complaint of Discrimination
             Notice of Case Closure

STATE OF CALIFORNIA - STATE AND CONSUMER SERVICES AGENCY                                                                ARNOLD SCHWARZENEGGER, Governor

**DEPARTMENT OF FAIR EMPLOYMENT & HOUSING**
1055 West Seventh Street, Suite 1400 ,Los Angeles, CA 90017
(213) 439-6770 (800) 700-2320 Fax (213) 439-6780



September 17, 2009


FABRICE JEAN COMMELIN
3460 VIA CAMPESINA
RANCHO PALOS VERDES, CA 90275

RE:  E200910R0062-01-arc
     COMMELIN/EPSON AMERICA, INC.

Dear FABRICE JEAN COMMELIN:

### NOTICE OF CASE CLOSURE

This letter informs that the above-referenced complaint that was filed with the Department of Fair Employment and Housing (DFEH) has been closed effective August 24, 2009 because an immediate right-to-sue notice was requested. DFEH will take no further action on the complaint.

This letter is also the Right-To-Sue Notice. According to Government Code section 12965, subdivision (b), a civil action may be brought under the provisions of the Fair Employment and Housing Act against the person, employer, labor organization or employment agency named in the above-referenced complaint. The civil action must be filed within one year from the date of this letter.

If a federal notice of Right-To-Sue is wanted, the U.S. Equal Employment Opportunity Commission (EEOC) must be visited to file a complaint within 30 days of receipt of this DFEH *Notice of Case Closure* or within 300 days of the alleged discriminatory act, whichever is earlier.

EXHIBIT ___A___
PAGE ___32___

Notice of Case Closure
Page Two

DFEH does not retain case files beyond three years after a complaint is filed, unless the case is still open at the end of the three-year period.

Sincerely,

Tina Walker

Tina Walker
District Administrator

cc:    Case File

HUMAN RESOURCES MANAGER
SEIKO EPSON CORPORATION
3840 KILROY AIRPORT WAY
LONG BEACH, CA 90806

DFEH-200-43 (06/06)

EXHIBIT ___A___
PAGE ___33___

## FILING A CASE IN COURT

Your case has been closed by the Department of Fair Employment and Housing (DFEH). Should you decide to bring a civil action on your own behalf in court in the State of California under the provisions of the California Fair Employment and Housing Act (FEHA) against the person, employer, labor organization or employment agency named in your complaint, below are resources for this.

**Note:** If a settlement agreement has been signed resolving the complaint, you might have waived the right to file a private lawsuit.

### Finding an Attorney

To proceed in Superior Court, you should contact an attorney. If you do not already have an attorney, the organizations listed below may be able to assist you:

The State Bar of California

The State Bar of California has a Lawyer Referral Services Program (LRS) which can be accessed through its Web site at www.calbar.ca.gov or by calling 1-866-442-2529 (within California) or 1-415-538-2250 (outside California).

Local Lawyer Referral Services

Your county may have a lawyer referral service. Check the Yellow Pages of your telephone book under "Attorneys."

### Filing in Small Claims Court

You may be able to file a claim in small claims court. For more information, you may contact:

California Department of Consumer Affairs (DCA)

The Department of Consumer Affairs has information regarding filing claims in small claims court located on its Web site at www.dca.ca.gov. Under its "Publications" tab you can access the "Locate the Small Claims Court Guide" on the left side of the page.

You may also order a free copy of "The Small Claims Court: A Guide to Its Practical Use" by contacting the DCA Publication Hotline at 1-866-320-8685 or 1-800-952-5210, or by writing to them at: Department of Consumer Affairs; Policy and Publications Development Office; 1625 North Market Blvd., Suite N-112; Sacramento; CA; 95834.

The State Bar of California

The State Bar of California has information on "Using the Small Claims Court" under the "Public Services" section of its Web site located at www.calbar.ca.gov.

DFEH-200-41 (04/09)

EXHIBIT _A_
PAGE _34_

EXHIBIT    B

# YUHL | STONER | CARR LLP
### L A W Y E R S

300 S. GRAND AVENUE
14TH FLOOR
LOS ANGELES, CA 90071

TELEPHONE
(213) 687-2640

FACSIMILE
(213) 687-2644

ysclawyers.com

May 20, 2009

**VIA FEDEX AND FACSIMILE**
Mr. Minoru Usui
President
Seiko Epson Corporation
3-5 Owa 3-Chome,
Suwa, Nagano 392-8502, Japan

**VIA FACSIMILE AND MAIL**
Mr. John D. Lang
Chief Executive Officer
Epson America, Inc.
3840 Kilroy Airport Way
Long Beach, CA 90806

Gentlemen:

Along with Catherine Conway, Esq. of Akin Gump Strauss Hauer & Feld, we represent Mr. Fabrice Commelin relative to the termination of his employment by Epson America (EAI) at the direction of parent Seiko Epson (SEC) despite 25 years of loyal and dedicated service.

## REDACTED

LOS ANGELES                              SAN DIEGO

EXHIBIT __B__
PAGE __35__

# YUHL | STONER | CARR LLP

L A W Y E R S

May 20, 2009

Mr. Minoru Usui
President of Seiko Epson

Mr. John D. Lang
CEO of EAI

Page 2

REDACTED

EXHIBIT _B_
PAGE _36_

# YUHL | STONER | CARR ᴸᴸᴾ
### L A W Y E R S

May 20, 2009

Mr. Minoru Usui
President of Seiko Epson

Mr. John D. Lang
CEO of EAI

Page 3

## REDACTED

Thank you for your time and attention the foregoing.

Very truly yours,

Eric F. Yuhl

cc:     Ms. Catherine Conway, Esq./Akin Gump
        Mr. Tetsuya Mizuno, Executive Vice President, EAI (Via Facsimile and Mail)
        Mr. Fabrice Commelin

EXHIBIT ___B___
PAGE ___37___

EXHIBIT    C

# YUHL | STONER | CARR LLP
### L A W Y E R S

601 S. FIGUEROA STREET
SUITE 2340
LOS ANGELES, CA 90017

TELEPHONE
(213) 687-2640

FACSIMILE
(213) 687-2644

ysclawyers.com

**RECEIVED**
SEP 2 4 2009
PAUL, HASTINGS

September 23, 2009

Donna Melby
Paul, Hastings, Janofsky & Walker LLP
515 S. Flower St., 25th Flr.
Los Angeles, CA 90071

RE:   Fabrice Commelin

Dear Donna:

As promised, enclosed herein is a conformed copy of my client's DFEH filing against EAI as well as the right to sue letter.

Please confirm your acceptance of service re: same for EAI via this letter transmittal.

Please also let me know if you have any evidence on the 'tax issue', such as the email you alluded to in our face to face meeting, which you care to share with me. You will note I plead the administrative claim in generic tones. However, the lawsuit will include detailed allegations on the retaliation, including the 'tax issue', unless you can demonstrate the facts are other than I currently believe them to be.

Thank you for your continued courtesy and cooperation in this matter.

Very truly yours,

Eric F. Yuhl

cc:   Mr. Fabrice Commelin
      Ms. Catherine Conway, Esq./Akin Gump

MARINA DEL REY          LOS ANGELES          SAN DIEGO

EXHIBIT   C
PAGE      38

EXHIBIT    D

# Paul*Hastings*

Paul, Hastings, Janofsky & Walker LLP
515 South Flower Street
Twenty-Fifth Floor
Los Angeles, CA 90071
telephone 213-683-6000 • facsimile 213-627-0705 • www.paulhastings.com

Atlanta
Beijing
Brussels
Chicago
Frankfurt
Hong Kong
London
Los Angeles
Milan
New York
Orange County
Palo Alto
Paris
San Diego
San Francisco
Shanghai
Tokyo
Washington, DC

(213) 683-6098
donnamelby@paulhastings.com

August 21, 2009

VIA E-MAIL AND REGULAR U.S. MAIL

Eric F. Yuhl, Esq.
Yuhl Stoner Carr LLP
4676 Admiralty Way
Suite 550
Marina del Rey, CA 90292

Catherine Conway, Esq.
Akin Gump Strauss Hauer & Feld LLP
2029 Century Park East
Suite 2400
Los Angeles, CA 90067

Re:     Threatened Litigation Against Epson

Dear Mr. Yuhl and Ms. Conway:

Further to my conversions with Mr. Yuhl on the issue of privilege and attorney client communication and work product doctrine, we take this opportunity to again confirm on behalf of our clients, Epson America Inc., Seiko Epson Corporation and any Epson related entity (hereinafter "Epson"), assertion of the attorney-client privilege and work product doctrine which is actually or potentially at issue in connection with what we understand to be current disputes and/or threatened litigation raised on behalf of your client, Fabrice Commelin ("Mr. Commelin") as well as any threatened separate action against Epson, whether class based or otherwise.

Mr. Commelin's position with Epson was that of Vice President in charge of Latin American operations. As an officer of Epson America Inc., and, in connection with the performance of his duties as manager, officer and fiduciary, Mr. Commelin participated in and was subject to countless frequent communications which are protected by the attorney-client privilege and work product doctrine. He was and is likewise in possession of other highly confidential company information. Please be advised that Epson vigorously asserts the right to any and all protections as to such privileged and confidential matters and does not intend to waive them – either expressly or impliedly).

We trust, and hereby remind you that, to the extent Mr. Commelin and your offices are in possession of client confidences and information protected by privilege and/or the work

EXHIBIT D
PAGE 39

Paul*Hastings*

Eric F. Yuhl, Esq
Catherine Conway, Esq.
August 21, 2009
Page 2

product doctrine, Mr. Commelin and both law offices must refrain from disclosure and/or use of privileged information. Further, Mr. Commelin, as well as both law offices, must ensure that Epson's privileges and protections are not breached, and that its secrets and confidences are maintained. The obligation to keep such privileged information inviolate extends, of course, to refraining from use of such protected information to support claims of Fabrice Commelin as well as to any attempt to use such information to broaden the attack on Epson to include any class based or other claims. We trust that you fully appreciate your obligations in this regard.

Finally, as Mr. Yuhl and I have discussed, Epson must vigorously defend, through all lawful avenues available to it, protection of its privileges and confidential information. Epson will take whatever necessary action available to it under the law to avoid the misuse of protected information.

Thank you for your anticipated immediate attention to these important matters.

Very truly yours,

Donna D. Melby
of PAUL, HASTINGS, JANOFSKY & WALKER LLP

DDM:kc

EXHIBIT D
PAGE 40

# Paul Hastings

Paul, Hastings, Janofsky & Walker LLP
515 South Flower Street
Twenty-Fifth Floor
Los Angeles, CA 90071
telephone 213-683-6000 • facsimile 213-627-0705 • www.paulhastings.com

Atlanta
Beijing
Brussels
Chicago
Frankfurt
Hong Kong
London
Los Angeles
Milan
New York
Orange County
Palo Alto
Paris
San Diego
San Francisco
Shanghai
Tokyo
Washington, DC

(213) 683-6098
donnamelby@paulhastings.com

December 16, 2009

VIA E-MAIL AND U.S. MAIL

Eric F. Yuhl, Esq.
William Stoner, Esq.
Yuhl Stoner Carr LLP
601 S. Figueroa Street
Suite 2340
Los Angeles, CA 90017

Catherine Conway, Esq.
Akin Gump Strauss Hauer & Feld LLP
2029 Century Park East
Suite 2400
Los Angeles, CA 90067

Re:    *Fabrice Commelin v. Epson America, Inc.*

Dear Counsel:

The purpose of this letter is to request the immediate return of any and all original documents and all copies of documents belonging to Epson America, Inc. ("Epson") in the wrongful possession, custody or control of Plaintiff Fabrice Commelin ("Plaintiff" or "Commelin") or his attorneys.

A careful review of the unredacted draft complaint as well as the other facts and circumstances surrounding the claim of Mr. Commelin suggests that Commelin likely still has in his possession confidential and proprietary communications or documents belonging to Epson which contain, among other things, information about Epson's business strategies, its technologies, its product lines, and its trade secrets. The allegations of the complaint likewise suggest that Commelin may have retained Epson documents or communications protected by the attorney-client privilege and/or attorney work product, the return of which are also requested. We have already addressed, in prior communication, the obligation of Commelin and his counsel to refrain from the disclosure and misuse of any privileged and confidential documents. Those previous written and oral communications are again referenced and incorporated here.

EXHIBIT D
PAGE 41

Paul *Hastings*

Eric F. Yuhl, Esq.
William Stoner, Esq.
December 16, 2009
Page 2

If Mr. Commelin or his attorneys have any such documents, there can be no question that Mr. Commelin's conduct in taking these documents and providing them to you violated various agreements between Epson and Commelin. Specifically, Mr. Commelin's taking or retention of those documents as well as any subsequent use of them violates the Confidential/Proprietary Information policy contained in Epson's Employee Handbook, the Nondisclosure Agreement that Commelin signed during his employment at Epson, and the Confidential/Proprietary Information and Safeguarding Epson's Assets policies set forth in Epson's Personnel Practices Guidelines. In addition, Mr. Commelin's conduct violates a long line of California authority "condemning self-help evidence gathering by employees for use in contemplated litigation against their soon-to-be former employers." *Pillsbury, Madison & Sutro v Schectman*, 55 Cal. App. 4th 1279, 1287 (1997); *see also Conn v Superior Court*, 196 Cal. App. 3d 774 (1988). *Pillsbury, Madison & Sutro* and its progeny condemn both employees who remove a defendant's documents, and the attorneys who later attempt to use them in litigation.

It is my hope that we can anticipate your cooperative return of any of Epson's privileged, confidential and proprietary, and trade secret documents in the possession, custody or control of Mr. Commelin or your office. Please let me know by the close of business on Wednesday, December 23, 2009 whether Mr. Commelin possesses and/or has provided such documents to you, and, if so, whether you will agree to return those documents to Epson immediately as requested.

Please feel free to contact me if you have any questions. Thank you for your anticipated courtesy and cooperation.

Very truly yours,

Donna D. Melby
of PAUL, HASTINGS, JANOFSKY & WALKER LLP

DDM:kc

EXHIBIT __D__
PAGE __42__

**Paul**Hastings

Paul, Hastings, Janofsky & Walker LLP
515 South Flower Street
Twenty-Fifth Floor
Los Angeles, CA 90071
telephone 213-683-6000 • facsimile 213-627-0705 • www.paulhastings.com

Atlanta
Beijing
Brussels
Chicago
Frankfurt
Hong Kong
London
Los Angeles
Milan
New York
Orange County
Palo Alto
Paris
San Diego
San Francisco
Shanghai
Tokyo
Washington, DC

(213) 683-6098
donnamelby@paulhastings.com

January 6, 2010

VIA E-MAIL AND U.S. MAIL

Eric F. Yuhl, Esq.
William Stoner, Esq.
Yuhl Stoner Carr LLP
601 S. Figueroa Street
Suite 2340
Los Angeles, CA 90017

Catherine Conway, Esq.
Akin Gump Strauss Hauer & Feld LLP
2029 Century Park East
Suite 2400
Los Angeles, CA 90067

Re:     *Fabrice Commelin v. Epson America, Inc.*

Dear Counsel:

Now that the holidays are behind us, I take this opportunity to follow-up on my December 16, 2009 letter requesting the immediate return of any and all original documents and all copies of documents belonging to Epson America, Inc. ("Epson") in the wrongful possession, custody or control of Plaintiff Fabrice Commelin ("Plaintiff" or "Commelin") or his attorneys.  A copy of the letter is enclosed for your easy reference.

In my December 16, 2009 letter, I requested that you please inform me by Wednesday, December 23, 2009 whether Mr. Commelin possessed and/or had provided such documents to you, and, if so, whether you would agree to return those documents to Epson immediately as requested.  I have not yet received any response.

EXHIBIT   D
PAGE   43

Paul*Hastings*

Eric F. Yuhl, Esq.
William Stoner, Esq.
Catherine Conway, Esq.
January 6, 2010
Page 2

Please contact me by the close of business on Friday, January 8, 2010 with your response.
Your anticipated cooperation is appreciated.

Very truly yours,

Donna D. Melby
of PAUL, HASTINGS, JANOFSKY & WALKER LLP

DDM:kc

EXHIBIT D
PAGE 44

# Paul*Hastings*

Paul, Hastings, Janofsky & Walker LLP
515 South Flower Street
Twenty-Fifth Floor
Los Angeles, CA 90071
telephone 213-683-6000 · facsimile 213-627-0705 · www.paulhastings.com

Atlanta
Beijing
Brussels
Chicago
Frankfurt
Hong Kong
London
Los Angeles
Milan
New York
Orange County
Palo Alto
Paris
San Diego
San Francisco
Shanghai
Tokyo
Washington, DC

(213) 683-6098
donnamelby@paulhastings.com

February 11, 2010

VIA E-MAIL AND U.S. MAIL

Eric F. Yuhl, Esq.
William E. Stoner, Esq.
Yuhl Stoner Carr LLP
601 South Figueroa Street, Suite 2340
Los Angeles, CA 90017

Dear Gentlemen:

This letter will serve to follow-up on Plaintiff's responses to Epson's First Request for Production of Documents and the CD of documents that Plaintiff recently produced to Epson.

## Return of Epson's Company Property

In the cover letter that accompanied Mr. Commelin's document production, you indicated that the documents contained on the CD were responsive to Epson's First Request for Production of Documents and the deposition notice served on Mr. Commelin on December 15, 2009. However, you did not indicate whether the CD contained all of the documents requested by Epson in its December 16, 2009 letter seeking the return of all of Epson's property in Commelin's possession, custody or control. In our January 27, 2010 meet and confer session, Mr. Stoner represented that Mr. Commelin would return all of the Epson documents that he possessed and agreed to produce those documents in a separate – or duplicate – set so that Epson could clearly identify which documents were being produced pursuant to that demand for the return of Epson's property. Unfortunately, the production was not separated as promised, and the cover letter did not identify which documents were being produced pursuant to that request. Please identify by the close of business on Tuesday, February 16, 2010, which documents relate to Epson's December 16, 2009 letter demanding the return of Epson's property.

Epson is deeply troubled by the decision of Mr. Commelin and your office not to return the original Epson documents that he retained after his termination from Epson. This is particularly true now that, based upon the documents contained in Mr. Commelin's production, it is clear that Mr. Commelin took and refuses to return commercially sensitive confidential trade secret information. As we informed you in our December 16, 2009 letter demanding the return of any Epson property in Mr. Commelin's possession, California courts have long condemned the use of self-help evidence gathering. *Pillsbury,*

EXHIBIT __D__
PAGE __45__

Paul*Hastings*

Eric F. Yuhl, Esq.
William E. Stoner, Esq.
February 11, 2010
Page 2

*Madison & Sutro v. Schectman*, 55 Cal. App. 4th 1279, 1287 (1997); *see also Conn v Superior Court*, 196 Cal. App. 3d 774 (1988). As *Pillsbury* makes clear, Mr. Commelin was not entitled to take or retain Epson documents simply because they might be useful to or relevant in his litigation. Furthermore, Mr. Commelin's taking and retention of those documents – as well as any subsequent use of them – violates the Confidential/Proprietary Information policy contained in Epson's Employee Handbook, the Nondisclosure Agreement that Commelin signed during his employment at Epson, and the Confidential/Proprietary Information and Safeguarding Epson's Assets policies set forth in Epson's Personnel Practices Guidelines. If Plaintiff seeks documents, his only legal option is to request them from Epson through the discovery process. Plaintiff cannot cloak his theft in the name of litigation necessity. Please let me know by the close of business on Tuesday, February 16, 2010 whether Plaintiff will agree to return the *originals* of any Epson documents that he possesses. If he does not, Epson will have no choice other than to take whatever steps necessary to safeguard its confidential property.

## Plaintiff's Discovery Responses

Epson requests that Plaintiff provide a chart or list identifying the particular Bates numbers that Plaintiff deems responsive to each request. Without such a chart, Epson cannot adequately compare the statements of compliance in Plaintiff's discovery responses with the documents produced pursuant to those responses. Please let me know by the close of business on Tuesday, February 16, 2010, whether Plaintiff will agree to produce such a chart.

Finally, I renew my February 5, 2010 request that Plaintiff supplement his discovery responses to confirm that when he said in response to Requests 1, 4, 6-9, and 12-74, "Plaintiff will produce documents responsive to this request," he was agreeing to produce *all* documents that are in his possession, custody, or control and that are responsive to those requests. Please let me know by the close of business on Tuesday, February 16, 2010, whether Plaintiff will agree to supplement his responses as requested.

I appreciate your anticipated courtesy and cooperation in this matter.

Very truly yours,

Donna Melby

Donna D. Melby
of PAUL, HASTINGS, JANOFSKY & WALKER LLP

DDM:kc

EXHIBIT   D
PAGE   46

**Paul**Hastings

Paul, Hastings, Janofsky & Walker LLP
515 South Flower Street
Twenty-Fifth Floor
Los Angeles, CA 90071
telephone 213-683-6000 • facsimile 213-627-0705 • www.paulhastings.com

Atlanta
Beijing
Brussels
Chicago
Frankfurt
Hong Kong
London
Los Angeles
Milan
New York
Orange County
Palo Alto
Paris
San Diego
San Francisco
Shanghai
Tokyo
Washington, DC

(213) 683-6098
donnamelby@paulhastings.com

February 22, 2010

VIA EMAIL, FACSIMILE, AND US MAIL

Eric F. Yuhl, Esq.
William E. Stoner, Esq.
Yuhl Stoner Carr LLP
601 South Figueroa Street, Suite 2340
Los Angeles, CA 90017

Re:    *Fabrice Commelin v Epson America, Inc.*

Gentlemen:

This letter will respond to your letter dated February 17, 2010 advising that Mr. Commelin will not comply with Epson's request that he return any Epson property in his possession, custody, or control. Plaintiff's document production confirms that your office and Mr. Commelin are in wrongful possession of privileged, confidential, trade secret information.

Your letter suggests a disingenuous and significant misunderstanding about what Epson deems its property and what it seeks to have returned. Epson, of course, acknowledges that it gave Mr. Commelin a copy of his personnel file. Epson's letters seeking the return of its property should not reasonably be interpreted to seek the return of Mr. Commelin's personnel file.

What Epson *does* seek to have returned are any documents that Mr. Commelin possesses that contain Epson's confidential, privileged, and/or proprietary information. For example, Epson seeks the return of the highly confidential, privileged, and proprietary/trade secret information contained in the PowerPoint presentation produced at Bates Nos. 330-343.

Because Epson does not seek the return of Mr. Commelin's personnel file, the case that you cite in support of your refusal to return Epson's documents – *Bedwell v Fish & Richardson, P.C.,* 2007 WL 4258323 (S.D. Cal. 2003) – is inapposite. In any event, *Bedwell* is not controlling authority here.

As we explained in our initial letter on this subject, *Pillsbury, Madison & Sutro v Schectman,* 55 Cal. App. 4th 1279, 1287 (1997) is the chief authority that applies to the present situation. *Pillsbury* stands for the proposition that an employee cannot engage in "self-

EXHIBIT    D
PAGE    47

Paul*Hastings*

Eric F. Yuhl, Esq.
William E. Stoner, Esq.
February 22, 2010
Page 2

help" discovery by taking (or keeping) confidential information from his employer simply because doing so might advance the former employee's case. Thus, Mr. Commelin must return the PowerPoint presentation that he produced at Bates Nos. 330-343.

For all of the reasons that you have already been placed on notice of orally and in writing on multiple occasions, all of Epson confidential, proprietary, and/or privileged documents in Mr. Commelin's possession, custody, or control must be returned immediately; copies may not be retained either by Mr. Commelin or his current or former counsel.

We trust that this letter clarifies any misunderstanding as to Epson's still pending demand for return of its privileged, proprietary and trade secret property, as well as the immediate fiduciary and ethical obligations of Mr. Commelin and his counsel in connection with the same.

Please return the requested information by close of business tomorrow together with confirmation in writing that you have done so and that neither you, Mr. Commelin nor any other person has kept a copy of the document or any portion thereof, including but not limited to any notes about any of the information contained therein.

We look forward to hearing from you with your confirmation regarding this important issue.

Very truly yours,

*Donna D Melby* ggc

Donna D. Melby
of PAUL, HASTINGS, JANOFSKY & WALKER LLP

DDM:kc

EXHIBIT __D__
PAGE __48__

EXHIBIT    E

# YUHL | STONER | CARR LLP
### L A W Y E R S

601 S. FIGUEROA STREET
SUITE 2340
LOS ANGELES, CA 90017

TELEPHONE
(213) 687-2640

FACSIMILE
(213) 687-2644

ysclawyers.com

February 17, 2010

**RECEIVED**

FEB 1 8 2010

**PAUL, HASTINGS**

Donna Melby
Paul, Hastings, Janofsky & Walker LLP
515 S. Flower St., 25th Flr.
Los Angeles, CA 90071

RE:    **Fabrice Commelin v. Epson America, Inc.**
       **LASC No. BC427254**

Dear Donna:

We are in receipt of your letter of February 11, 2010, addressing what you characterize as "Return of Epson's Company Property". You also address "Plaintiff's Discovery Responses" in which you demand a response by February 16th.

Documents in the possession of Plaintiff have been produced to date in response to Epson's discovery requests, and not, as you contend, a commitment to "return Epson's documents." No such commitment has been made, nor are documents produced "Epson's Property."

On February 8, 2010, Plaintiff produced documents FC000001-001125 in response to Epson's document demand, the vast majority of which are documents from Plaintiff's own personnel file and documentation of his attempt to find employment since his wrongful termination from Epson a year ago.

Document Nos. 1-246, 294-302, 303-309, 310-326, 327-329, 362-379, 393-533, 534-1125, include such items as an Employee Handbook, performance reviews, compensation explanations, Epson press releases, information available on the internet regarding Epson products, Plaintiff's earnings statements and similar documents distributed to Plaintiff while employed by Epson. Additionally, Document Nos. 260-290 include correspondence concerning Plaintiff's separation from Epson, including his complaint to the Department of Fair Employment and Housing Department.

MARINA DEL REY            LOS ANGELES            SAN DIEGO

EXHIBIT    E
PAGE    49

# YUHL | STONER | CARR LLP

L A W Y E R S

February 17, 2010
Donna Melby
Paul, Hastings, Janofsky & Walker LLP

Page 2

The original personnel file of Plaintiff which contains the original of many of these documents is in the possession of Epson. You have cited no case that prohibits a former employee from having a copy of his own personnel file. Labor Code Section 1198.5 requires an employer to permit inspection of his personnel file as does Epson's own employee handbook. It is our understanding that Epson provided Plaintiff with a copy of pertinent personnel records upon his request and/or that he retained performance reviews and earnings statements throughout his career that he has now produced in response to Epson's discovery requests and which are not "owned" by Epson.

These documents bear no resemblance to the type of "self-help" documents that were the subject matter of the *Pillsbury* case upon which you chiefly rely.

The discussion of *Pillsbury Madison & Sutro v. Schectman*, 555 Cal.App.4th 1279, 1287 (1997) in *Bedwell v. Fish & Richardson P.C.*, 2007 WL 4258323 *2, 3 (S.D. Cal. 2007) is *apropos* of the present case:

> The Court further finds that the cases cited by Defendant
> are distinguishable. In Pillsbury, the California Court of
> Appeal upheld a ruling by the trial court that certain
> documents that had come into the possession of current and
> former employees of the Pillsbury, Madison & Sutro law
> firm ("Pillsbury") had been removed improperly from
> Pillsbury and were required to be surrendered to it. The
> documents at issue were described as "communications
> within the human resources department relating to
> employees" and, more specifically, as documents "not
> directed to any of the former employees concerning their
> individual status as employees of [Pillsbury] but, rather, ...
> documents relating to the performance of their duties while
> employed by the firm." Pillsbury, 55 Cal.App.4th at 1282,
> 64 Cal.Rptr.2d 698 (emphasis added). The e-mails at issue
> here are reportedly communications directed to and from
> Plaintiff regarding her individual status as an employee at
> the firm. Therefore, they are of a completely different
> character than the documents at issue in Pillsbury.



EXHIBIT ___E___
PAGE ___50___

# YUHL | STONER | CARR LLP

### L A W Y E R S

February 17, 2010
Donna Melby
Paul, Hastings, Janofsky & Walker LLP

Page 3

The same is true here as many of the documents produced are to and from
Plaintiff concerning either his employment or his separation from Epson.  The Court
continued:

> Moreover, the court in Pillsbury found that the employees
> there had engaged in "self-help" discovery, described as
> "evidence gathering by employees for use in contemplated
> litigation against their soon-to-be former employers." Id. at
> 1287, 64 Cal.Rptr.2d 698.  Here, Defendant has not
> established that Plaintiff engaged in such "self-help"
> discovery.  The mere fact that Plaintiff is in the possession
> of these e-mails does not automatically render them the
> product of "self-help" discovery.  As set forth above,
> Defendant has not established that Plaintiff is in wrongful
> possession of these documents, and has not demonstrated
> that Plaintiff took the e-mails for use in this litigation.  The
> Pillsbury case, therefore, is distinguishable from the facts
> of this case.

The same holds true here.  Plaintiff did not engage in "self-help", nor do any of
the documents produced remotely resemble human resources documents of other
employees containing their performance reviews.  The extreme situation found in
*Pillsbury* is simply not present here.

You contend that "it is clear that Mr. Commelin took and refuses to return
commercially sensitive confidential trade secret information."  This is not only not
"clear", but false.  You create the erroneous impression with this speculative conclusion
that Plaintiff engaged in self-help rather than simply being in possession of a few
purportedly commercially sensitive documents when he was terminated.  Obviously, if
Plaintiff had engaged in "self-help", he did a very incomplete job as the recent production
constitutes the entire universe of documents in Plaintiffs' possession relating to his two
decades of employment at Epson--the vast majority of which are nothing more than his
own personnel file and documentation of his attempt to find work following his wrongful
termination.

Before you "take steps" to protect what you view as guarding the confidentiality
of a one or two purportedly commercially sensitive documents, bear in mind that a

EXHIBIT ___E___
PAGE ___51___

# YUHL | STONER | CARR LLP

L A W Y E R S

February 17, 2010
Donna Melby
Paul, Hastings, Janofsky & Walker LLP

Page 4

protective order is under negotiation, which will more than protect any purported or
claimed trade secret information, again assuming any information is actually included in
the material already produced to Epson.

With regard to specifying documents responsive to each request, the documents
produced were produced in the manner in which they were kept in accordance with the
Code. No further categorization is necessary. Further, there is no point in us attempting
to identify which documents were generated within Epson or by Epson since the genesis
of such documents is apparent from the face of the production.

I trust that with the production of all of our client's files to you and the protective
order under consideration that the issues in your letter are now moot. To alleviate any
concerns, we agree to treat the entire production as confidential until such time as a
protective order is in place and Epson has the opportunity to designate the documents it
considers confidential.

Very truly yours,

William E. Stoner

cc:     Mr. Fabrice Commelin

EXHIBIT ___E___
PAGE ___52___

EXHIBIT   F

Eric F. Yuhl  SBN 102051
William E. Stoner  SBN 101418
George K. Rosenstock  SBN 117515
**YUHL STONER CARR LLP**
601 S. Figueroa, Suite 2340
Los Angeles, California 90017
Telephone: 213-687-2640
Facsimile: 213-687-2644
eyuhl@ysclawyers.com
wstoner@ysclawyers.com
grosenstock@ysclawyers.com

**RECEIVED**

DEC 2 3 2009

PAUL, HASTINGS

**Attorneys for Plaintiff Fabrice Commelin**

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

## FOR THE COUNTY OF LOS ANGELES, CENTRAL DISTRICT

| | |
|---|---|
| FABRICE COMMELIN, an individual, | ) Case No. BC 427254 |
| Plaintiff, | ) |
| | ) **PLAINTIFF'S REQUEST FOR** |
| | ) **PRODUCTION OF DOCUMENTS TO** |
| vs. | ) **DEFENDANT EPSON AMERICA, INC.,** |
| | ) **SET ONE** |
| | ) |
| EPSON AMERICA, INC., a California | ) |
| Corporation, and Does 1 through 100, | ) |
| inclusive, | ) |
| | ) |
| Defendants. | ) |

**PROPOUNDING PARTY:**    **PLAINTIFF FABRICE COMMELIN**

**RESPONDING PARTY:**    **EPSON AMERICA, INC.**

**SET NO.:**    **ONE**

---

**PLAINTIFF'S REQUEST FOR PRODUCTION OF DOCUMENTS TO DEFENDANT EPSON AMERICA, INC., SET ONE**

EXHIBIT ___F___

PAGE ___53___

1     **TO DEFENDANT EPSON AMERICA, INC. AND TO ITS ATTORNEYS OF**

2   **RECORD, PAUL, HASTINGS, JANOFSKY & WALKER LLP BY DONNA D. MELBY**

3   **AND GINA GUARIENTI COOK:**

4     **PLEASE TAKE NOTICE** that pursuant to section 2031.010 *et seq.* of the California

5   Code of Civil Procedure, Defendant Epson America, Inc. ("Epson" or "Defendant") is hereby

6   requested to produce for inspection and copying the documents and tangible things described

7   hereinbelow and to produce electronically stored information ("ESI") for inspection, copying,

8   testing or sampling, on January 22, 2010 at 10:00 a.m., at the law offices of Yuhl Stoner Carr

9   LLP, 601 S. Figueroa St., Twenty Third Floor, Los Angeles, CA 90071.  Epson may comply

10  with this Request by transmitting the documents and physical evidence by mail or overnight

11  delivery service so long as they arrive at the designated place by the aforestated date and time

12  (attention William E. Stoner, Esq.)

13     In accordance with section 2031.210 et seq. of the California Code of Civil procedure,

14  Epson also must serve within 30 days after service of this Request a verified written response,

15  responding separately to each item or category of item included in the Request by a statement

16  that Epson will comply with the particular request for inspection, a representation that Epson

17  lack the ability to comply with the particular request, or an objection to the particular request.

18  **NOTICE: ANY FAILURE TO SERVE A TIMELY WRITTEN VERIFIED RESPONSE**

19  **IN ACCORDANCE WITH SECTION 2031.210 WILL CONSTITUTE A WAIVER BY**

20  **EPSON OF ANY OBJECTION TO THESE REQUESTS, INCLUDING ONES BASED**

21  **ON PRIVILEGE OR WORK PRODUCT.**

22

23

24

25

26

27

28                                          EXHIBIT __F__

                                            PAGE __54__

1

## DEFINITIONS

1.      "EPSON" refers to defendant Epson America, Inc. and Epson Accessories, Inc., and any of their shareholders, officers, directors, employees, affiliates, subsidiaries, parent companies, managers, agents, representatives, and all other persons acting on their behalf and/or under their control.

2.      "SEC" means Seiko Epson Corporation and any of their shareholders, officers, directors, employees, affiliates, subsidiaries, parent companies, managers, agents, representatives, and all other persons acting on its behalf and/or under its control.

3.      "YOU" or "YOUR" refers to EPSON, SEC and any of their shareholders, officers, directors, employees, affiliates, subsidiaries, parent companies, managers, agents, representatives, and all other persons acting on its behalf and/or under its control.

4.      "DOCUMENT" or "DOCUMENTS" mean any "writing", "original" "writing" and "duplicate" "writing" as those terms are defined by California Evidence Code Sections 250, 255 and 260 and expressly includes electronically stored information ("ESI") as that term is used in California Code of Civil Procedure Section 2031.010(a) including all ESI which formed the subject of Plaintiff's Preservation Letter of December 22, 2009.

5.      "PERSON" or "PERSONS" mean any individual or any cognizable entity including, without limitation, corporations, proprietorships, partnerships, joint ventures, consortiums, associations, unions, foundations, government agencies or instrumentalities, societies or any other group.

6.      The term "PLAINTIFF" refers to plaintiff Fabrice Commelin.

7.      "COMMUNICATION" or "COMMUNICATIONS" mean any transmission of information from one PERSON to another, including, without limitation, by letter, memorandum, personal meeting, telephone, telegraph, radio, facsimile, electronically, text message or any other means, including internal communications.

8.      "PRINTER" means and refers to any inkjet printer.

EXHIBIT   E
PAGE   55

2

9.      "EPSON PRINTER" means and refers to any PRINTER manufactured, sold, marketed, advertised, and/or otherwise promoted by YOU from August 28, 2005 to the present.

10.     "INK CARTRIDGES" means and refers to any ink cartridge intended for use in an inkjet printer.

11.     "EPSON INK CARTRIDGES" means and refers to any INK CARTRIDGE manufactured, sold, marketed, advertised, and/or otherwise promoted by YOU from August 28, 2005 to the present.

12.     "YIELD" means and refers to the page per cartridge yield achieved.

13.     "YIELD GAP" means and refers to any difference between the page per cartridge yield achieved by any INK CARTRIDGE when printing documents using continuous printing as compared to the page per cartridge yield achieved by such INK CARTRIDGE when printing documents using non-continuous printing.

14.     "INITIALIZATION GAP" means and refers to any loss of ink or reduction of the page per cartridge yield achieved by any INK CARTRIDGE upon initial installation, as a result of an "initial charge" or otherwise.

15.     "CALL CENTER" means and refers to any third party providing product support, technical support, and/or customer service.

16.     "COMPLAINT" refers to Plaintiff's operative complaint on file herein.

17.     "FINANCIAL SCANDAL" refers to those events as described by the use of that phrase in Epson's Memorandum of Points and Authorities in Support of Defendant Epson America, Inc.'s Motion to have the First Amended Complaint Filed Under Seal.", at p. 2 in the sentence which includes the following passage: "unprecedented **financial scandal** of several of the subsidiaries for which Commelin was responsible."

EXHIBIT E

PAGE 56

3

PLAINTIFF'S REQUEST FOR PRODUCTION OF DOCUMENTS TO DEFENDANT EPSON AMERICA, INC., SET ONE

# INSTRUCTIONS

1.      Documents Withheld

If any document is withheld under a claim of privilege or other protection, so as to aid the Court and the parties hereto to determine the validity of the claim of privilege or other protection, please provide the following information with respect to any such document:

      a.      The identity of the person(s) who prepared the document, who signed it, and over whose name it as sent or issued;

      b.      The identity of each person(s) to whom the document was directed;

      c.      The nature and substance of the document with sufficient particularity to enable the Court and parties hereto to identify the document;

      d.      The date of the document;

      e.      The identity of the person(s) having custody of, or control over, the document and each copy thereof;

      f.      The identity of each person to whom copies of the document were furnished;

      g.      The number of pages;

      h.      The basis on which any privilege or other protection is claimed; and

      i.      Whether any non-privileged or non-protected matter is included in the document.

EXHIBIT __E__
PAGE __57__

4

2.      Partial Production

Whenever you object to a particular request, or portion thereof, you must produce all documents called for which are not subject to that objection.  Similarly, wherever a document is not produced in full, please state with particularity the reason or reasons it is not being produced in full, and describe, to the best of your knowledge, information and belief and with as much particularity as possible, those portions of the document that are not produced.

3.      Orderly Production

Whenever it is reasonably practicable, please produce documents in such manner as will facilitate their identification with the particular request or category of requests to which they are responsive.

4.      Construction of "And" and "Or"

As used herein, the words "and" and "or" shall be construed both conjunctively and disjunctively, and each  shall include the other wherever such dual construction will serve to bring within the scope of this Request any documents that would otherwise not be brought within its scope.

5.      Construction of the Singular and Plural Forms

As used herein, the singular form shall include the plural and vice versa whenever such dual construction will serve to bring within the scope of this Request any documents that would otherwise not be brought within its scope.

## DOCUMENTS REQUIRED TO BE PRODUCED

**REQUEST FOR PRODUCTION NO. 1.**

Any and all DOCUMENTS that constitute any written agreement between PLAINTIFF, on the one hand, and EPSON, on the other hand.

EXHIBIT __F__

PAGE __58__

5

**REQUEST FOR PRODUCTION NO. 2.**

Any and all DOCUMENTS that constitute an employment agreement between PLAINTIFF, on the one hand, and EPSON, on the other hand.

**REQUEST FOR PRODUCTION NO. 3.**

Any and all DOCUMENTS that constitute or reflect COMMUNICATION between PLAINTIFF, on the one hand, and John Lang, on the other hand.

**REQUEST FOR PRODUCTION NO. 4.**

Any and all DOCUMENTS that constitute or reflect COMMUNICATION between PLAINTIFF, on the one hand, and another PERSON or PERSONS, on the other hand, which COMMUNICATION related to or referred to YIELD.

**REQUEST FOR PRODUCTION NO. 5.**

Any and all DOCUMENTS that constitute or reflect COMMUNICATION between PLAINTIFF, on the one hand, and another PERSON, on the other hand, which COMMUNICATION related to or referred to YIELD GAP.

**REQUEST FOR PRODUCTION NO. 6.**

Any and all DOCUMENTS that constitute or reflect COMMUNICATION between PLAINTIFF, on the one hand, and another PERSON, on the other hand, which COMMUNICATION related to or referred to INITIALIZATION GAP.

**REQUEST FOR PRODUCTION NO. 7.**

Any and all DOCUMENTS that constitute or reflect COMMUNICATION between John Lang, on the one hand, and another PERSON or PERSONS, on the other hand, which COMMUNICATION related to or referred to YIELD.

EXHIBIT __F__
PAGE __59__

6

PLAINTIFF'S REQUEST FOR PRODUCTION OF DOCUMENTS TO DEFENDANT EPSON AMERICA, INC., SET ONE

**REQUEST FOR PRODUCTION NO. 8.**

Any and all DOCUMENTS that constitute or reflect COMMUNICATION between John Lang, on the one hand, and another PERSON, on the other hand, which COMMUNICATION related to or referred to YIELD GAP.

**REQUEST FOR PRODUCTION NO. 9.**

Any and all DOCUMENTS that constitute or reflect COMMUNICATION between John Lang, on the one hand, and another PERSON, on the other hand, which COMMUNICATION related to or referred to INITIALIZATION GAP.

**REQUEST FOR PRODUCTION NO. 10.**

Any and all DOCUMENTS that constitute or reflect COMMUNICATION between John Lang, on the one hand, and any other PERSON(s), including SEC, on the other hand, related to or referring to the termination of PLAINTIFF from EPSON's employ.

**REQUEST FOR PRODUCTION NO. 11.**

Any and all DOCUMENTS that constitute or reflect COMMUNICATION between John Lang, on the one hand, and any other PERSON(s), including SEC, on the other hand, related to or referring to PLAINTIFF'S performance while in EPSON's employ.

**REQUEST FOR PRODUCTION NO. 12.**

Any and all DOCUMENTS that constitute PLAINTIFF'S EPSON personnel file.

**REQUEST FOR PRODUCTION NO. 13.**

Any and all DOCUMENTS that reflect or refer to a performance evaluation of PLAINTIFF by any PERSON or PERSONS while employed at EPSON.

**REQUEST FOR PRODUCTION NO. 14.**

Any and all DOCUMENTS that reflect or refer to any performance deficit of PLAINTIFF while employed at EPSON.

EXHIBIT __F__
PAGE ____60____

7

**REQUEST FOR PRODUCTION NO. 15.**

Any and all DOCUMENTS that reflect upon the quality of PLAINTIFF'S job performance while employed by EPSON.

**REQUEST FOR PRODUCTION NO. 16.**

Any and all DOCUMENTS that constitute employee manuals for any and all periods during which PLAINTIFF was employed by EPSON.

**REQUEST FOR PRODUCTION NO. 17.**

Any and all DOCUMENTS which constitute refer or relate to COMMUNICATIONS between SEIJI HANAOKA, on the one hand, and any other PERSON (S), on the other hand, concerning PLAINTIFF.

**REQUEST FOR PRODUCTION NO. 18.**

Any and all DOCUMENTS which constitute refer or relate to COMMUNICATIONS between Minoru Usui, on the one hand, and any other PERSON (S), on the other hand, concerning PLAINTIFF.

**REQUEST FOR PRODUCTION NO. 19.**

Any and all DOCUMENTS which constitute refer or relate to COMMUNICATIONS between Yasuo Hattori, on the one hand, and any other PERSON (S), on the other hand, concerning PLAINTIFF.

**REQUEST FOR PRODUCTION NO. 20.**

Any and all DOCUMENTS which constitute refer or relate to COMMUNICATIONS between Masayuki Morozumi, on the one hand, and any other PERSON (S), on the other hand, concerning PLAINTIFF.

EXHIBIT __F__
PAGE __61__

8

**PLAINTIFF'S REQUEST FOR PRODUCTION OF DOCUMENTS TO DEFENDANT EPSON AMERICA, INC., SET ONE**

**REQUEST FOR PRODUCTION NO. 21.**

Any and all DOCUMENTS which constitute refer or relate to COMMUNICATIONS between Kenji Kubota, on the one hand, and any other PERSON (S), on the other hand, concerning PLAINTIFF.

**REQUEST FOR PRODUCTION NO. 22.**

Any and all DOCUMENTS which constitute refer or relate to COMMUNICATIONS between Hiroshi Komatsu, on the one hand, and any other PERSON (S), on the other hand, concerning PLAINTIFF.

**REQUEST FOR PRODUCTION NO. 23.**

Any and all DOCUMENTS which constitute refer or relate to COMMUNICATIONS between Seiichi Hirano, on the one hand, and any other PERSON (S), on the other hand, concerning PLAINTIFF.

**REQUEST FOR PRODUCTION NO. 24.**

Any and all DOCUMENTS which constitute refer or relate to COMMUNICATIONS between Toru Oguchi, on the one hand, and any other PERSON (S), on the other hand, concerning PLAINTIFF.

**REQUEST FOR PRODUCTION NO. 25.**

Any and all DOCUMENTS which constitute refer or relate to COMMUNICATIONS between Akihiko Sakai, on the one hand, and any other PERSON (S), on the other hand, concerning PLAINTIFF.

**REQUEST FOR PRODUCTION NO. 26.**

Any and all DOCUMENTS which constitute refer or relate to COMMUNICATIONS between Masayoshi Shindo, on the one hand, and any other PERSON (S), on the other hand, concerning PLAINTIFF.

EXHIBIT __E__
PAGE __62__

9

**REQUEST FOR PRODUCTION NO. 27.**

Any and all DOCUMENTS which constitute refer or relate to COMMUNICATIONS between Kenji Uchida, on the one hand, and any other PERSON (S), on the other hand, concerning PLAINTIFF.

**REQUEST FOR PRODUCTION NO. 28.**

Any and all DOCUMENTS which constitute refer or relate to COMMUNICATIONS between Yoshiro Yamamoto, on the one hand, and any other PERSON (S), on the other hand, concerning PLAINTIFF.

**REQUEST FOR PRODUCTION NO. 29.**

Any and all DOCUMENTS which constitute refer or relate to COMMUNICATIONS between Tatsuhiro Ishikawa, on the one hand, and any other PERSON (S), on the other hand, concerning PLAINTIFF.

**REQUEST FOR PRODUCTION NO. 30.**

Any and all DOCUMENTS which constitute refer or relate to COMMUNICATIONS between Kenji Miyahara, on the one hand, and any other PERSON (S), on the other hand, concerning PLAINTIFF.

**REQUEST FOR PRODUCTION NO. 31.**

Any and all DOCUMENTS which constitute refer or relate to COMMUNICATIONS between Torao Yajima, on the one hand, and any other PERSON (S), on the other hand, concerning PLAINTIFF.

**REQUEST FOR PRODUCTION NO. 32.**

Any and all DOCUMENTS which constitute refer or relate to COMMUNICATIONS between Masataka Kamiyanagi, on the one hand, and any other PERSON (S), on the other hand, concerning PLAINTIFF.

EXHIBIT __F__

PAGE ____63

10

**REQUEST FOR PRODUCTION NO. 33.**

Any and all DOCUMENTS which constitute refer or relate to COMMUNICATIONS
between Norijuki Hama, on the one hand, and any other PERSON (S), on the other hand,
concerning PLAINTIFF.

**REQUEST FOR PRODUCTION NO. 34.**

Any and all DOCUMENTS which constitute refer or relate to COMMUNICATIONS
between Shuji Aruga, on the one hand, and any other PERSON (S), on the other hand,
concerning PLAINTIFF.

**REQUEST FOR PRODUCTION NO. 35.**

Any and all DOCUMENTS which constitute refer or relate to COMMUNICATIONS
between Noboru Ushijima, on the one hand, and any other PERSON (S), on the other hand,
concerning PLAINTIFF.

**REQUEST FOR PRODUCTION NO. 36.**

Any and all DOCUMENTS which constitute refer or relate to COMMUNICATIONS
between Mitsuak Maruyama, on the one hand, and any other PERSON (S), on the other hand,
concerning PLAINTIFF.

**REQUEST FOR PRODUCTION NO. 37.**

Any and all DOCUMENTS which constitute refer or relate to COMMUNICATIONS
between Kazuk Ito, on the one hand, and any other PERSON (S), on the other hand, concerning
PLAINTIFF.

**REQUEST FOR PRODUCTION NO. 38.**

Any and all DOCUMENTS which constitute refer or relate to COMMUNICATIONS
between Kaname Miyazawa, on the one hand, and any other PERSON (S), on the other hand,
concerning PLAINTIFF.

EXHIBIT ___F___
PAGE ___64___

11

**REQUEST FOR PRODUCTION NO. 39.**

Any and all DOCUMENTS which constitute refer or relate to COMMUNICATIONS between Tadaaki Hagata, or Tetsuya Mizuno, or Koichi Endo, or Hideki Kitamura, on the one hand, and any other PERSON(S), on the other hand, concerning PLAINTIFF.

**REQUEST FOR PRODUCTION NO. 40.**

Any and all DOCUMENTS which constitute, refer, or relate to COMMUNICATIONS between Alberto Arredondo on the one hand, and any other PERSON (S), on the other hand, concerning PLAINTIFF.

**REQUEST FOR PRODUCTION NO. 41.**

Any and all DOCUMENTS which constitute refer or relate to COMMUNICATIONS between Judith Bain, on the one hand, and any other PERSON (S), on the other hand, concerning PLAINTIFF.

**REQUEST FOR PRODUCTION NO. 42.**

Any and all DOCUMENTS which constitute refer or relate to COMMUNICATIONS between Mike Isgrig, on the one hand, and any other PERSON (S), on the other hand, concerning PLAINTIFF.

**REQUEST FOR PRODUCTION NO. 43.**

Any and all DOCUMENTS which constitute refer or relate to COMMUNICATIONS between Tetsuya Mizuno, on the one hand, and any other PERSON (S), on the other hand, concerning PLAINTIFF.

**REQUEST FOR PRODUCTION NO. 44.**

Any and all DOCUMENTS which constitute refer or relate to COMMUNICATIONS between Miko Sion, on the one hand, and any other PERSON (S), on the other hand, concerning PLAINTIFF.

EXHIBIT __F__
PAGE __65__

12

**REQUEST FOR PRODUCTION NO. 45.**

Any and all DOCUMENTS which constitute refer or relate to COMMUNICATIONS between Genevieve Walker, on the one hand, and any other PERSON (S), on the other hand, concerning PLAINTIFF.

**REQUEST FOR PRODUCTION NO. 46.**

Any and all DOCUMENTS which constitute refer or relate to COMMUNICATIONS between Alan Pound, on the one hand, and any other PERSON (S), on the other hand, concerning PLAINTIFF.

**REQUEST FOR PRODUCTION NO. 47.**

Any and all DOCUMENTS which constitute refer or relate to COMMUNICATIONS between Per Tonnesen, on the one hand, and any other PERSON (S), on the other hand, concerning PLAINTIFF.

**REQUEST FOR PRODUCTION NO. 48.**

Any and all DOCUMENTS which constitute refer or relate to COMMUNICATIONS between Eugene Kunde, on the one hand, and any other PERSON (S), on the other hand, concerning PLAINTIFF.

**REQUEST FOR PRODUCTION NO. 49.**

Any and all DOCUMENTS which constitute refer or relate to COMMUNICATIONS between Norio Niwa, on the one hand, and any other PERSON (S), on the other hand, concerning PLAINTIFF.

**REQUEST FOR PRODUCTION NO. 50.**

Any and all DOCUMENTS which constitute refer or relate to COMMUNICATIONS between Alf Andersen, on the one hand, and any other PERSON (S), on the other hand, concerning PLAINTIFF.

EXHIBIT __F__
PAGE __66__

13

PLAINTIFF'S REQUEST FOR PRODUCTION OF DOCUMENTS TO DEFENDANT EPSON AMERICA, INC., SET ONE

**REQUEST FOR PRODUCTION NO. 51.**

Any and all DOCUMENTS which constitute refer or relate to COMMUNICATIONS between Liz Leung, on the one hand, and any other PERSON (S), on the other hand, concerning PLAINTIFF.

**REQUEST FOR PRODUCTION NO. 52.**

Any and all DOCUMENTS which constitute refer or relate to COMMUNICATIONS between Agustin Chacon, on the one hand, and any other PERSON (S), on the other hand, concerning PLAINTIFF.

**REQUEST FOR PRODUCTION NO. 53.**

Any and all DOCUMENTS which constitute refer or relate to COMMUNICATIONS between Keith Kratzberg, on the one hand, and any other PERSON (S), on the other hand, concerning PLAINTIFF.

**REQUEST FOR PRODUCTION NO. 54.**

Any and all DOCUMENTS which constitute refer or relate to COMMUNICATIONS between Marcelo San Pedro, on the one hand, and any other PERSON (S), on the other hand, concerning PLAINTIFF.

**REQUEST FOR PRODUCTION NO. 55.**

Any and all DOCUMENTS which constitute refer or relate to COMMUNICATIONS between Pedro Carmona, on the one hand, and any other PERSON (S), on the other hand, concerning PLAINTIFF.

**REQUEST FOR PRODUCTION NO. 56.**

Any and all DOCUMENTS which constitute refer or relate to COMMUNICATIONS between Andrea Zoeckler, on the one hand, and any other PERSON (S), on the other hand, concerning PLAINTIFF.

EXHIBIT __F__
PAGE __67__

14

**REQUEST FOR PRODUCTION NO. 57.**

Any and all DOCUMENTS which constitute refer or relate to COMMUNICATIONS between SEIJI HANAOKA, on the one hand, and any other PERSON (S), on the other hand, concerning YIELD, YIELD GAP OR INITIALIZATION GAP.

**REQUEST FOR PRODUCTION NO. 58.**

Any and all DOCUMENTS which constitute refer or relate to COMMUNICATIONS between Minoru Usui, on the one hand, and any other PERSON (S), on the other hand, concerning YIELD, YIELD GAP OR INITIALIZATION GAP.

**REQUEST FOR PRODUCTION NO. 59.**

Any and all DOCUMENTS which constitute refer or relate to COMMUNICATIONS between Yasuo Hattori, on the one hand, and any other PERSON (S), on the other hand, concerning YIELD, YIELD GAP OR INITIALIZATION GAP.

**REQUEST FOR PRODUCTION NO. 60.**

Any and all DOCUMENTS which constitute refer or relate to COMMUNICATIONS between Masayuki Morozumi, on the one hand, and any other PERSON (S), on the other hand, concerning YIELD, YIELD GAP OR INITIALIZATION GAP.

**REQUEST FOR PRODUCTION NO. 61.**

Any and all DOCUMENTS which constitute refer or relate to COMMUNICATIONS between Kenji Kubota, on the one hand, and any other PERSON (S), on the other hand, concerning YIELD, YIELD GAP OR INITIALIZATION GAP.

**REQUEST FOR PRODUCTION NO. 62.**

Any and all DOCUMENTS which constitute refer or relate to COMMUNICATIONS between Hiroshi Komatsu, on the one hand, and any other PERSON (S), on the other hand, concerning YIELD, YIELD GAP OR INITIALIZATION GAP.

EXHIBIT F
PAGE 68

15

**REQUEST FOR PRODUCTION NO. 63.**

Any and all DOCUMENTS which constitute refer or relate to COMMUNICATIONS between  Seiichi Hirano, on the one hand, and any other PERSON (S), on the other hand, concerning YIELD, YIELD GAP OR INITIALIZATION GAP.

**REQUEST FOR PRODUCTION NO. 64.**

Any and all DOCUMENTS which constitute refer or relate to COMMUNICATIONS between Toru Oguchi, on the one hand, and any other PERSON (S), on the other hand, concerning YIELD, YIELD GAP OR INITIALIZATION GAP.

**REQUEST FOR PRODUCTION NO. 65.**

Any and all DOCUMENTS which constitute refer or relate to COMMUNICATIONS between Akihiko Sakai, on the one hand, and any other PERSON (S), on the other hand, concerning YIELD, YIELD GAP OR INITIALIZATION GAP.

**REQUEST FOR PRODUCTION NO. 66.**

Any and all DOCUMENTS which constitute refer or relate to COMMUNICATIONS between Masayosh Shindo, on the one hand, and any other PERSON (S), on the other hand, concerning YIELD, YIELD GAP OR INITIALIZATION GAP.

**REQUEST FOR PRODUCTION NO. 67.**

Any and all DOCUMENTS which constitute refer or relate to COMMUNICATIONS between Kenji Uchida, on the one hand, and any other PERSON (S), on the other hand, concerning YIELD, YIELD GAP OR INITIALIZATION GAP.

**REQUEST FOR PRODUCTION NO. 68.**

Any and all DOCUMENTS which constitute refer or relate to COMMUNICATIONS between Yoshiro Yamamoto, on the one hand, and any other PERSON (S), on the other hand, concerning YIELD, YIELD GAP OR INITIALIZATION GAP.

EXHIBIT __F__
PAGE __69__

PLAINTIFF'S REQUEST FOR PRODUCTION OF DOCUMENTS TO DEFENDANT EPSON AMERICA, INC., SET ONE

**REQUEST FOR PRODUCTION NO. 69.**

Any and all DOCUMENTS which constitute refer or relate to COMMUNICATIONS between Tatsuhiro Ishikawa, on the one hand, and any other PERSON (S), on the other hand, concerning YIELD, YIELD GAP OR INITIALIZATION GAP.

**REQUEST FOR PRODUCTION NO. 70.**

Any and all DOCUMENTS which constitute refer or relate to COMMUNICATIONS between Kenji Miyahara, on the one hand, and any other PERSON (S), on the other hand, concerning YIELD, YIELD GAP OR INITIALIZATION GAP.

**REQUEST FOR PRODUCTION NO. 71.**

Any and all DOCUMENTS which constitute refer or relate to COMMUNICATIONS between Torao Yajima, on the one hand, and any other PERSON (S), on the other hand, concerning YIELD, YIELD GAP OR INITIALIZATION GAP.

**REQUEST FOR PRODUCTION NO. 72.**

Any and all DOCUMENTS which constitute refer or relate to COMMUNICATIONS between Masataka Kamiyanagi, on the one hand, and any other PERSON (S), on the other hand, concerning YIELD, YIELD GAP OR INITIALIZATION GAP.

**REQUEST FOR PRODUCTION NO. 73.**

Any and all DOCUMENTS which constitute refer or relate to COMMUNICATIONS between Norijuki Hama, on the one hand, and any other PERSON (S), on the other hand, concerning YIELD, YIELD GAP OR INITIALIZATION GAP.

**REQUEST FOR PRODUCTION NO. 74.**

Any and all DOCUMENTS which constitute refer or relate to COMMUNICATIONS between Shuji Aruga, on the one hand, and any other PERSON (S), on the other hand, concerning YIELD, YIELD GAP OR INITIALIZATION GAP.

EXHIBIT F
PAGE 70

17

**REQUEST FOR PRODUCTION NO. 75.**

Any and all DOCUMENTS which constitute refer or relate to COMMUNICATIONS between Noboru Ushijima, on the one hand, and any other PERSON (S), on the other hand, concerning YIELD, YIELD GAP OR INITIALIZATION GAP.

**REQUEST FOR PRODUCTION NO. 76.**

Any and all DOCUMENTS which constitute refer or relate to COMMUNICATIONS between Mitsuaki Maruyama, on the one hand, and any other PERSON (S), on the other hand, concerning YIELD, YIELD GAP OR INITIALIZATION GAP.

**REQUEST FOR PRODUCTION NO. 77.**

Any and all DOCUMENTS which constitute refer or relate to COMMUNICATIONS between Kazuki Ito, on the one hand, and any other PERSON (S), on the other hand, concerning YIELD, YIELD GAP OR INITIALIZATION GAP.

**REQUEST FOR PRODUCTION NO. 78.**

Any and all DOCUMENTS which constitute refer or relate to COMMUNICATIONS between Kaname Miyazawa, on the one hand, and any other PERSON (S), on the other hand, concerning YIELD, YIELD GAP OR INITIALIZATION GAP.

**REQUEST FOR PRODUCTION NO. 79.**

Any and all DOCUMENTS which constitute refer or relate to COMMUNICATIONS between Tadaaki Hagata, on the one hand, and any other PERSON (S), on the other hand, concerning YIELD, YIELD GAP OR INITIALIZATION GAP.

**REQUEST FOR PRODUCTION NO. 80.**

Any and all DOCUMENTS which constitute refer or relate to COMMUNICATIONS between Koichi Endo, on the one hand, and any other PERSON (S), on the other hand, concerning YIELD, YIELD GAP OR INITIALIZATION GAP.

EXHIBIT ____F

PAGE ____71

PLAINTIFF'S REQUEST FOR PRODUCTION OF DOCUMENTS TO DEFENDANT EPSON AMERICA, INC., SET ONE

**REQUEST FOR PRODUCTION NO. 81.**

Any and all DOCUMENTS which constitute refer or relate to COMMUNICATIONS between Hideki Kitamura, on the one hand, and any other PERSON (S), on the other hand, concerning YIELD, YIELD GAP OR INITIALIZATION GAP.

**REQUEST FOR PRODUCTION NO. 82.**

Any and all DOCUMENTS which constitute refer or relate to COMMUNICATIONS between Yanagisawa, on the one hand, and any other PERSON (S), on the other hand, concerning YIELD, YIELD GAP OR INITIALIZATION GAP.

**REQUEST FOR PRODUCTION NO. 83.**

Any and all DOCUMENTS which constitute refer or relate to COMMUNICATIONS between T. Saruta, on the one hand, and any other PERSON (S), on the other hand, concerning YIELD, YIELD GAP OR INITIALIZATION GAP.

**REQUEST FOR PRODUCTION NO. 84.**

Any and all DOCUMENTS which constitute refer or relate to COMMUNICATIONS between Alfredo Soto, on the one hand, and any other PERSON (S), on the other hand, concerning YIELD, YIELD GAP OR INITIALIZATION GAP.

**REQUEST FOR PRODUCTION NO. 85.**

Any and all DOCUMENTS which constitute refer or relate to COMMUNICATIONS between Oscar Garcia, on the one hand, and any other PERSON (S), on the other hand, concerning YIELD, YIELD GAP OR INITIALIZATION GAP.

**REQUEST FOR PRODUCTION NO. 86.**

Any and all DOCUMENTS which constitute, refer, or relate to COMMUNICATIONS between Alberto Arredondo on the one hand, and any other PERSON (S), on the other hand, concerning YIELD, YIELD GAP OR INITIALIZATION GAP.

EXHIBIT __F__

PAGE __72__

19

**REQUEST FOR PRODUCTION NO. 87.**

Any and all DOCUMENTS which constitute refer or relate to COMMUNICATIONS between Judith Bain, on the one hand, and any other PERSON (S), on the other hand, concerning YIELD, YIELD GAP OR INITIALIZATION GAP.

**REQUEST FOR PRODUCTION NO. 88.**

Any and all DOCUMENTS which constitute refer or relate to COMMUNICATIONS between Mike Isgrig, on the one hand, and any other PERSON (S), on the other hand, concerning YIELD, YIELD GAP OR INITIALIZATION GAP.

**REQUEST FOR PRODUCTION NO. 89.**

Any and all DOCUMENTS which constitute refer or relate to COMMUNICATIONS between Tetsuya Mizuno, on the one hand, and any other PERSON (S), on the other hand, concerning YIELD, YIELD GAP OR INITIALIZATION GAP.

**REQUEST FOR PRODUCTION NO. 90.**

Any and all DOCUMENTS which constitute refer or relate to COMMUNICATIONS between Miko Sion, on the one hand, and any other PERSON (S), on the other hand, concerning YIELD, YIELD GAP OR INITIALIZATION GAP.

**REQUEST FOR PRODUCTION NO. 91.**

Any and all DOCUMENTS which constitute refer or relate to COMMUNICATIONS between Genevieve Walker, on the one hand, and any other PERSON (S), on the other hand, concerning YIELD, YIELD GAP OR INITIALIZATION GAP.

**REQUEST FOR PRODUCTION NO. 92.**

Any and all DOCUMENTS which constitute refer or relate to COMMUNICATIONS between Alan Pound, on the one hand, and any other PERSON (S), on the other hand, concerning YIELD, YIELD GAP OR INITIALIZATION GAP.

EXHIBIT E
PAGE 73

20

**REQUEST FOR PRODUCTION NO. 93.**

Any and all DOCUMENTS which constitute refer or relate to COMMUNICATIONS
between Per Tonnesen, on the one hand, and any other PERSON (S), on the other hand,
concerning YIELD, YIELD GAP OR INITIALIZATION GAP.

**REQUEST FOR PRODUCTION NO. 94.**

Any and all DOCUMENTS which constitute refer or relate to COMMUNICATIONS
between Eugene Kunde, on the one hand, and any other PERSON (S), on the other hand,
concerning YIELD, YIELD GAP OR INITIALIZATION GAP.

**REQUEST FOR PRODUCTION NO. 95.**

Any and all DOCUMENTS which constitute refer or relate to COMMUNICATIONS
between Norio Niwa, on the one hand, and any other PERSON (S), on the other hand,
concerning YIELD, YIELD GAP OR INITIALIZATION GAP.

**REQUEST FOR PRODUCTION NO. 96.**

Any and all DOCUMENTS which constitute refer or relate to COMMUNICATIONS
between Alf Andersen, on the one hand, and any other PERSON (S), on the other hand,
concerning YIELD, YIELD GAP OR INITIALIZATION GAP.

**REQUEST FOR PRODUCTION NO. 97.**

Any and all DOCUMENTS which constitute refer or relate to COMMUNICATIONS
between Liz Leung, on the one hand, and any other PERSON (S), on the other hand, concerning
YIELD, YIELD GAP OR INITIALIZATION GAP.

**REQUEST FOR PRODUCTION NO. 98.**

Any and all DOCUMENTS which constitute refer or relate to COMMUNICATIONS
between Agustin Chacon, on the one hand, and any other PERSON (S), on the other hand,
concerning YIELD, YIELD GAP OR INITIALIZATION GAP.

EXHIBIT F
PAGE 74

21

**REQUEST FOR PRODUCTION NO. 99.**

Any and all DOCUMENTS which constitute refer or relate to COMMUNICATIONS between Dean Fleischhauer, on the one hand, and any other PERSON (S), on the other hand, concerning YIELD, YIELD GAP OR INITIALIZATION GAP.

**REQUEST FOR PRODUCTION NO. 100.**

Any and all DOCUMENTS which constitute refer or relate to COMMUNICATIONS between Keith Kratzberg, on the one hand, and any other PERSON (S), on the other hand, concerning YIELD, YIELD GAP OR INITIALIZATION GAP.

**REQUEST FOR PRODUCTION NO. 101.**

Any and all DOCUMENTS which constitute refer or relate to COMMUNICATIONS between Marcelo San Pedro, on the one hand, and any other PERSON (S), on the other hand, concerning YIELD, YIELD GAP OR INITIALIZATION GAP.

**REQUEST FOR PRODUCTION NO. 102.**

Any and all DOCUMENTS which constitute refer or relate to COMMUNICATIONS between Pedro Carmona, on the one hand, and any other PERSON (S), on the other hand, concerning YIELD, YIELD GAP OR INITIALIZATION GAP.

**REQUEST FOR PRODUCTION NO. 103.**

Any and all DOCUMENTS which constitute  refer or relate to COMMUNICATIONS between Donna D. Melby, on the one hand, and Eric Yuhl, on the other hand.

**REQUEST FOR PRODUCTION NO. 104.**

Any and all DOCUMENTS which constitute  refer or relate to COMMUNICATIONS between Donna D. Melby, on the one hand, and Catherine Conway, on the other hand.

EXHIBIT __E__

PAGE __75__

22

**REQUEST FOR PRODUCTION NO. 105.**

Any and all DOCUMENTS which constitute  refer or relate to COMMUNICATIONS between Donna D. Melby, on the one hand, and William E. Stoner, on the other hand.

**REQUEST FOR PRODUCTION NO. 106.**

Any and all DOCUMENTS which constitute refer or relate to COMMUNICATIONS between Agustin Chacon or Dean Fleischhauer, on the one hand, and PLAINTIFF, on the other hand.

**REQUEST FOR PRODUCTION NO. 107.**

Any and all DOCUMENTS which constitute refer or relate to a job description reflecting the duties of PLAINTIFF while employed by EPSON.

**REQUEST FOR PRODUCTION NO. 108.**

Any and all DOCUMENTS which constitute refer or relate to a job description reflecting the duties of Alan Pound while employed by EPSON.

**REQUEST FOR PRODUCTION NO. 109.**

Any and all DOCUMENTS which constitute refer or relate to a job description reflecting the duties of Controller for EPSON while employed by EPSON.

**REQUEST FOR PRODUCTION NO. 110.**

Any and all DOCUMENTS which constitute refer or relate to a job description reflecting the duties of Mike Formica while employed by EPSON.

**REQUEST FOR PRODUCTION NO. 111.**

Any and all DOCUMENTS which constitute refer or relate to a job description reflecting the duties of Tax Manager while employed by EPSON.

**REQUEST FOR PRODUCTION NO. 112.**

Any and all DOCUMENTS which constitute refer or relate to a job description reflecting the duties of Steve Coy while employed by EPSON.

23

EXHIBIT F
PAGE 76

**REQUEST FOR PRODUCTION NO. 113.**

Any and all DOCUMENTS which constitute refer or relate to a job description reflecting the duties of Andrea Zoeckler while employed by EPSON.

**REQUEST FOR PRODUCTION NO. 114.**

Any and all DOCUMENTS which constitute refer or relate to a job description reflecting the duties of Francisco Juarez while employed by EPSON.

**REQUEST FOR PRODUCTION NO. 115.**

Any and all DOCUMENTS which constitute refer or relate to a job description reflecting the duties of Pedro Carmona while employed by EPSON.

**REQUEST FOR PRODUCTION NO. 116.**

Any and all DOCUMENTS which constitute refer or relate to a job description reflecting the duties of Marcelo San Pedro while employed by EPSON.

**REQUEST FOR PRODUCTION NO. 117.**

Any and all DOCUMENTS which constitute refer or relate to COMMUNICATIONS between Alf Andersen, on the one hand, and PLAINTIFF, on the other hand, which are not subject to the attorney client privilege.

**REQUEST FOR PRODUCTION NO. 118.**

Any and all DOCUMENTS which evidence refer or relate to the FINANCIAL SCANDAL.

**REQUEST FOR PRODUCTION NO. 119.**

Any and all DOCUMENTS which evidence refer or relate to YOUR contention that PLAINTIFF was "responsible for subsidiaries" in which the FINANCIAL SCANDAL occurred.

EXHIBIT \_\_ F

PAGE \_\_\_ 77

24

**REQUEST FOR PRODUCTION NO. 120.**

Any and all DOCUMENTS which evidence refer or relate to YOUR investigation of the FINANCIAL SCANDAL.

**REQUEST FOR PRODUCTION NO. 121.**

Any and all DOCUMENTS which constitute audit or consulting services invoices for work related to the FINANCIAL SCANDAL.

**REQUEST FOR PRODUCTION NO. 122.**

Any and all DOCUMENTS which constitute audit or consulting services invoices for work related to the FINANCIAL SCANDAL in the United States.

**REQUEST FOR PRODUCTION NO. 123.**

Any and all DOCUMENTS which constitute audit or consulting services invoices for work related to the FINANCIAL SCANDAL in Mexico.

**REQUEST FOR PRODUCTION NO. 124.**

Any and all DOCUMENTS which constitute audit or consulting services invoices for work related to the FINANCIAL SCANDAL in Brazil.

**REQUEST FOR PRODUCTION NO. 125.**

Any and all DOCUMENTS which constitute audit or consulting services invoices dated January 1, 2007 to the present date for work related to the FINANCIAL SCANDAL.

**REQUEST FOR PRODUCTION NO. 126.**

Any and all DOCUMENTS which constitute audit or consulting services invoices for work related to the FINANCIAL SCANDAL in any country involved in the FINANCIAL SCANDAL including, but not limited to financial/accounting and ERP work.

EXHIBIT ___E___

PAGE ___78___

**PLAINTIFF'S REQUEST FOR PRODUCTION OF DOCUMENTS TO DEFENDANT EPSON AMERICA, INC., SET ONE**

**REQUEST FOR PRODUCTION NO. 127.**

Any and all DOCUMENTS which constitute COMMUNICATIONS between John Lang, on the one hand, and Price Waterhouse, on the other hand, relating to the FINANCIAL SCANDAL.

**REQUEST FOR PRODUCTION NO. 128.**

Any and all DOCUMENTS which constitute COMMUNICATIONS between EPSON or SEC, on the one hand, and any other PERSONS, on the other hand, relating to the FINANCIAL SCANDAL.

**REQUEST FOR PRODUCTION NO. 129.**

Any and all DOCUMENTS which evidence refer or relate to YOUR contention that PLAINTIFF was terminated as a result of the FINANCIAL SCANDAL.

**REQUEST FOR PRODUCTION NO. 130.**

Any and all DOCUMENTS which identify all PERSONS purportedly terminated by EPSON or SEC as a result of the FINANCIAL SCANDAL.

**REQUEST FOR PRODUCTION NO. 131.**

Any and all DOCUMENTS which constitute the personnel files of all PERSONS purportedly terminated by EPSON or SEC as a result of the FINANCIAL SCANDAL.

**REQUEST FOR PRODUCTION NO. 132.**

Any and all DOCUMENTS which constitute Press releases from EPSON or SEC related to the FINANCIAL SCANDAL.

**REQUEST FOR PRODUCTION NO. 133.**

Any and all DOCUMENTS which evidence refer or relate to the FINANCIAL SCANDAL filed by EPSON or SEC with any governmental agency of the United States including the Securities and Exchange Commission and including without limitation forms 8-K, 10-K, and 10-Q.

EXHIBIT F
PAGE 79

**PLAINTIFF'S REQUEST FOR PRODUCTION OF DOCUMENTS TO DEFENDANT EPSON AMERICA, INC., SET ONE**

**REQUEST FOR PRODUCTION NO. 134.**

Any and all DOCUMENTS which evidence refer or relate to the FINANCIAL SCANDAL filed by EPSON or SEC with any governmental agency of any country other than the United States in which the financial scandal purportedly occurred including the Japanese Stock Exchange.

**REQUEST FOR PRODUCTION NO. 135.**

Any and all DOCUMENTS which evidence refer or relate to the FINANCIAL SCANDAL.

**REQUEST FOR PRODUCTION NO. 136.**

Any and all DOCUMENTS which constitute the report issued by the SEC internal investigative committee headed by President Minoru Usui as to the causes of the FINANCIAL SCANDAL and measures to be taken to avoid a recurrence.

**REQUEST FOR PRODUCTION NO. 137.**

Any and all DOCUMENTS which identify the members of the SEC internal investigative committee headed by President Minoru Usui as to the causes of the FINANCIAL SCANDAL.

**REQUEST FOR PRODUCTION NO. 138.**

Any and all DOCUMENTS related to the SEC report issued by the internal investigative committee headed by President Minoru Usui as to the causes of the FINANCIAL SCANDAL and measures to be taken to avoid a recurrence.

**REQUEST FOR PRODUCTION NO. 139.**

Any and all DOCUMENTS which identify the "external experts commissioned by Epson's regional headquarters for the Americas" to initially investigate the FINANCIAL SCANDAL.

EXHIBIT __F__
PAGE __8D__

PLAINTIFF'S REQUEST FOR PRODUCTION OF DOCUMENTS TO DEFENDANT EPSON AMERICA, INC., SET ONE

**REQUEST FOR PRODUCTION NO. 140.**

Any and all DOCUMENTS which constitute the initial investigation report by the external experts commissioned by Epson's regional headquarter for the Americas to initially investigate the FINANCIAL SCANDAL.

**REQUEST FOR PRODUCTION NO. 141.**

Any and all DOCUMENTS which identify the three staff members directly involved in the FINANCIAL SCANDAL with occurred in the Brazilian subsidiary companies and who were t terminated as a result of that direct involvement.

**REQUEST FOR PRODUCTION NO. 142.**

Any and all DOCUMENTS which constitute EPSONS or SEC's internal audits of the Brazilian subsidiary companies involved in the FINANCIAL SCANDAL for a period of five years prior to the discovery of the FINANCIAL SCANDAL.

**REQUEST FOR PRODUCTION NO. 143.**

Any and all DOCUMENTS which identify the staff member directly involved in the FINANCIAL SCANDAL with occurred in the Mexican subsidiary company and who was terminated as a result of that direct involvement.

**REQUEST FOR PRODUCTION NO. 144.**

Any and all DOCUMENTS which constitute EPSONS or SEC's internal audits of the Mexican subsidiary company involved in the financial scandal for a period of five years prior to the discovery of the financial scandal.

**REQUEST FOR PRODUCTION NO. 145.**

Any and all DOCUMENTS which relate to and identify the manner in which EPSON or SEC's audits conducted by the internal Audit Office were strengthened to prevent future financial scandals.

EXHIBIT F
PAGE 81

PLAINTIFF'S REQUEST FOR PRODUCTION OF DOCUMENTS TO DEFENDANT EPSON AMERICA, INC., SET ONE

**REQUEST FOR PRODUCTION NO. 146.**

Any and all DOCUMENTS which relate to and identify the manner in which EPSON or SEC finance and accounting global networks were strengthened to prevent future FINANCIAL SCANDALS.

**REQUEST FOR PRODUCTION NO. 147.**

Any and all DOCUMENTS which relate to and identify the manner in which EPSON or SEC corporate control to supplement regional management was strengthened to prevent future FINANCIAL SCANDALS.

**REQUEST FOR PRODUCTION NO. 148.**

Any and all DOCUMENTS which relate to and identify the manner in which EPSON or SEC improved its risk assessment and efforts to enhance internal control systems over financial reporting to prevent future FINANCIAL SCANDALS.

**REQUEST FOR PRODUCTION NO. 149.**

Any and all DOCUMENTS which relate to EPSON or SEC's "efforts" as expressed in the press release of March 31, 2009: "Epson [defined as SEC] will concentrate its efforts on subsidiary companies where it is required by law to conduct management assessments and that are subject to internal control audits, and subsidiary companies where financial reporting may present a risk to internal control systems" to prevent future FINANCIAL SCANDALS.

**REQUEST FOR PRODUCTION NO. 150.**

Any and all DOCUMENTS which relate to EPSON or SEC's "efforts" as expressed in the press release of March 31, 2009: "Epson [defined as SEC in the Press Release] will concentrate its efforts on subsidiary companies where it is required by law to conduct management assessments and that are subject to internal control audits, and subsidiary companies where financial reporting may present a risk to internal control systems" to prevent future FINANCIAL SCANDALS.

EXHIBIT _F_
PAGE _82_

29

**REQUEST FOR PRODUCTION NO. 151.**

Any and all DOCUMENTS related to the actions described in the following SEC press release: "Epson [SEC] has dismissed those directly responsible for the improper accounting practices at its Brazilian and Mexican subsidiaries, and has implemented punitive measures against other related staff."

**REQUEST FOR PRODUCTION NO. 152.**

Any and all DOCUMENTS which relate to the punitive measures taken by EPSON or SEC against "other related staff" as a result of the FINANCIAL SCANDAL

**REQUEST FOR PRODUCTION NO. 153.**

Any and all DOCUMENTS which establish or tend to establish that PLAINTIFF was "directly responsible for the improper accounting practices at [the] Brazilian and Mexican subsidiaries" described as the FINANCIAL SCANDAL.

**REQUEST FOR PRODUCTION NO. 154.**

Any and all DOCUMENTS which establish or tend to establish that PLAINTIFF was in any manner directly responsible for the improper accounting practices at [the] Brazilian and Mexican subsidiaries described as the FINANCIAL SCANDAL.

**REQUEST FOR PRODUCTION NO. 155.**

Any and all DOCUMENTS which related to the termination Joe Cirillo from EPSON's employ.

**REQUEST FOR PRODUCTION NO. 156.**

Any and all DOCUMENTS which describe the organization of the accounting function for EPSON's Latin America division dated from January 1, 2004 to the present date.

**REQUEST FOR PRODUCTION NO. 157.**

Any and all DOCUMENTS which describe the financial controls of the accounting function for EPSON's Latin America division dated from January 1, 2004 to the present date.

30

EXHIBIT F
PAGE 83

**REQUEST FOR PRODUCTION NO. 158.**

Any and all DOCUMENTS which describe the manner in which the accounting function operates for EPSON's Latin America division and subsidiaries dated from January 1, 2004 to the present date.

**REQUEST FOR PRODUCTION NO. 159.**

Any and all DOCUMENTS which describe the work flow of the accounting function for EPSON's Latin America division and subsidiaries dated from January 1, 2004 to the present date.

**REQUEST FOR PRODUCTION NO. 160.**

Any and all DOCUMENTS which evidence refer or relate to EPSON's Performance Unit Plan ("PUP") in effect between 2001, and 2008

**REQUEST FOR PRODUCTION NO. 161.**

Any and all DOCUMENTS which evidence refer or relate to EPSON's payment of deferred compensation to Pedro Carmona pursuant to a Performance Unit Plan in 2001.

**REQUEST FOR PRODUCTION NO. 162.**

Any and all DOCUMENTS which evidence refer or relate to EPSON's payment of deferred compensation to Pedro Carmona pursuant to a Performance Unit Plan in 2002.

**REQUEST FOR PRODUCTION NO. 163.**

Any and all DOCUMENTS which evidence refer or relate to EPSON's payment of deferred compensation to Pedro Carmona pursuant to a Performance Unit Plan in 2003.

**REQUEST FOR PRODUCTION NO. 164.**

Any and all DOCUMENTS which evidence refer or relate to EPSON's payment of deferred compensation to Marcelo San Pedro pursuant to a Performance Unit Plan in 2001.

EXHIBIT ___F
PAGE ___84

PLAINTIFF'S REQUEST FOR PRODUCTION OF DOCUMENTS TO DEFENDANT EPSON AMERICA, INC., SET ONE

**REQUEST FOR PRODUCTION NO. 165.**

Any and all DOCUMENTS which evidence refer or relate to EPSON's payment of deferred compensation to Marcelo San Pedro pursuant to a Performance Unit Plan in 2002.

**REQUEST FOR PRODUCTION NO. 166.**

Any and all DOCUMENTS which evidence refer or relate to EPSON's payment of deferred compensation to Marcelo San Pedro pursuant to a Performance Unit Plan in 2003.

**REQUEST FOR PRODUCTION NO. 167.**

Any and all DOCUMENTS which evidence refer or relate to EPSON's payment of deferred compensation to Pedro Carmona in the United States pursuant to a Performance Unit Plan in 2001.

**REQUEST FOR PRODUCTION NO. 168.**

Any and all DOCUMENTS which evidence refer or relate to EPSON's payment of deferred compensation to Pedro Carmona in the United States pursuant to a Performance Unit Plan in 2002.

**REQUEST FOR PRODUCTION NO. 169.**

Any and all DOCUMENTS which evidence refer or relate to EPSON's payment of deferred compensation to Pedro Carmona in the United States pursuant to a Performance Unit Plan in 2003

**REQUEST FOR PRODUCTION NO. 170.**

Any and all DOCUMENTS which evidence refer or relate to EPSON's payment of deferred compensation to Marcelo San Pedro in the United States pursuant to a Performance Unit Plan in 2001.

EXHIBIT F
PAGE 85

PLAINTIFF'S REQUEST FOR PRODUCTION OF DOCUMENTS TO DEFENDANT EPSON AMERICA, INC., SET ONE

**REQUEST FOR PRODUCTION NO. 171.**

Any and all DOCUMENTS which evidence refer or relate to EPSON's payment of deferred compensation to Marcelo San Pedro in the United States pursuant to a Performance Unit Plan in 2002.

**REQUEST FOR PRODUCTION NO. 172.**

Any and all DOCUMENTS which evidence refer or relate to EPSON's payment of deferred compensation to Marcelo San Pedro in the United States pursuant to a Performance Unit Plan in 2003.

**REQUEST FOR PRODUCTION NO. 173.**

Any and all DOCUMENTS which evidence refer or relate to EPSON's Performance Unit Plan, sometimes referred to as "PUP," in effect in 2001 through 2009.

**REQUEST FOR PRODUCTION NO. 174.**

Any and all DOCUMENTS which constitute legal opinions regarding EPSON's payment of deferred compensation to Marcelo San Pedro in the United States pursuant to a Performance Unit Plan in 2001, 2002 or 2003.

**REQUEST FOR PRODUCTION NO. 175.**

Any and all DOCUMENTS which constitute legal opinions regarding EPSON's payment of deferred compensation to Pedro Carmona in the United States pursuant to a Performance Unit Plan in 2001, 2002 or 2003.

**REQUEST FOR PRODUCTION NO. 176.**

Any and all DOCUMENTS which constitute the original United States Performance Unit Plan.

**REQUEST FOR PRODUCTION NO. 177.**

Any and all DOCUMENTS related to the original United States Performance Unit Plan including presentations.

EXHIBIT _F_

PAGE _86_

33

**REQUEST FOR PRODUCTION NO. 178.**

Any and all DOCUMENTS which constitute the original Latin America Performance Unit Plan.

**REQUEST FOR PRODUCTION NO. 179.**

Any and all DOCUMENTS related to the original Latin America Performance Unit Plan, including drafts of the proposed original Latin America Performance Unit Plan.

**REQUEST FOR PRODUCTION NO. 180.**

Any and all DOCUMENTS which constitute e-mails related to the United States or Latin America Performance Unit Plan dated January 1, 2000 to the present date between or among Genevieve Walker, John Lang, Alan Pound, Mike Formica, Mr. Kitamura, Mr. Mizuno, Mr. Norio Niwa, Mr. Hirano, Dean Fleischhauer, Mr. Sakai, Steve Coy, and Michele Hoff.

**REQUEST FOR PRODUCTION NO. 181.**

Any and all DOCUMENTS which constitute e-mails to or from Genevieve Walker dated January 1, 2000 to the present date related to the United States or Latin America Performance Unit Plan.

**REQUEST FOR PRODUCTION NO. 182.**

Any and all DOCUMENTS which constitute e-mails to or from John Lang dated January 1, 2000 to the present date related to the United States or Latin America Performance Unit Plan.

**REQUEST FOR PRODUCTION NO. 183.**

Any and all DOCUMENTS which constitute e-mails to or from Alan Pound dated January 1, 2000 to the present date related to the United States or Latin America Performance Unit Plan.



EXHIBIT ___F___
PAGE ___87___

34

**REQUEST FOR PRODUCTION NO. 184.**

Any and all DOCUMENTS which constitute e-mails to or from Mike Formica dated January 1, 2000 to the present date related to the United States or Latin America Performance Unit Plan.

**REQUEST FOR PRODUCTION NO. 185.**

Any and all DOCUMENTS which constitute e-mails to or from Mr. Kitamura dated January 1, 2000 to the present date related to the United States or Latin America Performance Unit Plan.

**REQUEST FOR PRODUCTION NO. 186.**

Any and all DOCUMENTS which constitute e-mails to or from Mr. Mizuno dated January 1, 2000 to the present date related to the United States or Latin America Performance Unit Plan.

**REQUEST FOR PRODUCTION NO. 187.**

Any and all DOCUMENTS which constitute e-mails to or from Norio Niwa dated January 1, 2000 to the present date related to the United States or Latin America Performance Unit Plan.

**REQUEST FOR PRODUCTION NO. 188.**

Any and all DOCUMENTS which constitute e-mails to or from Mr. Hirano dated January 1, 2000 to the present date related to the United States or Latin America Performance Unit Plan.

**REQUEST FOR PRODUCTION NO. 189.**

Any and all DOCUMENTS which constitute non-privileged e-mails to or from Judy Bain dated January 1, 2000 to the present date related to the United States or Latin America Performance Unit Plan.

EXHIBIT _F_

PAGE ___ 

**REQUEST FOR PRODUCTION NO. 190.**

Any and all DOCUMENTS which constitute non-privileged e-mails to or from Alf Andersen dated January 1, 2000 to the present date related to the United States or Latin America Performance Unit Plan.

**REQUEST FOR PRODUCTION NO. 191.**

Any and all DOCUMENTS which constitute e-mails to or from Dean Fleischhauer dated January 1, 2000 to the present date related to the United States or Latin America Performance Unit Plan.

**REQUEST FOR PRODUCTION NO. 192.**

Any and all DOCUMENTS which constitute e-mails to or from Mr. Sakai dated January 1, 2000 to the present date related to the United States or Latin America Performance Unit Plan.

**REQUEST FOR PRODUCTION NO. 193.**

Any and all DOCUMENTS which constitute e-mails to or from Steve Coy dated January 1, 2000 to the present date related to the United States or Latin America Performance Unit Plan.

**REQUEST FOR PRODUCTION NO. 194.**

Any and all DOCUMENTS which constitute e-mails to or from Michelle Hoff dated January 1, 2000 to the present date related to the United States or Latin America Performance Unit Plan.

**REQUEST FOR PRODUCTION NO. 195.**

Any and all DOCUMENTS which constitute a report created by a tax consulting service opining on the legality of paying PUP in the United States to Latin America Regional Directors, Marcelo San Pedro and/or Pedro Carmona, (or others), employed by local Epson subsidiaries in Argentina and Mexico, respectively.



EXHIBIT F
PAGE 89

36

**REQUEST FOR PRODUCTION NO. 196.**

Any and all DOCUMENTS which constitute opinions on the propriety of paying PUP in the United States to Latin America Regional Directors employed by local Epson subsidiaries in Argentina and Mexico, respectively.

**REQUEST FOR PRODUCTION NO. 197.**

Any and all DOCUMENTS which constitute emails related to the propriety of paying PUP in the United States to Latin America Regional Directors, Marcelo San Pedro and/or Pedro Carmona, (or others), employed by local Epson subsidiaries in Argentina and Mexico, respectively.

**REQUEST FOR PRODUCTION NO. 198.**

Any and all DOCUMENTS which constitute emails to or from Alan Pound related to the propriety of paying PUP in the United States to Latin America Regional Directors, Marcelo San Pedro and/or Pedro Carmona, (or others), employed by local Epson subsidiaries in Argentina and Mexico, respectively.

**REQUEST FOR PRODUCTION NO. 199.**

Any and all DOCUMENTS which constitute emails to or from John Lang related to the propriety of paying PUP in the United States to Latin America Regional Directors, Marcelo San Pedro and/or Pedro Carmona, (or others), employed by local Epson subsidiaries in Argentina and Mexico, respectively.

**REQUEST FOR PRODUCTION NO. 200.**

Any and all DOCUMENTS which constitute emails to or from Genevieve Walker related to the propriety of paying PUP in the United States to Latin America Regional Directors, Marcelo San Pedro and/or Pedro Carmona, (or others), employed by local Epson subsidiaries in Argentina and Mexico, respectively.

EXHIBIT __F__

PAGE __90__

37

**REQUEST FOR PRODUCTION NO. 201.**

Any and all DOCUMENTS which constitute emails to or from Mike Formica related to the propriety of paying PUP in the United States to Latin America Regional Directors, Marcelo San Pedro and/or Pedro Carmona, (or others), employed by local Epson subsidiaries in Argentina and Mexico, respectively.

**REQUEST FOR PRODUCTION NO. 202.**

Any and all DOCUMENTS which contain the signatures of PERSONS employed by EPSON or SEC approving payments of PUP into financial institution accounts located in the United States for Pedro Carmona or Marcelo San Pedro.

**REQUEST FOR PRODUCTION NO. 203.**

Any and all DOCUMENTS which constitute emails to or from Steve Coy related to the propriety of paying PUP in the United States to Latin America Regional Directors, Marcelo San Pedro and/or Pedro Carmona, (or others), employed by local Epson subsidiaries in Argentina and Mexico, respectively.

**REQUEST FOR PRODUCTION NO. 204.**

Any and all DOCUMENTS which constitute COMMUNICATIONS from John Lang related to United States or Latin America PUP.

**REQUEST FOR PRODUCTION NO. 205.**

Any and all DOCUMENTS which constitute certificates from John Lang related to United States or Latin America PUP.

**REQUEST FOR PRODUCTION NO. 206.**

Any and all DOCUMENTS which constitute COMMUNICATIONS from John Lang related to granting shares in United States or Latin America PUP.

EXHIBIT __F__
PAGE __91__

PLAINTIFF'S REQUEST FOR PRODUCTION OF DOCUMENTS TO DEFENDANT EPSON AMERICA, INC., SET ONE

**REQUEST FOR PRODUCTION NO. 207.**

Any and all DOCUMENTS which constitute COMMUNICATIONS from John Lang related to making payouts pursuant to United States or Latin America PUP.

**REQUEST FOR PRODUCTION NO. 208.**

Any and all DOCUMENTS which constitute COMMUNICATIONS from John Lang which constitute or are related to change notices for United States or Latin America PUP.

**REQUEST FOR PRODUCTION NO. 209.**

Any and all DOCUMENTS related to the promotion of Marcelo San Pedro and Pedro Carmona in 2002.

**REQUEST FOR PRODUCTION NO. 210.**

Any and all DOCUMENTS related to the promotion of Marcelo San Pedro and Pedro Carmona in 2002 which reference their new assignments as of 2002.

**REQUEST FOR PRODUCTION NO. 211.**

Any and all DOCUMENTS related to the promotion of Marcelo San Pedro and Pedro Carmona in 2002 which reference their being granted PUP as part of their compensation for their new role.

**REQUEST FOR PRODUCTION NO. 212.**

Any and all DOCUMENTS which constitute or are related to requests to Dean Fleischhauer for PUP payments to be made in the United States dated from January 1, 2007 to the present date.

**REQUEST FOR PRODUCTION NO. 213.**

Any and all DOCUMENTS related to the payments in the United States of PUP payments for Latin America regional directors dated from January 1, 2007 to the present date.

EXHIBIT F
PAGE 92

39

**REQUEST FOR PRODUCTION NO. 214.**

Any and all DOCUMENTS related to the setting up and operating of financial or bank accounts in the United States for the purpose making PUP payments to Latin America regional directors dated from January 1, 2007 to the present date.

**REQUEST FOR PRODUCTION NO. 215.**

Any and all DOCUMENTS which constitute COMMUNICATIONS between Dean Flieschhauer, on the one hand, and Latin America Regional Directors, on the other hand, related to PUP and or payments pursuant to PUP dated from January 1, 2007 to the present date.

**REQUEST FOR PRODUCTION NO. 216.**

Any and all DOCUMENTS which constitute COMMUNICATIONS or presentations related to PUP by John Lang, on the one hand, sent or made to SEC, on the other hand, during quarterly reviews or PUP meetings.

**REQUEST FOR PRODUCTION NO. 217.**

Any and all DOCUMENTS which constitute COMMUNICATIONS or presentations related to PUP by Genevieve Walker, on the one hand, sent or made to SEC, on the other hand, during quarterly reviews or PUP meetings.

**REQUEST FOR PRODUCTION NO. 218.**

Any and all DOCUMENTS which constitute COMMUNICATIONS or presentations related to PUP by John Lang, on the one hand, sent or made to Unite States or Latin America PUP participants, on the other hand, during quarterly reviews or PUP meetings.

**REQUEST FOR PRODUCTION NO. 219.**

Any and all DOCUMENTS which constitute COMMUNICATIONS or presentations related to PUP by Genevieve Walker, on the one hand, sent or made to United States or Latin America PUP participants, on the other hand, during quarterly reviews or PUP meetings.

EXHIBIT _F_

PAGE _95_

40

**REQUEST FOR PRODUCTION NO. 220.**

Any and all DOCUMENTS which constitute performance reviews of Latin American Accounting Managers for a period of five years prior to the FINANCIAL SCANDAL and to the present date whose responsibilities included Mexico and/or Brazil.

**REQUEST FOR PRODUCTION NO. 221.**

Any and all DOCUMENTS which constitute COMMUNICATIONS or presentations related to PUP by Genevieve Walker, on the one hand, sent or made to United States or Latin America PUP participants, on the other hand, during quarterly reviews or PUP meetings.

Date:   December 23, 2009

**YUHL STONER CARR LLP**

William E. Stoner
Attorneys for Plaintiff

EXHIBIT F

PAGE 94

41

**PROOF OF SERVICE**
**STATE OF CALIFORNIA, COUNTY OF LOS ANGELES**

   I, Elizabeth Dempsey, am employed in the aforesaid County, State of California. I am over the age of 18 years and not a party to the within action. My business address is 601 S. Figueroa St., Suite 2340, Los Angeles, California 90017.

   On December 23, 2009. I served the foregoing **PLAINTIFF'S REQUEST FOR PRODUCTION OF DOCUMENTS TO DEFENDANT EPSON AMERICA, INC., SET ONE** on the interested parties in this action as follows: SEE ATTACHED SERVICE LIST

   ☒ (BY PERSONAL SERVICE) [C.C.P. § 1011] Delivery of such envelope to the party (ies) listed on the attached service list was accomplished by Pro Courier to the receptionist or person in charge thereof between the hours of 9:00 a.m. and 5:00 p.m.

   ☐ (BY MAIL) [C.C.P. § 1013(a) (3)] I placed such envelope for collection, deposit, and mailing with the United States Postal Service following ordinary business practices at my place of business. I am readily familiar with the business practice of my place of business for collection and processing of correspondence for mailing with the United States Postal Service. Correspondence so collected and processed is deposited with the United States Postal Service that same day in the ordinary course of business. I am aware that, on motion of party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing an affidavit.

   ☐ (BY FACSIMILE) [C.C.P. § 1013(e)(f)] I caused a true copy of the document(s) to be transmitted via facsimile to a facsimile machine maintained by the person on whom the document(s) is served. Facsimile service has been agreed upon by the parties. I am aware that the service is complete at the time of transmission, but any period of notice shall be extended after service by facsimile transmission by two <u>court</u> days

   ☐ (BY OVERNIGHT DELIVERY) [C.C.P. § 1013(c)] I enclosed the documents in an envelope or package provided by an overnight delivery carrier and addressed to the persons at the addresses listed on the attached service list. I placed the envelope or package for collection and overnight delivery at an office or a regularly utilized drop box of the overnight delivery carrier.

   ☐ (BY ELECTRONIC SERVICE): Based on a court order or an agreement of the parties to accept service by electronic transmission, I caused the documents to be sent to the persons at the electronic notification addresses listed in the attached service list. I did not receive, within a reasonable time after the transmission, any electronic message, or other indication that the transmission was unsuccessful.

   ☒ (STATE) I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

   ☐ (FEDERAL) I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

   Executed on December 23, 2009 at Los Angeles, California.

Elizabeth Dempsey

EXHIBIT F
PAGE 95

42

1

## SERVICE LIST

2  Donna D. Melby
   Gina Guarienti Cook
3  PAUL, HASTINGS, JANOFSKY & WALKER LLP
   515 S. Flower St., 25th Flr.
4  Los Angeles, CA 90071-2228
   T: (213) 683-6000
5  F: (213) 627-0705
6  donnamelby@paulhastings.com
   ginacook@paulhastings.com
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

EXHIBIT F
PAGE 96

43

**PLAINTIFF'S REQUEST FOR PRODUCTION OF DOCUMENTS TO DEFENDANT EPSON AMERICA, INC., SET ONE**