CATHERINE A. CONWAY (SBN 98366)
cconway@akingump.com
REX S. HEINKE (SBN 66163)
rheinke@akingump.com
JOANNA H. KIM (SBN 183799)
jkim@akingump.com
**AKIN GUMP STRAUSS HAUER & FELD LLP**
2029 Century Park East, Suite 2400
Los Angeles, California 90067
Telephone:    310.229.1000
Facsimile:    310.229.1001

Attorneys for Plaintiffs CHRISTOPHER
O'SHEA, GISELE ROGERS, and JEFF ADAMS

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHRISTOPHER O'SHEA, GISELE ROGERS, and JEFF ADAMS, individually, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>EPSON AMERICA, INC., a California corporation; EPSON ACCESSORIES, INC., a California corporation; and DOES 1-100, inclusive,<br><br>Defendants. | Case No. CV09-8063 PSG (CWx)<br><br>[The Honorable Philip S. Gutierrez]<br><br>**OPPOSITION TO DEFENDANTS' MOTION TO DISQUALIFY AKIN GUMP STRAUSS HAUER & FELD LLP**<br><br>**REDACTED FOR PUBLIC FILING**<br><br>Date:    May 17, 2010<br>Time:    1:30 p.m.<br>Crtrm:   Roybal, 880 |

6460837

# **TABLE OF CONTENTS**

I.      INTRODUCTION ................................................................. 1

II.     FACTUAL BACKGROUND ................................................ 2

        A.      AG's Prior Representation Of Commelin ........................... 2

        B.      The Class Action............................................................ 2

III.    EPSON HAS REPEATEDLY AND UNSUCCESSFULLY MADE THE SAME PRIVILEGE ARGUMENTS THAT IT IS MAKING HERE. ........... 3

        A.      The State Court Denies Epson's Motion to Seal. ................. 3

        B.      The State Court Again Rejects Epson's Argument That The PowerPoint Is Privileged. ................................................ 4

        C.      This Court Denies Epson's Application to Quash Commelin's Deposition and Document Production. ................................. 5

        D.      Epson Makes Belated Objections; AG Confirms There is No Privilege. .................................................................... 5

IV.     THE MOTION TO DISQUALIFY SHOULD BE DENIED ........................ 7

        A.      Motions To Disqualify Are Strongly Disfavored. ................. 7

        B.      Epson Has Not Shown That The PowerPoint Is Attorney-Client Privileged Or Work Product. ............................................. 8

                1.      The PowerPoint is not attorney-client privileged. ............. 8

                2.      The PowerPoint is not work product........................... 12

        C.      The Other Entries On Andersen's "Privilege" Log Add Nothing. ..... 13

        D.      Epson Cannot Rely On A Nondisclosure Agreement To Gag Commelin Or Disqualify AG. ......................................... 15

        E.      AG's Purported Receipt Of Confidential Information From Commelin Provides No Factual Or Legal Basis For Disqualification. 16

                1.      Exposure to confidential information in the course of litigation is not grounds for disqualification. ........................... 16

                2.      Because Epson had no attorney client-relationship with AG, Rule 3-310(C)(1) does not apply................................ 17

                3.      AG obtained no unfair advantage through its relationship with Commelin. ......................................................... 20

                4.      AG's brief relationship with Commelin presents no conflict between AG and the class. ........................................ 21

F.      Epson's Belated Motion Should Be Denied. ........................................ 23

G.      This Court Has Alternative Means Of Protecting Disclosure Of
        Confidential Information. .................................................................... 24

V.   CONCLUSION............................................................................................ 25

# TABLE OF AUTHORITIES

## FEDERAL CASES

*A. Farber & Partners, Inc. v. Garber,*
234 F.R.D. 186 (C.D. Cal. 2006) ............................................ 12

*AMCO Ins. Co. v. Madera Quality Nut LLC,*
2006 WL 931437 (E.D. Cal. Apr. 11, 2006) ...........................8, 11

*Chambers v. Capital Cities/ABC,*
159 F.R.D. 441 (S.D.N.Y. 1995) ............................................ 15

*Clarke v. American Comm. Nat'l Bank,*
974 F.2d 127 (9th Cir. 1992) .................................................. 9

*Concat, LP v. Unilever, PLC,*
350 F. Supp. 2d 796 (N.D. Cal. 2004) ...................................... 7

*E.I. Du Pont de Nemours & Co. v. MacDermid, Inc.,*
2003 WL 23511729 (D. Conn. Aug. 10, 2003) .......................... 8

*Fisher v. U.S.,*
425 U.S. 391 (1976) ............................................................. 11

*Huston v. ICCMIC,*
179 F. Supp. 2d 1157 (C.D. Cal. 2001) .................................. 19

*In re Agent Orange Product Liab. Litig.,*
800 F.2d 14 (9th Cir. 1986) ................................................... 8

*In re Data Gen. Corp. Antitrust Litig.,*
1986 U.S. Dist. LEXIS 21923 (N.D. Cal. 1986) ........................ 21

*In re Grand Jury Subpoena (Mark Torf/Torf Environmental Management),*
357 F.3d 900 (9th Cir. 2004) .......................................... 12, 13

*In re JDS Uniphase Corp. Sec. Litig.,*
238 F. Supp. 2d 1127 (N.D. Cal. 2002) .................................. 15

*In re Marvel,*
251 B.R. 869 (Bankr. N.D. Cal. 2000) ................................ 7, 24

*Kramer v. Raymond Corp.,*
1992 WL 122856 (E.D. Pa. May 29, 1992) ......................... 13, 14

*Marceau v. I.B.E.W.,*
246 F.R.D. 610 (D. Ariz. 2007) .................................... 12, 13, 14

*Optyl Eyewear Fashion Int'l Corp. v. Style Cos.,*
760 F.2d 1045 (9th Cir. 1985) ................................................ 8

*Packard Bell NEC, Inc. v. Aztech Systems Ltd.,*
2001 WL 880957 (C.D. Cal. 2001) ....................................... 20

*Richards v. Jain,*
168 F. Supp. 2d 1195 (W.D. Wash. 2001) .............................. 22

*Salas v. United States,*
   695 F.2d 359 (9th Cir. 1982)................................................................... 9

*Skyy Spirits, LLC v. Rubyy, LLC,*
   2009 WL 3762418 (N.D. Cal. Nov. 9, 2009).......................................... 7, 24

*Televisa, S.A. de C.V. v. Univision Communs., Inc.,*
   635 F. Supp. 2d 1106 (C.D. Cal. 2009)................................................. 8

*United States v. Chevron Corp.,*
   1996 WL 264769 (N.D. Cal. Mar. 13, 1996)........................................11, 14

*United States v. ChevronTexaco Corp.,*
   241 F. Supp. 2d 1065 (N.D. Cal. 2002) ................................................11, 14

*United States v. Zolin,*
   491 U.S. 554 (1989)............................................................................. 9

*Visa U.S.A., Inc. v. First Data Corp.,*
   241 F. Supp. 2d 1100 (N.D. Cal. 2003) ................................................ 7

*Williams v. Trans World Airlines, Inc.,*
   588 F. Supp. 1037 (W.D. Mo. 1984)..................................................... 16

**STATE CASES**

*Bell v. 20th Century Ins. Co.,*
   212 Cal. App. 3d 194 (1989)................................................................ 16

*Buehler v. Sbardellati,*
   34 Cal. App. 4th 1527 (1995) .............................................................. 22

*Cariveau v. Halferty,*
   83 Cal. App. 4th 126 (2000) ................................................................ 15

*Comden v. Superior Court,*
   20 Cal. 3d 906 (1978) ......................................................................... 23

*Cooke v. Superior Court,*
   83 Cal. App. 3d 582 (1978).................................................... 16, 18, 25

*Costco Wholesale Corp. v. Superior Court,*
   47 Cal. 4th 725 (2009) ........................................................................ 8

*D. I. Chadbourne, Inc. v. Sup. Ct,*
   60 Cal. 2d 723 (1964) .........................................................................11

*Flatt v. Superior Court,*
   9 Cal. 4th 275 (1994) .......................................................................... 22

*Fox Searchlight Pictures, Inc. v. Paladino,*
   89 Cal. App. 4th 294 (2001) .................................................... 16, 22, 25

*Gregori v. Bank of America,*
   207 Cal. App. 3d 291 (1989)..................................................... 7, 25

*In re Complex Asbestos Litig.,*
  232 Cal. App. 3d 572 (1991).................................................. 8, 17, 19, 24

*Klemm v. Superior Court,*
  75 Cal. App. 3d 893 (1977).................................................................. 22

*Koo v. Rubio's Restaurant, Inc.,*
  109 Cal. App. 4th 719 (2003) .............................................................. 8

*Maruman Integrated Circuits, Inc. v. Consortium Co.,*
  166 Cal. App. 3d 443 (1985).................................................. 16, 18, 19

*Morrison Knudsen Corp. v. Hancock, Rothert & Bunshoft,*
  69 Cal. App. 4th 223 (1999) ............................................................... 19

*Neal v. Health Net, Inc.,*
  100 Cal. App. 4th 831 (2002) ................................................ 16, 17, 20, 24

*Oaks Mgmt v. Superior Court,*
  145 Cal. App. 4th 453 (2007) ............................................................. 19

*Rico v. Mitsubishi Motors Corp.,*
  42 Cal. 4th 807 (2007) ....................................................................... 22

*Roush v. Seagate Technology, LLC,*
  150 Cal. App. 4th 210 (2007) ......................................................... 8, 24

*Sharp v. Next Entertainment, Inc.,*
  163 Cal. App. 4th 410 (2008) ............................................................. 24

*Strasbourger Pearson Tulcin Wolff Inc. v. Wiz Technology, Inc.,*
  69 Cal. App. 4th 1399 (1999) ....................................................... 18, 19

*White v. Superior Court,*
  98 Cal. App. 3d 51 (1979)............................................................. 23, 24

*William H. Raley Co. v. Superior Court,*
  149 Cal. App. 3d 1042 (1983) ........................................................... 19

## STATUTES

Cal. Evid. Code § 954 ............................................................................. 9

## RULES AND REGULATIONS

Cal. R. Prof. Conduct 3-310 .................................................................. 17

Civil Local Rule 83-3.1.2 ........................................................................ 7

Fed. R. Civ. Proc. 26 ............................................................................ 12

Fed. R. Evid. 501.................................................................................... 7

## OTHER AUTHORITIES

*Gartside v. Outram,* 26 L.J.Ch. 113 (1856) ........................................ 15

OPPOSITION TO DEFENDANTS' MOTION TO DISQUALIFY AKIN GUMP STRAUSS HAUER & FELD LLP
Case No. CV09-8063 PSG (CWx)

Restatement, Second, of Contracts ......................................................................... 15

Vapnek, Tuft, Peck & Wiener, Cal. Practice Guide: Prof Responsibility (The Rutter Group 2008) ................................................................................................. 22

OPPOSITION TO DEFENDANTS' MOTION TO DISQUALIFY AKIN GUMP STRAUSS HAUER & FELD LLP
Case No. CV09-8063 PSG (CWx)

# I.   INTRODUCTION

Akin Gump Strauss Hauer & Feld LLP ("AG") represents named Plaintiffs in a class action that seeks to expose Epson's scheme to profit from the sale of printers and cartridges that, unbeknownst to the public, consume massive amounts of ink. Epson has strived mightily to prevent Plaintiffs from pursuing this action through all sorts of procedural tactics, including three previous – and unsuccessful – motions, and successful delays of this case at every turn. Indeed, Epson has yet to produce a single document. Now, on the theory that the best defense is a good offense, and that anything is better than dealing with the merits, Epson slings mud at Plaintiffs' attorneys. Epson's latest attempt to hide its wrongdoing should be rejected.

According to Epson, AG cannot represent Plaintiffs because the firm received "privileged" and "confidential" information from former Epson employee Fabrice Commelin ("Commelin") when it briefly represented him in his wrongful termination suit against Epson. Epson points to four things. All are unavailing.

**First**, Epson points to a PowerPoint presentation created by an engineer and distributed to business personnel like Commelin (who were not attorneys) to tell them about deficiencies in Epson's ink jets and cartridges. It contains no legal advice or work product, and was not prepared in anticipation of litigation. It is thus neither attorney-client privileged nor work product. **Second**, Epson points to two privileged documents that were briefly in AG's possession after being produced at Commelin's deposition. Epson fails to advise this Court that the documents are thirteen and seventeen years old, have no bearing on this case, and were promptly returned when the privilege was discovered. **Third**, Epson claims in conclusory terms that Commelin must have had access to privileged information about the ink jet and cartridge problems and disclosed it to his counsel. But Epson provides no evidence to support this vague conjecture. **Fourth**, Epson claims that the name of one of its printers (Shirakami) is confidential, but Epson has repeatedly revealed that name in its own pleadings filed in open court and on the Internet.

6460837

1

1  Epson also suggests that Commelin had a duty to suppress the PowerPoint (and
2  information like it) because he signed a confidentiality agreement, which Epson forced
3  *every* employee to sign, so he could get a job with Epson.  But Commelin has no duty to
4  cover up information about his former employer's wrongdoing.

5  AG has violated no California rule or law, let alone one that mandates
6  disqualification.  The best Epson can do is intone the Model Code's proscription on the
7  "appearance of impropriety" – a rule that California courts have rejected out of hand and
8  that a pair of district courts have only applied in cases where former employees with
9  attorney-client privileged information switched sides during ongoing litigation.

10  In sum, there is simply no basis for disqualifying AG and depriving Plaintiffs of
11  the counsel of their choice.  Epson should not be allowed to prevail in its effort to hide
12  its scheme to defraud the public.  It is time that Epson litigated the merits of this case.

13  **II.    FACTUAL BACKGROUND**

14  **A.    AG's Prior Representation Of Commelin**

15  On or about February 2009, Epson fired Fabrice Commelin, a Vice President after
16  25 years, when Commelin reported to his superiors his concerns about undisclosed
17  flaws in Epson's inkjet printers and cartridges.  (Request for Judicial Notice ("RJN"),
18  Exh. B, ¶¶ 33, 42-43, 51.)

19  In May 2009, in connection with a potential wrongful termination suit, Eric Yuhl
20  of Yuhl Stoner & Carr ("YSC") sent a letter to Epson's counsel on behalf of Commelin.
21  That letter copied Catherine Conway of AG.  In June 2009, Mr. Yuhl and Ms. Conway
22  met with Epson's counsel.  After that, ████████████████████████
23  ████████.  (Declaration of Joanna H. Kim ["Kim Decl."], ¶ 9, Exh. D [Transcript from
24  Deposition of Fabrice Commelin] ["Commelin Depo."], at 146:20-147:2.)

25  **B.    The Class Action**

26  On August 28, 2009, YSC and AG filed a class complaint against Epson in
27  California state court.  (RJN, Exh. A.)  It alleged that Epson sought to profit from
28  serious flaws in its inkjet printers and cartridges, which result in print yields far below

6460837                                           2

1  consumer expectations and industry norms, instead of disclosing them or using a known

2  method to mitigate them.  (*Id.*, ¶¶ 1-2, 32-33.)  On November 4, 2009, Epson removed

3  the case to this Court.  (DKT # 1.)

4  **III.  EPSON HAS REPEATEDLY AND UNSUCCESSFULLY MADE THE**

5  **SAME PRIVILEGE ARGUMENTS THAT IT IS MAKING HERE.**

6  **A.  The State Court Denies Epson's Motion to Seal.**

7  On December 4, 2009, YSC filed a complaint in California state court on behalf

8  of Commelin against Epson, alleging he was wrongfully terminated in retaliation for his

9  refusal to cooperate in Epson's fraudulent scheme concerning its inkjet printers and

10  cartridges.  (RJN, Exh. B, ¶¶ 33, 42-43, 51.)

11  On December 14, 2009, Epson filed a motion to seal that Complaint.  (RJN, Exh.

12  D.)  The crux of Epson's argument was that portions of the Commelin Complaint were

13  "craft[ed] . . . us[ing] privileged, confidential, and trade secret information."  (*Id.* at

14  1:22-23 [citing to 12/14/09 Declaration of Alf Anderson, attached to RJN as Exh. E

15  ("First Andersen Decl."), ¶9].)  Epson also argued that such information set forth in both

16  the Commelin Complaint and the Second Amended Complaint[1] in this action (DKT #

17  17) could be "traced to the contents of the document produced by Commelin at Bates

18  Nos. FC000330-343 [the "PowerPoint"]."  (RJN, Exh. G [2/26/10 Supplemental

19  Declaration of Alf Anderson] ["Third Andersen Decl."], ¶13.)  The state court denied

20  Epson's motion to seal.  (RJN, Exh. 12, at 1:19-21; Declaration of William Stoner

21  ["Stoner Decl."], Exh. 2, at 2:9-10, 26:5-8.)  It also rejected Epson's argument that the

22

23

24  [1] In the eight months since the original complaint was filed in this action, Epson
has never sought to seal any of the allegations in that complaint or the subsequent First

25  and Second Amended Complaint despite Epson's argument that those allegations "can
be traced directly to the attorney-client communications regarding ink cartridge

26  performance."  (Motion, 7:3-7.)  Likewise, contrary to Epson's contention that
Plaintiffs' discovery requests contain confidential information (Motion, 2:6, 7:7-8),

27  Epson itself has publicly filed these very discovery requests in this case.  (DKT #71-4,
Exh. 7 to Declaration of Valerie Roddy.)

28

1  "code name" of "Shirakami" was confidential.  (RJN, Exh. 12, at 1:19-21; RJN Exh. D,

2  at 1:22-24; First Andersen Decl., ¶9.) [2]

3      **B.**    **The State Court Again Rejects Epson's Argument That The**

4                   **PowerPoint Is Privileged.**

5      On March 16, 2010, Epson filed an Application in state court for a "Protective

6  Order for Interim Relief and Required Orders on the Use, Misuse, and Disclosure of

7  Epson's Attorney-Client, Work Product, and Trade Secret Information by Plaintiff and

8  His Counsel, Including Consequences of Use, Misuse, and Disclosure and for Orders

9  regarding Limited Discovery, Briefing, and Motion Schedule and Temporary Interim

10  Stay." (RJN, Exh. 8.)  Again, Epson claimed that the PowerPoint was attorney-client

11  privileged, work product, and trade secret.  (*Id.*, at 6:22-13:1.)

12      At the hearing, Epson asserted that, "Mr. Andersen clearly says that '[t]he

13  information [in the PowerPoint] incorporates my work product and my legal advice.'"

14  (Stoner Decl., Exh. 2, at 24:12-15 [reading Third Andersen Decl., at ¶11].)  The court

15  recognized Andersen's declaration as "a self serving . . . declaration.  No doubt about

16  that." (*Id.*, at 20:2-3.)  After examining the document, the court denied Epson's

17  Application, concluding that, "I just don't find an emergency at this point of a sufficient

18  nature, nor do I make a finding of – a prima facie finding that there is attorney-client

19  privilege here." (RJN, Exh. 12, at 2:4-12; Stoner Decl., Exh. 2, at 26:11-14.)

20

21      [2] Contrary to Epson's arguments (Motion, 2:5-6, 6:17-21). there is nothing
confidential about the name "Shirakami."  Numerous references to Epson's "Shirakami"

22  are readily found on the Internet and even on Epson's own web address,
"http://www.epson-europe.com/content/EU/en_GB/news_events

23  /news/details/**Shirakami**.ilocal.htm for a 2008 press release.  In any event, Epson
waived any argument that "Shirakami" is confidential.  In the publicly filed, redacted

24  version of the Commelin Complaint, the "code name" "Shirakami" is identified no less
than six times.  (RJN, Exh. C, ¶¶ 47, 57, 72, 83, 94.)  Epson never moved to have those

25  references sealed.  Moreover, in the First Andersen Declaration, publicly filed in state
court last year, Mr. Andersen identified "Shirakami." (First Andersen Decl., ¶9.)  Two

26  months ago, he again identified "Shirakami" In his Declaration filed in this Court.
(DKT #41 [2/25/10 Declaration of Alf Anderson ("Second Andersen Decl.")], ¶10.)

27  Only in the third iteration of Mr. Andersen's publicly filed declaration did he attempt to
hide the name "Shirakami," with a reference to it only as the "code name referenced in

28  [certain] paragraphs . . . of Commelin's . . . Complaint." (Third Andersen Decl., ¶12.)

4

C.   **This Court Denies Epson's Application to Quash Commelin's Deposition and Document Production.**

On January 28, 2010, on behalf of Plaintiffs, AG served a deposition subpoena on Commelin for testimony and the production of documents, for March 2, 2010. (Kim Decl., ¶ 2; Exh. A).[3]  On February 25, 2010, Commelin produced documents to Epson's counsel and AG. (Kim Decl., ¶ 3.) Among these was the PowerPoint, *i.e.*, FC000330-343, a 14 page presentation ███████████████████████ (Kim Decl., Exh. B; Second Andersen Decl., ¶11; Fourth Andersen Decl., ¶ 32.) ████████████████████████ (Kim Decl., Exh. B) █████████████ (*Id.*) Nothing in the PowerPoint indicates that it is work product or attorney-client privileged. (*Id.*)

Immediately before Commelin's deposition, Epson moved to quash, arguing that he had privileged information, offering the Second Andersen Declaration in an attempt to show that the PowerPoint was privileged. (Second Andersen Decl., ¶11.)

On March 1, 2010, the Magistrate Judge denied Epson's Application. (DKT #46.) Consequently, Plaintiffs proceeded with the deposition.

D.   **Epson Makes Belated Objections; AG Confirms There is No Privilege.**

At the beginning of the deposition, ███████████████████████████████████████████████████████████████. (Commelin Depo, at 8:20-9:3.) ███████████████████. (*Id.*)

---

[3] To date, Epson has still not produced a single document or provided any initial disclosures. (Kim Decl., ¶ 12.) On February 23, 2010, Plaintiffs filed a Motion to Compel. (DKT # 39.) It is under submission. (DKT # 56.)  Since February, Plaintiffs have also sought Epson's deposition to no avail. Despite having repeatedly met and conferred, Epson continues to fail to provide dates. (Kim Decl., ¶ 12.) Consequently, Plaintiffs anticipate filing a motion to compel. (*Id.*)

1   Epson's counsel ████████████████████████████████████

2   ████████ First, ████████████████████████████████████████

3   ████████████████████████████████████████████████████████.

4   (Commelin Depo., at 186:11-189:24.)  Even though Epson's co-counsel received the

5   memos on February 8, 2010, (Stoner Decl., ¶ 15), Epson did not notify Plaintiffs'

6   counsel that it wanted them returned, waiting until Commelin's deposition to raise the

7   issue. ████████████████████████████████████████

8   ████████████████████████████████████████████

9   ████████████████████████████████████████████

10  ████████████████████████████████████████. (Kim Decl.,

11  ¶ 4; Commelin Depo., at 191:23-192:12.)  No other AG attorney ever saw such memos.

12  (Declaration of Catherine Conway Decl. ["Conway Decl."], ¶ 3; Declaration of Rex

13  Heinke ["Heinke Decl."], ¶ 3 and Declaration of David Nelson ["Nelson Decl."], ¶ 3.)

14       Second, Epson claimed that ████████████████████████████

15  ████████████████████████████████████████████████

16  ████████████████████████████████████████████████

17  ████████████████████████████. (Commelin Depo. at 109:13-110:3;

18  Kim Decl., Exh. B.)  While the PowerPoint itself evidences no valid basis for any

19  privilege objection, out of an abundance of caution, ████████████████████

20  ████████████████████████████████████████

21  ████████████████████████. (Commelin Depo., at 110:5-111:15,

22  113:12-114:19.)

23  ████████████████████████ *(Id.)* ████████████████

24  ████████████████████ *(Id.* at 110:5-111:15.) ████████

25  ██ *(Id.)* ████████████████ . *(Id.* at 115:13-19.) ████

26  ████████████████████████. *(Id.* at 121:14-122:19.)

27  ████████████████████████████████████████████

28  ████████████████████████████████████████████████

OPPOSITION TO DEFENDANTS' MOTION TO DISQUALIFY AKIN GUMP STRAUSS HAUER & FELD LLP
Case No. CV09-8063 PSG (CWx)

1 ████████████████████████████ (*Id.*, at 250:15-25; Kim Decl.,

2 ¶ 8; Exh. C.)

3      On March 11, 2010, Epson moved for a protective order to cover all confidential

4 information produced in this case. (DKT # 71.) Epson has refused the protective order

5 that Plaintiffs proposed in January 2006. (Kim Decl., ¶ 7.) That motion is scheduled to

6 be heard before the Magistrate Judge on April 27, 2010.

7 ## IV.   THE MOTION TO DISQUALIFY SHOULD BE DENIED

8      This Court applies California law to decide a motion to disqualify. Fed. R. Evid.

9 501 ("in civil actions and proceedings, with respect to an element of a claim or defense

10 as to which State law supplies the rule of decision, the privilege of a witness, person,

11 government, State, or political subdivision thereof shall be determined in accordance

12 with State law."); *see also* Civil Local Rule 83-3.1.2 (attorneys appearing before this

13 Court must "comply with the standards of professional conduct required of members of

14 the State Bar of California[.]"); *Concat, LP v. Unilever, PLC*, 350 F. Supp. 2d 796, 814

15 (N.D. Cal. 2004); *Skyy Spirits, LLC v. Rubyy, LLC,* 2009 WL 3762418, at *1-2 (N.D.

16 Cal. Nov. 9, 2009).

17 ### A.   Motions To Disqualify Are Strongly Disfavored.

18      Motions to disqualify counsel are "strongly disfavored." *Visa U.S.A., Inc. v. First*

19 *Data Corp.*, 241 F. Supp. 2d 1100, 1104 (N.D. Cal. 2003); *Gregori v. Bank of America*,

20 207 Cal. App. 3d 291, 300-01 (1989) ("Motions to disqualify counsel often pose the

21 very threat to the integrity of the judicial process that they purport to prevent."); *In re*

22 *Marvel*, 251 B.R. 869, 871 (Bankr. N.D. Cal. 2000), *aff'd*, 265 B.R. 605 (N.D. Cal.

23 2001) ("A motion for disqualification of counsel is a drastic measure which courts

24 should hesitate to impose except when of absolute necessity. They are often tactically

25 motivated; they tend to derail the efficient progress of litigation."). Granting

26 disqualification motions interferes with the client's right to counsel of his or her choice,

27 imposes a financial burden on the client of replacing a disqualified attorney, defeats the

28 attorney's interest in representing the client, and encourages their tactical abuse. *Roush*

1    *v. Seagate Technology, LLC*, 150 Cal. App. 4th 210, 219 (2007); *In re Complex Asbestos*

2    *Litig.*, 232 Cal. App. 3d 572, 586 (1991).  Accordingly, motions for disqualification

3    "'should be subjected to particularly strict judicial scrutiny.'"  *Televisa, S.A. de C.V. v.*

4    *Univision Communs., Inc.*, 635 F. Supp. 2d 1106, 1109 (C.D. Cal. 2009) (Gutierrez, J.)

5    (quoting *Optyl Eyewear Fashion Int'l Corp. v. Style Cos.*, 760 F.2d 1045, 1050 (9th Cir.

6    1985)).

7         Given the complexity and important policy incentives driving class litigation,

8    "[p]articular care should be taken in the imposition of the sanction of disqualification"

9    in this context.  *Koo v. Rubio's Restaurant, Inc.*, 109 Cal. App. 4th 719, 735 (2003); *In*

10   *re Agent Orange Product Liab. Litig.*, 800 F.2d 14, 19 (9th Cir. 1986).

11         **B.    Epson Has Not Shown That The PowerPoint Is Attorney-Client**

12              **Privileged Or Work Product.**

13         The sole document in Commelin's possession[4] that Epson argues (over and over)

14   is an "attorney-client communication" or "work product" is the PowerPoint.  (*See, e.g.,*

15   Motion, 4:16-5:2, 9:12-15, 9:19-10:2, 13:27[n.45], 17:8-12.)  It is neither.

16              1.    The PowerPoint is not attorney-client privileged.

17         "The party claiming the [attorney-client] privilege has the burden of establishing

18   the preliminary facts necessary to supports its exercise, i.e., a communication made in

19   the course of an attorney-client relationship."  *Costco Wholesale Corp. v. Superior*

20   *Court*, 47 Cal. 4th 725, 733 (2009); *AMCO Ins. Co. v. Madera Quality Nut LLC*, 2006

21   WL 931437, *5 (E.D. Cal. Apr. 11, 2006); *see also E.I. Du Pont de Nemours & Co. v.*

22   *MacDermid, Inc.*, 2003 WL 23511729, *2 (D. Conn. Aug. 10, 2003) (holding that the

23   "burden . . . to establish those facts that are the essential elements of the privileged

24   relationship" is not "discharged by mere conclusory or ipse dixit assertions.").

25

26

27   _____
     [4] This is in contrast to the two memoranda, dated 1993 and 1997, which were

28   immediately returned. (Section III(D), above.)

OPPOSITION TO DEFENDANTS' MOTION TO DISQUALIFY AKIN GUMP STRAUSS HAUER & FELD LLP
Case No. CV09-8063 PSG (CWx)

1   On its face, the PowerPoint refutes any notion that it is privileged. (Kim Decl.,

2   Exh. B.) The title is ███████████████ hardly a legal document. (*Id.*) The author is

3   ████████████████████████████████████████████████████████████████████

4   ████ at SEC. (*Id.*; Third Anderson Decl., ¶11; Andersen Decl., ¶ 32.) It consists

5   of ████████████████████████████████████████, not legal advice or

6   analysis. (Kim Decl., Exh. B.)[5] The bottom of each slide of the PowerPoint states,

7   ███████████████████████████ (*Id.*) Of course, an attorney-client privileged

8   document has no expiration date; the privilege exists as long as the holder of the

9   privilege exists. Law Revisions Commission Comments to Cal. Evid. Code § 954

10  (discussing "Termination of privilege").

11      There is also nothing in the PowerPoint that suggests it involves legal advice. We

12  invite the Court to review it *in camera.*[6] Bizarrely, Epson does not want the Court to

13  rule on whether it is privileged. (Motion, 5, n.11.)

14      Commelin also confirmed the PowerPoint is not privileged. ████████████

15  ████████████████████████████████████████████████████████████████

16  ████████████████████████████████████████ . (Commelin Depo. at 110:5-22,

17  and 136:15-23.) (█████████████████████████████████████████████████

18  █████████████████████ . (Kim Decl.; Exh. B.))

19

20  _____

21  [5] For example, ████████████████████████████████████████ (Kim Decl, Exh.

21  B, pp.28-29.) ███████████████████████████████████████████████████

22  ████████████████████████████████████████████████████████████████

23  ████████████ . (*Id.* at p.17.)

24  [6] The Ninth Circuit has repeatedly held that an *in camera* review is the proper
    method for a Court to determine a disputed claim of privilege. *Clarke v. American*

25  *Comm. Nat'l Bank*, 974 F.2d 127, 129 (9th Cir. 1992) ("A district court may conduct an
    in camera inspection of alleged confidential communications to determine whether the

26  attorney-client privilege applies."); *accord Salas v. United States*, 695 F.2d 359, 362 (9th
    Cir. 1982); *see also United States v. Zolin*, 491 U.S. 554, 569-70 (1989) ("[T]his Court

27  has approved the practice of requiring parties who seek to avoid disclosure of
    documents to make the documents available for in camera inspection . . . and the

28  practice is well established in the federal courts.").



. (*Id.*)

. (*Id.* at 121:14-122:19.)

. (*Id.* at 114:17-19.)  Accordingly, the PowerPoint is not an attorney-client communication.

Alf Andersen,[7] who is Epson's in-house counsel and signed the only declaration Epson offers to establish that the PowerPoint is "privileged," does not change this conclusion.  His declaration, now in its fourth iteration, fails (again) to make the requisite showing.

Andersen inadvertently

. He

. (Exh. A. to Fourth Andersen Decl., p.20.)

.[8] (*Id.*.)

Nor could the PowerPoint be attorney-client privileged.  By definition, the attorney-client privilege attaches only to communications between an attorney and a

_____

[7] Epson intentionally failed to give the requisite 28 day notice under Local Rule 6-1 to Plaintiffs that the Confidential Andersen Declaration was being submitted as evidence in support of its Motion.  (Kim Decl., ¶ 10; DKT # 87 [Epson's Notice, filed on April 20, 2010].)

[8] Epson does not expressly acknowledge that                                                . (Exh. "A" to Fourth Andersen Decl., p.20.) Nonetheless, the conclusion is inescapable.  Epson refers to "at least" 32 purportedly privileged communications identified in the "privilege" log regarding the "key" issue of "ink cartridge performance" in the last "six and a half months" of Commelin's employment.  (Motion, 4:3-15, n.9.)                               . (Commelin Depo., at 110:5-22, 136:15-23.)                     . (Exh. "A" to Fourth Andersen Decl., p.20.)

OPPOSITION TO DEFENDANTS' MOTION TO DISQUALIFY AKIN GUMP STRAUSS HAUER & FELD LLP
Case No. CV09-8063 PSG (CWx)

1  client. Cal. Evid. Code § 952. 

2  . (Exh. A. to Fourth Andersen Decl., p.20.)

3

4

5  . (*Id.*)

6

7  (Fourth Andersen Decl., ¶ 32), that does

8  not change the fact that an attorney did not create or receive the document.

9        To the extent Andersen asserts that the PowerPoint contains his legal advice, that

10 is obviously untrue as any review of it will show. We also show that his work product

11 assertion is meritless in the next Section. To the extent he contends that

12 and therefore is somehow privileged, he ignores the rule

13 that "communications involving in-house counsel might well pertain to business rather

14 than legal matters. The privilege does not protect an attorney's business advice."

15 *United States v. ChevronTexaco Corp.*, 241 F. Supp. 2d 1065, 1076 (N.D. Cal. 2002)

16 (original emphasis). Even assuming that "the document was prepared for purposes of

17 simultaneous review by legal and nonlegal personnel, it cannot be said that the primary

18 purposes of the document is to secure legal advice." *United States v. Chevron Corp.*,

19 1996 WL 264769, *3 (N.D. Cal. Mar. 13, 1996).

20       Andersen's only other testimony a

21

22

23 ." (Fourth Andersen Decl., ¶ 32.) Of course, that does not

24 show the PowerPoint is privileged.

25 has no bearing on whether it is privileged. *AMCO*, 2006 WL 931437, at *5

26 ("[T]he mere delivery to an attorney of a communication not originally privileged does

27 not render the communication privileged.") (citing *D. I. Chadbourne, Inc. v. Sup. Ct*, 60

28 Cal. 2d 723, 732-33 (1964)); *Fisher v. U.S.*, 425 U.S. 391, 403-04 (1976) (same).

1  Accordingly, Epson cannot and has not met its burden to show that the
2  PowerPoint is attorney-client privileged.
3          2.      The PowerPoint is not work product.
4  The work product doctrine, codified in Federal Rule of Civil Procedure 26(b)(3),
5  protects only "documents and tangible things that are prepared in anticipation of
6  litigation or for trial . . . ." Fed. R. Civ. Proc. 26(b)(3); *see In re Grand Jury Subpoena*
7  *(Mark Torf/Torf Environmental Management)*, 357 F.3d 900, 906 (9th Cir. 2004).  As
8  with the attorney-client privilege, "[t]he party claiming work product immunity has the
9  burden of proving the applicability of the doctrine." *A. Farber & Partners, Inc. v.*
10  *Garber*, 234 F.R.D. 186, 192 (C.D. Cal. 2006).  To meet its burden, Epson must show
11  that the PowerPoint was "prepared in anticipation for litigation or for trial," meaning
12  that "in light of the nature of the document and the factual situation in the particular
13  case, the document can be fairly said to have been prepared or obtained because of the
14  prospect of litigation." *In re Grand Jury Subpoena*, 357 F.3d at 907.
15  Epson does not even claim that the PowerPoint was prepared in anticipation of
16  litigation.  Instead, Epson offers only Mr. Anderson's ███████████████████████
17  ███████████████████████████."[9] (Fourth Andersen Decl., ¶32.)  This assertion is
18  inadequate to satisfy Epson's burden to prove that the PowerPoint was created in
19  *anticipation of litigation*.  In fact, all evidence is to the contrary.
20  There was no ongoing or even threatened litigation when the PowerPoint was
21  created. ██████████████████████████████████████████████
22  ██████████████ (Exh. "A" to Fourth Andersen Decl., at p.20; Commelin Depo., at
23  136:15-23.)  Thus, Epson necessarily could not have created the PowerPoint "in
24  anticipation of litigation." *Marceau v. I.B.E.W.*, 246 F.R.D. 610, 614 (D. Ariz. 2007)
25  ("[T]he fact that litigation was not imminent tends to support the argument that the
26
27  ───────────────────
28  [9] This statement is both entirely unsupported and noticeable absent in his prior
    declaration. (*Compare* Second Andersen Decl.)

6460837                                     12

1  Report was not prepared in anticipation of litigation."); *Kramer v. Raymond Corp.*, 1992
2  WL 122856, at *6 (E.D. Pa. May 29, 1992) (work product protection applies only where
3  there is "a substantial probability that particular litigation will occur.").

4      Moreover, the PowerPoint does not evidence ***any*** legal purpose, much less a
5  litigation purpose. ███████████████████████████████████. (Commelin
6  Depo., at 110:5-22.)
7  ████████████████████████████████████████████████████
8  ██████████████████████████████████. There is no discussion of
9  any potential lawsuit or legal liability. (Kim Decl., Exh. B.)  Not a single statement in
10 the document required the analysis or skill of one trained in the law – it is a business
11 document created by engineers. *Marceau*, 246 F.R.D at 614 (finding a document not
12 work product where "not one of the 14 recommendations required the analysis and skills
13 of one trained in the law," but instead, were "more in the nature of business
14 management recommendations that could readily be made by one schooled and trained
15 exclusively in business management.").

16     In sum, the nature of the PowerPoint and the circumstances of its creation show
17 that it was created for the purpose of ███████████████████████
18 ████████████████████████. There is no indication – and
19 Epson offers ***no*** evidence – that it was created in anticipation of litigation, so the work
20 product doctrine does not apply. *In re Grand Jury Subpoena*, 357 F.3d at 907.

21     **C.**    **The Other Entries On Andersen's "Privilege" Log Add Nothing.**
22     With regard to the purportedly ████████████████████████
23 ██████████████████████████" (Motion, 4:3-5, 10-12; citing to
24 Exh. "A" to Fourth Andersen Decl.), Epson conveniently omits the fact that there is
25 absolutely no evidence that Commelin was or is in possession of any these emails[10]
26

27     [10] Of course, this is also true for the remaining irrelevant entries on the
28 "privilege" log, which Epson does not claim are related to the issues in this litigation.
    (Motion, 4:1-5.)

1  since he left Epson, let alone shared anything he might remember from them with AG.

2  Indeed, while at his deposition, █████████████████████████████████████

3  ████████████████████, (Motion, 9:12-15), Epson tellingly cannot point to any of

4  Commelin's testimony that stemmed from any privileged communications.  Moreover,

5  ███████████████████████████████████████.  (Commelin Depo., at

6  164:16-166:17.)  Further, AG lawyers did not maintain any attorney-client or work

7  product privilege from him. (Conway Decl., at ¶¶2-3; Heinke Decl., at ¶¶2-3; Nelson

8  Decl., at ¶¶2-3; Kim Decl., at ¶¶4-5.)

9       Epson also fails to make any showing that any of these emails are attorney-client

10  privileged or work product.  Andersen offers his ipse dixit assertions that these emails

11  consist of his "legal analysis" or "legal advice."  His assertions are particularly

12  inadequate in view of Andersen's status as in-house counsel. *ChevronTexaco*, 241 F.

13  Supp. 2d at 1076; *Chevron*, 1996 WL 264769, at *3.

14       Likewise, Epson fails to show that the work product doctrine applies, because

15  these emails were dated no less than 10 months before this litigation, and thus could not

16  have been prepared "in anticipation of litigation." *Marceau*, 246 F.R.D. at 614; *Kramer*,

17  1992 WL 122856, at *6.

18       Casting further doubt on his credibility, Epson has refused to produce him for

19  deposition. (Kim Decl., ¶ 11.) Andersen has submitted no less four (4) declarations in

20  support of Epson's multitude of efforts to repeatedly argue that the PowerPoint is

21  "privileged," each which has failed.  If the Court is going to credit his latest declaration,

22  Plaintiffs should be given an opportunity to depose him.

23       Moreover, the PowerPoint is plainly evidence that Epson has engaged in fraud.

24  The PowerPoint reveals that ████████████████████████████████████

25  █████████████████████.  (Exh. "B" to Kim Decl.)  Indeed, that very fact

26  is one of the key claims in the SAC. (DKT # 17, ¶¶ 1-2, 34-60.)  Thus, the crime/fraud

27  exception to the attorney-client privilege claim should apply, even assuming that the

28  PowerPoint or similar information is privileged. Cal. Evid. Code §956.

6460837

14

1    **D.    Epson Cannot Rely On A Nondisclosure Agreement To Gag Commelin**
2         **Or Disqualify AG**

3         Epson attempts to rely on Commelin's broad employee confidentiality agreement
4    to protect its non-privileged, "confidential" information.  But, as a matter of public
5    policy, a company cannot rely on a confidentiality agreement to "chill former
6    employees from voluntarily participating in legitimate investigations into alleged
7    wrongdoing." *In re JDS Uniphase Corp. Sec. Litig.*, 238 F. Supp. 2d 1127, 1137 (N.D.
8    Cal. 2002); *see also Chambers v. Capital Cities/ABC*, 159 F.R.D. 441, 444 (S.D.N.Y.
9    1995) ("it is against public policy for parties to agree not to reveal, at least in the limited
10   contexts of depositions or pre-deposition interviews concerning litigation arising under
11   federal law, facts relating to alleged or potential violations of such law") (footnote
12   omitted).; *Cariveau v. Halferty*, 83 Cal. App. 4th 126, 131-32 (2000) ("[a] promise or
13   other term of an agreement is unenforceable on grounds of public policy if legislation
14   provides that it is unenforceable or the interest in its enforcement is clearly outweighed
15   in the circumstances by a public policy against the enforcement of such terms") (citing
16   the Restatement, Second, of Contracts, § 178); *Gartside v. Outram*, 26 L.J.Ch. 113
17   (1856) ("There is no confidence in iniquity").  Courts have thus authorized the use of
18   informal discovery, such as *ex parte* interviews, to obtain non-trade secret information
19   concerning wrongdoing, even if it is covered by a confidentiality agreement.  *JDS
20   Uniphase*, 238 F. Supp. 2d at 1137-38.[11]

21        Moreover, there would have been no impropriety even if Commelin had disclosed
22   to AG confidential information during their former attorney-client relationship.
23   "[C]ommunications of even confidential or privileged information with one's own
24   attorney are authorized by law."  *See Neal v. Health Net, Inc.*, 100 Cal. App. 4th 831,
25
26

27        [11] While Epson refers obliquely to "trade secret" information, *e.g.*, Motion, 19:15,
28   it does not demonstrate that any information would qualify for trade secret protection.
     *See* Cal. Civ. Code, § 3426.1 (defining trade secret).

6460837                                    15

849-50 (2002). Thus, Epson cannot justifiably argue that any confidential information was improperly disclosed to AG.

In sum, Epson cannot use its nondisclosure agreement to silence Commelin with respect to non-privileged information, or, by extension, to disqualify his counsel. In any event, California law does not sanction disqualification as a remedy for disclosure of such information, as we now show.

**E.** **AG's Purported Receipt Of Confidential Information From Commelin Provides No Factual Or Legal Basis For Disqualification.**

Unable to identify any attorney-client privileged or work product information that Commelin may have communicated to AG, Epson falls back on the argument that the alleged disclosure of amorphous, unidentified "confidential and trade secret information" from Commelin outside formal discovery warrants disqualification. Epson relies heavily on a few federal cases to support its argument but, as discussed herein (7:13-21), California law controls. Moreover, Epson's cases are readily distinguishable.

1. Exposure to confidential information in the course of litigation is not grounds for disqualification.

Epson argues that AG's knowledge of purportedly "confidential" information as a result of its prior representation of Commelin would support disqualification. However, that proposition has been repeatedly rejected by California courts, which have "consistently concluded that mere exposure to confidential information of the opposing party does not require disqualification." *Neal*, 100 Cal. App. 4th at 841; *Fox Searchlight Pictures, Inc. v. Paladino*, 89 Cal. App. 4th 294, 302-304, 308-315 (2001); *Bell v. 20th Century Ins. Co.*, 212 Cal. App. 3d 194, 198 (1989); *Maruman Integrated Circuits, Inc. v. Consortium Co.*, 166 Cal. App. 3d 443, 448 (1985); *Cooke v. Superior Court*, 83 Cal. App. 3d 582, 592 (1978). "Indeed, communications of even … privileged information with one's own attorney are authorized by law." *Neal*, 100 Cal. App. 4th at 849-50.

Ignoring this California authority, Epson cites *Williams v. Trans World Airlines, Inc.*, 588 F. Supp. 1037 (W.D. Mo. 1984), for the proposition that disqualification is

6460837                                    16

1   allowed when an attorney represents a former employee who was also a key witness in

2   another of the attorney's cases, because "the potential for unfair discovery of

3   information through private consultation [with the client] rather than through normal

4   discovery procedures threatens the integrity of the trial process." (Motion, 20:2-4.)

5   However, California courts have expressly declined to follow *Williams*, rejecting the

6   notion that the "free exchange of information between attorney and client constitutes an

7   impropriety threatening the integrity of the judicial process, at least when a nonattorney

8   client [like Commelin] is involved." *Neal*, 100 Cal.App.4th at 849; *see In re Complex*

9   *Asbestos Litig.*, 232 Cal. App. 3d at 590 n.7. The *Neal* court in a similar case thus

10  reversed a disqualification order where an attorney allegedly obtained confidential

11  information from its adversary's former employee, whom the attorney represented as a

12  client in separate litigation. *Neal*, 100 Cal. App. 4th at 847-50.

13      In sum, California law is clear that an attorney's access to an opposing party's

14  confidential information, obtained from another client, does not warrant

15  disqualification.

16          2.      Because Epson had no attorney client-relationship with AG, Rule 3-

17                  310(C)(1) does not apply.

18      Epson claims that AG must be disqualified under California Rules of Professional

19  Rule 3-310(C)(1), which prohibits representation of *clients* whose interests are adverse

20  unless both clients give their informed consent: "A member shall not, without the

21  informed written consent of each client: (1) Accept representation of more than one

22  client in a matter in which the interests of the clients potentially conflict; or (2) Accept

23  or continue representation of more than one client in a matter in which the interests of

24  the clients actually conflict; or (3) Represent a client in a matter and at the same time in

25  a separate matter accept as a client a person or entity whose interest in the first matter is

26  adverse to the client in the first matter." *See also* Cal. R. Prof. Conduct 3-310(E) ("A

27  member shall not, without the informed written consent of the client or former client,

28  accept employment adverse to the client or former client where, by reason of the

6460837                                    17

OPPOSITION TO DEFENDANTS' MOTION TO DISQUALIFY AKIN GUMP STRAUSS HAUER & FELD LLP
Case No. CV09-8063 PSG (CWx)

1 representation of the client or former client, the member has obtained confidential

2 information material to the employment."). On its face, this rule allows disqualification

3 here only if Epson had a formal attorney-client relationship with AG – a relationship

4 that never existed.

5      California cases have consistently concluded the Rule 3-310(C)(1) applies only

6 where the attorney has obtained confidential information in a prior attorney-client

7 relationship. *Strasbourger Pearson Tulcin Wolff Inc. v. Wiz Technology, Inc.*, 69 Cal.

8 App. 4th 1399, 1404 (1999) ("An attorney-client relationship must have existed before

9 disqualification is proper" under the conflict rules); *Maruman*, 166 Cal. App. 3d at 447

10 ("it is the general rule that before this [conflict] rule may be invoked to disqualify an

11 attorney, there must have been an attorney-client relationship between the complaining

12 party and the attorney during which the confidential information was imparted.");

13 *Cooke*, 83 Cal. App. 3d at 592 ("we know of no case where disqualification of an

14 attorney or his firm was imposed . . . where there was no prior representation or

15 confidential professional relationship between the complaining party and the attorney or

16 law firm sought to be disqualified.").

17      Even where information was received from individuals involved in the pending

18 litigation or in circumstances where the law firm had access to confidential information

19 about a transaction underlying the litigation, California courts have found no basis for

20 disqualification absent an attorney-client relationship. *Maruman*, 166 Cal. App. 3d at

21 446-47, 449 (no disqualification even though law firm was furnished with attorney-

22 client communications by one of plaintiff's former employees, a corporate

23 administrator, who had assisted in the prosecution of the action between the parties and

24 furnished attorneys with letters written by plaintiff's attorneys); *Cooke*, 83 Cal. App. 3d

25 at 586, 592 (no disqualification in dissolution proceeding where confidential

26 communications were transmitted to wife by servant who eavesdropped on husband's

27 meetings with his attorneys and copied privileged documents); *Strasbourger*, 69 Cal.

28 App. 4th at 1403-11 (no disqualification where law firm represented plaintiff in

6460837

18

1  underwriting public offering resulting in access to confidential business and financial

2  information and also represented defendant's auditors who reviewed every aspect of

3  defendant's business operations, including accounting and management issues).

4       California has recognized exceptions to this general rule only in highly unusual

5  circumstances such as where the law firm has received privileged information disclosed

6  by an attorney for or former employee of its adversary *who was actually involved in the*

7  *litigation at issue. E.g., In re Complex Asbestos Litig.*, 232 Cal. App. 3d at 596

8  (affirming disqualification of law firm that hired paralegal who had worked for

9  adversary on the pending litigation); *Morrison Knudsen Corp. v. Hancock, Rothert &*

10  *Bunshoft*, 69 Cal. App. 4th 223, 230, 235 (1999) (disqualification was proper where

11  plaintiff's firm monitored counsel for underwriters of defendant's parent corporation

12  and had reviewed and discussed litigation strategy for claims involving facts similar to

13  the pending litigation).  Some cases even reject disqualification in similar

14  circumstances. *Maruman*, 166 Cal. App. 3d at 446-47, 449 (refusing disqualification in

15  similar circumstances); *Strasbourger*, 69 Cal. App. 4th at 1403-11 (same).[12]  In any

16  event, such circumstances are not present here, because Commelin was not involved in

17  any aspect of this litigation; he left Epson well before this action was filed.

18       None of the federal cases cited by Epson support disqualification here.  In *Huston*

19  *v. ICCMIC*, 179 F. Supp. 2d 1157, 1179-80 (C.D. Cal. 2001), the court disqualified a

20  former attorney and officer of the defendant who was both a client of and co-counsel

21  with the disqualified firm.  The attorney's past experience had included communicating

22  with outside counsel regarding and helping prepare the IPO that was the subject of the

23  litigation.  *Id.* at 1164, 1168-69.  Yet despite those past roles for the defendant, the

24

25

26     [12] Another such case, *William H. Raley Co. v. Superior Court*, 149 Cal. App. 3d
1042 (1983), is cited by Epson for the proposition that "'[a] conflict of interest may

27  arise from an attorney's relationship with a non-client.'"  Motion at 13.  But *Raley* was
based on an older version of Rule 3-3100 that is no longer in effect, as explained in

28  *Oaks Mgmt v. Superior Court*, 145 Cal. App. 4th 453, 465 (2007) (under current Rule 3-310, conflicts of interest arise only in the context of attorney-client relationships).

1  attorney sought to jointly represent a class in a securities action against his former

2  employer and entered into a fee-splitting arrangement with the disqualified firm.

3  Commelin is neither an attorney nor has he or AG engaged in any such egregious

4  conduct.

5  In *Packard Bell NEC, Inc. v. Aztech Systems Ltd.*, 2001 WL 880957 (C.D. Cal.

6  2001), the court disqualified a law firm that represented a former employee who was

7  exposed to attorney-client privileged information involving a lawsuit between two

8  companies during his employment and who, after being terminated, sought to assist the

9  other side in that same litigation. *Id*. at *8-9. Commelin did not assist Epson with this

10  litigation and then switch sides. Further, *Packard Bell* is inconsistent with California

11  law. The court purported to apply Rule 3-310, which it acknowledged did not literally

12  apply, and bolstered its decision by relying on Canon 9 of the Model Code, which

13  prohibits the "appearance of professional impropriety." *Id*. at *9 & n.3. Reliance on

14  Canon 9 conflicts with California law because "California has not adopted Canon 9 in

15  either the State Bar Rules of Professional Conduct or in the Business and Professions

16  Code." *Neal*, 100 Cal. App. 4th at 845-46.[13]

17                  3.      AG obtained no unfair advantage through its relationship with

18                          Commelin.

19  Epson argues that AG's "extrajudicial" access to privileged and

20  confidential information through Commelin gave the firm an "improper advantage that

21  no other counsel representing plaintiffs would have." Motion, 19:3-5. Nonsense. In the

22  first place, as discussed above, Epson failed to show that AG received any attorney-

23  client privileged or work product information from Commelin. (Section IV(B)-(C)

24

25

26

27  [13] The *Packard Bell* court also recognized that attorneys for an employer's adversary can ask a former employee for confidential information, *id*. at *6-7, but failed to explain why this would be improper if the same attorneys also represent that

28  employee.

6460837                                        20

1  above.)  Nor has it shown that AG wrongfully acquired any information that Epson

2  deems confidential by virtue of its nondisclosure agreement with Commelin.

3       Epson also has not shown that AG acquired or could have acquired information it

4  could not otherwise obtain through normal discovery.  Indeed, AG obtained information

5  about the PowerPoint through its subpoena of Commelin, and has outstanding discovery

6  requests for information pertaining to the inkjet and cartridge problems that are the

7  subject of the class action lawsuit – information Epson is required to turn over to AG

8  and would be required to turn over to any other counsel representing the class.  (Kim

9  Decl., Exh. F., ¶¶ 57-58, 61 and 72-74.)

10      Implicitly acknowledging this, Epson asserts that inevitable disclosure through

11  discovery is "irrelevant."  (Motion, 19:18-19.)  But Epson fails to explain why this is the

12  case, and the decision it cites does not help it.  In *In re Data Gen. Corp. Antitrust Litig.*,

13  1986 U.S. Dist. LEXIS 21923 (N.D. Cal. 1986), the court held that a party was welcome

14  to obtain information by deposing an adversary's employees, it simply could not buy

15  their services as experts.  Of course, ████████████████████████████████

16  ██████████████████████████.  (Commelin Depo., at 163:25-164:13.)  There is thus no

17  ground for Epson's claim that AG has reaped an unfair advantage that requires Plaintiffs

18  to forego counsel of their choice.

19       4.  <u>AG's brief relationship with Commelin presents no conflict between</u>

20           <u>AG and the class.</u>

21      Epson maintains that AG should be disqualified because it has "conflicting duties

22  to Epson and the class."  (Motion, 13:13-15:15.)  As discussed above, however, AG had

23  no attorney-client relationship with Epson and was free to receive confidential

24  information from its client, Commelin, during the course of their relationship.  Thus,

25  AG had no duty to Epson.

26      None of the cases Epson cites about AG's allegedly conflicting duties supports

27  the proposition that AG had a duty to Epson.  Epson's cases address inadvertent

28  disclosures of attorney-client privileged materials.  *Rico v. Mitsubishi Motors Corp.*, 42

6460837

21

1  Cal. 4th 807, 818 (2007); *Richards v. Jain*, 168 F. Supp. 2d 1195, 1200-01 (W.D. Wash.

2  2001). That is not the issue here, so those cases are inapposite.

3        Epson also cannot establish that AG has any conflicting duties to the class. An

4  attorney "'represents conflicting interests when, on behalf of one client, it is his duty to

5  contend for that which duty to another client requires him to oppose.' [Citation.]" *Flatt*

6  *v. Superior Court*, 9 Cal. 4th 275, 282 (1994). Moreover, disqualification based on

7  conflicts between two representations requires a showing of an *actual* conflict between

8  its two clients. *Fox Searchlight*, 89 Cal. App. 4th at 302 (no disqualification "when only

9  a hypothetical conflict exists"); *Klemm v. Superior Court*, 75 Cal. App. 3d 893, 899-901

10  (1977). An actual conflict of interest exists when current circumstances impair "the

11  attorney's ability to fulfill his or her professional obligations to each client. . . ."

12  Vapnek, Tuft, Peck & Wiener, Cal. Practice Guide: Prof Responsibility, § 4:72, p. 4-24

13  (The Rutter Group 2008).

14        Epson cannot make such a showing. First, AG is not representing Commelin, so

15  there is no danger that it would be forced to choose between two loyalties. Second,

16  Commelin and the class have a common goal – to prove Epson's fraudulent marketing

17  scheme. When parties have a common goal, there is no actual conflict between them.

18  *Buehler v. Sbardellati*, 34 Cal. App. 4th 1527, 1540 (1995) (attorney's representation of

19  partners pursuing a common end result does not constitute a conflict of interest");

20  *Klemm*, 75 Cal. App. 3d at 899 (no conflict in representing divorcing spouses who had

21  common interest in opposing county's actions).

22        Epson also suggests that any restrictions on AG's use of the information it has

23  received from Commelin may prevent it from zealously representing the class. That is

24  pure speculation and contrary to the facts. As discussed above, Plaintiffs' counsel has

25  successfully opposed every effort Epson has made to suppress information. Moreover,

26  even if this Court were to impose restrictions on AG's use of information such as the

27  PowerPoint, this Court would likely impose the same restrictions on the use of the

28

1  information by other counsel.  Thus, the hypothetical possibility that AG might be

2  limited in the use of information provides no support for disqualification.

3       Accordingly, AG's representation of the class creates no conflict, so there is no

4  basis for disqualification.

5       **F.    Epson's Belated Motion Should Be Denied.**

6       "[A] party who seeks to challenge the qualification of counsel to represent the

7  adversary party must . . . proceed *at the first reasonable opportunity* by proper motion

8  to achieve that end and that failing to do so, it is an abuse of the trial court's discretion

9  to thereafter entertain favorably a request for such relief." *White v. Superior Court*, 98

10  Cal. App. 3d 51, 55 (1979) (added emphasis).  Epson failed to do so.

11       Epson was fully aware in August 2009 of AG's representation of the Class as well

12  as AG's prior representation of Commelin and of the alleged "extortion" attempt in July

13  2009.[14]  (Kim Decl., Exh. E.)  In addition, since this case was filed, Epson has argued

14  repeatedly that AG has received Epson's privileged information, including arguing thee

15  times that the PowerPoint is "privileged."  (RJN, Exh. D; (2) DKT # 41 [Application to

16  Quash Commelin's subpoena]; and (3) RJN, Exh. H.)  Despite claiming these facts

17  create an "irreconcilable conflict" (*e.g.*, Motion, 22:14-23:4, n.11), Epson waited until

18  April 2010 to file this Motion.

19       Epson's delay was purely a tactical choice.  "'It would be naïve not to recognize

20  the motion to disqualify opposing counsel is frequently a tactical device to delay

21  litigation.'  [J]udicial scrutiny [is required] to prevent literalism from possibly

22  overcoming substantial justice to the parties.'" *White*, 98 Cal. App. 3d at 55 (citing

23  *Comden v. Superior Court*, 20 Cal. 3d 906, 915 (1978)).  In *White*, a disqualification

---

[14] That July 29, 2009 email exchange is in admissible as a "Confidential Settlement Communication," which is expressly and repeatedly so noted on the email exchange, and, in any event, does not and cannot evidence any "extortion" to settle a class action case, which was not in existence, particularly in view of the fact that neither YSC nor AG was representing any of the class Plaintiffs at that time.  (YSC's Opposition to the Motion to Disqualify.)

1  order was overturned because the party seeking disqualification had waited six months

2  to bring its motion. *Id.* at 55-56; *see Skyy Spirits,* 2009 WL 3762418, at *4 (unjustified

3  eight month delay supported denial of motion to disqualify).

4       Epson's delay is also prejudicial. Plaintiffs have a recognized right to

5  representation by counsel of their choice, and would be substantially prejudiced by

6  having to seek new counsel. *Roush,* 150 Cal. App. 4th at 219; *In re Complex Asbestos*

7  *Litig.,* 232 Cal. App. 3d at 586. It is no coincidence that Epson brings this Motion now,

8  when it has stretched to a breaking point its excuses to avoid producing any documents

9  or witnesses for deposition. (Kim Decl., ¶12.) Epson hopes to force Plaintiffs to start

10  over after extended litigation or use this Motion as yet another excuse to delay

11  producing damaging discovery on the merits. In the face of such delay, this Court "must

12  be skeptical of the impetus and purpose of defendants' motion to disqualify the . . . firm

13  because it poses the very threat to the integrity of the judicial process that it purports to

14  prevent." *Sharp v. Next Entertainment, Inc.,* 163 Cal. App. 4th 410, 434 (2008)

15  (recognizing such motions "'can be used to harass opposing counsel, to delay the

16  litigation, to intimidate an adversary into accepting settlement on otherwise

17  unacceptable terms, or for other strategic purposes. [Citation.].'"); *In re Marvel,* 251

18  B.R. at 871 (motions to disqualify are "often tactically motivated" because "they tend to

19  derail the efficient progress of litigation.").

20       Epson's belated and prejudicial motion should be denied.

21  **G.**    **This Court Has Alternative Means Of Protecting Disclosure Of**

22          **Confidential Information.**

23       Epson's disqualification motion also ignores the fact that this Court has readily

24  available alternative means to deal with any concern about the improper dissemination

25  of confidential information. "[L]itigants such as [Epson], who are concerned that

26  privileged or confidential information may be publicly disclosed by their former

27  employee, should seek an appropriate protective order," not disqualification. *Neal,* 100

28  Cal. App. 4th at 850; *see id.* at 844 ("Client confidences can be protected from

6460837

1  unwarranted public disclosure by less drastic measures such as:  protective orders,

2  limiting the admission of evidence; in camera proceedings; the use of sealed records;

3  payment of attorney fees and costs; and disciplinary sanctions through the State Bar of

4  California in appropriate circumstances.") (citing, *inter alia*, *Fox Searchlight*, 89 Cal.

5  App. 4th at 309-10; *Gregori*, 207 Cal. App. 3d at 308-09); *accord Cooke*, 83 Cal. App.

6  3d at 592.  Notably, this Court has pending before it a proposed protective order that

7  would restrict the use and dissemination of confidential information, and plaintiffs have

8  volunteered to treat the PowerPoint as if it were subject to that order.  (Kim Decl., ¶¶7-

9  8; its Exh. "C.")  Where, as here, less drastic measures exist to protect confidential

10  information, this Court should reject disqualification.

## V.  CONCLUSION

For the foregoing reasons, this Court should deny Epson's motion.


Dated:  April 26, 2010                          AKIN GUMP STRAUSS HAUER & FELD LLP


By _____
                Joanna H. Kim
           Attorneys for Plaintiffs
CHRISTOPHER O'SHEA, GISELE ROGERS,
            and JEFF ADAMS