**O**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**#84/93/145**

**CIVIL MINUTES - GENERAL**

| Case No. | CV 09-8063 PSG (CWx) | Date | June 4, 2010 |
|---|---|---|---|
| Title | Christopher O'Shea *et al.* v. Epson America, Inc. *et al.* | | |

| Present: | The Honorable Philip S. Gutierrez, United States District Judge | |
|---|---|---|
| Wendy K. Hernandez | Not Present | n/a |
| Deputy Clerk | Court Reporter | Tape No. |

Attorneys Present for Plaintiff(s):      Attorneys Present for Defendant(s):

Not Present                                          Not Present

**Proceedings:** **(In Chambers) Order DENYING Defendants' Motion to Disqualify Plaintiffs' Counsel**

Before the Court is Defendant Epson America, Inc.'s and Defendant Epson Accessories, Inc.'s motion to disqualify Plaintiffs' counsel. The Court finds the matter appropriate for decision without oral argument. *See* Fed. R. Civ. P. 78; L.R. 7-15. Having considered the papers submitted in support of and in opposition to Defendants' motion, the Court DENIES the motion.

I.   Background

In February 2009, Defendants Epson America, Inc. and Epson Accessories, Inc. (collectively, "Defendants" or "Epson"), who are in the business of manufacturing and selling inkjet printers and ink cartridges, terminated the employment of Fabrice Commelin ("Commelin").[1] Commelin had been with Epson for more than twenty-five years, during the last seventeen of which his job title was Vice President Latin America. In that position, he was responsible for overseeing Epson's Latin American business operations.

In March 2009, Commelin retained the services of the law firm of Yuhl Stoner Carr LLP ("Yuhl Stoner") to pursue a wrongful termination suit against Epson, based on Commelin's

---

[1] The facts in this Background are taken from the Second Amended Complaint, as well as the papers submitted in connection with the present motion, and are not in dispute on the motion.

**O**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**#84/93/145**

**CIVIL MINUTES - GENERAL**

| Case No. | CV 09-8063 PSG (CWx) | Date | June 4, 2010 |
|---|---|---|---|
| Title | Christopher O'Shea *et al.* v. Epson America, Inc. *et al.* | | |

claim that he had been terminated for expressing concerns that Epson was misrepresenting the performance and characteristics of some of its printers.  *See Anderson Decl.,* Ex. C at Transcript 142:19-143:7.  About a month later, Commelin also began communicating with the law firm of Akin Gump Strauss Hauer & Feld LLP ("Akin Gump") regarding the suit, *see id.* at 143:20-22, and it appears that by May 2009 Commelin was being represented by both Yuhl Stoner and Akin Gump in connection with his wrongful termination claim, *see Melby Decl.,* Ex. B.  According to Commelin, however, Akin Gump ceased to represent him by late summer of 2009.  *See Kim Decl.*, Ex. D at Transcript 146:20-147:5.[2]  In any event, it appears that Akin Gump no longer represented Commelin by the time he filed his suit for wrongful termination against Epson on December 3, 2009 (the "*Commelin* action").  *See Plaintiffs' RJN,* Ex. B.

      Meanwhile, on August 28, 2009, Plaintiffs Christopher O'Shea, Gisele Rogers, and Jeff Adams (collectively, "Plaintiffs") filed this class action against Epson, based on allegations that Epson misrepresents material information about its printers and ink cartridges when it markets them to consumers.  From the outset, Plaintiffs have been represented in this action by Yuhl Stoner and Akin Gump (collectively, "Plaintiffs' counsel").

      On March 2, 2010, Plaintiffs deposed Commelin.  In connection with the deposition, Commelin produced documents he acquired during and as a result of his employment with Epson.  Among these were a 14-page PowerPoint presentation concerning "inky efficiency" in Epson products (the "PowerPoint"), which appears to have been prepared, at least in part, by the research and development division of Epson's Japanese parent company, Seiko Epson Corporation.  *See Kim Decl.* ¶ 3, Ex. B.; *Anderson Decl.* ¶ 32.  Commelin also produced two in-house Epson memoranda on unspecified subjects, dating from 1993 and 1997.  *See Kim Decl.* ¶ 4; *Motion* 9:11-12.  During his deposition, Commelin was represented by counsel from Yuhl Stoner.  He was examined by counsel from Akin Gump and counsel for Epson.

      On April 21, 2010, Epson filed the present motion to disqualify both Yuhl Stoner and Akin Gump from representing Plaintiffs in this action.

II.    <u>Legal Standard</u>

---

[2] Akin Gump, however, apparently continued to receive copies of communications between Yuhl Stoner and counsel for Epson regarding Commelin's wrongful termination allegations through at least September 2009.  *See Melby Decl.*, Ex. C.

**O**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**#84/93/145**

**CIVIL MINUTES - GENERAL**

| Case No. | CV 09-8063 PSG (CWx) | Date | June 4, 2010 |
|---|---|---|---|
| Title | Christopher O'Shea *et al.* v. Epson America, Inc. *et al.* | | |

Motions to disqualify counsel are decided under state law. *See In re County of Los Angeles,* 223 F.3d 990, 995 (9th Cir. 2000); *see also* L.R. 83-3.1.2 (adopting California's standards of professional conduct). A determination to disqualify counsel is within the discretion of the trial court as an exercise of its inherent powers. *See Erickson v. Newmar Corp.,* 87 F.3d 298, 303 (9th Cir. 1996) (noting that district courts have "an arsenal of sanctions they can impose for unethical behavior," including disqualification of counsel). Determining whether to disqualify counsel will ultimately involve consideration of the "conflict between the clients' right to counsel of their choice and the need to maintain ethical standards of professional responsibility." *See Metro-Goldwyn-Mayer, Inc. v. Tracinda Corp.,* 36 Cal. App. 4th 1832, 1838, 43 Cal. Rptr. 2d 327 (1995). "*The paramount concern, though, must be the preservation of public trust in the scrupulous administration of justice and the integrity of the bar.*" *Id.* (emphasis in original).

Notably, however, a party seeking disqualification bears a "heavy burden." *See City and County of San Francisco v. Cobra Solutions, Inc.,* 38 Cal. 4th 839, 851, 43 Cal. Rptr. 3d 771 (2006). In fact, "[b]ecause a motion to disqualify is often tactically motivated and can be disruptive to the litigation process, disqualification is a drastic measure that is generally disfavored and should only be imposed when absolutely necessary." *Concat LP v. Unilever, PLC,* 350 F. Supp. 2d 796, 814 (N.D. Cal. 2004) (citations omitted); *see also Richardson-Merrell, Inc. v. Koller,* 472 U.S. 424, 436, 105 S. Ct. 2757, 86 L. Ed. 2d 340 (1985) (expressing "concern about 'tactical use of disqualification motions' to harass opposing counsel"); *Optyl Eyewear Fashion International Corp. v. Style Cos.,* 760 F.2d 1045, 1050 (9th Cir. 1985) ("Because of this potential for abuse, disqualification motions should be subjected to particularly strict judicial scrutiny.") (internal quotations omitted); *Gregori v. Bank of America,* 207 Cal. App. 3d 291, 300-01, 254 Cal. Rptr. 853 (1989) ("Motions to disqualify counsel often pose the very threat to the integrity of the judicial process that they purport to prevent.").

III.   Discussion

Epson contends that, as a result of his employment with the company, Fabrice Commelin "was privy to Epson's attorney-client privileged and confidential communications regarding ink cartridge performance issues, the very subject of this [class action] lawsuit." *Motion* 1:24-26. Epson further contends that, as a result of their representation of Commelin in connection with his wrongful termination suit, Plaintiffs' counsel "stepp[ed] into [Commelin's] shoes with respect to any obligations to maintain [the] confidentiality" of those communications. *See id.* at

**O**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**#84/93/145**

**CIVIL MINUTES - GENERAL**

| Case No. | CV 09-8063 PSG (CWx) | Date | June 4, 2010 |
|---|---|---|---|
| Title | Christopher O'Shea *et al.* v. Epson America, Inc. *et al.* | | |

11:19-25 (citing *Packard Bell NEC, Inc. v. Aztech Sys. Ltd.,* 2001 U.S. Dist. LEXIS 11194, *20-22 (C.D. Cal. January 22, 2001)); *see also Packard Bell,* 2001 U.S. LEXIS 11194, *21 (concluding that obligation of former employee to maintain company confidences was shared by law firm representing former employee).  Nevertheless, according to Epson, Plaintiffs' counsel has made use of those purportedly confidential and privileged communications regarding ink cartridge performance in initiating and prosecuting this class action.

     According to Epson, these circumstances warrant disqualification of Plaintiffs' counsel for three reasons.  First, Epson argues that Plaintiffs' counsel is subject to an impermissible conflict of interest between their (imputed) obligation to maintain Epson's purported confidences and their duty to represent zealously their class action clients, including by use of Epson's purportedly confidential information.  *See Motion* 11:5-15:5; *see also* Cal. Rule of Prof. Conduct 3-310(c)(1) (providing that an attorney shall not, without informed written consent of each client, "accept representation of more than one client in a matter in which the interests of the clients potentially conflict"); *Packard Bell,* 2001 U.S. LEXIS 11194, *24 (finding violation of Rule 3-310 based on court's determination that interest of client conflicted with interest of non-client to whom attorney owed duty of confidentiality).

     Second, Epson contends that Plaintiffs' counsel received from Commelin certain privileged information belonging to Epson and that Plaintiffs' counsel has acted unethically by making unfair use of that information to initiate and prosecute this suit.  *See Motion* 15:16-19:10; *see also Rico v. Mitsubishi Motors Co.,* 42 Cal. 4th 807, 817-19, 68 Cal. Rptr. 3d 758 (2007) (finding disqualification appropriate where attorney "acted unethically in making full use of" an adversary's document he knew to be confidential and thereby placed the adversary "at a great disadvantage").

     Finally, Epson argues that, through Commelin, Plaintiffs' counsel has had "extra-judicial" access to Epson's confidential and privileged information in a manner that unfairly advantages Plaintiffs in prosecuting this action and therefore impermissibly threatens the integrity of these proceedings.  *See Motion* 19:11-22:13 (citing, *inter alia*, *Cargill Inc. v. Budine*, 2007 U.S. Dist. LEXIS 48405 (E.D. Cal. June 22, 2007)); *see also Cargill,* 2007 U.S. Dist. LEXIS 48405, *43-44 (disqualifying counsel based on determination that its acquisition of confidential, advantageous information through private consultation rather than through normal discovery procedures impermissibly threatened the integrity of the proceedings).

**O**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**#84/93/145**

**CIVIL MINUTES - GENERAL**

| Case No. | CV 09-8063 PSG (CWx) | Date | June 4, 2010 |
|---|---|---|---|
| Title | Christopher O'Shea *et al.* v. Epson America, Inc. *et al.* | | |

The Court finds, however, that regardless of whether California law supports disqualification on the foregoing legal theories, Epson has failed to establish a critical fact necessary to support these theories. Specifically, Epson has failed to make a sufficient showing that, at any time during his representation by Plaintiffs' counsel, Commelin has been in possession of privileged or confidential information that would unfairly advantage Plaintiffs in this action.

The purportedly confidential and privileged information to which Epson points includes, first, "privileged attorney-client communications between Epson's in-house counsel [Alf Anderson ("Anderson")] and business and technical personnel," including Commelin. *See Motion* 3:13-15. Many of these communications, according to Epson, related to "ink cartridge performance and related marketing and disclosures." *See id.* at 4:3-5.

The Court notes, however, that none of the communications to which Epson refers has previously been determined—whether in this action or the *Commelin* action—to be confidential or privileged. Nor is the Court in a position to make such a determination at this time, since it lacks sufficient evidence regarding the existence, circumstances, and contents of these communications. Epson purportedly identifies a number of these communications (all, apparently, e-mails) by vague and conclusory descriptions in a chart attached to the declaration of Alf Anderson. *See Anderson Decl.* ¶¶ 6-9, Ex. A. But the Court finds this insufficient to establish the privileged status of these communications, particularly in light of Anderson's role as Epson's in-house counsel, *see United States v. Chevron Texaco Corp.*, 241 F. Supp. 2d 1065, 1076 (N.D. Cal. 2001) ("With respect to internal communications involving in-house counsel, [a party asserting the attorney-client privilege] must make a 'clear showing' that the 'speaker' made the communications for the purpose of obtaining or providing legal advice."),[3] as well as

---

[3] As the court in *Chevron Texaco Corp.* explained:
[I]n-house attorneys can serve multiple functions within the corporation. In-house counsel may be involved intimately in the corporation's day to day business activities and frequently serve as integral players in business decisions or activities. Accordingly, communications involving in-house counsel might well pertain to business rather than legal matters. The privilege does not protect an attorney's business advice. Corporations may not conduct their business affairs in private simply by staffing a transaction with attorneys.

*See Chevron Texaco Corp.*, 241 F. Supp. 2d at 1076.

**O**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**#84/93/145**

**CIVIL MINUTES - GENERAL**

| Case No. | CV 09-8063 PSG (CWx) | Date | June 4, 2010 |
|---|---|---|---|
| Title | Christopher O'Shea *et al.* v. Epson America, Inc. *et al.* | | |

Commelin's deposition testimony that he received only "a few" privileged communications from Anderson over the years, *see id.*, Ex. C at 171:3-22, and was not at all privy to the discussions or communications of the group of Epson employees (which included Anderson) specifically tasked with investigating "legal issues relating to ink efficiency," *see id.* at 178:9-180:3. *See In re Grand Jury Investigation,* 974 F.2d 1068, 1071, 1074-75 (indicating that the prima facie showing of privilege established by a privilege log may be successfully rebutted by a showing of facts sufficient to support a reasonable, good faith belief that information in the materials is not privileged).

Moreover, even assuming the privileged or confidential status of the e-mails cited by Epson, the Court cannot tell from Anderson's brief and conclusory descriptions whether, how, or to what extent those e-mails relate to the matters at issue in the class action and thus whether knowledge of their contents would unfairly advantage Plaintiffs. *Compare, e.g., Packard Bell,* 2001 U.S. LEXIS 11194, *21, 24-25 (finding unfair advantage where information at issue was undisputedly privileged and confidential and likely dispositive of key issues in the case).

The next purportedly privileged and confidential information to which Epson points is the PowerPoint presentation. *See Motion* 9:12-15. Again, however, the Court notes that the PowerPoint presentation has not been judicially determined to be privileged or confidential. Moreover, Epson expressly requests that the Court refrain from making such a determination at this time. *See id.* at 5:15-24 n. 11. That Commelin has shared the PowerPoint presentation with Plaintiffs' counsel is therefore not grounds for disqualification on the theories Epson has advanced.

Epson also points to the two in-house Epson memoranda produced by Commelin at his deposition. *See Motion* 9:11-12. But even assuming these communications are privileged, as Epson contends, their subject has not been disclosed to the Court, they pre-date the class period in this action by roughly ten years, and Plaintiffs' counsel's only copies were destroyed or returned to Epson after a brief review satisfied them that the documents were privileged, as Epson's counsel contended (for the first time) at Commelin's deposition. *See Kim Decl.* ¶ 4; *Stoner Decl.* ¶¶ 15-18. Thus, Epson has failed to establish that Plaintiffs' counsel likely acquired unfair advantage from these memoranda or that Plaintiffs' counsel's handling of the memoranda in any way supports disqualification. *See Rico v. Mitsubishi Motors Co.,* 42 Cal. 4th 807, 817-18.

**O**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**#84/93/145**

**CIVIL MINUTES - GENERAL**

| Case No. | CV 09-8063 PSG (CWx) | Date | June 4, 2010 |
|---|---|---|---|
| Title | Christopher O'Shea *et al.* v. Epson America, Inc. *et al.* | | |

      Finally, Epson points to evidence indicating that in August 2009, when soliciting potential plaintiffs for this class action, Yuhl Stoner used the product name "Shirakami," which Epson contends is "an internal Epson printer code name that is not used publicly" and therefore must have been provided to Yuhl Stoner by Commelin.  *See Motion* 6:11-21; *Anderson Decl.* ¶ 31.  The evidence cited by Epson, however, is insufficient to establish that its use of the term "Shirakami" was ever confidential or privileged.  That evidence merely indicates that the term "Shirakami" was, for some unspecified period, "not used publicly."  *See Anderson Decl.* ¶ 31.

      For the foregoing reasons, and especially in view of the "particularly strict judicial scrutiny" appropriate to disqualification motions, *see Optyl Eyewear,* 760 F.2d at 1050, the Court finds that Epson has failed to establish that, while represented by Plaintiffs' counsel, Fabrice Commelin was in possession of privileged or confidential information likely to give Plaintiffs an unfair advantage in this action.  The Court therefore denies Epson's motion to disqualify Plaintiffs' counsel.

IV.    <u>Conclusion</u>

      For the foregoing reasons, the Court DENIES Epson's motion to disqualify Plaintiffs' counsel.

      **IT IS SO ORDERED.**