**AKIN GUMP STRAUSS HAUER & FELD LLP**
CATHERINE A. CONWAY (SBN 98366)
cconway@akingump.com
REX S. HEINKE (SBN 66163)
rheinke@akingump.com
JOANNA H. KIM (SBN 183799)
jkim@akingump.com
2029 Century Park East, Suite 2400
Los Angeles, California 90067
Telephone: 310.229.1000
Facsimile: 310.229.1001

**YUHL STONER CARR LLP**
ERIC F. YUHL (SBN 102051)
eyuhl@yslawyers.com
601 South Figueroa Street, Suite 2340
Los Angeles, California 90017
Telephone: 213.687.2640
Facsimile: 213.827.4200

Attorneys for Plaintiff CHRISTOPHER O'SHEA,
GISELE ROGERS and JEFF ADAMS

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHRISTOPHER O'SHEA, GISELE ROGERS and JEFF ADAMS, individuals, on behalf of themselves and all others similarly situated,<br><br>                    Plaintiffs,<br><br>        v.<br><br>EPSON AMERICA, INC., a California corporation; EPSON ACCESSORIES, INC., a California corporation; SEIKO EPSON CORPORATION, a Japanese corporation; and DOES 1-100, inclusive,<br><br>                    Defendants. | Case No. CV09-8063 PSG (CWx)<br>[The Honorable Philip S. Gutierrez]<br><br>**CLASS ACTION**<br><br>**THIRD AMENDED CLASS ACTION COMPLAINT FOR:**<br>1. UNFAIR BUSINESS PRACTICES IN VIOLATION OF CAL. BUS. & PROF. CODE § 17200, *et seq.*;<br>2. FALSE ADVERTISING IN VIOLATION OF CAL. BUS. & PROF. CODE § 17500, *et seq.*;<br>3. CONSUMER LEGAL REMEDIES ACT VIOLATIONS OF CAL. CIV. CODE § 1750, *et seq.;* and<br>4. FRAUD.<br><br>**DEMAND FOR A JURY TRIAL** |

6411529

1    Plaintiffs Christopher O'Shea, Gisele Rogers and Jeff Adams (collectively,

2  "Plaintiffs"), bring this Class Action Complaint against defendants Epson America, Inc.

3  ("Epson America"), Epson Accessories, Inc. ("Epson Accessories") and Seiko Epson

4  Corporation ("SEC" and collectively, "Epson" or "Defendants"), on Plaintiffs' behalf

5  and all others similarly situated, and alleges, on information and belief, except as to

6  their own actions, as follows:

## NATURE OF THE ACTION

8    1.    This lawsuit is about a printer manufacturer, Epson, which preys on their

9  captured consumers by misrepresenting product quality information about Epson's

10  printers and ink cartridges. Epson marketed and sold their supposed low cost inkjet

11  printers with a requirement to use only Epson ink cartridges to maintain warranty, while

12  misrepresenting and concealing the grossly inefficient print yields generated by its ink

13  cartridges, which are well below reasonable consumer expectations and the yields of

14  other manufacturers' printers.

15    2.    Despite numerous complaints from individuals and despite knowing of a

16  method to mitigate ink loss, Epson concealed such method and refused to take steps to

17  inform consumers of it. Epson had constructed a business model to sell inkjet printers

18  at or below cost while maximizing profits on the sale of inefficient ink cartridges for

19  such printers. Epson had no motivation to disseminate the more efficient method. That

20  would only decrease Epson's sales of ink cartridges. Instead, Epson hoped that most

21  consumers would simply not notice the ink waste, and thereby continue to purchase

22  more and more of these wasteful ink cartridges, all to Epson's profit.

23    3.    Accordingly, Plaintiffs bring this action for injunctive and equitable relief,

24  damages, restitution, and/or disgorgement of profits and all such additional relief as may

25  be appropriate, on behalf of themselves and all others similarly situated who purchased,

26  not for resale, inkjet printers and printer ink cartridges manufactured, marketed, and/or

27  sold by Epson.

28

## PARTIES

4.     Defendant Epson America, Inc. ("Epson America") is a California corporation engaged in the business of, *inter alia*, manufacturing, marketing, and selling inkjet printers and printer ink cartridges.

5.     Epson America has its principal place of business and corporate headquarters in Long Beach, County of Los Angeles, California.

6.     Epson America has conducted and continues to conduct substantial and regular business both in the State of California and throughout the United States.

7.     Epson America's policies and operations within the United States are principally made and dictated by and/or through Epson America's corporate headquarters in the County of Los Angeles in the State of California.

8.     Epson America is a California company planning and disseminating marketing and advertising from California throughout the United States.  Such advertising and marketing was planned in California with and through Epson America's California-based advertising agencies.

9.     Epson America regularly conducted and conducts its distribution and sales business within the County of Los Angeles, State of California.

10.     In the "Terms of Use" for its website, Epson America states that its website "is controlled and operated by Epson from its offices within the State of California, United States of America."  Epson America further states that the "Terms of Use" for its website "shall be governed by and construed in accordance with the laws of the State of California."

11.     Defendant Epson Accessories, Inc. ("Epson Accessories") is a California corporation engaged in the business of marketing and selling inkjet printers and printer ink cartridges.

12.     Epson Accessories has its principal place of business and corporate headquarters in the County of Los Angeles in the State of California.

13.     Epson Accessories has conducted and continues to conduct substantial and regular business in the State of California and throughout the United States.

14.     Epson Accessories' policies and operations within the United States are principally made and dictated by and/or through Epson Accessories' corporate headquarters in Long Beach, County of Los Angeles, California.

15.     Epson Accessories is a California company planning and disseminating marketing and advertising from California throughout the United States.  Such advertising and marketing was planned in California.

16.     Epson Accessories regularly conducted and conducts its distribution and sales business within the County of Los Angeles, State of California.

17.     In the "Terms and Conditions of Sale" on Defendants' website, Epson Accessories states the following: "You agree that any dispute between us will be governed by the laws of the State of California without regard to its conflict of law principles. The sole jurisdiction and venue for any legal proceeding will be the appropriate federal or state court located in Los Angeles County, California."

18.     SEC is a Japanese company engaged in the business of, *inter alia*, developing, manufacturing, sales, marketing and servicing information-related equipment, including consumer printers and ink cartridges.

19.     SEC has its principal place of business and corporate headquarters in Nagano, Japan.

20.     Epson America and Epson Accessories are wholly owned subsidiaries of SEC.

21.     SEC develops and manufactures printers and ink cartridges intended for sale to California and United States consumers through its Epson America and Epson Accessories subsidiaries.  SEC further participates in and facilitates the marketing and sale of Epson's printers and ink cartridges throughout California and the United States, including involvement in decisions concerning the pricing and marketing of Epson products.

22.   At all relevant times, Defendants participated in, authorized, ratified, and/or directed the manufacture, production, marketing, promotion, and sales of the defective inkjet printers and/or ink cartridges when they knew or should have known of the damages that Defendants' misrepresentations, material omissions, acts of concealment, inherently defective products, and wrongful business practices would have on consumers and thereby actively participated in the conduct which resulted in the damages described herein.

23.   At all relevant times, California was and is the site of Defendants' United States headquarters and the place where all significant decision-making occurred with respect to the advertising, marketing, distribution, and sale of Defendants' inkjet printers and cartridges within the United States.

24.   At all times relevant to this action Defendants were the controlling and decision-making entities responsible for the wrongful conduct alleged herein.

25.   Whenever this Complaint refers to any act or acts of Defendants, the references shall also be deemed to mean the directors, officers, employees, affiliates, or agents of the Defendants who authorized or ratified such act or acts while actively engaged in the management, direction, or control of the affairs of Defendants, and by persons who are parents or alter egos of Defendants while acting within the scope of their agency, affiliation or employment, jointly or severally.

26.   Plaintiff Christopher O'Shea is a California resident.  In November of 2008, Plaintiff purchased an Artisan 800 inkjet printer and thereafter purchased additional replacement printer ink cartridges manufactured, marketed, and/or sold by Defendants for his personal and/or household use.

27.   Plaintiff Gisele Rogers is a California resident.  In May of 2009, Rogers purchased an Epson NX 200 inkjet printer and thereafter purchased additional replacement printer ink cartridges manufactured, marketed, and/or sold by Defendants for her personal and/or household use.

28.     Plaintiff Jeff Adams is a California resident. In July of 2009, Adams purchased an Epson Workforce 310 inkjet printer and thereafter purchased additional replacement printer ink cartridges manufactured, marketed, and/or sold by Defendants for his personal and/or household use.

29.     Plaintiffs collectively bring this action on behalf of a class of all consumers throughout the United States that have purchased an inkjet printer and printer ink cartridges manufactured, marketed, and/or sold by Defendants during the relevant time period.  Plaintiff Rogers bring this action on behalf of a subclass of all consumers throughout the United States that have purchased an Epson NX series of inkjet printers and associated printer ink cartridges manufactured, marketed, and/or sold by Defendants during the relevant time period.

30.     Plaintiffs were and are persons within the class further described and defined below.  Plaintiff Rogers was and is a person within the subclass further described and defined below.

31.     The true names and capacities, whether individual, corporate, associate, or otherwise, of Does 1-100, inclusive ("Does"), are unknown to Plaintiffs, who therefore sue said Does by such fictitious names.  Plaintiffs will seek leave of court to amend this Complaint to show the true names and capacities when the same have been ascertained.

32.     Each of the Doe Defendants is responsible in some manner for the conduct alleged herein and for the injuries suffered by Plaintiffs and the members of the class and subclass as defined below.  The Doe Defendants were the agents, servants and/or employees of the other defendants and in doing the things alleged here, and at all times, were acting within the scope of their authority as such agents, servants and employees, and with the permission and consent of the other defendants.

33.     At all relevant times, Defendants, and each of them, were members of, and engaged in, a joint venture, partnership and common enterprise, and acting within the course and scope of, and in pursuance of, said joint venture, partnership and common enterprise.

6411529

5

34.   At all relevant times, the acts and omissions of various Defendants, and each of them, concurred and contributed to the various acts and omissions of each and all of the other Defendants in proximately causing the injuries and damages alleged here.

35.   At all relevant times, Defendants, and each of them, ratified each and every act or omission complained of here.  At all relevant times, Defendants, and each of them, aided, abetted, and consented to the acts and omissions of each and all of the other Defendants in proximately causing the injuries and damages alleged here.

## FACTUAL ALLEGATIONS

36.   Plaintiffs and class members are the current and/or previous owners of inkjet printers manufactured and/or marketed by Defendants.

37.   Defendants manufacture, market, and/or offer for sale numerous models of inkjet printers and/or ink cartridges.

38.   Throughout all relevant times, Defendants have engaged in an untrue, misleading, or deceptive marketing and sales campaign, in which they concealed and/or omitted from Plaintiffs and class members material information regarding inkjet printers and/or ink cartridges manufactured, marketed, and/or sold by Defendants, including, but not limited to, the fact that (1) actual ink efficiency for use by a consumer was far worse than claimed by Defendants; (2) ink efficiency of Defendants' inkjet printers was far below industry norms and/or standards; (3) ink yield statistics claimed by Defendants were not based on typical usage and were designed to conceal the amount of ink wasted during typical usage; (4) Defendants' inkjet printers were defective; (5) ink waste by Defendants' inkjet printers was far greater than industry norms and/or standards; (6) Defendants were selling inkjet printers at or below cost to induce sales of the defective printers so that Defendants could profit from their printers' defects and excessive ink waste; (7) Defendants' color inkjet printers were designed to be received by the consumer in a default mode in which the greatest amount of ink waste took place; and (8) there was a method to reduce, but not to eliminate, some of the ink waste by

6411529

6

changing modes on Defendants' color inkjet printers while printing in black-and-white, which Defendants concealed and did not reveal.

39.     Defendants' marketing and sales representations about inkjet printers were false, untrue, or misleading because Defendants made misrepresentations, omissions, and/or failed to disclose material information to consumers, including, but not limited to, Plaintiffs and class members regarding the defects with Defendants' printers, the true ink efficiency and ink waste of such printers, and potential methods to partially reduce excessive ink waste.

40.     Defendants' misrepresentations and material omissions regarding their inkjet printers and/or ink cartridges are consistent and uniform.

41.     Consumers, including Plaintiffs, who purchased Defendants' inkjet printers considered Defendants' marketing and sales statements concerning the printers and/or ink cartridges before sale and relied upon same in deciding to make their purchases.

42.     Defendants' deceptive marketing and sales practices, including misrepresentations, omissions, and/or acts of concealment were material and substantial, and were made in the form of common misrepresentations.

43.     Defendants' marketing and sales campaign was directed to all consumers and potential consumers in the United States intending to result in the sales of Defendants' inkjet printers and then of Defendants' ink cartridges.

44.     For example, but without limitation, Defendants engaged in a campaign known as "Epsonality" in which Defendants "wanted to sell the printers by selling the Epsonality experience." Defendants have stated that an "Epsonality" website was created to "cut through meaningless model names and complicated spec lists." As part of the "Epsonality" campaign, Defendants sought, in part, to convince consumers that Defendants' printers were "precision printing tools." During their "Epsonality" campaign, or any other advertising campaign, Defendants did not state in their advertisements that consumers were required to buy only ink manufactured and/or marketed by Defendants in order to maintain the warranty on their printer. Moreover,

1   during their "Epsonality" campaign, Defendants did not state that their printers

2   excessively wasted ink, used color ink during printing in black-and-white, used black

3   ink during color printing, or that the printers were defective. Defendants bragged that as

4   a result of the "Epsonality" campaign Defendants received a strong boost in visits to

5   Defendants' website and enjoyed "one of its biggest Black Fridays ever."

6       45.   In Defendants' advertising and marketing they direct consumers to their

7   website (www.epson.com).

8       46.   On their website Defendants extensively refer to testing on ink yields but

9   do not provide any information on ink yields that may be achieved with their printers

10  during typical consumer usage.

11      47.   On their website Defendants do not identify ink yields in comparison to

12  other manufacturers' and/or sellers' printers during typical consumer usage.

13      48.   On their website Defendants do not inform consumers, in certain instances,

14  that color ink is used during black-and-white printing or that black ink is used during

15  color printing. In other instances, Defendants trivialize or attempt to minimize such

16  usage, concealing the true extent of such usage and waste.

17      49.   On their website Defendants claim that their ink yields outperformed

18  "third-party" inks but do not identify the manufacturers of such "third-party" ink or on

19  what brand of printers such inks were tested. Further, Defendants do not state to

20  consumers in their marketing statements about "third-party" ink that consumers may not

21  use such "third-party" ink without voiding Defendants' warranty.

22      50.   On their website Defendants repeatedly brag that their inkjet and ink

23  products achieve "more prints per [ink] cartridge."

24      51.   On their website, Defendants answer an "FAQ" regarding why Defendants'

25  ink cartridges do not feature tools to measure ink volume remaining in the ink cartridges

26  by claiming that such information regarding volume of ink is not useful to consumers.

27      52.   On their website, Defendants answer an "FAQ" regarding yields varying

28  cartridge to cartridge by claiming that some ink is wasted from the first cartridge but

6411529                                          8

1  that "[s]ubsequent cartridges will deliver the yields specified in accordance with the ISO

2  standard."

3      53.   On their website, Defendants highlight ink yield testing done "in

4  accordance with the ISO standard" that is based on continuous printing, *i.e.*, continuing

5  to print without stopping from the first page until all ink is exhausted.  Defendants are

6  aware that such continuous test printing does not reflect typical customer usage and is

7  designed to minimize the ink waste that a typical consumer would suffer.  Indeed,

8  Defendants are well aware that the vast majority of consumers do not use continuous

9  printing but instead are considered 'non-continuous' users, which significantly

10  exacerbates ink loss/waste and printing inefficiencies alleged herein.

11      54.   Defendants nonetheless claim that their testing of ink yields is designed to

12  "assure reliability and accuracy."

13      55.   Contrary to Defendants' assertions and marketing and advertising

14  statements, Defendants knew, but failed to disclose, or acted in reckless disregard in not

15  knowing, that their inkjet printers and/or ink cartridges were defective.

16      56.   Contrary to Defendants' assertions and marketing and advertising

17  statements, Defendants knew, but failed to disclose, or acted in reckless disregard in not

18  knowing that their inkjet printers and/or ink cartridges excessively wasted ink.

19      57.   Contrary to Defendants' assertions and marketing and advertising

20  statements, Defendants knew, but failed to disclose, or acted in reckless disregard in not

21  knowing, that their inkjet printers wasted ink far greater than industry standards and/or

22  norms, and below reasonable customer expectations particularly for the vast majority of

23  consumers who are "non-continuous" print users.

24      58.   Contrary to Defendants' assertions and marketing and advertising

25  statements, Defendants knew, but failed to disclose, or acted in reckless disregard in not

26  knowing, that their testing of ink yield was not designed to assure reliability and

27  accuracy.

28

59.    Contrary to Defendants' assertions and marketing and advertising statements, Defendants knew, but failed to disclose, or acted in reckless disregard in not knowing, that because of the ink waste of their printers, customers would not achieve more printing per cartridge than would be achieved with other brands of printers.

60.    Defendants' marketing and advertising statements were part of a scheme by which Defendants sought to drive sales of their printers so as to take advantage of the printers' defects and/or ink waste to profit from increased sales of ink with high profit margins.

61.    Despite numerous consumer complaints and knowledge of the defects inherent in their inkjet printers, Defendants have never informed customers, warned customers, or taken steps to remedy the defects. Instead, Defendants continue to manufacture, market, promote, and/or sell the defective printers to the public.

62.    Defendants' scheme to wrongfully profit from sales of ink resulting from ink waste included selling their printers at or below cost to further drive sales of the printers and thus the ink. Because Defendants' conditions their printers' warranties on exclusive use of their ink, and because Defendants also attempt to further induce customers to exclusively rely on and use their ink, Defendants knew or should have known that increased sales of its ink-wasting printers would lead to increased sales of their ink, and that consumers would be damaged by being required to unnecessarily purchase additional ink resulting from the ink waste and defective printers.

63.    By failing to disclose the waste of ink by their printers, Defendants conceal and misrepresent the true cost of owning and operating their printers. Moreover, Defendants' attempt to increase their own profits through the exploitation of their own products' defects through selling such defective and/or wasteful products at or below cost is wrongful.

64.    Defendants also advertised on the packaging, including, but not limited to, the packaging of the Epson NX 515 and NX 200 printers, the statement that such printers could print with only the color ink cartridge desired. Such statements, include,

1    but are not limited to, "Individual ink cartridges –replace only the color you need," and

2    "Replace only the color that you need with individual ink cartridges." Such statements

3    were false, untrue, and/or misleading. Defendants failed to disclose that the printers did

4    not operate unless all of the ink cartridges were used and that ink from all of the color

5    ink cartridges was used every time an individual printed. Consumers, such as Plaintiff

6    Rogers and members of the Subclass, relied upon such non-disclosures in making their

7    purchase, as they would not have purchased, or would have paid significantly less for,

8    the inkjet printers and/or ink cartridges if they had known such material information.

9                                    **CLASS ACTION ALLEGATIONS**

10           65.    On November 18, 2008 Plaintiff O'Shea purchased an Epson inkjet printer

11   with the model name, "Artisan 800." Similarly, on May 13, 2009, Plaintiff Rogers

12   purchased an Epson inkjet printer with the model name, "NX 200." Likewise, on July

13   29, 2009, Plaintiff Adams purchased an Epson inkjet printer with the model name,

14   "Workforce 310." Concurrently and/or thereafter their purchase, Plaintiffs purchased

15   numerous ink cartridges manufactured and/or marketed by Defendants for use in their

16   respective Epson inkjet printers.

17           66.    This action may be properly maintained as a class action pursuant to Rule

18   23(b)(3) of the Federal Rules of Civil Procedure. The class is comprised of, and defined

19   as:

20           All persons throughout the United States that purchased an
             inkjet printer and/or ink cartridges manufactured, marketed,
21           and/or sold by Epson America, Inc. and/or Epson Accessories,
             Inc. at any time within four years of filing this complaint.
22

23   Additionally, a subclass is comprised of, and defined as:

24           All persons throughout the United States that purchased an
             inkjet printer and/or ink cartridges manufactured, marketed,
25           and/or sold by Epson America, Inc. and/or Epson Accessories,
             Inc. under the NX series at any time within four years of filing
26           this complaint.

27

28

6411529                                          11
─────────────────────────────────────────────────────────
                THIRD AMENDED CLASS ACTION COMPLAINT
                                          Case No. CV09-8063 PSG (CWx)

67.   The proposed Class and Subclass are ascertainable in that their members can be identified through sales records, warranty records, and product registration records.

68.   The Class and Subclass each are comprised of at least tens of thousands of individuals throughout the United States.  The members of the proposed Class and Subclass are sufficiently numerous such that joinder of all members would be impracticable.  Further, the disposition of the claims of the Class and Subclass in a class action will provide substantial benefits to both parties and the Court.

69.   The provisions of California law upon which Plaintiffs base their claims are broadly remedial in nature.  These laws serve an important public interest in protecting consumers.

70.   A class action is superior to other available methods for the fair and efficient adjudication of the controversy.  The nature of this action and the format of laws available to Plaintiffs and the Class and Subclass make the class action format a particularly appropriate and efficient procedure to redress the wrongs alleged here.  Further, this case involves a large number of individual consumers, many of whom have small claims.

71.   Requiring each member of the Class and/or Subclass to pursue an individual remedy would also discourage the assertion of lawful claims by consumers that would be disinclined to file an action against a large corporation when their individual claims are small.

72.   There is a well-defined community of interest in the questions of law and fact involved affecting the parties to be represented.  The questions of law and fact common to the Class and Subclass predominate over questions which may affect individual class members.  These questions of law and fact include, but are not limited to, the following:

THIRD AMENDED CLASS ACTION COMPLAINT
Case No. CV09-8063 PSG (CWx)

    (a)   Whether, by the misconduct alleged here, Defendants have engaged in unfair, deceptive, untrue, or misleading advertising of their inkjet printers and/or ink cartridges;

    (b)   Whether Defendants knew or should have known that their representations and statements about their inkjet printers and/or ink cartridges were false and/or misleading;

    (c)   Whether Defendants' inkjet printers and/or ink cartridges are defective, whether Defendants knew or should have known that their inkjet printers and/or ink cartridges were defective, and whether Defendants concealed or failed to disclose that their inkjet printers and/or ink cartridges were defective;

    (d)   Whether Defendants omitted material facts from their communications and disclosures to the Class and public at large regarding Defendants' inkjet printers and/or ink cartridges;

    (e)   Whether Defendants knew, or were reckless in not knowing, that their statements about their inkjet printers and/or ink cartridges were false and/or misleading;

    (f)   Whether, as a result of Defendants' misconduct, Plaintiffs and class members are entitled to compensatory, exemplary, equitable relief, and/or other relief, and, if so, the nature of such relief; and

    (g)   Whether Defendants should be ordered to disgorge, for the benefit of the Class, all or part of the ill-gotten profits they received from the sale of the inkjet printers and/or ink cartridges, including, but not limited to, ill-gotten profits received from sales of ink cartridges resulting from waste caused by the inkjet printers.

73.    Plaintiffs will fairly and adequately protect the interests of the Class. Plaintiff Rogers will fairly and adequately protect the interests of the Subclass. Plaintiffs do not have any interest antagonistic to those of the Class or Subclass.

6411529

13

74.   Plaintiffs have retained competent and experienced counsel.

75.   Plaintiffs assert claims that are typical of the Class.  Plaintiff Rogers asserts claims that are typical of the Subclass.

76.   Plaintiffs and the Class have all suffered similar irreparable harm and damages as a result of Defendants' unlawful and wrongful conduct.  Plaintiff Rogers and the Subclass have all suffered similar irreparable harm and damages as a result of Defendants' unlawful and wrongful conduct.

77.   Defendants' conduct as described above and below is unlawful, continuing, and capable of repetition and will continue unless restrained and enjoined by the Court.

78.   Plaintiffs contemplate providing notice to the Class and Subclass through electronic mail, to the extent contact information is available, publication and/or notice on Epson's website.

## FIRST CAUSE OF ACTION

### (Violation of Cal. Bus. & Prof. Code § 17200, *et seq.*)

79.   The preceding paragraphs of this Complaint are re-alleged and incorporated by reference.

80.   Plaintiffs bring this cause of action on behalf of themselves and the Class. Plaintiff Rogers also brings this cause of action on behalf of herself and the Subclass.

81.   California's Unfair Business Practices Act, Cal. Bus. & Prof. Code §17200, *et seq.* ("Unfair Business Practices Act"), prohibits acts of "unfair competition" including any "unlawful, unfair, or fraudulent business act or practice."

82.   Defendants have engaged in unfair, unlawful, and/or fraudulent business acts or practices as described in this Complaint, including, but not limited to, disseminating or causing to be disseminated from the State of California, unfair, deceptive, untrue, and/or misleading advertising; marketing and/or selling from California supposed low cost printers requiring the use of Epson ink cartridges to maintain warranty, while concealing their grossly inefficient print yields, which are well

6411529                                      14

THIRD AMENDED CLASS ACTION COMPLAINT
Case No. CV09-8063 PSG (CWx)

1    below reasonable consumer expectations and the yields of other manufacturer's printers;

2    concealing an existing method to mitigate ink loss; and concealing material facts that

3    would have corrected and/or qualified their misleading partial representations, as set

4    forth above in this Complaint.

5          83.    By engaging in the above described conduct, Defendants have engaged in a

6    fraudulent business act or practice in that the representations and omissions of material

7    facts described above have deceived or are likely to continue to deceive Members of the

8    Class and Subclass throughout the United States.

9          84.    Defendants' acts and practices are unlawful because they breach the

10   warranty of merchantability.

11         85.    Defendants' acts and practices are unlawful because they violate California

12   Civil Code §§ 1572, 1709, 1710, 1770(a)(2), 1770(a)(5), 1770(a)(7), 1770(a)(9),

13   1770(a)(14).  Defendants' acts and practices are also unlawful because they violate Cal.

14   Bus. & Prof. Code §§17044, 17500, 17508(a), and/or 17509.

15         86.    Defendants violated Unfair Business Practices Act when they sold inkjet

16   printers at less than cost with the purpose to induce, promote or encourage the purchase

17   of ink cartridges, and/or with the effect of creating a tendency or capacity to mislead or

18   deceive purchasers or prospective purchasers.

19         87.    Defendants violated Unfair Business Practices Act when they represented,

20   through their advertising, warranties, and other representations, that their inkjet printers

21   and/or ink cartridges had characteristics and benefits which they did not have.

22         88.    Defendants violated Unfair Business Practices Act when they falsely

23   represented and/or omitted material information, through their marketing and sales

24   advertisement campaign, and other representations, that their inkjet printers and/or ink

25   cartridges were of a certain quality or standard when they were not.

26         89.    Defendants violated Unfair Business Practices Act by making false and/or

27   misleading advertising claims and/or omitting material facts about their inkjet printers

28   and/or ink cartridges purporting to be based on factual, objective, or clinical evidence,

6411529                                    15

1    and comparing their inkjet printers' and/or ink cartridges' effectiveness to that of other

2    brands or products.

3         90.    Defendants violated Unfair Business Practices Act by soliciting the

4    purchase of inkjet printers that required the further purchase of Defendants' inkjet

5    cartridges without conspicuously disclosing the true price to consumers of having to

6    purchase such additional inkjet cartridges.

7         91.    Defendants violated Cal. Bus. & Prof. Code §17200, *et seq.*, by actively

8    misrepresenting and/or concealing and omitting from their marketing and sales

9    advertising campaign, and other communications, material information about their

10   inkjet printers and/or ink cartridges in a manner that has deceived and is likely to

11   deceive consumers and the public.

12        92.    The injury to consumers by Defendants' conduct greatly outweighs any

13   alleged countervailing benefit to consumers under all of the circumstances.

14        93.    Defendants' deceptive marketing and sales practices, including

15   misrepresentations and/or omissions or acts of concealment, were material and

16   substantial, such that a reasonable person would have considered them important in

17   deciding whether or not to purchase Defendants inkjet printers and/or ink cartridges.

18        94.    As a direct and proximate result of Defendants' violation of the Unfair

19   Business Practices Act, Plaintiffs and Class and Subclass members have suffered injury

20   in fact and/or actual damages.  Had Defendants disclosed the true quality, nature, and

21   drawbacks of Defendants' inkjet printers and/or ink cartridges, Plaintiffs and Class and

22   Subclass members would not have purchased, or would have paid significantly less for,

23   the inkjet printers and/or ink cartridges.

24        95.    As a direct and proximate result of Defendants' violation of the Unfair

25   Business Practices Act, Plaintiffs and Class and Subclass members have suffered and

26   will continue to suffer actual damages.

27        96.    As a direct and proximate result of Defendants' violation of the Unfair

28   Business Practices Act Defendants have been unjustly enriched and should be required

6411529                                    16

1 | to make restitution to Plaintiffs and Class and Subclass members or to disgorge

2 | Defendants' ill-gotten profits pursuant to Cal. Bus. & Prof. Code § 17203.

3 |     97.    Pursuant to Cal. Bus. & Prof. Code § 17203, Plaintiffs, both individually

4 | and on behalf of Class and Subclass members, seek an order of this Court requiring

5 | Defendants to immediately cease such acts of unfair competition and enjoining

6 | Defendants from continuing to conduct business via the unlawful, fraudulent, or unfair

7 | business acts and practices complained of here and from failing to fully disclose the true

8 | nature of their misrepresentations.

9 |     98.    Plaintiffs, on behalf of themselves and all others similarly situated, further

10 | requests injunctive relief in the form of restitution and/or disgorgement and all other

11 | relief allowed under §17200, plus interest, attorneys' fees, and costs pursuant to, *inter*

12 | *alia*, Cal. Code of Civ. Proc. § 1021.5.

### SECOND CAUSE OF ACTION

### (Violation of California's Bus. & Prof. Code § 17500, *et seq.*)

16 |     99.    The preceding paragraphs of this Complaint are re-alleged and

17 | incorporated by reference.

18 |     100.   Plaintiffs bring this cause of action on behalf of themselves and the Class.

19 | Plaintiff Rogers also brings this cause of action on behalf of herself and the Subclass.

20 |     101.   Through their marketing and/or sales advertising campaign, Defendants

21 | offered to the public for sale inkjet printers and/or ink cartridges throughout the United

22 | States, including California.

23 |     102.   Defendants disseminated and engaged in unfair, deceptive, untrue, or

24 | misleading advertising when they falsely represented, through their advertising,

25 | marketing, and other representations that their inkjet printers and/or ink cartridges had

26 | qualities and benefits which the inkjet printers and/or ink cartridges did not have.

103.   Defendants made a false or misleading advertising claim when they made claims regarding ink-yield and efficiency that were purported to be based on factual, objective, or clinical evidence.

104.   Defendants also made a false or misleading advertising claim when they made claims regarding the ability of their printers, including, but not limited to, the NX series of printers, to be able print with only the color ink cartridge desired.

105.   Defendants disseminated or caused to be disseminated the materially untrue, and misleading and/or omitted advertising statements with the intent to either directly or indirectly induce members of the public, including Plaintiffs and Class and Subclass members, to purchase inkjet printers and/or ink cartridges.

106.   The misrepresentations and/or facts concealed or not disclosed by Defendants to Plaintiffs and Class and Subclass members are material facts that a reasonable person would have considered important in deciding whether or not to purchase (or to pay the same price for) Defendants' inkjet printers and/or ink cartridges.

107.   Defendants' advertisements and marketing statements regarding their inkjet printers and/or ink cartridges were false, untrue, misleading, and/or deceptive as set forth in this Complaint.

108.   When Defendants disseminated the advertising described here, they knew, or by exercise of reasonable care should have known, that the statements concerning the inkjet printers and/or ink cartridges were untrue or misleading, or omitted to state the truth about the inkjet printers and/or ink cartridges, in violation of the Fair Advertising Law, Cal. Bus. & Prof. Code § 17500, *et seq.*

109.   As a direct and proximate result of Defendants' false and misleading advertising, Plaintiffs and Class and Subclass members have suffered injury in fact and/or actual damages.  Had Defendants disclosed the true quality, nature, and drawbacks of Defendants' inkjet printers and/or ink cartridges, Plaintiffs and Class and Subclass members would not have purchased, or would have paid significantly less for, the inkjet printers and/or ink cartridges.

110.   Plaintiffs, on behalf of themselves and all others similarly situated, demand judgment against Defendants for restitution, disgorgement, injunctive relief, and all other relief afforded under Bus. & Prof. Code § 17500, *et seq.*, plus interest, attorneys' fees, and costs pursuant to, *inter alia*, Cal. Code of Civ. Proc. § 1021.5.

## THIRD CAUSE OF ACTION

### (Violation of Cal. Civ. Code §1750, *et seq.*)

111.   Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this Complaint, except for the definition of the Class and Subclass in Paragraph 62.  For purposes of this Third Cause of Action, the Class shall be defined as:

> All persons or entities in the United States who purchased or leased, not for resale, inkjet printers and/or ink cartridges manufactured, sold, and/or marketed by Epson America, Inc. and/or Epson Accessories, Inc. for personal, family, or household purposes.

Likewise, for purposes of this Third Cause of Action, the Subclass shall be defined as:

> All persons or entities in the United States who purchased or leased, not for resale, inkjet printers, including, but not limited to, the NX series of printers, and/or ink cartridges manufactured, sold, and/or marketed by Epson America, Inc. and/or Epson Accessories, Inc. for personal, family, or household purposes.

112.   Defendants are "person[s]" as that term is defined by Civil Code § 1761(c).

113.   Plaintiffs and Class and Subclass members are "consumers" within the meaning of Civil Code § 1761(d).

114.   Defendants inkjet printers and ink cartridges constitute "goods" as that term is defined by Civil Code § 1761(a).

115.   Plaintiffs' and Class and Subclass members' purchases of Defendants' inkjet printers and ink cartridges are "transaction[s]" as that term is defined by Civil Code § 1761(e).

116.   Defendants provided or purported to provide "services" to Plaintiffs and Class and Subclass members as defined by Civil Code § 1761(b).

117.   The transactions, policies, acts, and practices engaged in by Defendants and alleged here were intended and/or did result in the sale of the products and services at issue here to Plaintiffs and Class and Subclass members and violated the Consumer Legal Remedies Act, Civ. Code §1750, *et seq.*, ("CLRA") in at least the following respects:

(a)   In violation of Cal. Civ. Code § 1770(a)(2), Defendants' acts and practices constitute misrepresentations as to the source, sponsorship, approval, or certification of inkjet printers and/or ink cartridges manufactured, marketed, and/or sold by Defendants;

(b)   In violation of Cal. Civ. Code § 1770(a)(5), Defendants' acts and practices constitute misrepresentations that their inkjet printers and/or ink cartridges have characteristics, benefits, or uses that they do not have;

(c)   In violation of Cal. Civ. Code § 1770(a)(7), Defendants' acts and practices constitute misrepresentations that their inkjet printers and/or ink cartridges are of a particular standard, quality and/or grade, when they are of another;

(d)   In violation of Cal. Civ. Code § 1770(a)(9), Defendants advertised and marketed their inkjet printers and/or ink cartridges with the intent not to sell them as advertised or represented; and

(e)   In violation of Cal. Civ. Code § 1770(a)(14), Defendants represented that that the purchases of their inkjet printers and/or ink cartridges conferred or involve rights, remedies, or obligations which they do not have or involve, or which are prohibited by law.

118.   At all relevant times, Defendants concealed material facts regarding their inkjet printers' and/or ink cartridges' attributes before sale, and thereby violated the CLRA.

119.   Defendants engaged in deceptive practices, in violation of the CLRA, that were designed to induce Plaintiffs and Class and Subclass members to purchase Defendants' inkjet printers and/or ink cartridges.  Defendants' unfair and/or deceptive acts or practices occurred repeatedly in Defendants' trade or business.

120.   In engaging in the foregoing unfair or deceptive conduct, the facts concealed or not disclosed by Defendants to Plaintiffs and Class and Subclass members are material facts about Defendants' inkjet printers and/or ink cartridges that a reasonable person would have considered important in deciding whether or not to purchase the inkjet printers and/or ink cartridges.

121.   Plaintiffs and Class and Subclass suffered injury in fact and/or actual damages as a direct result of Defendants' concealment of material facts in violation of the CLRA.  Had Defendants disclosed the true quality, nature, and drawbacks of the inkjet printers and/or ink cartridges, Plaintiffs and Class and Subclass members would not have purchased, or would have paid less for, the inkjet printers and/or ink cartridges.

122.   To this day, Defendants continue to violate the CLRA by concealing the true nature of their inkjet printers and/or ink cartridges in continuing to market and sell the inkjet printers and/or ink cartridges without disclosing to Plaintiffs or Class and Subclass members the true nature of Defendants' inkjet printers and/or ink cartridges.

123.   As a result of the foregoing, Plaintiffs and Class and Subclass members had their legal rights infringed upon and suffered irreparable harm, entitling them to both injunctive relief and restitution as detailed here.

124.   Plaintiffs, on behalf of themselves and all others similarly situated, demand judgment against Defendants under the CLRA for monetary damages and injunctive relief in the form of restitution and/or proportional disgorgement of funds paid to Defendants for the purchase of their inkjet printers and/or ink cartridges, and injunction to cease all misleading advertisements regarding the inkjet printers and/or ink cartridges, a Court order requiring Defendants to provide notice to Class and Subclass members and the public at large of the true nature of Defendants' inkjet printers and/or

1  ink cartridges, an award of attorneys' fees, punitive damages, and any other relief

2  deemed appropriate and proper by the Court under Civil Code § 1780.

3      125.   Epson America and Epson Accessories were each served via certified mail

4  with return receipt requested CLRA notification and demand letter relating to the CLRA

5  claims for the Class (the "Class CLRA Letter").  After 30 days of the receipt of the

6  notification letter, Epson failed to provide appropriate relief for its violation of the

7  CLRA.

8      126.   Epson America and Epson Accessories were each served via certified mail

9  with return receipt requested a CLRA notification and demand letter relating to the

10  CLRA claims for the Subclass (the "Subclass CLRA Letter").  After 30 days of the

11  receipt of the Subclass CLRA Letter, Epson failed to provide appropriate relief for its

12  violation of the CLRA.

13

14  **FOURTH CAUSE OF ACTION**

15  **(Fraud)**

16      127.   Plaintiffs hereby incorporate by reference the allegations contained in the

17  preceding paragraphs of this Complaint.

18      128.   Plaintiffs bring this cause of action on behalf of themselves and the Class.

19  Plaintiff Rogers also brings this cause of action on behalf of herself and the Subclass.

20      129.   As described herein, Defendants made partial representations through their

21  advertising and marketing campaigns, on their Internet site, and on their product

22  packaging, concerning the functionality and efficiency of their printers and ink

23  cartridges.

24      130.   Defendants further represented that their printers, including, but not limited

25  to, the NX series of printers, operated using only the color ink cartridge desired.

26  Specifically, in Defendants' NX series printer packaging, Defendants made

27  representations, including, but are not limited to, "Individual ink cartridges –replace

28

1  only the color you need" and "Replace only the color that you need with individual ink

2  cartridges."

3      131.   Defendants' partial representations were deceptive and misleading. As

4  described herein, Defendants concealed material facts that would have corrected and/or

5  qualified their misleading partial representations. Further, despite having exclusive

6  knowledge of such material facts unknown to Plaintiffs and members of the Class and

7  Subclass, Defendants' actively concealed and suppressed such information and failed to

8  disclose it to Plaintiffs and members of the Class and Subclass.

9      132.   Defendants actively concealed and suppressed such information knowing

10  that such information was material to Plaintiffs and members of the Class and Subclass

11  in deciding to purchased Defendants printers and/or ink cartridges. Nonetheless,

12  Defendants actively concealed and suppressed such material information with the intent

13  to induce consumers to purchase Epson printers and ink cartridges.

14      133.   Plaintiff and members of the Subclass actually and justifiably relied upon

15  Defendants non-disclosures. Had Defendants disclosed the true quality, nature, and

16  drawbacks of Defendants' inkjet printers and/or ink cartridges, Plaintiffs and Class and

17  Subclass members would not have purchased, or would have paid significantly less for,

18  the inkjet printers and/or ink cartridges.

19      134.   As a result of Defendants' active concealment and suppression of material

20  information, Plaintiffs and the members of the Class and Subclass have suffered

21  damages in an amount to be determined at trial.

22      135.   Defendants' active concealment and suppression of material facts was done

23  solely for their own benefit and at the expense of Plaintiffs and members of the Class

24  and Subclass, wrongfully inducing them to purchase Defendants' printers and/or ink

25  cartridges. Defendants' misrepresentations were willful, malicious, despicable and

26  undertaken with a conscious disregard for Plaintiffs' and members of the Class and

27  Subclass' rights. Plaintiffs and members of the Class and Subclass are entitled to an

28

award of punitive damages that is sufficient to punish Defendants and to deter them from engaging in similar misconduct in the future.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs prays for judgment and relief as follows:

1.     An Order certifying that the action shall be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure.

2.     An Order requiring Defendants to immediately cease the wrongful conduct as set forth above; enjoining Defendants from continuing to falsely advertise or conceal material information and conduct business via the unlawful and unfair business acts and practices complained of here.

3.     That a Judgment be entered against Defendants in an amount to be determined, including for restitution and/or disgorgement of profits received by Defendants as a result of said purchases, appropriate equitable relief and costs of suit including attorneys' fees.

4.     That a Judgment be entered against Defendants for damages, statutory damages, punitive damages, and costs of suit and attorneys' fees.

5.     All other damages and relief, equitable or otherwise, including, but not limited to pre- and post-judgment interest, as the Court may deem just and proper.


Dated:  October 26, 2010                    **AKIN GUMP STRAUSS HAUER & FELD LLP**

                                            **YUHL STONER CARR LLP**


By_____
                                            Rex S. Heinke
                                            Attorneys for Plaintiffs
                                            CHRISTOPHER O'SHEA, GISELE
                                            ROGERS and JEFF ADAMS

6411529                            24

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a trial by jury of all causes of action that are triable by jury.

Dated:  October 26, 2010

**AKIN GUMP STRAUSS HAUER &
FELD LLP**

**YUHL STONER CARR LLP**

By_____
Rex S. Heinke
Attorneys for Plaintiffs
CHRISTOPHER O'SHEA, GISELE
ROGERS and JEFF ADAMS

THIRD AMENDED CLASS ACTION COMPLAINT
Case No. CV09-8063 PSG (CWx)