1  CATHERINE A. CONWAY (SBN 98366)
   cconway@akingump.com
2  REX S. HEINKE (SBN 66163)
   rheinke@akingump.com
3  JOANNA H. KIM (SBN 183799)
   jkim@akingump.com
4  **AKIN GUMP STRAUSS HAUER & FELD LLP**
   2029 Century Park East, Suite 2400
5  Los Angeles, California 90067
   Telephone:    310.229.1000
6  Facsimile:    310.229.1001

7  ERIC F. YUHL (SBN 102051)
   eyuhl@ysclawyers.com
8  WILLIAM E. STONER (SBN 101418)
   wstoner@ysclawyers.com
9  **YUHL STONER CARR LLP**
   601 South Figueroa Street, Suite 2340
10 Los Angeles, California 90017
   Telephone:   213.687.2640
11 Facsimile:    213.827.4200

12 Attorneys for Plaintiff CHRISTOPHER O'SHEA,
   GISELE ROGERS and JEFF ADAMS
13

14              UNITED STATES DISTRICT COURT

15            CENTRAL DISTRICT OF CALIFORNIA

16 | CHRISTOPHER O'SHEA, GISELE ROGERS and JEFF ADAMS, | Case No. CV09-8063 PSG (CWx) |
17 | individually, on behalf of themselves and all others similarly situated, | [The Honorable Philip S. Gutierrez] |
18 | Plaintiffs, | **PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR CLASS CERTIFICATION; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** |
19 | v. | |
20 | EPSON AMERICA, INC., a California corporation; EPSON ACCESSORIES, INC., a California corporation; SEIKO EPSON CORPORATION, a Japanese corporation; and DOES 1-100, inclusive, | [Declarations of Joanna H. Kim, Eric F. Yuhl, Christopher O'Shea, Gisele Rogers, Jeff Adams, Jeffrey J. Leitzinger, Ph.D and Brian Kriegler, Ph.D Filed Concurrently Herewith; [Proposed] Order Lodged Concurrently Herewith] |
24 | Defendants. | **REDACTED FOR PUBLIC FILING** |
25 | | Date:    April 18, 2011 |
26 | | Time:    1:30 p.m. |
   | | Crtrm:   Roybal, 880 |
27

28

200279738

# **TABLE OF CONTENTS**

Page No.

I.    INTRODUCTION ...............................................................................1

II.   FACTUAL AND PROCEDURAL BACKGROUND .....................................3

    A.   The Epson Defendants..................................................................3

    B.   Defendants' Printers are Highly Inefficient Under "Real-Life," Non-Continuous Printing Conditions. ...........................................3

    C.   Despite Recognizing Its Importance to Consumers, Defendants Concealed the Inefficiency of the Class Printers....................................4

    D.   Named Plaintiffs. .........................................................................6

    E.   Proposed Class and Subclass...............................................................7

        1.   The Class .........................................................................7

        2.   The Subclass.....................................................................8

III.  THE COURT SHOULD CERTIFY THE CLASS AND SUBCLASS............9

    A.   Standards for Deciding this Motion. ...........................................9

    B.   Plaintiffs Satisfy the Criteria for Certification Under Rule 23(a). ...... 10

        1.   Numerosity .................................................................. 10

        2.   Commonality................................................................ 10

        3.   Typicality.....................................................................11

        4.   Adequacy of Representation ......................................... 14

    C.   Plaintiffs Satisfy the Requirements of Rule 23(b)(3)......................... 15

        1.   Common Issues Predominate...................................... 15

        2.   A Class Action is the Superior Method for the Fair and Efficient Adjudication of the Class and Subclass Claims........ 24

IV.   CONCLUSION.................................................................................. 25

200279738

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Blackie v. Barrack,*
  524 F.2d 891 (9th Cir. 1975) ..................................................21

*Cartwright v. Viking Indus., Inc.,*
  2009 WL 2982887 (E.D. Cal. 2009)...............................................23, 25

*Chavez v. Blue Sky Natural Beverage Co.,*
  268 F.R.D. 365 (N.D. Cal. 2010)...........................................13, 16, 20, 23

*Daugherty v. Am. Honda Motor Co.,*
  144 Cal. App. 4th 824 (2006) ..................................................22

*Dukes II,*
  509 F.3d at 1117 ..................................................10, 14

*Falk v. General Motors Corp.,*
  496 F. Supp. 2d 1088 (N.D. Cal. 2007) ..................................................22

*Grisham v. Philip Morris, Inc.,*
  670 F. Supp. 2d 1014 (C.D. Cal. 2009) ..................................................19

*Hanlon v. Chrysler Corp.,*
  150 F.3d 1011 (9th Cir. 1998) ..................................................12, 24

*Hanon v. Dataproducts Corp.,*
  976 F.2d 497 (9th Cir. 1992) ..................................................11, 12

*In re Tableware Antitrust Lit.,*
  241 F.R.D. 644 (N.D. Cal. 2007)..................................................14

*In re Tobacco II Cases,*
  46 Cal. 4th 298 (Cal. 2009)..................................................18, 23

*In re Vioxx Class Cases,*
  180 Cal.App.4th 116 (Cal. Ct. App. 2009) ..................................................21

*In re Wells Fargo Home Mortg. Overtime Pay Litig.,*
  2007 WL 3045995 (N.D. Cal. Oct. 18, 2007)..................................................15

*Jimenez v. Domino's Pizza,*
  238 F.R.D. 241 (C.D. Cal. 2006)..................................................10, 16

*Keilholtz v. Lennox Hearth Prods. Inc.,*
  268 F.R.D. 330 (N.D. Cal. 2010)..................................................16, 20, 23

*Local Joint Executive Bd. of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.,*
  244 F.3d 1152 (9th Cir. 2001) ................................................................................15

*Maddock v. KB Homes, Inc.,*
  248 F.R.D. 229 (C.D. Cal. 2007) ..........................................................................10

*Mass. Mutual Life Ins. Co. v. Superior Court,*
  97 Cal. App. 4th 1282 (Cal. Ct. App. 2002) ...................................................20, 23

*Mazza v. American Honda Motor Co.,*
  254 F.R.D. 610 (C.D. Cal. 2008) ..................................................................... passim

*Menagerie Prods. v. Citysearch,*
  2009 WL 3770668 (C.D. Cal. 2009) ............................................................16, 18, 24

*Parkinson v. Hyundai Motor America,*
  258 F.R.D. 580 (C.D. Cal. 2008) ..................................................................... passim

*Phillips Petroleum Co. v. Shutts,*
  472 U.S. 797 (1985) ..............................................................................................16

*Rivera v. Bio Engineered Suppliments & Nutrition, Inc.,*
  2008 WL 4906433 (C.D. Cal. 2008) ......................................................................13

*Rosal v. First Fed. Bank,*
  671 F. Supp. 2d 1111 (N.D. Cal. 2009) .................................................................23

*Slaven v. BP Am., Inc.,*
  190 F.R.D. 649 (C.D. Cal. 2000) ..........................................................................11

*Steroid Hormone Product Cases,*
  181 Cal. App. 4th 145 (Cal. Ct. App. 2010) .........................................................18

*Valentino v. Carter-Wallace, Inc.,*
  97 F.3d 1227 (9th Cir. 1996) ...................................................................................9

*Wang v. Chinese Daily News, Inc.,*
  231 F.R.D. 602 (C.D. Cal. 2005) ..........................................................................10

*Wiener v. Dannon Co., Inc.,*
  255 F.R.D. 658 (C.D. Cal. 2009) ....................................................................13, 21

*Yokoyama v. Midland Nat'l Life Ins. Co.,*
  594 F.3d 1087 (9th Cir. 2010) ...............................................................................21

*Zinser v. Accufix Research Inst. Inc.,*
  253 F.3d 1180 (9th Cir. 2001) ...............................................................................15

1

**STATUTES**

2

California Business & Professions Code
    § 17200.................................................................................................................18
    § 17200.............................................................................................................8, 12
    § 17500.............................................................................................................8, 13

California Civil Code
    § 1750..............................................................................................................8, 12
    § 1770..................................................................................................................22
    § 1780(a) ...........................................................................................................22

3

4

5

6

7

8

**RULES**

9

Federal Rule of Civil Procedure 23 ....................................................................... *passim*

Federal Rule of Civil Procedure 56 .............................................................................10

California Local Rule 7-3 ..............................................................................................13

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

200279738

1   TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

2   PLEASE TAKE NOTICE that on April 18, 2011, at 1:30 p.m., or as soon

3   thereafter as the matter may be heard, in Courtroom 880 of the above-referenced Court,

4   located at 255 East Temple Street, Los Angeles, California 90012, Plaintiffs Christopher

5   O'Shea, Gisele Rogers and Jeff Adams (collectively, "Plaintiffs") will and hereby do

6   move for an order, pursuant to Federal Rules of Civil Procedure, Rule 23(b)(3) and Rule

7   23(c)(1)(A), certifying this matter to proceed as a class action.  Further pursuant to Rule

8   23(b)(3) and Rule 23(c)(1)(B), Plaintiffs request that the Court define a Class and

9   Subclass, as follows.

10

11                              **The Class**

12   Plaintiffs seek certification of a class (the "Class") of:

13                 All persons throughout the United States who, between August

14                 28, 2005 and class certification, purchased, not for resale, an

15                 Epson Stylus, Workforce or Artisan printer.

16   Based on a pure omission theory, Plaintiffs seek certification of the Class for

17   claims arising under (1) the Unfair Competition Law, Cal. Bus. & Prof. Code § 17200,

18   et seq. ("UCL"), (2) the Consumer Legal Remedies Act, Cal. Civ. Code § 1750, et seq.

19   ("CLRA"), and (3) common law fraud.

20

21                              **The Subclass**

22   Plaintiffs seek certification of a subclass (the "Subclass") of:

23                 All persons throughout the United States who, between August

24                 28, 2005 and class certification, purchased, not for resale, an

25                 Epson Stylus NX-series printer.

26   Based on an affirmative representation and omission theory, Plaintiffs seek

27   certification of the Subclass for claims arising under (1) the UCL and (2) the False

28   Advertising Law, Cal. Bus. & Prof. Code § 17500, et seq. ("FAL").

200279738

1    Pursuant to Rule 23(c)(1)(B) and 23(g), Plaintiffs further request that Akin Gump

2    Strauss Hauer & Feld, LLP and Yuhl Stoner Carr, LLP be appointed as class counsel.

3    This Motion is made on the grounds that Plaintiffs satisfy all the requirements of

4    Rule 23(a) and 23(b)(3) for certification of the Class and Subclass, and Plaintiffs'

5    counsel satisfies all the requirements of Rule 23(g) for appointment as class counsel.

6    This Motion is based upon this Notice of Motion and Motion, the attached

7    Memorandum of Points and Authorities, the concurrently filed Declarations of Joanna

8    H. Kim ("Kim Decl."), Eric F. Yuhl ("Yuhl Decl."), Christopher O'Shea ("O'Shea

9    Decl."), Gisele Rogers ("Rogers Decl."), Jeff Adams ("Adams Decl."), Jeffrey J.

10   Leitzinger, Ph.D. ("Leitzinger Decl."), and Brian Kriegler, Ph.D ("Krieger Decl.") in

11   Support of this Motion, the documents and records on file in this action, any oral

12   argument that may be presented at the hearing, and any other matter that the Court

13   deems appropriate.

14   Pursuant to Local Rule 7-3, on January 24, 2011, Plaintiffs' counsel met and

15   conferred on this Motion with counsel for defendants Epson America, Inc., Epson

16   Accessories, Inc. and Seiko Epson Corporation (together, "Defendants").  (Kim Decl., ¶

17   38.)

18
19   Dated:  February 7, 2011          AKIN GUMP STRAUSS HAUER & FELD LLP

20                                    By_____/s/ Rex S. Heinke_____
21                                            Rex S. Heinke
                                           Attorneys for Plaintiffs
22                                    CHRISTOPHER O'SHEA, GISELE ROGERS
                                           and JEFF ADAMS
23

24

25

26

27

28

200279738

## I.   INTRODUCTION

Throughout the Class Period, Defendants Epson America, Inc., Epson Accessories, Inc. and Seiko Epson Corporation ("SEC") (together, "Defendants") have engaged in a common scheme to deceive consumers concerning the performance and value of Defendants' inkjet printers and ink cartridges.

With printers often sold at or below cost, the cost of buying replacement ink cartridges is the main cost associated with an inkjet printer. Defendants, therefore, recognized that consumers were greatly concerned about ink yields (*i.e.,* the number of pages that they could print with an ink cartridge). This concern manifested in frequent requests from consumers and retail stores for more information regarding ink yields, and numerous complaints from past purchasers concerning perceived low ink yields. Nonetheless, little information was actually provided to consumers. Consumers, therefore, had a reasonable expectation that Defendants' printers and ink cartridges would provide actual (*i.e.,* "real life") ink yields similar to other major brands.

Defendants knew otherwise.

Given the recognized importance of ink yields to consumers, however, Defendants knew that disclosing their printers' inefficiency would devastate sales. So, Defendants put profits above their legal obligations to consumers, and actively concealed this highly material information. As a result, deceived class members paid far more than fair value for Defendants' products, based on a false expectation regarding ink yields caused by Defendants' failure to fulfill their legal duty to disclose.

As deceived purchasers of Defendants' inkjet printers, Plaintiffs Christopher O'Shea, Gisele Rogers, and Jeff Adams (together, "Plaintiffs") seek redress on behalf of themselves, and a class of consumers who overpaid for Defendants' printers and ink

PLAINTIFFS' MOTION FOR CLASS CERTIFICATION [REDACTED FOR PUBLIC FILING]
Case No. CV09-8063 PSG (CWx)

1 cartridges because of Defendants' common scheme to conceal material information
2 regarding their products' substandard ink yields.  Plaintiff Rogers further seeks redress,
3 for herself and on behalf of a subclass of consumers, all of whom overpaid for
4 Defendants' NX-series printers based on common deceptive representations placed
5 prominently on the packaging of all subclass printers.

6 Plaintiffs' class claims are ideal for class action treatment.  These class claims all
7 arise from Defendants' common scheme to conceal material information regarding ink
8 yields.  Because Defendants wrongfully concealed the same information from all class
9 members, all liability issues are common to the class.  Moreover, all class members have
10 suffered the same harm – they overpaid for Defendants' products – and are entitled to
11 the same remedy – restitution and damages to compensate them for the difference
12 between what they paid for Defendants' products, based on Defendants' unlawful
13 concealment, and the value that they actually received from those products.  Class-wide
14 restitution and damages, like liability, can be determined without any individual inquiry.

15 The subclass similarly presents ideal class claims.  The same deceptive
16 representation was made on the packaging of all subclass printers.  With the subclass
17 seeking redress under only the unfair competition law and the false advertising law, the
18 sole common issue of liability is whether this representation would likely deceive a
19 reasonable consumer.  Subclass-wide restitution also will be determined based solely on
20 common evidence, without any individual inquiry.

21 Moreover, class treatment is necessary for aggrieved class members to receive
22 compensation for their injuries and to prevent Defendants from maintaining windfall
23 profits from their own wrongdoings.  While class members have each suffered
24 meaningful losses, they would be dwarfed by the costs of pursuing their individual
25 claims.  As a practical matter, a class action is the only means by which Defendants will
26 be held accountable to their consumers, and class members will be made whole.

27 Plaintiffs, therefore, respectfully request that the Court grant the Motion, and
28 certify the class and subclass.

## II.   FACTUAL AND PROCEDURAL BACKGROUND

### A.   The Epson Defendants.

Defendants Epson America, Inc. and Epson Accessories, Inc. are California corporations, with their principal place of business in Long Beach, California.  (Answer [DK #69], ¶¶ 4-5, 11-12, 14.) ████████████████████████████

███████████████████████.  (Kim Decl., Exh. A [Leung Depo.], 44:11-15, 128:7-8; Kim Decl., Exh. K-162, 229.)

Defendants develop, manufacture and sell, *inter alia*, inkjet printers and ink cartridges to consumers throughout the United States.  (Answer [DK #69], ¶4.)  While SEC is responsible for the development, testing and manufacture of Epson products, Epson America and Epson Accessories (working together with SEC) handle all U.S. sales, marketing, service and support functions for Epson products.  (Kim Decl., Exh. A [Leung Depo.], 240:4-6; Kim Decl., Exh. Y [Interrogatory Responses], 4:15-6:24.)

### B.   Defendants' Printers are Highly Inefficient Under "Real-Life," Non-Continuous Printing Conditions.

Throughout the class period, ████████████████████████████ ██████████████████ ("Class Printers").  (Kim Decl., Exh. A [Leung Depo.], 28:2-30:15; Kim Decl., Exh. C.)  All the Class Printers incorporate similar technology, and have the same issue:  they are highly inefficient under non-continuous printing conditions, which represent a typical consumer's "real life" experience.

Most consumer inkjet printers, including those manufactured by Epson's primary competitors – Hewlett Packard, Lexmark, Canon and Dell – use thermal inkjet technology.  (Kim Decl., Exh. B [Leung Depo.], 544:11-18.) ████████████ ████████████████████████████████████████████ ████████████████████████████████████████████

(Kim Decl., Exh I [Commelin Depo.], 93:8-19.)

Ordinary consumers, however, do not print continuously – ████████████ ████████████████████████████████████████████

1  ▓▓▓▓▓▓▓▓▓▓ (Kim Decl., Exhs. E-69, L-239; Kim Decl., Exh. A [Leung Depo.],

2  293:15-18; Kim Decl., Exh. B [Leung Depo.], 376:13-377:18, 418:25-419:21.)  Indeed,

3  despite disclosing only continuous yields to consumers, ▓▓▓▓▓▓▓▓▓▓▓▓▓▓

4  ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

5  ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

6  ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

7  ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

8  ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

9  ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

10 ▓▓▓▓▓▓▓▓▓▓▓▓▓▓ . (Kim Decl., Exh. J.) ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

11 ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

12 ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

13 ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ . (*Id.*)

14     Independent third-party tests further confirmed the inefficiency of Defendants'

15 products under non-continuous printing conditions.  (Kim Decl., Exhs. M, N.)  In tests

16 comparing several Epson-brand printers against comparable printers from H-P, Canon,

17 Lexmark and Dell, Defendants' printers performed the worst.  (*Id.*)  They were over

18 thirty percent (30%) less efficient than Defendants' primary competitor, H-P, in ***all*** tests.

19 (*Id.*) ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

20 ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

21 ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

22 ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

23     **C.     Despite Recognizing Its Importance to Consumers, Defendants**

24         **Concealed the Inefficiency of the Class Printers.**

25 ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

26 ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

27 ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

28 ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓





Nonetheless, ▮ Defendants did not disclose their knowledge that the Class Printers were far less efficient than other brands.

." (Kim Decl., Exh. R-313.)

. . . ." (Kim Decl., Exh. S-317.)

. (Kim Decl., Exhs. G-H.)

PLAINTIFFS' MOTION FOR CLASS CERTIFICATION [REDACTED FOR PUBLIC FILING]
Case No. CV09-8063 PSG (CWx)



." (Kim Decl., Exh. T [Hearing Transcript], 14:23-15:5.)  Thereafter, Mr. Andersen

, Defendants still failed to disclose this material information to consumers.

Instead, they actively concealed it.



**D.    Named Plaintiffs.**

On November 18, 2008 Plaintiff Christopher O'Shea purchased an Epson inkjet printer with the model name, "Artisan 800." (O'Shea Decl., ¶ 2.)  Plaintiff O'Shea would not have purchased this printer if Defendants had disclosed that the non-continuous, "real life" ink yields would be far less than competitive products.  (*Id.*, ¶ 3.)

On July 29, 2009, Plaintiff Jeff Adams purchased an Epson inkjet printer with the model name, "Workforce 310." (Adams Decl., ¶2.)  Plaintiff Adams would not have

1   purchased this printer if Defendants had disclosed that the non-continuous, "real life"

2   ink yields would be significantly less than competitive products. (*Id.*, ¶ 3.)

3          On May 13, 2009, Plaintiff Gisele Rogers purchased an Epson inkjet printer with

4   the model name, "Stylus NX 200." (Rogers Decl., Exh. 2.)  Plaintiff Rogers would not

5   have purchased this printer if Defendants had disclosed that the non-continuous, "real

6   life" ink yields would be significantly less than competitive products. (*Id.*, ¶ 3.)

7          In part, Ms. Rogers also purchased her Stylus NX200 printer in reliance on

8   Defendants' representation, conspicuously placed on the product packaging, that one

9   must "[r]eplace only the color that you need with individual ink cartridges." (*Id.*, ¶ 4;

10  Kim Decl., Exh. W.)  Defendants made a substantially similar representation on the

11  packaging of other Epson NX-series printers: "Individual ink cartridges – replace only

12  the color you need." (Kim Decl., Exhs W, X.)

13         Ms. Rogers interpreted this representation to mean that she would require only a

14  black cartridge to print black text only. (Rogers Decl., ¶ 4.)  She was shocked to later

15  learn that even black text only printing required all color cartridges, and that the printer

16  would shut down if any color cartridge was expended. (*Id.*)

17

18                                              Defendants, nonetheless, kept this representation on the

19  packaging and did not clarify that all cartridges are always required.  Ms. Rogers would

20  not have purchased the printer if not for the representation, or if Defendants had fully

21  disclosed that all cartridges were used even in black-only printing and that the printer

22  would shut down if any color was expended. (Rogers Decl., ¶ 4.)

23      **E.    Proposed Class and Subclass.**

24              1.    <u>The Class</u>

25  Plaintiffs seek certification of a class (the "Class") of:

26              All persons throughout the United States who, between August

27              28, 2005 and class certification, purchased, not for resale, an

28              Epson Stylus, Workforce or Artisan printer.

1         Based on a pure omission theory, Plaintiffs seek certification of the Class for

2  claims arising under (1) the Unfair Competition Law, Cal. Bus. & Prof. Code § 17200,

3  et seq. ("UCL"), (2) the Consumer Legal Remedies Act, Cal. Civ. Code § 1750, et seq.

4  ("CLRA"), and (3) common law fraud.

5         The Class claims are based on the fact that Defendants knew that the printers they

6  manufactured, marketed and sold to consumers were significantly less efficient than

7  other brands, resulting in a material difference between the "real-life" page yields

8  provided by Defendants' printers and the "real-life" page yields provided by other

9  brands.  Defendants further knew that this information was material to consumers, but

10  nonetheless failed to disclose and actively concealed this information.  As a result,

11  consumers purchased Defendants' printers with a false expectation – consumers

12  reasonably expected that the efficiency of Defendants' printers would be comparable to

13  other brands.  Consumers are entitled to damages and restitution to compensate them

14  for the difference between the value that they expected to receive from Defendants'

15  printers and ink cartridges, and the value that they actually received.

16               2.    The Subclass

17        Plaintiffs also seek certification of a subclass (the "Subclass") of:

18              All persons throughout the United States who, between August

19              28, 2005 and class certification, purchased, not for resale, an

20              Epson Stylus NX-series printer.

21         Based on an affirmative representation and omission theory, Plaintiffs seek

22  certification of the Subclass for claims arising under (1) the UCL and (2) the False

23  Advertising Law, Cal. Bus. & Prof. Code § 17500, et seq. ("FAL").

24         The Subclass claims are based on Defendants' substantively identical

25  representations on the packaging of every Subclass printer that a consumer would need

26  to "[r]eplace only the color that you need with individual ink cartridges."  This

27  representation is deceptive because it indicates that printing a page with a single color

28  requires only the single cartridge associated with that color (*e.g.*, only the black

200279738

                          8

1  cartridge is required when printing black text). The representation is further misleading

2  because Defendants fail to disclose that the Subclass Printers actually use ink from all

3  cartridges for all print jobs (*e.g.*, ink from all color cartridges is used even when

4  printing all black), and that the printers will not print if any of the cartridges are empty

5  (*e.g.*, if the magenta cartridge is expended, the printer will not even print in all black).

6       Defendants placed this misleading representation on the packaging of all the

7  Subclass printers because they believed that it would increase the ***perceived*** value of the

8  printers in the minds of consumers, allowing them to sell more printers at a higher price.

9  All purchasers, therefore, lost money as a result of this misleading representation,

10  because they were forced to pay more for the printer than if Defendants had not

11  included this misleading representation on the packaging. All consumers are entitled to

12  restitution to compensate them for the difference between the market price that they

13  were required to pay for the Subclass printers, and the price that they would have paid if

14  Defendants had not made the misleading representation on the product packaging.

15  **III.   THE COURT SHOULD CERTIFY THE CLASS AND SUBCLASS**

16       **A.   Standards for Deciding this Motion.**

17       In ruling on a motion for class certification, a district court must determine

18  whether the plaintiff meets all of the prerequisites of Federal Rule of Civil Procedure

19  23(a) and at least one of the requirements of Rule 23(b). Fed. R. Civ. Proc. 23;

20  *Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1234 (9th Cir. 1996).

21       Under Rule 23(a), a plaintiff must demonstrate that (1) the class is so numerous

22  that joinder of all members is impracticable, (2) there are questions of law or fact

23  common to the class, (3) the claims or defenses of the class representatives are typical

24  of the claims or defenses of the class, and (4) the class representatives will fairly and

25  adequately protect the interests of all members of the class. Fed. R. Civ. Proc. 23(a).

26       Under Rule 23(b)(3), Plaintiffs must further demonstrate that (1) common

27  questions of law or fact predominate and (2) the class action is superior to other

28  available methods of adjudication. Fed. R. Civ. Proc. 23(b)(3).

1   While the plaintiff has the burden of proving that the Rule 23 requirements have

2   been satisfied, the plaintiff need not show a likelihood of prevailing on the merits at the

3   class certification stage. *Mazza v. American Honda Motor Co.*, 254 F.R.D. 610, 616

4   (C.D. Cal. 2008). Thus, the Federal Rules of Evidence take on a substantially reduced

5   significance, and the court may consider evidence that may not be admissible at trial.

6   *Id.*; *Parkinson v. Hyundai Motor America*, 258 F.R.D. 580, 599 (C.D. Cal. 2008)

7   ("Unlike a summary judgment motion under Fed.R.Civ.P. 56, a motion for class

8   certification is not dispositive and need not be supported by admissible evidence.").

9   **B.    Plaintiffs Satisfy the Criteria for Certification Under Rule 23(a).**

10   1.    Numerosity

11   Rule 23(a)(1) requires that the class be "so numerous that joinder of all members

12   is impracticable." Fed. R. Civ. Proc. 23(a). Plaintiffs, however, need not identify with

13   precision the number of class members, *see Parkinson*, 258 F.R.D. at 588, and courts

14   have found numerosity present where "joinder is impractical based solely on the fact

15   that there are over one hundred putative class members." *Wang v. Chinese Daily News,*

16   *Inc.*, 231 F.R.D. 602, 607 (C.D. Cal. 2005); *see also Maddock v. KB Homes, Inc.*, 248

17   F.R.D. 229, 237 (C.D. Cal. 2007) (numerosity requirement satisfied where class

18   consisted of "at minimum" 100 members); *Jimenez v. Domino's Pizza*, 238 F.R.D. 241,

19   247 (C.D. Cal. 2006) (numerosity present where class consists of 160 members).

20   During the class period, ██████████████████████████

21   ████████████████████████████. (Kim Decl., Exh. Z, 14:22-15:14;

22   Kim Decl., Exh. B [Leung Depo.], 551:25-552:23.) Moreover, Defendants admit that

23   the proposed class would be comprised of "substantially more than 100 persons . . . ."

24   (Notice of Removel [DK #1], at 5:22-23.) Numerosity, therefore, cannot be disputed.

25   2.    Commonality

26   Rule 23(a)(2) requires that "there are questions of law or fact common to the

27   class." "Commonality focuses on the relationship of common facts and legal issues

28   among class members." *Dukes II*, 509 F.3d at 1117. The commonality requirement is

200279738                                       10

1   construed liberally, and is "qualitative rather than quantitative," *id.*, meaning that for the

2   requirement to be satisfied "there must only be one single issue common to the class."

3   *Slaven v. BP Am., Inc.*, 190 F.R.D. 649, 655 (C.D. Cal. 2000).

4                      (1)      There are Questions of Law and Fact Common to the Class.

5           Each Class member purchased an Epson inkjet printer during the class period.

6   Their claims present, *inter alia*, the following common issues: (1) whether Epson's

7   inkjet printers provide print yields below industry norms under non-continuous printing

8   conditions; (2) whether Defendants had a duty to disclose this information to

9   consumers; (3) whether this information would be material to a reasonable consumer;

10  (4) whether Defendants failed to disclose this information; and (5) whether this failure

11  to disclose would be likely to deceive a reasonable consumer.

12                     (2)      There are Questions of Law and Fact Common to the Subclass.

13          Each Subclass member purchased an Epson NX-series inkjet printer during the

14  class period.  Their claims present, *inter alia*, the following common issues:  (1)

15  whether the packaging of the Subclass printers contained representations that a

16  consumer would need to "[r]eplace only the color that you need with individual ink

17  cartridges"; (2) whether Defendants failed to disclose to consumers that the Subclass

18  Printers used ink from all cartridges, even when printing only a single color; (3) whether

19  Defendants failed to disclose to consumers that the Subclass Printers would not work

20  when only one color cartridge was expended, even to print only black text; and (4)

21  whether Defendants' representation, considered with its omissions, would be likely to

22  deceive a reasonable consumer.

23                  3.    Typicality

24          The typicality prerequisite of Rule 23(a) is satisfied if "the claims or defenses of

25  the representative parties are typical of the claims or defenses of the class."  Fed. R. Civ.

26  Proc. 23(a)(3).  "Typicality refers to the nature of the claim or defense of the class

27  representative, and not to the specific facts from which it arose or the relief sought."

28  *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992).  Thus, the test for

200279738                                    11

1   typicality "is [1] whether other members have the same or similar injury, [2] whether the

2   action is based on conduct which is not unique to the named plaintiffs, and [3] whether

3   other class members have been injured by the same course of conduct." *Id.* The Ninth

4   Circuit has recognized this as a "permissive standard." *Hanlon v. Chrysler Corp.*, 150

5   F.3d 1011, 1020 (9th Cir. 1998) ("[R]epresentative claims are 'typical' if they are

6   reasonably co-extensive with those of absent class members; they need not be

7   substantially identical.").

8                    a)     The Named Plaintiffs' Claims are Typical of the Class

9          Plaintiffs satisfy each of the three prongs of the test for typicality. *First*, both

10  Plaintiffs and the Class have suffered the same or similar injury:  they were induced to

11  purchase Epson inkjet printers and ink cartridges, which provided value significantly

12  below consumer expectations. *Second*, the claims of Plaintiffs and the Class are based

13  on identical conduct:  Defendants' failure to disclose that their printers and ink

14  cartridges were significantly less efficient than other brand under non-continuous

15  printing conditions. *Third*, Plaintiffs and the Class have been injured by the same

16  course of conduct:  all have suffered financial loss because the value of the Epson

17  printers and ink cartridges that they were induced to purchase was significantly less than

18  consumer expectations.  Moreover, there are no defenses to these claims that are unique

19  to Plaintiffs, but not the Class.

20         Nonetheless, while Plaintiffs fully satisfy all prongs of the Ninth Circuit's test for

21  typicality, Plaintiffs anticipate that Defendants may rehash an argument, first raised in

22  their rejected Motion to Strike, that Plaintiffs are not typical of the Class simply because

23  they did not purchase every model of printer encompassed by the Class. As discussed

24  below, however, courts have consistently rejected the notion that a consumer must

25  purchase all products at issue to represent a class, instead finding that typicality is lost

26  only where a named plaintiff's attempt to represent purchasers of different products

27  causes him or her to fail the test for typicality (*e.g.*, if all products were not subject to

28  the same course of conduct).  In contrast, typicality is satisfied where, as here, named

200279738                                    12

1   plaintiffs seek to represent a class that purchased several products all subject to the same
2   course of wrongful conduct.

3        For example, in *Wiener v. Dannon Co., Inc.*, 255 F.R.D. 658 (C.D. Cal. 2009), the
4   court found that the requirements for typicality were not satisfied where a named
5   plaintiff who purchased one sub-brand of yogurt sought to also represent purchasers of
6   two different sub-brands of yogurts. *Id.* at 665-66. In finding that the named plaintiff
7   was not typical of the class, the court explained that the defendant was alleged to have
8   made different representations to consumers regarding each sub-brand of yogurt, that
9   each sub-brand was claimed to benefit different health issues, and that the advertising
10  and marketing of each sub-brand was separate. *Id.* Thus, when the named plaintiff
11  purchased one sub-brand of yogurt, he was not subject to the same course of conduct as
12  purchasers of the other sub-brand.

13       In contrast, the court in *Chavez v. Blue Sky Natural Beverage Co.*, 268 F.R.D. 365
14  (N.D. Cal. 2010), distinguished *Wiener* in finding that a named plaintiff was typical of a
15  class even though he did not purchase all products at issue, because all products were
16  subject to the same general course of conduct. *Id.* at 378. The court explained that
17  "[b]ecause plaintiff alleged that all the [defendant's] beverages bore substantially similar
18  misrepresentations, these claims are distinguishable from the class claims alleged in
19  *Wiener* . . . in which the court held that the named plaintiff was not typical because she
20  had only purchased one of several lines of yogurt, each claiming different health
21  benefits." *Id.* Thus, the court concluded that, "[a]lthough plaintiff did not purchase
22  each type of beverage carrying the misleading label, his claims are reasonably
23  coextensive with those of absent class members." *Id.*

24       Consistent with the reasoning in *Chavez*, courts have consistently found named
25  plaintiffs typical of absent class member that purchased different products subject to the
26  same course of conduct. *Rivera v. Bio Engineered Supplements & Nutrition, Inc.*, 2008
27  WL 4906433 (C.D. Cal. 2008) ("[T]he crucial inquiry is not how many of defendants'
28  products each plaintiff purchased, but rather whether each plaintiff has sufficient

PLAINTIFFS' MOTION FOR CLASS CERTIFICATION [REDACTED FOR PUBLIC FILING]
Case No. CV09-8063 PSG (CWx)

1   incentive to present evidence that will establish the existence of the alleged conspiracy.");

2   *In re Tableware Antitrust Lit.*, 241 F.R.D. 644, 649 (N.D. Cal. 2007) ("The fact that

3   named plaintiffs purchased different types of tableware products at different prices from

4   those of the absent class members does not render their claims atypical.").

5          Thus, because Plaintiffs and the class were all subject to the same course of

6   wrongful conduct, the typicality requirement is satisfied here.

7                    b)      Plaintiff Rogers' Claims are Typical of the Subclass

8          Plaintiff Rogers similarly has claims typical of the Subclass. *First*, both Plaintiff

9   Rogers and the Subclass have suffered the same or similar injury: they paid more for a

10  Subclass Printer because Defendants' deceptive advertising improperly elevated the

11  market-price of the Subclass Printers. *Second*, the claims of Plaintiff Rogers and the

12  Subclass are based on identical conduct: Defendants' deceptive representations on the

13  packaging of the Subclass Printers. *Third*, Plaintiff Rogers and the Subclass have been

14  injured by the same course of conduct: all have suffered a financial loss because they

15  paid more for a Subclass Printer because of Defendants' deceptive advertising.

16         Thus, as Plaintiff Rogers and the Subclass were also subject to the same course of

17  wrongful conduct, the typicality requirements are satisfied for the Subclass.

18                 4.      Adequacy of Representation

19         Rule 23(a)(4) permits class certification if "the representative parties will fairly

20  and adequately represent the interests of the class." This element of class certification

21  has two parts: (1) the plaintiffs' interests must not conflict with those of absent class

22  members, and (2) counsel for plaintiffs must vigorously prosecute the action on behalf

23  of the class. *Dukes II*, 509 F.3d at 1185.

24         There are no conflicts of interest or antagonistic interests between the Plaintiffs

25  and the Class. Plaintiffs and the Class have that same interest in establishing

26  Defendants' liability for violating California law by failing to disclose material

27  information about their printers, ink cartridges, and ink yields to prospective purchases.

28  Moreover, Plaintiffs and the Class share the same interests in being compensated for the

200279738                                    14

1  amounts Defendants unlawfully obtained from them through Defendants' wrongful

2  conduct and in deterring a continuation of Defendants' wrongful conduct.

3       Plaintiffs have also retained highly capable counsel with extensive experience in

4  litigating class actions and engaging in consumer products litigation. (Kim Decl., ¶¶ 2-

5  9; Yuhl Decl., ¶¶ 2-4.)  All Plaintiffs' counsel meet the requirements of Rule 23(g).

6  (Kim Decl., ¶¶ 2-9; Yuhl Decl., ¶¶ 2-4.)  Plaintiffs' counsel have shown that they are

7  capable of, and have committed substantial resources to, representing the Class and are

8  fully committed to vigorously prosecuting this action on behalf of the Class.  (Kim

9  Decl., ¶¶ 2-4.)  In part, Plaintiffs' counsel have defended against a motion to dismiss and

10 motion to strike, have fought to obtain substantial discovery from Defendants, and have

11 vigorously sought third party documents and deposition discovery from Defendants'

12 former executive, Fabrice Commelin.  (*Id.*, ¶ 3.)

13       **C.    Plaintiffs Satisfy the Requirements of Rule 23(b)(3).**

14       Once the requirements of Rule 23(a) are satisfied, Rule 23(b)(3) permits class

15 certification if "the court finds [1] that the questions of law or fact common to class

16 members predominate over any questions affecting only individual members, and [2]

17 that a class action is superior to other available methods for fairly and efficiently

18 adjudicating the controversy."  Both requirements are satisfied in this action.

19              1.    Common Issues Predominate

20       The Rule 23(b)(3) predominance inquiry tests whether the proposed class is

21 "sufficiently cohesive to warrant adjudication by representation." *Local Joint Executive*

22 *Bd. of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.*, 244 F.3d 1152, 1162

23 (9th Cir. 2001). "To establish predominance of common issues, a party seeking class

24 certification is not required to show that legal and factual issues raised by the claims of

25 each class member are identical." *In re Wells Fargo Home Mortg. Overtime Pay Litig.*,

26 2007 WL 3045995, *6 (N.D. Cal. Oct. 18, 2007).  Rather, predominance focuses on "the

27 notion that the adjudication of common issues will help achieve judicial economy."

28 *Zinser v. Accufix Research Inst. Inc.*, 253 F.3d 1180, 1189 (9th Cir. 2001) (internal

200279738                                    15

1  quotations omitted). To determine whether common issues predominate, the "Court

2  must first examine the substantive issues raised by Plaintiffs and second inquire into the

3  proof relevant to each issue." *Jiminez v. Domino's Pizza, Inc.*, 238 F.R.D. 241, 251

4  (C.D. Cal. 2006).

5              a)     <u>California Law will be Applied to Plaintiffs' Claims on Behalf</u>

6                      <u>of the Nationwide Class and Subclass.</u>

7          When a party seeks to certify a nationwide class, "[t]he application of the forum

8  state's law is presumed" where the state has a significant contact or aggregation of

9  contacts with the claims asserted by the class members. *See Mazza*, 254 F.R.D. at 620

10 (citing *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 821 (1985)). Thus, so long as the

11 requisite significant contacts to California exist, Plaintiffs satisfy their burden to show

12 that California may constitutionally apply its laws to the claims of all absent class

13 members, and a "substantial burden" shifts to a party opposing class-wide application of

14 California law to show that foreign law should apply. *See Keilholtz v. Lennox Hearth*

15 *Prods. Inc.*, 268 F.R.D. 330, 340 (N.D. Cal. 2010); *Parkinson v. Hyundai Motor*

16 *America*, 258 F.R.D. 580, 598 (2008).

17         California Federal courts have consistently found that requisite contacts exist and

18 have certified nationwide classes under California law where, as here, claims arose from

19 corporate activity occurring in California. *See, e.g., Mazza*, 254 F.R.D. at 620, 624

20 (certifying nationwide class for claims asserting violations of California UCL and

21 CLRA, and common law unjust enrichment, where the defendant was a California

22 company and the alleged deceptive practices originated in California); *Parkinson*, 258

23 F.R.D. at 597-99 (certifying nationwide class under California UCL and CLRA where

24 defendant's wrongful conduct and relevant operations were in California); *Keilholtz*,

25 268 F.R.D. at 342 (certifying nationwide class under California UCL and CLRA);

26 *Chavez*, 268 F.R.D. at 379 (certifying nationwide class under California UCL, FAL and

27 CLRA, and California common-law fraud); *Menagerie Prods. v. Citysearch*, 2009 WL

28 3770668 at *15 (C.D. Cal. 2009) (certifying nationwide class under California UCL).

200279738                                        16

1    Here, Epson America and Epson Accessories are both California corporations,

2    with their principal place of business in Long Beach, California.  (Answer to Second

3    Amended Complaint [DK # 69], ¶¶ 4-5, 11-12, 14.)  Moreover, ████████████████

4    ███████████████████████████████████████████████████████████████

5    ████████████████████████████████████████████.  (Kim Decl., Exh. Y,

6    4:15-6:24; Kim Decl., Exh. A [Leung Depo.], 55:8-56:7, 57:16-18; 101:12-14; 195:6-

7    196:13.)  Specifically, ████████████████████████████████████████████

8    ████████████████████████████████.  (Kim Decl, Exh. Y, 6:26-7:27; Kim

9    Decl., Exh. A [Leung Depo.], 101:12-14.)  ██████████████████████████████

10   █████████.  (Kim Decl., Exh. I [Commelin Depo.], 56:22-57:7.) ████████████

11   ████████████████████████████████████████████████████████████████.

12   (Kim Decl., Exh. Y, 6:26-7:27, Kim Decl., Exh. A [Leung Depo.], 56:4-7, 57:16-18.)

13   ████████████████████████████████████████████████████████████████

14   ████████████████████████████████████████████████████████████████

15   ████████████████████████.  (Kim Decl., Exh. Y, 6:26-7:27, Kim Decl.,

16   Exh. A [Leung Depo.], 195:6-196:13.)  Moreover, ██████████████████████████

17   ████████████████████████████████████████████████████████████████

18   ████████████████████████████████████████████████████████████████

19   ████████████████████.  (Kim Decl., Exh. Y, 6:26-7:27, Kim Decl., Exh. A

20   [Leung Depo.], 195:6-196:13.)

21        For its part, SEC's contacts with the United States printer market runs ██████

22   ████████████████████████████████████████████████████████████████

23   ████████████████████████████████████████████████████████████████

24   ███████████████ (Kim Decl., Exh. A [Leung Depo.], 124:5-8), ████████████

25   ████████████████████████████████████████████████████████████████

26   ████████████████████████████████████.  (*Id.*, 128:7-14.) ███████████

27   ████████████████████████████████████████████████████████████████

28   ████████████████████████████████████████████████

1       Moreover, Defendants themselves have chosen, and sought to bind their

2   consumers, to California law, as they have inserted a California choice-of-law provision

3   in their own contracts with consumers.  (Kim Decl., Exh. AA-420.).

4       Thus, as Defendants and their actions relevant to Plaintiffs' claims have

5   significant contacts with California, California law presumptively applies to the claims

6   of all class members.  *Mazza*, 254 F.R.D. at 620.

7                  b)    <u>Common Issues Predominate With Respect to the Claims of</u>

8                        <u>the Class.</u>

9                        (1)    Common Issues Predominate with Respect to the Class

10                             Unfair Competition Claims.

11      The UCL defines unfair competition as "any unlawful, unfair or fraudulent

12  business practice . . . ."  Cal. Bus & Prof. Code § 17200.  Therefore, "under the statute

13  there are three kinds of unfair competition: practices which are unlawful, unfair or

14  fraudulent."  *In re Tobacco II Cases*, 46 Cal. 4th 298, 312 (Cal. 2009).  Here, Plaintiffs

15  seek certification of claims under the fraudulent prong of the UCL.

16      "The fraudulent business practice prong has been understood to be distinct from

17  common law fraud."  *Id.*  While "[a] common law fraudulent deception must be actually

18  false, known to be false by the perpetrator and reasonably relied upon by the victim who

19  incurs damages," none of these elements are required to be proven under the UCL.  *Id.*;

20  *Parkinson*, 258 F.R.D. at 597.  Instead, "rather than show individualized proof of

21  deception, reliance and injury, plaintiffs must show only that members of the public are

22  likely to be deceived."  *Parkinson*, 258 F.R.D. at 597.

23      Thus, to prevail on their UCL claim, Plaintiffs must show: (1) that a reasonable

24  consumer is likely to have been deceived by Defendants' omissions; and (2) the amount

25  of money that Defendants "may have . . . acquired by means of" their deceptive

26  omissions.  *Id*; *Menagerie*, 2009 WL 3770668 at *13; *Steroid Hormone Product Cases*,

27  181 Cal. App. 4th 145, 155 (Cal. Ct. App. 2010).

28

1

2

3

              (a)     Whether a Reasonable Consumer is Likely to have been Deceived will be Determined by Common Issues and Evidence.

4       A determination of whether a reasonable consumer is likely to have been

5  deceived by Defendants' omissions presents four issues: (1) whether the Class Printers

6  are inefficient under non-continuous printing conditions; (2) whether Defendants had a

7  duty to disclose this information to consumers; (3) whether Defendants failed to

8  disclose this information; and (4) whether this failure to disclose would be likely to

9  deceive a reasonable consumer. *See Parkinson*, 258 F.R.D. at 596 (identifying similar

10  issues raised by UCL omission claim, and finding each common to the class). Each is a

11  common issue that will be determined on common evidence.

12       *First*, whether the Class Printers are inefficient under non-continuous printing

13  conditions is an issue that focuses entirely on Defendants' products, and does not give

14  rise to issues individual to any Class member. Defendants' own non-continuous testing

15  and independent third-party testing show that the Class Printers can be tested and

16  compared to other companies' printers under non-continuous printing conditions. Thus,

17  the evidence relevant to this issue will be testing results and expert testimony

18  concerning the efficiency of Defendants' products and comparable products – all of

19  which is common evidence relevant to the class-wide claims.

20       *Second*, whether Defendants had a duty to disclose is similarly a common issue

21  that will be decided on common evidence. Under California law, a duty to disclose

22  information arises, *inter alia*, (1) when defendant has exclusive knowledge of material

23  facts not known to plaintiff and (2) when defendant conceals a material fact from

24  plaintiff. *See Grisham v. Philip Morris, Inc.*, 670 F. Supp. 2d 1014, 1043 (C.D. Cal.

25  2009). Under either prong, the relevant questions will be: (1) whether the information is

26  material; and (2) whether Defendants had exclusive knowledge of, or actively

27  concealed, such information.

28

1    With regard to the issue of materiality, whether the information is material will be

2    determined under a "reasonable man" standard, *i.e.*, "whether a reasonable man would

3    attach importance to its existence or non-existence." *Chavez*, 268 F.R.D. at 376-77 ;

4    *Steroid Hormone Product*, 181 Cal. App. 4th at 157 (information is deemed material if

5    "a reasonable man would attach importance to its existence or nonexistence in

6    determining his choice of action in the transaction . . . ."). Thus, the "question of

7    whether undisclosed information is material is a common question of fact suitable for

8    treatment in a class action." *Keilholtz v. Lenno Hearth Products, Inc.*, 268 F.R.D. 330,

9    343 (N.D. Cal. 2010); *see Mazza*, 254 F.R.D. at 627; *Mass. Mutual Life Ins. Co. v.*

10   *Superior Court*, 97 Cal. App. 4th 1282, 1294 (Cal. Ct. App. 2002).

11   With regard to the issue of exclusive knowledge and/or concealment, whether

12   Defendants had knowledge of and concealed this information focuses entirely on

13   Defendants' own knowledge and conduct. As such, it is necessarily a common question

14   based on common evidence.

15   *Third*, whether Defendants failed to disclose this information, again, is based on

16   Defendants' own common conduct toward the entire class. Thus, it is also a common

17   question based on common evidence.

18   *Finally*, like the issue of duty to disclose, whether Defendants' failure to disclose

19   would likely deceive a reasonable consumer is an issue that turns on common evidence

20   concerning consumers' reasonable expectations. *See Parkinson*, 258 F.R.D. at 596

21   (whether a reasonable consumer is likely to be deceived is a common issue).

22   Through, *inter alia*, consumer surveys, evidence of complaints about Defendants'

23   products, and Defendants' own internal correspondence, Plaintiffs will show that a

24   reasonable consumer would have had an expectation that Defendants' products would

25   perform consistent with other comparable brands, and would have been deceived by

26   Defendants' failure to disclose the inefficiency of the Class Printers.

27   Thus, each of the issues of liability raised by Defendants' UCL claim is common

28   to the Class, and will be proven through common evidence.

200279738                                    20

1

2

                     (b)    The Amount of Money Defendants Acquired
                                Through Unfair Competition is a Common Issue.

3        In the Ninth Circuit, "damage calculations alone cannot defeat class

4 certification." *Yokoyama v. Midland Nat'l Life Ins. Co.*, 594 F.3d 1087, 1094 (9th Cir.

5 2010); *see Blackie v. Barrack*, 524 F.2d 891, 905 (9th Cir. 1975) ("The amount of

6 damages is invariably an individual question and does not defeat class action

7 treatment."). Here, nonetheless, even the total class recovery may be determined

8 through common evidence on a class-wide basis.

9        "[W]ith respect to the restitution permitted under the . . . UCL, the Court has

10 'very broad' discretion to determine an appropriate remedy award as long as it is

11 supported by the evidence and is consistent with the purpose of restoring to the plaintiff

12 the amount that the defendant wrongfully acquired." *Wiener v. Dannon Co., Inc.*, 255

13 F.R.D. 658, 670 (C.D. Cal. 2009). Specifically, it has been found that "[t]he difference

14 between what the plaintiff paid and the value of what the plaintiff received is a proper

15 measure of restitution" under the UCL. *In re Vioxx Class Cases*, 180 Cal.App.4th 116,

16 131 (Cal. Ct. App. 2009).

17        Here, class-wide restitution can be calculated as the difference between the

18 amount class members paid to purchase Defendants' replacement ink cartridges, and the

19 value that class members actually received from those products. (Kriegler Decl., ¶¶ 11-

20 12; Leitzinger Decl., ¶¶ 6-8.) The first variable is found in Defendants' own records –

21 their total ink cartridge sales for each of the Class Printers. (Kriegler Decl., ¶ 11; Kim

22 Decl., Exh. B [Leung Depo.], 555:22-557:19.)

23        The second variable is the difference between the ink efficiency that Class

24 members expected (performance consistent with comparable brands), and the efficiency

25 they actually received. (Kriegler Decl., ¶ 11.) This information will be derived from

26 Defendants' own yield data, and from efficiency testing performed by an independent

27 testing lab retained by Plaintiffs. (*Id.*)

28

200279738                     21

1    Thus, even though the ability to prove restitution through common evidence is

2 not a Ninth Circuit requirement for class certification, here even the amount of the total

3 Class restitution is yet another common issue that will be proven through common

4 evidence, further bolstering the need for class treatment.

5                    (2)    Common Issues Predominate with Respect to Plaintiffs'

6                           CLRA Class Claim.

7    The CLRA bans certain practices that the California legislature has deemed to be

8 "unfair" or "deceptive." *Falk v. General Motors Corp.*, 496 F. Supp. 2d 1088, 1093-94

9 (N.D. Cal. 2007). As relevant here, the CLRA expressly bans "[r]epresenting that goods

10 or services have . . . characteristics [or] benefits . . . which they do not have" or

11 "[r]epresenting that goods or services are of a particular standard, quality, or grade . . . if

12 they are of another." Cal. Civ. Code §1770. While the statute is written in positive

13 terms, case law makes clear that "a claim may be stated under the CLRA in terms

14 constituting fraudulent omissions" where a plaintiff alleges "an omission of a fact the

15 defendant was obligated to disclose." *Daugherty v. Am. Honda Motor Co.*, 144 Cal.

16 App. 4th 824, 835 (2006); *Falk*, 496 F. Supp. 2d at 1094-97. Any consumer who suffers

17 any damage as a result of a prohibited practice may recover actual damages, statutory

18 damages, restitution and/or punitive damages. Cal. Civ. Code § 1780(a).

19    Thus, like the UCL, a CLRA claim based on omission raised issues concerning

20 (1) whether Defendants' inkjet printers provide print yields below industry norms under

21 non-continuous printing conditions; (2) whether Defendants had a duty to disclose this

22 information to consumers; and (3) whether Defendants failed to disclose this

23 information. *See Parkinson*, 258 F.R.D. at 596. As discussed, these are all common

24 issues that will be decided on common evidence. (*See* 19:12-20:17 above.)

25    Unlike the UCL, a CLRA claim further requires proof of causation and reliance.

26 Cal. Civ. Code § 1780(a). In the context of a class action, however, causation and

27 reliance are "shown through the materiality of the misrepresentation." *Parkinson*, 258

28

200279738                                  22

1   F.R.D. at 596.  Thus, "[i]f materiality is shown, reliance and causation may be presumed

2   as to the entire class." *Id.*

3           Like under the UCL, the "materiality of an alleged misrepresentation in a CLRA

4   claim is determined by a reasonableness standard." *Chavez*, 268 F.R.D. at 376; *see*

5   *Steroid Hormone*, 181 Cal. App. 4th at 157.  Thus, "the ultimate question of whether the

6   undisclosed information is material is a common question of fact suitable for treatment

7   in a class action." *Keilholtz*, 268 F.R.D. at 343.

8           Courts, therefore, have consistently found that common issues predominate with

9   respect to CLRA class claims. *Id.*; *Parkinson*, 258 F.R.D. at 596; *Mazza*, 254 F.R.D. at

10  626; *Cartwright v. Viking Indus., Inc.*, 2009 WL 2982887 at *11-12 (E.D. Cal. 2009);

11  *Steroid Hormone*, 181 Cal. App. 4th at 156-7; *Mass. Mutual,* 97 Cal. App. 4th at 1292-3.

12          Finally, the Class-wide damages under the CLRA will be determined in the same

13  manner as restitution under the UCL, as the difference between the amount paid for, and

14  the value actually received from, Defendants' products.

15                          (3)    Common Issued Predominate with Respect to Plaintiffs'

16                                 Common Law Fraud Class Claim.

17          "To state a claim for fraudulent concealment, a plaintiff must allege (1)

18  concealment or suppression of a material fact; (2) a duty to disclose; (3) intentional

19  concealment with the intent to defraud; (4) actual, justifiable reliance; and (5) resulting

20  damages." *Rosal v. First Fed. Bank*, 671 F. Supp. 2d 1111, 1132 (N.D. Cal. 2009).

21          Plaintiffs' claim for common law fraud, therefore, presents substantively the same

22  issues as their claim under the CLRA, and will be proven through the same common

23  evidence.

24                  c)     Common Issues Predominate With Respect to the Subclass

25                         UCL and FAL Claims.

26          "To state a claim under either the UCL or the false advertising law, based on false

27  advertising or promotional practices, it is necessary only to show that members of the

28  public are likely to be deceived." *In re Tobacco II Cases*, 46 Cal. 4th 298, 312 (Cal.

200279738                                          23

1    2008).  As discussed above, therefore, to prevail on a claim under the UCL or FAL,

2    Plaintiff Rogers must show: (1) that a reasonable consumer is likely to have been

3    deceived by Defendants' representation; and (2) the amount of money that Defendants

4    "may have . . . acquired by means of" their deceptive representation.  *See Parkinson*,

5    258 F.R.D. at 597; *Menagerie*, 2009 WL 3770668 at *13; *Steroid Hormone Product*, 181

6    Cal. App. 4th at 155.  Each is a common issue subject to common proof.

7        The first issue is necessarily a common issue, focusing on whether Defendants'

8    common representations, considered with its common omissions, would be deceptive to

9    a reasonable consumer.  *See Parkinson*, 258 F.R.D. at 596.

10       Moreover, while the issue of restitution need not be proven through common

11   evidence, here common evidence will prove Subclass-wide restitution.  Specifically, the

12   amount of restitution will be determined as the difference between the market price that

13   Defendants charged for the Subclass Printers, with packaging containing the deceptive

14   representation, and what the market value of the Subclass Printers would have been

15   without the deceptive representation.  (Kriegler Decl., ¶¶ 13-24; Leitzinger Decl., ¶ 9.)

16                2.    A Class Action is the Superior Method for the Fair and Efficient

17                      Adjudication of the Class and Subclass Claims.

18       Rule 23(b)(3) provides that certification is appropriate if class treatment "is

19   superior to other available methods for the fair and efficient adjudication of the

20   controversy."  "This determination necessarily involves a comparative evaluation of

21   alternative mechanisms of dispute resolution."  *Hanlon*, 150 F.3d at 1023.

22       Here, the only alternative method of adjudication would be individual cases

23   brought by millions of class members – a theoretically possibly, but practically

24   unrealistic alternative.  Were these millions of theoretical actions undertaken, the result

25   would be an impossible and unnecessary burden on the judiciary.  Moreover, the

26   potential recovery by any individual plaintiff would be dwarfed by the costs of

27   litigation, leaving the entire Class and Subclass without a realistic means of redress, and

28   Defendants with windfall benefits from their wrongdoing.  *See e.g., id.* at 1023.

200279738                                      24

1   Furthermore, particularly with respect to the Class claims arising from

2   Defendants' fraudulent and deceptive omissions, many members of the Class and

3   Subclass likely remain unaware that they have even suffered injury as a result of

4   Defendants' deception and fraud. *See, e.g., Cartwright*, 2009 WL 2982887 at *13

5   (noting that consumer's potential ignorance of harm from deceptive omissions

6   supported class action being superior). While the evidence indicates that many

7   consumers are dissatisfied with the performance of their Epson printers, Defendants still

8   have failed to disclose the truth that their printers provide print yield significantly below

9   comparable brands, at great cost to Defendants' past and future consumers.

10   Finally, as Plaintiffs have set forth above, with regard to each of their claims for

11   the Class and Subclass, a class action is both manageable and subject to adjudication

12   without any individual proof on issues of liability or class-wide recovery. The only

13   individual issue will be the amount of each class members' individual portion of the

14   Class recovery. Necessarily, this is the case in virtually all class actions.

15   The proposed Class and Subclass, therefore, satisfy all the requirements of Rule

16   23(b)(3).

17   **IV.   CONCLUSION**

18   For the foregoing reasons, Plaintiffs respectfully request that the Court grant

19   Plaintiffs' Motion, certify the Class and Subclass as defined herein, and appoint Akin

20   Gump Strauss Hauer & Feld LLP and Yuhl Stoner Carr LLP as class counsel.

21

22   Dated: February 7, 2011         AKIN GUMP STRAUSS HAUER & FELD LLP

23                                   By_____/s/ Rex S. Heinke_____
                                              Rex S. Heinke
24                                         Attorneys for Plaintiffs
                                     CHRISTOPHER O'SHEA, GISELE ROGERS
25                                            and JEFF ADAMS

26

27

28

200279738

PLAINTIFFS' MOTION FOR CLASS CERTIFICATION [REDACTED FOR PUBLIC FILING]

Case No. CV09-8063 PSG (CWx)