QUINN EMANUEL URQUHART & SULLIVAN, LLP
  Shon Morgan (Bar No. 187736)
  shonmorgan@quinnemanuel.com
  Ryan S. Goldstein (Bar No. 208444)
  ryangoldstein@quinnemanuel.com
  Valerie Roddy (Bar No. 235163)
  valerieroddy@quinnemanuel.com
865 South Figueroa Street, 10th Floor
Los Angeles, California  90017-2543
Telephone:   (213) 443-3000
Facsimile:   (213) 443-3100

Attorneys for Defendants Epson America,
Inc. and Epson Accessories, Inc.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHRISTOPHER O'SHEA, GISELE ROGERS and JEFF ADAMS, individuals, on behalf of themselves and all others similarly situated,<br><br>                    Plaintiffs,<br><br>          vs.<br><br>EPSON AMERICA. INC., a California corporation; EPSON ACCESSORIES, INC., a California corporation; SEIKO EPSON CORPORATION, a Japanese Corporation, and DOES 1-100, inclusive,<br><br>                    Defendants. | CASE NO. CV 09-8063 PSG (CWx)<br><br>**DISCOVERY MATTER**<br><br>**DEFENDANTS' NOTICE OF MOTION AND MOTION FOR SANCTIONS FOR VIOLATIONS OF THE PROTECTIVE ORDER;**<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**<br><br>[Declarations of Jennifer S. Baldocchi and Valerie Roddy and [Proposed] Order lodged concurrently]<br><br>Magistrate Judge:   Hon. Carla Woehrle<br>Courtroom:             640, Roybal<br><br>Filing Date:            Aug. 28, 2009<br>Discovery Cutoff:    Oct. 17, 2011<br>Pretrial Conference: Oct. 31, 2011<br>Trial Date:             Nov. 15, 2011 |

NOTICE OF MOTION AND MOTION FOR SANCTIONS FOR VIOLATIONS OF THE PROTECTIVE ORDER

TO THE COURT, ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on March 22, 2011 at 10:00 a.m., or as soon thereafter as counsel may be heard, before the Honorable Carla Woehrle in Courtroom 640 at 244 East Temple Street, Los Angeles, California, defendants Epson America, Inc. and Epson Accessories, Inc. ("Epson") will, and hereby do, move the Court to impose evidentiary and monetary sanctions against plaintiffs' counsel for its violations of the Court's June 24, 2010 Protective Order in this case.

This Motion is made pursuant to Federal Rules of Civil Procedure 26 and 37 and this Court's inherent authority to sanction violations of its orders on the grounds that plaintiffs' counsel's use of documents and testimony produced pursuant to the Protective Order in this action in another action prosecuted by plaintiffs' counsel, *Commelin v. Epson America, Inc.*, Los Angeles Superior Court Case No. BC427254.

This motion is made following the conference of counsel pursuant to L.R. 7-3 which took place on January 7, 2011 and through the *ex parte* application briefing filed January 7, January 9, and January 10 in this action.

This Motion is based on this Notice of Motion and Motion and the attached Memorandum of Points and Authorities; the declarations of Valerie Roddy and Jennifer Baldocchi; the records and files of this Court, and all other matters of which the Court may take judicial notice.

DATED:  February 22, 2011          Respectfully submitted,

                                                  QUINN EMANUEL URQUHART & SULLIVAN, LLP


                                              By  /s/ Shon Morgan
                                                    Shon Morgan
                                                    Attorneys for Defendants Epson America, Inc. and Epson Accessories, Inc.

# <u>TABLE OF CONTENTS</u>

<u>Page</u>

PRELIMINARY STATEMENT ................................................................................. 1

RELEVANT FACTUAL BACKGROUND ............................................................. 2

ARGUMENT ............................................................................................................ 11

I.   THIS COURT CAN AND SHOULD IMPOSE SANCTIONS FOR
     COUNSEL'S UNDISPUTED VIOLATION OF ITS ORDER ...................... 11

     A.   Courts Have Broad Powers to Sanction Discovery Order
          Violations ............................................................................................ 11

     B.   Plaintffs' Counsel Intentionally Violated the Protective Order ........... 12

II.  THE REQUESTED EVIDENTIARY SANCTION IS CLOSELY
     RELATED TO THE VIOLATION AND NARROWLY TAILORED ........ 13

III. MONETARY SANCTIONS ARE ALSO AN APPROPRIATE
     PENALTY ................................................................................................... 14

CONCLUSION ....................................................................................................... 17

NOTICE OF MOTION AND MOTION FOR SANCTIONS FOR VIOLATIONS OF THE PROTECTIVE ORDER

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Alyeska Pipeline Serv. Co. v. Wilderness Soc'y,*
421 U.S. 240 (1975) ................................................................................ 15

*Bak v. MCL Fin. Group, Inc.,*
170 Cal. App. 4th 1118 (4th Dist. 2009) ................................................ 4

*Eagle Comtronics, Inc. v. Arrow Communication Laboratories, Inc.,*
305 F.3d 1303 (Fed. Cir. 2002) .............................................................. 15

*Fair Housing of Marin v. Combs,*
285 F.3d 899 (9th Cir. 2002) .................................................................. 12

*Falstaff Brewing Corp. v. Miller Brewing Corp.,*
702 F.2d 770 (9th Cir. 1983) .................................................................. 12

*Harmston v. City & County of San Francisco,*
2007 WL 3306526 (N.D. Cal. Nov. 6, 2007) .................................... 15, 16

*In re Heritage Bond Litig.,*
223 F.R.D. 527 (C.D. Cal. 2004) ............................................................ 14

*Hunter Eng'g Co. v. Hennessy Indus. Co.,*
2010 WL 1186454 (E.D. Mo. Mar. 29, 2010) ....................................... 15

*Ins. Corp. of Ireland, Ltd., v. Compagnie des Bauxites de Guinee,*
456 U.S. 694 (1982) (Rule 37(b)(2) ....................................................... 14

*Kaufman v. American Family Mutual Insurance Co.,*
601 F.3d 1088 (10th Cir. 2010) .............................................................. 16

*McDonald v. Cooper Tire & Rubber Co.,*
2005 WL 3372855 (M.D. Fla. Dec. 13, 2005) ....................................... 16

*Mora v. Target Corp.,*
2010 WL 4818540 (S.D. Cal. Nov. 22, 2010) ........................................ 16

*Payne v. Exxon Corp.,*
121 F.3d 503 (9th Cir. 1997) .................................................................. 14

*Poliquin v. Garden Way,*
154 F.R.D. 29 (D. Me. 1994) .................................................................. 16

*Rico v. Mitsubishi Motors Co.,*
42 Cal. 4th 807 (2007) ............................................................................ 4

*United States v. Kahaluu Constr. Co., Inc.,*
857 F.2d 600 (9th Cir. 1988) .................................................................. 12

*United States v. Sumitomo Marine & Fire Ins.,*
    617 F.2d 1365 (9th Cir. 1980)............................................................................ 12

*Westinghouse Elec. Corp. v. Newman & Holtzinger, P.C.,*
    992 F.2d 932 (9th Cir. 1992) (Rule 37(b)(2)................................................... 11

## **Statutes**

Fed. R. Civ. P. 26............................................................................................... 11

Fed. R. Civ. P. 37.............................................................................. 11, 12, 13, 14

## MEMORANDUM OF POINTS AND AUTHORITIES

### Preliminary Statement

On January 20, 2011, this Court granted Epson's *ex parte* application for an order compelling plaintiffs' counsel to withdraw immediately certain documents in that they had submitted to the state court and discovery referee in *Commelin v. Epson America, Inc.*—a state court case in which the Yuhl Stoner firm is also plaintiff's counsel defending a former Epson executive against counterclaims for stealing Epson's trade secrets—in violation of the June 24, 2010 Protective Order in this case. This noticed motion seeks the evidentiary and monetary sanctions necessary to give teeth to the Protective Order and to discourage plaintiffs' counsel from continuing their pattern of unrepentant violations.

Unfortunately, these latest violations were neither unexpected nor isolated. Epson had long suspected that plaintiffs' counsel would use discovery from this case in the *Commelin* case, a reasonable suspicion in light of plaintiffs' counsel's thinly-veiled threat to file this class action to manufacture leverage in Mr. Commelin's employment dispute. Thus, it came as little surprise that plaintiffs' counsel would appropriate confidential documents and evidence produced in *O'Shea* to aid Mr. Commelin's cause in his own lawsuit.

Further, this violation was already the ***fourth*** occasion—to Epson's knowledge—on which plaintiffs' counsel has completely disregarded Epson's confidentiality or privilege concerns. Plaintiffs' counsel have also: (1) produced Epson's facially and concededly privileged documents; (2) presented to the Court a document over which Epson asserted the attorney-client and work product privileges; and (3) "accidentally" posted Epson's highly confidential documents on the Internet by publicly e-filing them on PACER.

In opposing Epson's *ex parte* application, plaintiffs' counsel expressed ***no*** remorse for violating the June 24, 2010 Order, but rather attempted to justify its intentional violations of this Court's order as self-help for discovery disputes in the

1  *Commelin* action.  Counsel's unabashed reference to its contempt as "technical

2  violations" confirms that being caught red-handed is insufficient deterrent to future

3  violations.  Epson respectfully requests that this Court impose appropriate

4  evidentiary sanctions (in the form of an order prohibiting plaintiffs from offering the

5  misappropriated evidence for any affirmative purpose in this case) and monetary

6  sanctions of $7,500 to compensate for a portion of the costs Epson has incurred in

7  addressing plaintiffs' violation of and to encourage plaintiffs' adherence to the

8  Protective Order going forward.

9  **Relevant Factual Background**

10  **Epson's Concerns About Counsel's Dual Representation.**  The Yuhl

11  Stoner firm, in addition to representing the class plaintiffs in this action, also

12  represents former executive Fabrice Commelin in his employment action against

13  Epson (and Epson's counterclaims for conversion and breach of fiduciary)

14  *Commelin v. Epson America, Inc.*, now pending in Los Angeles County Superior

15  Court.[1]  Yuhl Stoner's relationship with a former Epson executive with an axe to

16  grind gave Epson great concern that plaintiffs' counsel would use this action to

17  further improperly Mr. Commelin's cause in the state court.  Even before this action

18  was filed, the Yuhl Stoner firm attempted to use the very threat of this litigation to

19  extort a settlement for Commelin:

20  I have not expressed that risk [of 'class action exposure']
21  i[n] these unmistakable terms but it is the 800LB gorilla in
   the room and frankly if [Epson] wants to settle this case,
22  thus removing Fabrice and my firm from that entire
   playing field, that is a legitimate consideration for [Epson]
23  from an exposure standpoint and part of why I see this as

24

25

26  ───────────────

27  [1]   Declaration of Jennifer Baldocchi, filed Jan. 7, 2011 ("Baldocchi Decl.") ¶ 3
   (Docket No. 312-2).

28

1   an eight figure case for purposes of a negotiated
2   compromise.[2]

3   Thus, when Epson proposed a protective order in this case, it sought to include an

4   express provision that confidential information from this action could not be used in

5   *Commelin*.[3]  Plaintiffs' counsel rejected this provision as superfluous because they

6   conceded protected information could not be used in *any* other action (including

7   *Commelin*).[4]

8   **Plaintiffs' Counsel Gives Epson Further Cause for Concern.**  Epson's

9   concerns amplified when two incidents confirmed plaintiffs' counsel had no respect

10   for Epson's privilege interests.  First, on February 26, 2010, in response to a

11   deposition subpoena directed to Mr. Commelin that plaintiffs' counsel essentially

12   served on themselves, plaintiffs' counsel (acting as counsel for Mr. Commelin)

13   produced to his co-counsel in this action, Akin Gump, documents in Mr.

14   Commelin's possession.  Rather than review the documents for production in

15   response to the *O'Shea* plaintiffs' subpoena, Mr. Stoner simply reproduced Mr.

16   Commelin's document production to Epson in the *Commelin* action.  In doing so,

17   Mr. Stoner produced to Ms. Kim (and to himself) not only the so-called "FC330"—a

18   document Mr. Commelin stole from Epson, and that Epson consistently asserted

19   should not be disclosed or otherwise used in litigation until a determination was

20   made whether it was attorney-client privileged and/or work product protected—but

21   also two *non-responsive* memoranda that *on their face* indicate they are protected by

22

23   [2]   Email from Eric F. Yuhl to Nancy Yaffee, July 29, 2009, 3:33 p.m.(Docket
     No. 84, Declaration of Nancy Yaffe, dated Apr. 7, 2010, Ex. A).

24   [3]   Email from Valerie Roddy to Joanna Kim, Jan. 28, 2010, 5:36 p.m.
25   (Declaration of Valerie Roddy ("Roddy Decl."), filed Jan. 7, 2011 ¶ 5 & Ex. 2)
     (Docket No. 312-1).

26   [4]   Roddy Decl. ¶ 6.  Specifically, plaintiffs' counsel complained that the
27   protective order should make no mention of *Commelin* any more than it should any
     other action pending in the Los Angeles Superior Court.

28

1  Epson's attorney-client privilege.[5]  Plaintiffs' counsel have never contended that

2  these non-responsive memoranda were not privileged.

3       Second, in March 2010, plaintiffs' counsel filed FC330 under seal with the

4  Court.[6]  Although Epson immediately reminded plaintiffs' counsel that, even if they

5  disagreed with Epson's privilege assertion, California law prohibits them from

6  reviewing, using or disseminating FC330 until a privilege determination could be

7  made,[7] plaintiffs' counsel refused to withdraw their filing.  Although this Court

8  ultimately determined the document was not privileged, it found that Epson's

9  privilege assertion was colorable and made in good faith.  Accordingly, plaintiffs

10  had a duty under *Rico v. Mitsubishi* not to use or disseminate that document before

11  the privilege determination.  Instead plaintiffs self-adjudicated (incorrectly) that

12  Epson's privilege assertion was not tenable, and repeatedly violated their duty to

13  refrain from use of the FC330 document.[8]

14  _____

15     [5]  Declaration of Donna D. Melby, Apr. 13, 2010 ("Melby Decl.") ¶ 9 (Docket

16  No. 84-5); Declaration of Alf R. Andersen, Apr. 13, 2010 ("Andersen Decl.") ¶¶ 33-33 (Docket No. 94)

17     [6]  Declaration of Shon Morgan, Apr. 13, 2011 ("Morgan Decl.") ¶ 11 (Docket

18  No. 84-6).

19     [7]  *See, e.g.*, *Rico v. Mitsubishi Motors Co.*, 42 Cal. 4th 807, 811-21 (2007); *Bak v.*

20  *MCL Fin. Group, Inc.*, 170 Cal. App. 4th 1118, 1127 (4th Dist. 2009) (a party who objects to a demand for the return of a document should not unilaterally make further copies of the document or submit it to the adjudicative body).

21     [8]  These events highlight one of the problems of counsel's dual representation of

22  Commelin and the *O'Shea* plaintiffs.  Counsel only had access to, and could only

23  misuse FC330 in this way in the *O'Shea* case, by virtue of their representation of Commelin.  In denying Epson's motion to disqualify because of this conflict, Judge

24  Gutierrez in no way endorsed this dual representation.  Rather, he ruled on the

25  narrow evidentiary basis that he did not believe there was evidence Commelin received any confidential information during his tenure at Epson.  As shown in the

26  FC330 briefing (and in particular the *in camera* filings), Commelin was involved in

27  numerous communications relating to ink issues that were at minimum confidential and proprietary and, as this Court pointed out in the oral ruling on FC330, likely

28     (footnote continued)

**The Protective Order.**  As Epson's concerns mounted, so did plaintiffs' counsel's resistance to the two-tier protective order Epson sought.  After weeks of battling over a suitable protective order, this Court entered Epson's proposal on June 24, 2010.  The Protective Order expressly provides in relevant part that any information designated confidential under the Protective Order "***must not be used for any purpose other than in connection with this litigation, unless and until such designation is removed either by agreement of the parties, or by order of the Court.***"[9]  The Protective Order later repeats in unmistakable terms: "All Confidential Information must be held in confidence by those inspecting or receiving it, and ***must be used only for purposes of this action.***"[10]

**Plaintiffs' Counsel Imply—and Then Deny—They Are Violating the Protective Order.**  On July 16, 2010, the Yuhl Stoner firm filed a brief in the state court reflecting a cavalier attitude toward the prohibited use of protected confidential information from one action in another:

> Cross-fertilization of information is not "misuse," . . . Where the information in both cases is known to the same law firm, the notion of "passing information" between counsel for the two cases makes little sense. [Yuhl Stoner] is counsel in both cases.[11]

_____

privileged.  In addition, far from finding no conflict was posed by this dual representation, Judge Gutierrez specifically flagged the conflict as a potential hurdle to class certification.  Confidential Declaration of Joseph Ashby, lodged concurrently herewith ("Ashby Decl.") at Ex. A (June 7, 2010 Tr. at 9:10-10:18).

[9]   Docket No. 160, Protective Order ¶ 7 (emphases added).  This provision of the Protective Order is taken verbatim from the Model Protective Order used by the United States District Court for the Southern District of California.

[10]   Protective Order ¶ 14 (emphases added).

[11]   Plaintiff Fabrice Commelin's Memorandum of Points and Authorities in Opposition to Epson America, Inc.'s Motion for Protective Order and to Compel Deposition of Fabrice Commelin, *Commelin v. Epson America, Inc.*, Los Angeles Superior Court No. BC427254, at 13:17-24 (Baldocchi Decl. Ex. 6).

When Epson raised this concern in a discovery conference before this Court, plaintiffs' counsel assured the Court they did not intend to violate the protective order by using confidential discovery from *O'Shea* in *Commelin*:

| THE COURT: | The – the issue that defendants raised . . . about some suggestion of use of documents in the state litigation, I – I assume that's not the intention. |
|---|---|
| MS. KIM: | It's certainly not, Your Honor. . . . I believe [Yuhl Stoner's statement] is being distorted as if there's this, you know, conspiracy to violate the protective order, and there's never been any intent to do that, and there's certainly no evidence of that. |
| THE COURT: | Okay.  Well as long – as long as it's clear, and I don't have any reason to think that it isn't, that the protective order limits the use of documents to this – to this litigation.[12] |

**Plaintiffs' First Protective Order Violation.**  In September 2010, Epson filed its amended moving papers in support of a determination that FC330 is protected by the attorney-client privilege and work product immunity.[13]  Plaintiffs filed opposition papers, including the two documents at issue here—plaintiffs' legal memorandum and Ms. Kim's supporting declaration—on September 28, 2010.

Rather than file these documents under seal as required by the Protective Order, plaintiffs *publicly* e-filed the entire *O'Shea* Kim Declaration on CM-ECF— including FC330-343, which was appended as the first exhibit thereto—uploading it

---

[12]   Docket No. 228, Sept. 3, 2010 Tr. at 32:2-6, 32:25 to 33:8 (Roddy Decl. Ex. 3).

[13]   Docket No. 226, Defendants' Amended Notice of Motion for a Determination that Document FC330-343 is Protected by the Attorney-Client Privilege and Work Product Doctrine.

1   for the world to see exhibit by confidential exhibit.[14]  Plaintiffs also publicly e-filed

2   a version of the *O'Shea* FC330 Opposition that redacted only a portion of the

3   information Epson had designated as confidential.[15]  After Epson confronted

4   plaintiffs' counsel about these undeniable Protective Order violations and threatened

5   *ex parte* relief, plaintiffs' counsel obtained the requisite court order to withdraw the

6   *O'Shea* FC330 Opposition and Kim Declaration from the Court's CM-ECF/PACER

7   website.

8        **Yuhl Stoner Then Filed the Same Documents in *Commelin*.**  Epson also

9   filed a motion in the *Commelin* action seeking a determination that FC330 is

10  attorney-client privileged and work-product protected to sufficiently protect its

11  interests in both forums (which apply different work product standards).[16]

12  Commelin's opposition was due December 28, 2010.[17]  However, on December 29,

13  2010, Yuhl Stoner (as Commelin's attorneys) submitted a letter to the *Commelin*

14  discovery referee requesting to continue Epson's motion.  In the alternative, Yuhl

15  Stoner requested that the referee consider as Commelin's opposition the *O'Shea*

16  FC330 Opposition and Kim Declaration, which it attached.[18]  Both were submitted

17  in their confidential and unredacted form.  In fact, with respect to the *O'Shea* Kim

18  Declaration, counsel filed the very same unredacted version this Court ordered

19  *removed* from CM-ECF/PACER, as shown by the ECF filing stamp header.[19]

20

21        [14]   Sept. 28, 2010 Notice of Electronic Filing (Roddy Decl. Ex. 4) (showing that

22  each exhibit to the *O'Shea* FC330 Kim Declaration was separately uploaded into

23  CM-ECF.  Notably, plaintiffs' counsel have never seriously disputed the highly
     confidential nature of FC330.

24        [15]   Docket No. 250, Jt. Stip. in Support of Plaintiff's *Ex Parte* Application to
     Seal at 1:5-24.

25        [16]   Baldocchi Decl. ¶ 4.

26        [17]   Baldocchi Decl. ¶ 5.

27        [18]   Baldocchi Decl. ¶¶ 6 & 7 and Ex. 1.
          [19]   Baldocchi Decl. ¶ 8.

28

**The Documents Contain Information Produced Only in This Action.**

Although the much-litigated FC330 document has been produced in *Commelin* as well as in *O'Shea*, other confidential information and documents in the *O'Shea* FC330 Opposition and Kim Declaration were produced only in this case.  Plaintiffs' counsel has already conceded that Epson designated material in these two documents as confidential under the Protective Order.[20]  Exhibits B and C to the Kim Declaration are excerpts of transcripts of depositions taken by plaintiffs' counsel in *O'Shea* and include testimony that Epson designated as Confidential — For Counsel Only.[21]  Exhibits F and G to the Kim Declaration are documents Epson produced in *O'Shea* and designated as Confidential — For Counsel Only.[22]  Epson did *not* produce these documents in the *Commelin* action.[23]  Thus, plaintiffs' counsel could not have simply recreated the same filings from documents in the *Commelin* action, but rather were able to produce these filings only because they had access to Epson's confidential documents and information in *O'Shea* in their role as counsel in both actions.

**Asked to Remedy the Violation, Yuhl Stoner Compounds It.**  The day after Yuhl Stoner delivered the unredacted *O'Shea* materials to the *Commelin* discovery referee, Epson's counsel in *Commelin* demanded that plaintiffs' counsel withdraw them immediately.[24]  Yuhl Stoner responded not with contrition but with a

---

[20]   Docket No. 267, App. for Sealing at 2:1-2.

[21]   Roddy Decl. ¶ 10(Epson has designated pages from the Elizabeth Leung deposition transcript included in Exhibit B to the *O'Shea* FC330 Kim Declaration Confidential – For Counsel Only), ¶ 11 (Epson has designated pages from the Elizabeth Leung deposition transcript included in Exhibit B to the *O'Shea* FC330 Kim Declaration Confidential – For Counsel Only)

[22]   Roddy Decl. ¶¶ 13-14.

[23]   Roddy Decl. ¶¶ 13-14.

[24]   December 30, 2010 Letter from Jennifer S. Baldocchi of Paul Hastings to George Rosenstock of Yuhl Stoner  (Baldocchi Decl. Ex. 2).

threat to file its submission to the referee—"reformatted as a pleading"—in the file
of the Los Angeles Superior Court.[25]  Two days later, plaintiffs' counsel did so.[26]
Although they filed the unredacted versions under seal, the sealed documents still
improperly revealed to the *Commelin* judge (a) confidential Epson documents
produced in *O'Shea* but not in *Commelin*; (b) confidential deposition transcripts
from *O'Shea*; and (c) an unredacted brief and declaration filed under seal in *O'Shea*.

   **Plaintiffs' Counsel Shows No Remorse.**  When plaintiffs' counsel refused to
remove the confidential materials from the files of the state court and referee in
*Commelin*, Epson filed an *ex parte* motion for an order compelling them to do so.  In
opposition, plaintiffs' counsel did not contest the violations—which they dismissed
as mere "technical violations"—but rather attempted to justify them.  Specifically,
plaintiffs' counsel argued that they violated this Court's Protective Order when they
found themselves "unable to prepare a formal opposition to [an] essential motion" in
*Commelin* because of one attorney's personal and medical needs and because
Epson's *Commelin* counsel had "reneged" on a promise to produce relevant
documents.[27]  In short, plaintiffs' counsel inexplicably waited more than two weeks,
until two days before Christmas, to seek a continuance, and when faced with an
"emergency" of their own design, chose to violate the *O'Shea* Protective Order to
solve their problem.

_____

   [25]   Jan. 4, 2010 Letter from George Rosenstock to Jennifer S. Baldocchi
(Baldocchi Decl. Ex. 3).
   [26]   Baldocchi Decl. ¶¶ 13 & 14 and Exs. 5 & 6.
   [27]   Unlike the *O'Shea* plaintiffs and Mr. Commelin, Epson is represented by
different counsel in the two actions.  Whatever plaintiffs' counsel's complaints about
the briefing schedule in *Commelin*, the Yuhl Stoner firm admits that it waited more
than two weeks—until December 23—to seek any form of extension of the briefing
schedule from the *Commelin* referee.  Likewise, it is for the discovery referee to
resolve discovery disputes in the *Commelin*, not for plaintiffs' to engage in self-help
instead of following appropriate procedures.

**The Court Grants Epson's *Ex Parte* Application.**  On January 20, 2011, the Court granted Epson's *ex parte* application, ordering plaintiffs' counsel to immediately withdraw the *O'Shea* FC330 Opposition and Kim Declaration from the state court and referee files in *Commelin*:

> Defendants' Ex Parte Application is granted. Under the terms of the protective order in this action, documents produced and designated as confidential may not be used in another case, including the state court *Commelin* action, without agreement of counsel or prior court order. Accordingly, Plaintiff's counsel Mr. Stoner is ordered immediately to undertake the necessary steps to withdraw and strike from consideration in the *Commelin* action the identified pleadings containing such material which were submitted to the discovery referee and/or lodged or filed with the court in that case.  A status report regarding compliance with this order is to be filed by January 24, 2011.[28]

According to a declaration of Mr. Stoner's colleague Mr. Rosenstock, the Yuhl Stoner firm retrieved the offending documents from the state court's file and asked the *Commelin* discovery referee "to withdraw and to strike from his consideration" the *O'Shea* FC330 Opposition and Kim Declaration.[29]  Plaintiffs' counsel have not indicated what, if any, action the *Commelin* discovery referee took in response to this request.

---

[28]   Civil Minutes General, Jan. 20, 2011 (Docket No. 317).

[29]   Declaration of George K. Rosenstock in Support of Report to Magistrate re Order of January 20, 2011 re Withdrawal of Documents from Court File and Discovery Referee, filed January 24, 2011 (Docket #319-1).

Case No. CV 09-8063 PSG (CWx)

NOTICE OF MOTION AND MOTION FOR SANCTIONS FOR VIOLATIONS OF THE PROTECTIVE ORDER

<u>**Argument**</u>

**I.**   **THIS COURT CAN AND SHOULD IMPOSE SANCTIONS FOR COUNSEL'S UNDISPUTED VIOLATION OF ITS ORDER**

    **A.**   <u>**Courts Have Broad Powers to Sanction Discovery Order Violations**</u>

      The June 24, 2010 Protective Order is a discovery order subject to the sanctions provisions of Federal Rule of Civil Procedure 37(b)(2).  *See, e.g.,* *Westinghouse Elec. Corp. v. Newman & Holtzinger, P.C.*, 992 F.2d 932, 934-35 (9th Cir. 1992) (Rule 37(b)(2) applies to Rule 26(c) protective orders).  Rule 37(b)(2) affords the federal courts a wide range of sanctions from which to fashion an appropriate remedy for the violation of discovery orders.  Specifically, Rule 37 provides in relevant part:

      (b) Failure to Comply with a Court Order.

      . . .

      (2) . . . (A) ***For Not Obeying a Discovery Order***. If a party or a party's officer, director, or managing agent--or a witness designated under Rule 30(b)(6) or 31(a)(4)--fails to obey an order to provide or permit discovery, including an order under Rule 26(f), 35, or 37(a), the court where the action is pending may issue further just orders. They may include the following:

      (i) directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims;

      (ii) ***prohibiting the disobedient party*** from supporting or opposing designated claims or defenses, or ***from introducing designated matters in evidence***;

      (iii) striking pleadings in whole or in part;

      (iv) staying further proceedings until the order is obeyed;

      (v) dismissing the action or proceeding in whole or in part;

Case No. CV 09-8063 PSG (CWx)
NOTICE OF MOTION AND MOTION FOR SANCTIONS FOR VIOLATIONS OF THE PROTECTIVE ORDER

(vi) rendering a default judgment against the disobedient party; or

(vii) ***treating as contempt of court the failure to obey any order*** except an order to submit to a physical or mental examination.

Fed. R. Civ. P. 37 (emphases added).  Counsel—in addition to the parties they represent—may be sanctioned "as a warning to . . . counsel and as an indication that further disregard of court orders would not be tolerated."  *See, e.g.*, *United States v. Sumitomo Marine & Fire Ins.*, 617 F.2d 1365, 1370-71 (9th Cir. 1980) (affirming discovery sanction against attorney personally).  "As in civil contempt, discovery sanctions may be imposed to compel compliance with an order or to compensate the opposite party."  *Falstaff Brewing Corp. v. Miller Brewing Corp.*, 702 F.2d 770, 784 n.10 (9th Cir. 1983).

In the Ninth Circuit, sanctions are appropriate where the violation is "due to willfulness, bad faith, or fault of the party."  *United States v. Kahaluu Constr. Co., Inc.*, 857 F.2d 600, 603 (9th Cir. 1988).  "Disobedient conduct not shown to be outside the litigant's control meets this standard."  *Fair Housing of Marin v. Combs*, 285 F.3d 899, 905 (9th Cir. 2002).

### B.   Plaintiffs' Counsel Intentionally Violated the Protective Order

There is no question in this case that plaintiffs' counsel violated the June 24, 2010 Protective Order by submitting the *O'Shea* FC330 Opposition and Kim Declaration.  The Protective Order expressly provides that confidential information from *O'Shea* "***must not be used for any purpose other than in connection with this litigation.***"[30]  The meaning of this provision is not elusive: confidential information

---

[30]   Protective Order ¶ 7 (emphases added).  This provision of the Protective Order is taken verbatim from the Model Protective Order used by the United States District Court for the Southern District of California.

1  from *O'Shea* cannot be submitted to the *Commelin* referee, filed at will in other

2  actions, or used to "fertilize" counsel's other cases.

3      Nor should there be any question as to the appropriateness of imposing a

4  discovery sanction for plaintiffs' counsel's intentional and undisputed violation of

5  the Protective Order.  This incident marked the ***second*** time plaintiffs' counsel

6  improperly disseminated ***the very same confidential filings*** in violation of the

7  Protective Order.  Each and every violation of the protective order—whether

8  "accidental" as plaintiffs have claimed in the past or intentional as conceded here—

9  the compromises the vitality of the Protective Order.  The litigants who are required

10 to turn over reams upon reams of confidential technical and business documents

11 pursuant to such protective orders do so with the expectation that those orders are

12 meaningful and will be enforced.  A sanctions award is necessary and appropriate.

13 **II.    THE REQUESTED EVIDENTIARY SANCTION IS CLOSELY**

14 **RELATED TO THE VIOLATION AND NARROWLY TAILORED**

15     Rule 37(b)(2)(A)(ii) specifically provides that courts may sanction a party by

16 "prohibiting the disobedient party from . . . introducing designated matters in

17 evidence."  Epson respectfully requests that the Court preclude plaintiffs from

18 affirmatively offering the confidential and attorneys' eyes only portions of the

19 depositions of Fabrice Commelin and Elizabeth Leung included in the *O'Shea*

20 FC330 Kim Declaration as well as the confidential documents attached to that

21 declaration as Exhibits F and G.[31]  Copies of the documents and testimony Epson

22 seeks to preclude plaintiffs from affirmatively offering in *O'Shea* are attached to the

23 Declaration of Joseph Ashby filed concurrently herewith.

24     By precluding plaintiffs from affirmatively relying on the evidence plaintiffs'

25 counsel improperly introduced into the *Commelin* action, the sanction is directly

26

27  [31]  The specific portions of testimony and documents at issue are attached to the
Confidential Declaration of Joseph Ashby for the Court's review.

28

1  related to the violation of the protective order.  *Cf. Ins. Corp. of Ireland, Ltd., v.*
2  *Compagnie des Bauxites de Guinee*, 456 U.S. 694, 707 (1982) (Rule 37(b)(2)
3  requires that "sanction must be specifically related to the particular 'claim' which
4  was at issue in the order to provide discovery").  Because the information relates to
5  a collateral issue—not directly to the merits—its preclusion will not significantly
6  prejudice plaintiffs' attempts to prove its case and would certainly not be case-
7  dispositive.  At the same time, however, this proposed sanction will send a powerful
8  message to plaintiffs' counsel that the continued misappropriation of confidential
9  information from *O'Shea* for another client's benefit may have both substantial and
10 substantive effects in *O'Shea*.

11      Epson believes this evidentiary sanction will also encourage plaintiffs'
12 counsel to exercise due care with information designated confidential under the
13 Protective Order.  Given plaintiffs' repeated mishandling of these documents—
14 including filing them on PACER—the threat of consequences to their *own* interests
15 appear necessary to encourage compliance.  *See, e.g.*, *In re Heritage Bond Litig.*,
16 223 F.R.D. 527, 530 (C.D. Cal. 2004) ("The Court may, in deciding whether to
17 grant a motion for sanctions, 'properly consider all of a party's discovery
18 misconduct[.]'") (quoting *Payne v. Exxon Corp.*, 121 F.3d 503, 508 (9th Cir. 1997)).

19 **III.   MONETARY SANCTIONS ARE ALSO AN APPROPRIATE**
20       **PENALTY**

21      Epson also respectfully seeks the imposition of monetary penalties in the
22 amount of $7,500 against plaintiffs' counsel.  This amount represents a mere portion
23 of the legal expense incurred by Epson to seek the recovery of the *O'Shea* FC330
24 Opposition and Kim Declaration from the *Commelin* action.[32]

25
26
27    [32]   Ashby Decl. ¶ 8.
28

Plaintiffs' counsel's violations of the protective order also amount to civil contempt.  *See, e.g., Eagle Comtronics, Inc. v. Arrow Communication Laboratories, Inc.*, 305 F.3d 1303, 1304 (Fed. Cir. 2002) ("[Plaintiff's] undisputed conduct, plus the language of the unambiguous protective order, amount to the clear and convincing evidence needed to demonstrate that [plaintiff] was in civil contempt of court. . . . [T]he district court's failure to find a violation of the protective order was most certainly an abuse of discretion.").  An injured parties' attorneys' fees in seeking redress for a protective order violation are a common contempt sanction where, as here, a party's counsel improperly uses information protected by a protective order.  *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 258 (1975) ("Assessment of attorneys' fees is an appropriate sanction, for example, for willful disobedience of a court order.").  For example:

- In *Hunter Eng'g Co. v. Hennessy Indus. Co.*, 2010 WL 1186454 (E.D. Mo. Mar. 29, 2010), plaintiff's counsel—much like plaintiffs' counsel here—violated a protective order by providing defendant's confidential information produced under the protective order to the arbitrator in a different proceeding.  The court punished plaintiff's contempt by ordering it to pay attorneys' fees and costs.

- In *Harmston v. City & County of San Francisco*, 2007 WL 3306526 (N.D. Cal. Nov. 6, 2007), the court found both plaintiff and his counsel disseminated materials designated confidential under the protective order.  Like here, "[d]efendants ha[d] proven contempt by clear and convincing evidence, and the parties d[id] not dispute that the materials in question were disseminated." *Id.* at *8.  The court ordered the plaintiffs an his counsel to pay defendants' reasonable expenses, including attorney's fees, totaling $24,407.42. *Id.*

- In *Mora v. Target Corp.*, 2010 WL 4818540 (S.D. Cal. Nov. 22, 2010), the court sanctioned plaintiff's counsel in the amount of $500 (reduced

1    substantially because of counsel's dire financial straits and his
2    contriteness) for using an expert report including Target's confidential
3    information in a class action he was simultaneously prosecuting in
4    violation of the case protective order.  Notably, plaintiffs' counsel in
5    *O'Shea* show no sign of financial difficulty *or* contrition.
6    • In *Kaufman v. American Family Mutual Insurance Co.*, 601 F.3d 1088
7    (10th Cir. 2010), the Tenth Circuit affirmed the district court's
8    imposition of monetary sanctions where class plaintiffs' counsel used
9    defendants' confidential files obtained in discovery for the purported
10   purpose of ascertaining numerosity to solicit clients in violation of a
11   protective order term limiting use of the information to "pre-trial
12   preparation and trial of [the] case."
13   • In *McDonald v. Cooper Tire & Rubber Co.*, 2005 WL 3372855 (M.D.
14   Fla. Dec. 13, 2005), the court imposed more than $13,000 in sanctions
15   on an attorney who violated a protective order by providing a
16   deposition—parts of which had been designated confidential—to
17   another attorney who used it in another action.
18   • In *Poliquin v. Garden Way*, 154 F.R.D. 29, 31-32 (D. Me. 1994), the
19   district court ordered defendant to submit affidavit regarding its
20   attorneys' fees and costs in preparing motion for sanctions against
21   attorney who violated *Poliquin* protective order by sharing protected
22   discovery materials with his co-counsel in another case against the
23   same defendant.
24   Just as these courts imposed monetary sanctions for counsel's misuse of protected
25   materials, so too should this Court.  Epson respectfully submits that the sanctions it
26   requests are essential to enforcing the protective order and restoring confidence in
27   its provisions.
28

## Conclusion

For the foregoing reasons, Epson respectfully requests that this Court enter an order precluding plaintiffs' counsel from affirmatively relying on the confidential materials it improperly provided to the state court and discovery referee in *Commelin* and to pay Epson $7,500 to compensate it in part for the *ex parte* application its misconduct required.


DATED:  Febraury 22, 2011          QUINN EMANUEL URQUHART &
                                   SULLIVAN, LLP



                                   By  /s/ Shon Morgan
                                      Shon Morgan
                                      Attorneys for Defendants Epson America,
                                      Inc. and Epson Accessories, Inc.