1  CATHERINE A. CONWAY (SBN 98366)
   cconway@akingump.com
2  REX S. HEINKE (SBN 66163)
   rheinke@akingump.com
3  JOANNA H. KIM (SBN 183799)
   jkim@akingump.com
4  **AKIN GUMP STRAUSS HAUER & FELD LLP**
   2029 Century Park East, Suite 2400
5  Los Angeles, California 90067
   Telephone:    310.229.1000
6  Facsimile:    310.229.1001

7  ERIC F. YUHL (SBN 102051)
   eyuhl@ysclawyers.com
8  WILLIAM E. STONER (SBN 101418)
   wstoner@ysclawyers.com
9  **YUHL STONER CARR LLP**
   601 South Figueroa Street, Suite 2340
10 Los Angeles, California 90017
   Telephone:    213.687.2640
11 Facsimile:    213.827.4200

12 Attorneys for Plaintiffs CHRISTOPHER
13 O'SHEA, GISELE ROGERS, and JEFF ADAMS

14                 UNITED STATES DISTRICT COURT

15               CENTRAL DISTRICT OF CALIFORNIA

16 CHRISTOPHER O'SHEA, GISELE            Case No. CV09-8063 PSG (CWx)
   ROGERS and JEFF ADAMS,
17 individually, on behalf of themselves   [The Honorable Philip S. Gutierrez]
   and all others similarly situated,
18                                        **REDACTED PLAINTIFFS' MOTION
                                          TO DISQUALIFY DAVID R. SPENCER
19              Plaintiffs,               AND THE LAW FIRM OF QUINN
                                          EMANUEL URQUHART & SULLIVAN,
20      v.                                LLP; SUPPORTING MEMORANDUM
                                          OF POINTS AND AUTHORITIES**
21 EPSON AMERICA, INC., a
   California corporation; EPSON          [Declarations of Joanna H. Kim, David
22 ACCESSORIES, INC., a California        Nelson and L. Douglas Clark Filed
   corporation; SEIKO EPSON               Concurrently; [Proposed] Order Lodged
23 CORPORATION, a Japanese                Concurrently]
   corporation; and DOES 1-100,
24 inclusive,                             Date:     May 9, 2011
                                          Time:     1:30 p.m.
25              Defendants.               Crtrm:    Roybal, 880

26

27

28

---

PLAINTIFFS' MOTION TO DISQUALIFY DAVID R. SPENCER AND THE LAW FIRM OF QUINN EMANUEL
URQUHART & SULLIVAN, LLP; SUPPORTING MEMORANDUM OF POINTS AND AUTHORITIES

# TABLE OF CONTENTS

**Page**

MEMORANDUM OF POINTS AND AUTHORITIES ...........................................2

INTRODUCTION...............................................................................................2

STATEMENT OF FACTS...................................................................................3

LEGAL ARGUMENT ...................................................................................... 10

I.    MR. SPENCER AND QUINN EMANUEL SHOULD BE DISQUALIFIED FROM  PARTICIPATING FURTHER IN THIS CASE.. 10

    A.    This Court Applies California Law and California Standards of Professional Conduct to Motions to Disqualify. ................................. 10

    B.    California Law Compels the Disqualification of Mr. Spencer and the Law Firm of Quinn Emanuel from Further Participation in this Case.10

CONCLUSION ............................................................................................... 17

UNREDACTED PLAINTIFFS' MOTION TO DISQUALIFY DAVID R. SPENCER AND THE LAW FIRM OF QUINN EMANUEL URQUHART & SULLIVAN, LLP; SUPPORTING MEMORANDUM OF POINTS AND AUTHORITIES

# TABLE OF AUTHORITIES

**CASES**                                                                                      **Page(s)**

Cordy v. Sherwin-Williams Co.,
    156 F.R.D. 575 (D.N.J. 1994) .................................................. 11, 12, 14, 17

County of Los Angeles v. Superior Court,
    222 Cal. App. 3d 647 (1990) .................................................... 10, 14

In re Complex Asbestos Litigation,
    232 Cal. App. 3d 572 (1991) .................................................... 12, 13

In re County of Los Angeles,
    223 F.3d 990 (9th Cir. 2000) ...................................................... 10

Kirk v. First Am. Title Ins. Co.,
    183 Cal. App. 4th 776 (2010) ..................................................... 13

People ex rel. Dept. of Corporations v. SpeeDee Oil Change Systems, Inc.,
    20 Cal. 4th 1135 (1999) ........................................................ 2, 13

Shadow Traffic Network v. Superior Court,
    24 Cal. App. 4th 1067 (1994) ............................................... passim

Western Digital Corp. v. Superior Court,
    60 Cal. App. 4th 1471 (1998) ................................................. 11, 14

**STATUTES**

California Evidence Code § 605 ..................................................... 12

California Evidence Code §606 ...................................................... 12

**RULES**

Federal Rules of Evidence §501 .................................................... 10

California Local Rule 7-3 ............................................................. 8

California Local Rule 83-3.1.2 ...................................................... 10

ii

1    TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

2    PLEASE TAKE NOTICE that on May 9, 2011, at 1:30 p.m. (the earliest hearing

3  date available as of today), or as soon thereafter as the matter may be heard, in

4  Courtroom 880 of the above-referenced Court, located at 255 East Temple Street, Los

5  Angeles, California 90012, Plaintiffs Christopher O'Shea, Gisele Rogers and Jeff

6  Adams (collectively, "Plaintiffs") will and hereby do move for an order disqualifying

7  (1) David R. Spencer of SpencerLab Digital Color Laboratory ("SpencerLab"); and (2)

8  Shon Morgan, Ryan Goldstein, Joseph Ashby and their law firm, Quinn Emanuel

9  Urquhart & Sullivan, LLP ("Quinn Emanuel"), from any further participation in this

10  case.

11    This Motion is based upon this Notice of Motion and Motion, the attached

12  Memorandum of Points and Authorities, the concurrently filed Declarations of Joanna

13  H. Kim, David Nelson, and L. Douglas Clark in Support of this Motion, the documents

14  and records on file in this action and any oral argument that may be presented at the

15  hearing.

16    Plaintiffs complied with Local Rule 7-3, on March 21, 2011, by letter to counsel

17  for defendants Epson America, Inc., Epson Accessories, Inc. and Seiko Epson

18  Corporation (collectively, "Defendants" or "Epson").

19

20  Dated: March 31, 2011        AKIN GUMP STRAUSS HAUER & FELD LLP

21

22              By _Rex S Heinke /pw_

23                    Rex S. Heinke

                       Attorneys for Plaintiffs

24            CHRISTOPHER O'SHEA, GISELE ROGERS

                   and JEFF ADAMS

25

26

27

28

## MEMORANDUM OF POINTS AND AUTHORITIES

## INTRODUCTION

The California courts have held that when an expert switches sides in litigation, it is presumed that the confidential information he obtained from the first law firm will be used to benefit the second law firm. To protect confidentiality, which is "fundamental to our legal system," *People ex rel. Dept. of Corporations v. SpeeDee Oil Change Systems, Inc.*, 20 Cal. 4th 1135, 1146 (1999), the expert and the second law firm must be disqualified. As the court explained in the seminal case of *Shadow Traffic Network v. Superior Court*, 24 Cal. App. 4th 1067, 1085-86 (1994), this is true even when the second attorney has not expressly discussed his or her adversary's confidential information with the expert. Disqualification is warranted because the second attorney may "still obtain the benefit of the information," which, "consciously or unconsciously, could shape or affect the analysis and advice" the expert provides. *Id.* at 1086.

The facts of this case are on all fours with *Shadow Traffic*, which involved the disqualification of a law firm that retained experts who had discussed the case with attorneys for the other side. Here, attorneys from Akin Gump Strauss Hauer & Feld, LLP ("Akin Gump"), counsel for Plaintiffs, sought to retain print expert David R. Spencer of SpencerLab Digital Color Laboratory ("SpencerLab") to perform testing and serve as an expert consultant on behalf of Plaintiffs in this case. After months of discussions with Mr. Spencer, during which Akin Gump attorneys and their technical consultant disclosed confidential work product, including their theories, objectives, and strategies for proving up their case, and

REDACTED

, he inexplicably withdrew from the case. As it turned out, Mr. Spencer had been approached that very day by attorneys from Quinn Emanuel Urquhart and Sullivan, LLP ("Quinn Emanuel"), who wanted him to serve as an expert on behalf of *Defendants* in this case. Although Mr. Spencer advised Quinn Emanuel that he had

2

1  spoken to Akin Gump, none of the Quinn Emanuel attorneys called Akin Gump to

2  discuss the matter, as courts consistently admonish parties in their position to do.

3  Instead, Quinn Emanuel simply retained Mr. Spencer as Defendants' expert and had him

4  write a 28-page report on the very same issue that Akin Gump had asked him to test:

5  how printers perform when used on a non-continuous basis.

6        Mr. Spencer now claims that he did not receive any confidential information from

7  Akin Gump, but he also claims not to recall the details of his numerous conversations

8  with Akin Gump attorneys or their technical consultant, and he claims no legal expertise

9  or knowledge that would allow him to discern work product from nonprivileged

10 information.  The court in *Shadow Traffic* rejected just such self-serving declarations

11 from the experts and their attorneys in that case.

12        Defendants cannot rebut the presumption that Mr. Spencer's acquisition of

13 confidential information will benefit them:  "When an attorney violates [the] rule

14 [against retaining an expert who has obtained confidential information from the other

15 side], he or she must be recused.  Having become privy to an opposing attorney's work

16 product, there is no way the offending attorney could separate that knowledge from his

17 or her preparation of the case."  *Shadow Traffic*, 24 Cal. App. 4th at 1081 (citation and

18 quotations omitted).

19        Like the law firm in *Shadow Traffic*, Quinn Emanuel should be disqualified along

20 with Mr. Spencer to maintain the integrity of the judicial process.

21                           **STATEMENT OF FACTS**

22   **1.  In February 2010, Akin Gump Contacts Printing Expert David Spencer**

23        **Regarding A Possible Retention.**

24        In February 2010, Joanna H. Kim, a partner with Akin Gump, counsel for

25 Plaintiffs, initially contacted printing expert David R. Spencer of SpencerLab because

26 she was considering retaining him as an expert for Plaintiffs in this case.  Declaration of

27 Joanna H. Kim ("Kim Decl.") at ¶ 2.  Ms. Kim asked Mr. Spencer if he had any

28

                                            3

1  conflicts that would preclude his working on behalf of Plaintiffs, and he told her he did

2  not. *Id.* at ¶ 4.  Mr. Spencer mentioned that he had done work for Hewlett Packard

3  ("HP"), but saw no problem working on this case because HP is not a defendant. *Id.*

4        During this and subsequent conversations, Ms. Kim disclosed to Mr. Spencer her

5  legal theories of the case, gave her impressions of the strengths and weaknesses of the

6  case,                    *REDACTED*

7        *Id.* at ¶ 5.  Before Ms. Kim disclosed any of her thoughts and legal

8  impressions, she told Mr. Spencer that Akin Gump was seeking an expert to assist in this

9  litigation and, therefore, she expected him to keep the communications confidential. *Id.*

10  Mr. Spencer agreed to do so. *Id.*

11        **2.  In October 2010, Akin Gump Attorneys and Plaintiffs' Technical**

12           **Consultant Share Confidential Information with Mr. Spencer.**

13        In October 2010, Akin Gump attorney David Nelson and Plaintiffs' technical

14  consultant, L. Douglas Clark, had several telephone discussions with Mr. Spencer to

15  discuss the case.  Declaration of David Nelson ("Nelson Decl.") at ¶ 2; Declaration of L.

16  Douglas Clark ("Clark Decl.") at ¶ 2.  These conversations took place with the explicit

17  understanding that the information disclosed would be kept confidential.  Nelson Decl.

18  at ¶ 2; Clark Decl. at ¶ 2.  Mr. Nelson explained the nature of the case against Epson,

19  and Mr. Spencer confirmed that he had no conflict.  Nelson Dec. ¶¶ 2-3.

20        During these discussions with Mr. Spencer, Mr. Nelson elaborated on Plaintiffs'

21  counsel's legal theories, gave impressions about the strengths and weaknesses of the

22  case, and          *REDACTED*

23        Nelson Decl. at ¶¶ 3, 4-6; Clark Decl. at ¶¶ 3-5.  Mr. Nelson disclosed this

24  information to Mr. Spencer so they could develop a protocol for Mr. Spencer's print

25  testing services in this case.  Nelson Decl. at ¶ 3.  In addition, Mr. Nelson

26                    *REDACTED*

27

28
                              4

1    *REDACTED*

2                    *Id.* at ¶¶ 4-5.

3    Mr. Nelson                    *REDACTED*

4

5         Nelson Decl. at ¶ 4.   After these discussions, Mr. Nelson understood that

6    Mr. Spencer would serve as Plaintiff's expert and         *REDACTED*

7    *REDACTED*                    based on the confidential discussions between Mr.

8    Nelson and Mr. Spencer. *Id.* at ¶ 7. Mr. Clark had the same understanding. Clark Decl.

9    at ¶ 6.[1]

10        Mr. Spencer now declares that he "do[es] not recall" the particulars of any of

11   these discussions or even being told that Akin Gump was representing individual

12   consumers in a class action adverse to Epson. Declaration of David R. Spencer

13   ("Spencer Decl.") at ¶¶ 4, 6, 7, 10, 13. In spite of these memory lapses, he nevertheless

14   declares without reserve that he never received any confidential information from Akin

15   Gump or Mr. Clark, that he was never asked "to perform a conflict check," and that he

16   was told he "was not being considered as an expert." *Id.* at ¶¶ 12, 14, 16, 18.[2]

17   **3.  Mr. Spencer Sends Akin Gump A Confidential Protocol for His Work on**

18        **Behalf of Plaintiffs.**

19        On October 27, 2010, Mr. Spencer's office emailed a copy of

20   *REDACTED* . Nelson Decl. at ¶ 8, Exh. A. Both the protocol and the

21   accompanying email were labeled "Confidential." *Id.* The email stated that the

22   protocol had been prepared "in response to our discussions," and

23

24        [1] A more detailed discussion of the confidential information that was disclosed to
25   Mr. Spencer is included in the declarations of Joanna H. Kim, David Nelson and Mr.
     Clark, all of which are conditionally lodged for the Court's *in camera* review.
26        [2] Mr. Spencer is represented by attorney Laurence M. Berman, who has called
     Akin Gump to demand that the firm turn over work product related to Mr. Spencer.
27   Given Mr. Spencer's allegiance to Defendants in this case, Akin Gump has properly
     refused. Mr. Berman has declined to answer questions about who is paying his bills or
28   whether Mr. Spencer will withdraw from the case. Kim Decl. at ¶18.

UNREDACTED PLAINTIFFS' MOTION TO DISQUALIFY DAVID R. SPENCER AND THE LAW FIRM OF QUINN
EMANUEL URQUHART & SULLIVAN, LLP; SUPPORTING MEMORANDUM OF POINTS AND AUTHORITIES

REDACTED                                    *Id.*          REDACTED

Kim Decl. at ¶ 6.

**4. On December 3, 2010, Quinn Emanuel Contacts Mr. Spencer to Retain Him as an Expert for Defendants. On the Same Day, Mr. Spencer Informs Akin Gump He Is Withdrawing Due to a Conflict with HP.**

On December 3, 2010, Joseph Ashby, an associate attorney at Quinn Emanuel, contacted Mr. Spencer to inquire about retaining him as an expert witness for Epson. Declaration of Joseph Ashby ("Ashby Decl.") at ¶ 2.[3] According to Mr. Ashby, Mr. Spencer stated "he did not have a conflict working with Epson." *Id.* at ¶ 3.

The very same day, Mr. Spencer called Ms. Kim and precipitously announced that he had changed his mind about working for Plaintiffs. Kim Decl. at ¶ 7. He told Ms. Kim he had reached this decision because he was reluctant to test HP printers given his relationship with that company. *Id.*; Declaration of David R. Spencer ("Spencer Decl.") at ¶ 11. He did not disclose that he had been contacted by anyone at Quinn Emanuel. Kim Decl. at ¶ 8.

**5. Mr. Spencer Confirms Withdrawal After Speaking to Partners at Quinn Emanuel. Neither Partner Contacts Akin Gump When Mr. Spencer Discloses He Had "Considered Working" with Plaintiffs.**

On December 8, 2010, Ryan Goldstein, a partner at Quinn Emanuel, spoke to Mr. Spencer about his retention for Defendants. (Declaration of Ryan S. Goldstein ("Goldstein Decl.") at ¶ 2.) When "Mr. Spencer mentioned that he had considered working with another group to provide testing," Mr. Goldstein says that he asked him "if he had been retained or had been provided confidential information, and he replied

---

[3] We refer to the declarations of Joseph Ashby, Ryan Goldstein, Shon Morgan, and David R. Spencer submitted with Defendants' Opposition to Plaintiffs' Ex Parte Request for a Stay.

UNREDACTED PLAINTIFFS' MOTION TO DISQUALIFY DAVID R. SPENCER AND THE LAW FIRM OF QUINN EMANUEL URQUHART & SULLIVAN, LLP; SUPPORTING MEMORANDUM OF POINTS AND AUTHORITIES

1   that he had not." (*Id.*)  Mr. Goldstein did not contact anyone at Akin Gump to inquire

2   about the firm's relationship with Mr. Spencer.  Kim Decl. at ¶ 10; Nelson Decl. at ¶ 11.[4]

3       The very same day, Mr. Spencer sent an email to Akin Gump and Mr. Clark

4   confirming his decision to withdraw from the case.  Nelson Decl. at ¶ 10, Exh. B.  He

5       potential conflict-of-interest in depth" and "concluded

6   REDACTED

7

8       *Id.*  He stated that he "sincerely regret[ed] this conclusion to our relationship

9   on this project" and added that "I have enjoyed working with you to date and our

10  potential financial loss ... is significant."  *Id.*  Mr. Spencer reiterated that his work on

11  the case was "confidential."  *Id.*

12  REDACTED

13

14      *Id.*

15      On February 11, 2011, Mr. Goldstein spoke to Mr. Spencer again, this time with

16  Quinn Emanuel partner Shon Morgan.  Goldstein Decl. at ¶ 5; Declaration of Shon

17  Morgan ("Morgan Decl.") at ¶ 2.  The two partners say that they "again immediately

18  asked" if Mr. Spencer had been retained by or received confidential information from

19  Akin Gump or its technical advisers.  *Id.*  According to Mr. Goldstein, Mr. Spencer

20  stated that he had not received any confidential information from Akin Gump, that he

21  was never retained by Akin Gump, and that he had withdrawn his bid to perform work

22  for Plaintiffs.  (*Id.*)  He also told Mr. Goldstein he had no conflicts.  Goldstein Decl. at

23  ¶ 2 (apparently he was no longer worried about the conflict with HP that he had

24

25      [4] While Mr. Goldstein's declaration does not make clear whether Mr. Spencer

26  identified Akin Gump during this phone call, Mr. Goldstein goes on to state that when he later spoke to Mr. Spencer along with Mr. Morgan, the two partners "*again*

27  immediately asked if he had been retained by or received confidential information from Akin Gump," implying that Akin Gump had in fact been named during Mr. Goldstein's

28  initial call.  Goldstein Decl. at ¶ 5, emphasis added; *see* Morgan Decl. at ¶ 2.

1  discussed with Ms. Kim on December 3).  Neither Mr. Goldstein nor Mr. Morgan ever

2  bothered to contact Akin Gump attorneys to discuss the matter.  Kim Decl. at ¶ 10;

3  Nelson Decl. at ¶ 11.

**6.  Mr. Spencer Prepares A 28-Page Report on Behalf of Defendants on the Same Topic He Was Asked to Report on for Plaintiffs.**

6  At no time did Mr. Spencer indicate to Plaintiffs that he intended to work for

7  Epson instead of Plaintiffs.  Kim Decl. at ¶ 6.  However, on March 15, 2011, when

8  Plaintiffs' counsel received Defendants' Opposition to Plaintiffs' Motion for Class

9  Certification, they were shocked to discover that Mr. Spencer had prepared a 28-page

10  "expert report" in support of Defendants' Opposition.[5]  *Id.* at ¶ 11.  Mr. Spencer states in

11  his report that he was "asked by [Epson] to share some of [his] knowledge regarding ink

12  yield when printing in a non-continuous or intermittent manner" – the same expertise

13  and subject that Plaintiffs discussed with him when they sought to retain him to perform

14  testing under non-continuous conditions.  Kim Decl. at ¶ 16, Exh. D at 2.

**7.  Quinn Emanuel Ignores Akin Gump's Email and Summarily Refuses Its Formal Request to Withdraw Mr. Spencer's Report, to Withdraw as Counsel, and to Produce Records of Communications with Mr. Spencer.**

18  Plaintiffs' counsel immediately emailed Mr. Morgan at Quinn Emanuel informing

19  him that "Mr. Spencer and his lab obtained *highly confidential, attorney work product*

20  *from Akin Gump about this very case.*"  Kim Decl. at ¶ 12, Exh. A (original emphasis).

21  When Mr. Morgan failed to respond, Kim Decl. at ¶ 13, Plaintiffs' counsel sent

22  him a letter pursuant to Local Rule 7-3, reiterating that Mr. Spencer had received

23  confidential attorney work-product during discussions with Akin Gump attorneys.  *Id.* at

24  ¶ 14, Exh. B.  The letter requested that: (1) Epson withdraw Mr. Spencer's expert report

25  and state that he will not be used in any fashion in this litigation, either as an expert

---

[5] Epson filed Mr. Spencer's Report electronically at 10:38 p.m. on March 14, 2011.  Plaintiffs' counsel did not see the document, which was among a foot-high stack of related filings, until the next day.  Kim Decl. at ¶ 11.

UNREDACTED PLAINTIFFS' MOTION TO DISQUALIFY DAVID R. SPENCER AND THE LAW FIRM OF QUINN EMANUEL URQUHART & SULLIVAN, LLP; SUPPORTING MEMORANDUM OF POINTS AND AUTHORITIES

1   witness or as a consultant; (2) Quinn Emanuel and any other law firm that has

2   communicated with Mr. Spencer on Epson's behalf immediately withdraw as counsel in

3   this matter; and (3) all records of communications between Mr. Spencer and Epson and

4   their counsel – including, but not limited to, any letters, emails, time or billing records,

5   phone records reflecting calls between Epson and/or Epson's attorneys and Mr. Spencer,

6   or notes of discussions with Mr. Spencer – be immediately produced to Plaintiffs so the

7   Court can determine how far the taint from Mr. Spencer's contacts with Epson and/or its

8   attorneys has spread. *Id.*

9       Mr. Morgan rejected all three requests by email the following day. *Id.* at ¶ 15,

10   Exh. C.

11   **8. Plaintiffs Move for a Stay.**

12       On March 23, 2011, Plaintiffs' counsel brought an *ex parte* application for a stay

13   pending resolution of their motion to disqualify Quinn Emanuel and Mr. Spencer. This

14   Court granted the stay application on March 29, 2011. (Dkt. No. 411.)

15

16

17

18

19

20

21

22

23

24

25

26

27

28

UNREDACTED PLAINTIFFS' MOTION TO DISQUALIFY DAVID R. SPENCER AND THE LAW FIRM OF QUINN EMANUEL URQUHART & SULLIVAN, LLP; SUPPORTING MEMORANDUM OF POINTS AND AUTHORITIES

## LEGAL ARGUMENT

I. **MR. SPENCER AND QUINN EMANUEL SHOULD BE DISQUALIFIED FROM PARTICIPATING FURTHER IN THIS CASE.**

A. **This Court Applies California Law and California Standards of Professional Conduct to Motions to Disqualify.**

This Court applies California law to decide a motion to disqualify. *In re County of Los Angeles*, 223 F.3d 990, 995 (9th Cir. 2000); Fed. R. Evid. 501 ("in civil actions and proceedings, with respect to an element of a claim or defense as to which State law supplies the rule of decision, the privilege of a witness, person, government, State, or political subdivision thereof shall be determined in accordance with State law."); Civil Local Rule 83-3.1.2 (attorneys appearing before this Court must "comply with the standards of professional conduct required of members of the State Bar of California").

B. **California Law Compels the Disqualification of Mr. Spencer and the Law Firm of Quinn Emanuel from Further Participation in this Case.**

When a law firm retains an expert witness who has previously obtained confidential information from an opposing party, courts presume that the expert disclosed that information to the law firm. *Shadow Traffic*, 24 Cal. App. 4th at 1085 (citing *In re Complex Asbestos Litigation*, 232 Cal. App. 3d 572, 602 (1991)). Such disclosure is grounds for disqualifying the law firm as well as the expert, because "'[a]ttorneys must respect the confidentiality of attorney-client information and recognize that protecting confidentiality is an imperative to be obeyed in both form and in substance.'" *Id.* at 1087-88 (quoting *Complex Asbestos*, 232 Cal. App. 3d at 602); *accord, County of Los Angeles v. Superior Court*, 222 Cal. App. 3d 647, 657-58 (1990).

*Shadow Traffic* is particularly illuminating because its facts are so close to those presented here. There, plaintiff's counsel met for an hour with four representatives of Deloitte & Touche ("D&T") to discuss their possible retention as expert witnesses. The D&T representatives did not receive an engagement letter, retainer agreement, or any

10

1  compensation at the meeting, and were advised the next day that they would not be

2  retained.  24 Cal. App. 4th at 1071-72.  Several weeks later, defense counsel met with

3  two of the D&T representatives to discuss retaining them as experts in the same case.

4  The D&T representatives informed defense counsel that they had been interviewed by

5  plaintiff's counsel, but had not been retained. *Id.* at 1072.  Defense counsel made no

6  attempt to contact plaintiff's counsel before retaining the D&T representatives. *Id.*

7         When plaintiff's counsel learned that the D&T representatives with whom they

8  had met were going to serve as defense experts, they promptly moved to disqualify

9  defense counsel and their law firm.  24 Cal. App. 4th at 1072 (they did not move to

10  disqualify D&T because D&T had agreed to withdraw from the case).  Plaintiff's

11  counsel submitted declarations stating that they had shared confidential information

12  with the D&T representatives, and defense counsel countered with declarations from its

13  own attorneys and the D&T representatives stating that "nothing of a confidential nature

14  had been divulged" at the one-hour meeting. *Id.* at 1073-77.

15         The trial court granted the motion to disqualify defense counsel and their law

16  firm, remarking that, "what really hits me is that when defense counsel first contacted

17  [D&T] they knew almost immediately that [they] had previously had discussions with

18  the other side.  And that should really have been a red flag"; all that defense counsel had

19  to do to avoid a problem was make "[a] simple phone call to [plaintiff's counsel] saying,

20  'We are interested in hiring the expert you talked to that you did not hire.  Is there going

21  to be any problem?'" *Id.* at 1078, n.7.

22         The court of appeal affirmed.  It agreed with the trial court that defense counsel

23  had acted reprehensibly in failing to contact its adversary. *Id.* at 1081-82 & n.10 (citing

24  *County of Los Angeles*, 222 Cal. App. 3d at 657-58); *id.* at 1088; *see also Western*

25  *Digital Corp. v. Superior Court*, 60 Cal. App. 4th 1471, 1488 (1998) (faulting law firm

26  for failing to disclose to plaintiff's counsel its intent to hire expert who worked at same

27  firm as expert previously interviewed by plaintiff's counsel); *Cordy v. Sherwin-Williams*

28

UNREDACTED PLAINTIFFS' MOTION TO DISQUALIFY DAVID R. SPENCER AND THE LAW FIRM OF QUINN EMANUEL URQUHART & SULLIVAN, LLP; SUPPORTING MEMORANDUM OF POINTS AND AUTHORITIES

*Co.*, 156 F.R.D. 575, 584 (D.N.J. 1994) ("At the very least, defense counsel should have contacted Plaintiff's counsel" before hiring consultant who had previously communicated with plaintiff's counsel about the same case) (citation omitted).

The *Shadow Traffic* court determined that plaintiff's counsel's declarations constituted substantial evidence that confidential information had been relayed to the D&T representatives.  24 Cal. App. 4th at 1084.   Drawing on caselaw involving a law firm's retention of a paralegal who had worked for opposing counsel (*Complex Asbestos*, 232 Cal. App. 3d at 596), the court held there was a rebuttable presumption that defense counsel had received confidential information or, at the very least, the benefit of that information, notwithstanding their declarations to the contrary:

> Even assuming that [defense counsel] did not expressly ask [the expert] about the contents of his discussion with [plaintiff's counsel] and that [the expert] did not explicitly disclose the information to [defense counsel], [defense counsel] could still obtain the benefit of the information because the data, consciously or unconsciously, could shape or affect the analysis and advice [the expert] rendered to [defendant].  Given that both [parties] consulted [the expert] on the same issue – [plaintiff's] damages – it is highly unlikely that [the expert] could conscientiously discharge his duty to [defendant] as its retained expert and at the same time discharge his duty not to divulge confidential information received from [plaintiff].

24 Cal. App. 4th at 1085-86; *see also* Cal. Evid. Code §§ 605, 606; *Cordy*, 156 F.R.D. at 583-84 ("Even if, as defendant maintains, no confidential information was actually disclosed, [the alliance] creates a 'nagging suspicion' that [defendant's] preparation and presentation had already been unfairly benefitted.") (quoting *MMR/Wallace Power & Industrial, Inc. v. Thames Associates*, 764 F. Supp. 712, 727 (D. Conn. 1991)).  "To believe [the expert] ... will not remember and ultimately use [the] information [acquired from plaintiff's counsel], even 'subliminally,' ... defies common sense and human nature." *Id.*

Because the self-serving declarations submitted by defense counsel did not rebut this presumption, the *Shadow Traffic* court affirmed disqualification of defense counsel and their law firm, Latham & Watkins.  24 Cal. App. 4th at 1087-88; *id.* at 1081

12

1  ("'When an attorney violates this rule [against retaining an expert who has obtained
2  confidential information from the other side], he or she must be recused.  Having
3  become privy to an opposing attorney's work product, there is no way the offending
4  attorney could separate that knowledge from his or her preparation of the case.'")
5  (quoting *County of Los Angeles*, 222 Cal. App. 3d at 658); *see Complex Asbestos*, 232
6  Cal. App. 3d at 596 (when a law firm fails to rebut the presumption that confidential
7  attorney-client information has been "used or disclosed," "the court may disqualify the
8  attorney and law firm.").[6]

9       This case is indistinguishable from *Shadow Traffic*, except that the facts here
10  weigh even more strongly in favor of granting the motion to disqualify.  In *Shadow*
11  *Traffic*, the D&T representatives met with plaintiff's counsel for just an hour, after
12  which counsel decided not to retain them.  By contrast, Mr. Spencer engaged in detailed
13  discussions with Plaintiffs' counsel and their technical expert about their theories of the
14  case over the course of several months, and Plaintiffs' counsel made clear that they
15  wished to retain him.  Kim Decl. at ¶¶ 5, 8; Nelson Decl. at ¶ 7.

16

17                          REDACTED

18

19                          . Kim Decl. at ¶ 6; Nelson Decl. at ¶ 7.  Furthermore, the
20  work Mr. Spencer promised to do for Plaintiffs involved the same subject matter as the

---

22  [6] Because the defendant in *Shadow Traffic* did not argue that only the individual
    attorneys, and not the entire law firm, should be disqualified if plaintiff's motion were
23  granted, the court affirmed disqualification of the firm without further analysis.  24 Cal.
    App. 4th at 1088.  But other California courts have confirmed that, when an attorney is
24  tainted by receipt of an adversary's confidential information, the taint applies to his or
    her entire law firm, requiring its disqualification along with the individual attorney's.
25  *SpeeDee Oil*, 20 Cal. 4th at 1139 ("When a conflict of interest requires an attorney's
    disqualification from a matter, the disqualification normally extends vicariously to the
26  attorney's entire law firm.") (citing *Flatt v. Superior Court*, 9 Cal. 4th 275, 283 (1994));
    *accord, Kirk v. First Am. Title Ins. Co.*, 183 Cal. App. 4th 776, 801 (2010); *see id.* at 810
27  (effective screening may provide an exception to the general rule in certain cases, but
    only when the screen is put in place when the conflict first arises, which certainly did
28  not happen here).

1   Report he drafted for Defendants – the amount of ink used by consumers when they

2   print under non-continuous (*i.e.*, typical consumer) conditions as opposed to the

3   continuous conditions tested under ISO standards. This information goes to liability as

4   well as damages.

5         Although Mr. Spencer claims he never received any confidential information

6   from Akin Gump or its technical consultant, courts have admonished lawyers against

7   relying on non-lawyer individuals to determine whether information is privileged or not.

8   *E.g., Shadow Traffic*, 24 Cal. App. 4th at 1078; *County of Los Angeles*, 222 Cal. App. 3d

9   at 657.  It is precisely because a non-attorney cannot be expected to evaluate whether

10  the information he or she has received is confidential that courts have admonished

11  lawyers over and over again to pick up the phone and call the other side to ensure that

12  no such information has been imparted to the potential witness.  *E.g., Shadow Traffic*,

13  24 Cal.App.4th at 1081-82 & n.10; *County of Los Angeles*, 222 Cal. App. 3d at 657-58;

14  *Western Digital*, 60 Cal.App.4th at 1488; *Cordy*, 156 F.R.D. at 584.

15        Mr. Spencer's assertion that he never received any confidential information is

16  also not credible given the declarations of Ms. Kim, Mr. Nelson, and Mr. Clark to the

17  contrary, and given Mr. Spencer's own inability to "recall" the specifics of his

18  conversations with these individuals.  Spencer Decl. at ¶¶ 4, 6, 9, 10 (declaring that he

19  "do[es] not recall" discussing "any specific [printer] models or specific [testing]

20  parameters," "do[es] not recall" hearing "any mention of any manufacturer or model,"

21  "do[es] not recall" speaking with Mr. Kim or Mr. Nelson before he prepared the bid, and

22  "do[es] not recall" hearing anyone state that Akin Gump was representing individual

23  consumers in a class action against Epson before October 2010).  As the *Shadow Traffic*

24  court remarked, a reasonable person must question the candor of a witness who does not

25  recall the substance of a conversation with counsel, "but who, with certitude, alleges he

26  did not disclose any of that conversation in a later encounter" with opposing counsel.

27  24 Cal. App. 4th at 1086.

28

1   Mr. Spencer's assertions that Akin Gump never asked him about conflicts, that he
2   thought Mr. Clark was the client, and that he was told he was not a "legal expert"
3   (Spencer Decl. at ¶¶ 9, 10, 14), are also contradicted by the declarations of Ms. Kim and
4   Mr. Nelson (Kim Decl. at ¶¶ 2, 4, 5; Nelson Decl. at ¶ 2, 3) and further strain the limits
5   of credulity.  It is hardly plausible that Akin Gump would consider retaining an expert to
6   REDACTED               without discussing the litigation prompting the
7   retention or ascertaining there were no conflicts.  Indeed, as Ms. Kim declares, she and
8   Mr. Spencer discussed Mr. Spencer's relationship with HP the first time they spoke, and
9   determined that his relationship with that company would pose no conflict because HP
10  was not the defendant.  Kim Decl. ¶ 4; *see also* Nelson Decl. at ¶ 2 (stating that he
11  confirmed with Mr. Spencer that he had no conflicts).
12      As for Mr. Spencer's claim that he believed Mr. Clark to be the client, that
13  contradicts his own statement that he understood Mr. Clark to be the "legal expert in the
14  case." Spencer Decl. at ¶ 14.  It also begs the question why he called Ms. Kim, rather
15  than Mr. Clark, when he decided to withdraw.
16      Finally, Mr. Spencer's conviction that he was not a "legal expert" beggars belief.
17  What did he think he was going to be doing for Plaintiffs?  Why did he think he was
18  going to    REDACTED     for testing if not to put his expertise to use on
19  Plaintiffs' behalf?  Whether or not he believed he would be asked to testify, he had to
20  have understood that Akin Gump was going to retain him as an expert for Plaintiffs.  Mr.
21  Spencer, whose resume indicates he is associated with MIT, is neither uneducated nor
22  unfamiliar with the litigation process, having served as an expert witness or consultant
23  on at least seven previous occasions.  Kim Decl. at ¶ 16, Exh. D (resume).
24      Last but not least, the chronology of events throws Mr. Spencer's credibility into
25  serious question:  after discussing the case with Akin Gump for months, he suddenly
26  announced that he had changed his mind and wanted to withdraw – on the very same
27  day that he was first contacted by a lawyer at Quinn Emanuel.  Kim Decl. at ¶ 7; Ashby
28

1   Decl. at ¶ 2. And he put his withdrawal in writing on the day he got confirmation from

2   partners at Quinn Emanuel that he would be retained by Epson. Nelson Decl. at ¶ 10,

3   Exh. B; Goldstein Decl. at ¶ 5. The reason he gave – a business conflict with HP – is

4   not credible, because he had assured Akin Gump from the very start that his relationship

5   with HP would not pose a problem. Kim Decl. at ¶ 4.

6         As for Quinn Emanuel's attorneys, their conduct mirrors that of the lawyers

7   disqualified in *Shadow Traffic*. Like the attorneys there, Quinn Emanuel's lawyers

8   brushed aside their ethical duties – and the courts' repeated admonition to contact the

9   other side – before retaining an expert whom they knew had entered into discussions

10  with the other side about the case. None of Defendants' attorneys made any effort to

11  contact Akin Gump even though they acknowledge having learned from Mr. Spencer

12  (on at least two occasions) that he had been consulted by Plaintiffs' counsel regarding

13  work on this case. Goldstein Decl. at ¶ 5; Morgan Decl. at ¶ 2. To make matters worse,

14  Mr. Morgan then ignored Akin Gump's email advising him that Mr. Spencer had

15  received confidential information. Kim Decl. at ¶ 13. When Mr. Morgan finally

16  responded to Akin Gump's letter asking him to withdraw Mr. Spencer's report, to

17  withdraw as counsel, and to produce records of communications with Mr. Spencer, he

18  summarily refused all three requests without explanation. *Id.* at ¶ 15, Exh. C. In short,

19  the Quinn Emanuel attorneys' conduct evinces a conscious disregard for their ethical

20  obligations that sharply undermines their credibility.

21        While the Quinn Emanuel attorneys declare that Mr. Spencer did not share any

22  confidential attorney work product with them, their self-serving declarations – even if

23  they are to be believed – "miss the point." *Shadow Traffic*, 24 Cal. App. 4th at 1086.

24  Because Mr. Spencer "was privy to confidential information," it does not matter

25  whether defense counsel "did not expressly ask [him] about the contents of his

26  discussion with [Akin Gump] and that [he] did not explicitly disclose the information to

27  [Quinn Emanuel]." Defendants "could still obtain the benefit of the information

28

1  because the data, consciously or unconsciously, could shape or affect the analysis and
2  advice [Mr. Spencer] rendered." *Id.* It "defies common sense and human nature" "[t]o
3  believe [the expert] ... will not remember and ultimately use [the] information [acquired
4  from Plaintiffs' counsel], even 'subliminally.'" *Cordy*, 156 F.R.D. at 583-84 (citation
5  omitted).

6      Because Defendants' counsel cannot rebut the presumption that they will benefit
7  from their misconduct in hiring an expert away from Plaintiffs, they and their firm
8  should be disqualified along with Mr. Spencer.

9                          **CONCLUSION**

10      For the foregoing reasons, this Court should enter an order (1) disqualifying Mr.
11  Spencer from participating further in this case; and (2) disqualifying Mr. Morgan, Mr.
12  Goldstein and Mr. Ashby and their law firm, Quinn Emanuel, from participating further
13  in this case.

14
15  Dated:  March 31, 2011                AKIN GUMP STRAUSS HAUER & FELD LLP
16
17                          By _____
18                                  Rex S. Heinke
                                   Attorneys for Plaintiffs
19                          CHRISTOPHER O'SHEA, GISELE ROGERS
                                   and JEFF ADAMS
20
21
22
23
24
25
26
27
28

UNREDACTED PLAINTIFFS' MOTION TO DISQUALIFY DAVID R. SPENCER AND THE LAW FIRM OF QUINN
EMANUEL URQUHART & SULLIVAN, LLP; SUPPORTING MEMORANDUM OF POINTS AND AUTHORITIES