1 | Laurence M. Berman (SBN 93515)
2 | Wendy M. Thomas (SBN 268695) of
**weintraub** genshlea chediak
A Law Corporation
3 | 12400 Wilshire Boulevard
4th Floor
4 | Los Angeles, CA 90025
Ph: (310) 979-9998
5 | Fx: (916) 446-1611

6 | Attorneys for David R. Spencer

7

8 | UNITED STATES DISTRICT COURT

9 | CENTRAL DISTRICT OF CALIFORNIA

10

11 | CHRISTOPHER O'SHEA, GISELE ROGERS, and JEFF ADAMS, individually, on behalf of themselves and all others similarly situated,

Plaintiffs,

v.

EPSON AMERICA, INC., a California corporation; EPSON ACCESSORIES, INC. a California corporation; SEIKO EPSON CORPORATION, a Japanese corporation; and DOES 1-100, inclusive,

Defendants.

Case No.: 09-CV-8063-PSG (CWx)

**DAVID R. SPENCER'S OPPOSITION TO PLAINTIFFS' MOTION TO DISQUALIFY DAVID R. SPENCER AND THE LAW FIRM OF QUINN EMANUEL URQUHART & SULLIVAN, LLP**

[Declarations of David R. Spencer and Laurence M. Berman filed Concurrently]

[Assigned to Hon. Philip S. Gutierrez]

Date: May 9, 2011
Time: 1:30 p.m.
Courtroom: Rovbal. 880

weintraub genshlea chediak
a law corporation

1

# TABLE OF CONTENTS

2

I.   INTRODUCTION..................................................................................2

3

II.  FACTS AND PROCEDURAL HISTORY.............................................3

4

    A.   Mr. Spencer is Contacted by Akin Gump and Paedia Regarding His
        Publicly Available Research and is Told Mr. Clark, as Akin Gump's
        Expert, May Want to Retain His Laboratory to Conduct
        Testing.......................................................................................3

    B.   Mr. Spencer Prepares the Bid, Using His Own Testing Parameters and
        Methodology, Submits it to Paedia, After Which It is Not Accepted by
        Paedia or Akin Gump, And the Bid Expires on November 30, 2010,
        With Mr. Spencer Hearing Nothing Further From Paedia or Akin
        Gump.........................................................................................4

    C.   Mr. Spencer is Retained by HP, Becomes Concerned About A Potential
        Ethical Conflict, Contacts HP About It, Withdraws His Bid, and is
        Immediately Informed by Plaintiffs That No Ethical Conflict Exists
        Because Plaintiffs Do Not Intend To Use Mr. Spencer As an
        Expert.......................................................................................5

    D.   Quinn Emanuel Retains Mr. Spencer And Plaintiffs Move to Disqualify
        Mr. Spencer, Despite the Fact That No Confidential Relationship
        Existed Between Plaintiffs and Mr. Spencer and No Confidential
        Information Was Imparted to Mr. Spencer.......................................6

III. FEDERAL LAW, NOT STATE LAW, GOVERNS A MOTION TO
    DISQUALIFY AN EXPERT WITNESS IN FEDERAL COURT, AND THE
    FEDERAL COURTS HAVE ADOPTED A TWO-PART TEST TO
    DETERMINE WHETHER DISQUALIFICATION OF AN EXPERT IS
    NECESSARY.............................................................................8

IV. IT IS NOT OBJECTIVELY REASONABLE TO CONCLUDE THAT A
    CONFIDENTIAL RELATIONSHIP EXISTED BETWEEN PLAINTIFFS
    AND SPENCER, OR THAT CONFIDENTIAL INFORMATION WAS
    IMPARTED TO SPENCER, AND PUBLIC POLICY WEIGHS AGAINST
    SPENCER'S DISQUALIFICATION.............................................12

weintraub genshlea chediak
a law corporation

A.     No Confidential Relationship Existed Between Spencer and Plaintiffs.12

B.     No Confidential or Privileged Information was Disclosed to Spencer. .16

C.     Public Policy Considerations Also Weigh in Favor of Not Disqualifying Spencer. …………………………………………………………………19

V.     CONCLUSION…………...…………………..……………………………21

weintraub genshlea chediak
a law corporation

OPP. OF DAVID R. SPENCER TO PLAINTIFF'S MOTION TO DISQUALIFY

ii

# TABLE OF AUTHORITIES

**FEDERAL CASES.**

*Cord v. Smith*
    338 F.2d 516 (9th Cir. 1964)………………………………………………11

*Cordy v. Sherwin-Williams Co.*
    156 F.R.D. 575 (D.N.J. 1994)………………………..……………….9

*Crenshaw v. Mony Life Ins. Co.*
    318 F. Supp. 2d 1015 (S.D.Ca 2004) ………………………...…..9, 12, 13

*English Feedlot, Inc. v. Norden Labs., Inc.,*
    833 F. Supp. 1498 (D. Colo. 1993) …………………………………….9, 21

*Galam v. Carmel (In re Larry's Apt., L.L.C.*
    249 F.3d 832 (9th Cir. 2001) …………………………………………11

*Greene, Tweed of Delaware, Inc. v. DuPont Dow Elastomers, L.L.C.*
    202 F.R.D. 426 (E.D. Pa. 2001) …………………………………….9

*Hewlett-Packard Co. v. EMC Corp.*
    330 F. Supp. 2d 1087 (N.D.Ca. 2004)…………………….…..13, 16, 20

*In re Ambassador Group, Inc., Litig.*
    879 F. Supp. 237 (E.D.N.Y. 1994) ………………………………...19

*In re County of Los Angeles*
    223 F.3d 990 (9th Cir. 2000) ……………………………..………...10, 11

*In re Pacific Homes*
    1 B.R. 574 (Bankr. C.D. Cal. 1979) …………………………………11

*Koch Ref. Co. v. Jennifer L. Boudreaux M/V*
    85 F.3d 1171 (5th Cir. 1996) ……………………...………...9, 13, 16, 17, 20

*Lacroix v. BIC Corp.*
    339 F. Supp. 2d 196, 200 (D. Mass. 2004)……………………….13, 16

*Mayer v. Dell*
    139 F.R.D. 1 (D.D.C. 1991) ……………………………………..17, 19

*Mays v. Reassure Am. Life Ins. Co.*
    293 F. Supp. 2d 954 (E.D. Ark. 2003) ……………………..……9, 19

*Nikkal Indus., Ltd. v. Salton, Inc.*
    689 F. Supp. 187 (S.D. N.Y. 1988) ……………………...……12, 16, 19

*Owen v. Wangerin*
    985 F.2d 312 (7th Cir. 1993) …………………………………….....9

*O'Shea v. Epson Am., Inc.*
    2010 U.S. Dist. LEXIS 62809 (C.D. Cal. 2010)………………………..10

*Palmer v. Ozbek*
    144 F.R.D. 66 (D. Md. 1992) …………………………………….9

*Paul v. Rawlings Sporting Goods Co.*
    123 F.R.D. 271 (S.D. Ohio 1988)…………………………..……16, 20

*Paul E. Iacono Structural Engineer, Inc. v. Humphrey*
    722 F.2d 435 (9th Cir. 1983) …………………………………...11, 12

*Plumley v. Doug Mockett & Co.*
    2008 WL 5382269 (C.D. Cal. Dec. 22, 2008)………………………..11

*Pumphrey v. K.W. Thompson Tool Co.*
    62 F.3d 1128 (9th Cir. 1995) …………………………………….11

*Rodriguez v. Pataki*
    293 F. Supp. 2d 305 (S.D.N.Y. 2003) ……………………………....9

*Stencel v. Fairchild Corp.*
    174 F. Supp. 2d 1080 (C.D. Cal. 2001) …………………..9, 12, 13, 16, 21

*United States ex rel. Cherry Hill Convalescent Ctr., Inc. v. Healthcare Rehab. Sys., Inc.*
    994 F. Supp. 244, 249 (D. N.J. 1997) ……………………………..9, 10

*United States v. Salamanca*
   244 F. Supp. 2d 1023 (D.S.D. 2003) ……………………………………....9, 13

*Wang Labs., Inc. v. Toshiba Corp.*
   762 F. Supp. 1246 (E.D Va. 1991) ……………………………………....9, 18

**STATUTES.**

California Business and Professions Code section 6068(e) …………………………...18

California Business and Professions Code section 16600…………………………...21

Central District of California Local Rule 83-3.1.2………………………………….10

Federal Rule of Civil Procedure 201………………………………...…………………10

**OTHER AUTHORITIES.**

30 Moore's Federal Practice § 802.01 (3d ed. 2010) ……………………………….12

American Bar Association Model Code of Professional Responsibility, canon 4
   (1908)……………………………………………………………………….18

weintraub genshlea chediak
a law corporation

OPP. OF DAVID R. SPENCER TO PLAINTIFF'S MOTION TO DISQUALIFY

v

# I.    INTRODUCTION.

Plaintiffs' Motion to Disqualify David R. Spencer ("Plaintiffs' DQ Motion") is based on a lie: specifically, that Plaintiffs intended to retain David R. Spencer ("Spencer") as an expert in their case against Epson and had a confidential relationship with him. This is a lie because Plaintiffs cannot dispute that Spencer was told many times by the attorneys from Akin Gump Strauss Hauer & Feld, LLP ("Akin Gump"), as well as Plaintiffs' expert, L. Douglass Clark ("Clark") of Paedia Corporation ("Paedia"), that Spencer was not going to serve as an expert witness. Spencer's non-expert status was confirmed by David Nelson ("Nelson"), one of the Akin Gump attorneys representing Plaintiffs, in a voicemail he left for Spencer on December 7, 2010, after Spencer withdrew his testing bid, stating, "I seem to think that you felt a little uncomfortable with issues **if you had to be an expert witness or something to that extent. As I explained to Doug, that is not our intent.**" Declaration of David Spencer in Support of Opposition to Plaintiffs' DQ Motion ("Spencer Decl."), ¶ 12.[1]

Despite the fact that Spencer's testing for Plaintiffs would have been SpencerLab's most lucrative contract, Spencer withdrew his testing bid (after being retained by Hewlett-Packard ["HP"] in November of 2010 to conduct testing) because Spencer had a concern that his testing for Plaintiffs' could pose an ethical conflict with his work for HP. Spencer decided to withdraw his testing bid before speaking to anyone at Quinn Emanuel Urquhart & Sullivan ("Quinn Emanuel"), and his decision to withdraw his bid was unrelated.

After initially insisting that there was no conflict because Spencer was not even being *considered* as a potential expert, Plaintiffs are now attempting to

---

[1] An audio recording of Nelson's December 7, 2010, voicemail is contained on a compact disk which is attached to Spencer's Declaration, at Exhibit 3.

weintraub genshlea chediak
a law corporation

disqualify Spencer by taking the position that Spencer was an expert.  Not only did Plaintiffs never agree to Spencer's proposal, no confidential information was provided to Spencer, the information regarding testing Spencer discussed with Akin Gump and Paedia was publicly available on SpencerLab's website, in publications, and advertisements.  No one from Akin Gump or Paedia ever told Spencer that their conversations should be considered confidential and at no point did Spencer agree to keep the conversations confidential.  Further, no one from Akin Gump or Paedia ever disclosed any legal theories on any case or gave their impressions of the strengths or weaknesses of any case.  Plaintiffs will suffer no prejudice from Spencer serving as an expert for Defendants in this case.

Plaintiffs' DQ Motion is unrelated to whether Spencer was retained as an expert or was provided with confidential information.  Plaintiffs seek to unfairly gain a tactical advantage in this lawsuit.  Plaintiffs are submitting the fiction that Spencer was an expert witness to this Court, in total disregard of their own recorded statements and the harm Plaintiffs are inflicting on Spencer.  Plaintiffs conduct is intolerable and Plaintiffs' DQ Motion must be denied.

## II.  FACTS AND PROCEDURAL HISTORY.

### A.  Spencer is Contacted by Akin Gump and Paedia Regarding His Publicly Available Research and is Told Clark, as Akin Gump's Expert, May Want to Retain His Laboratory to Conduct Testing.

On or about February 11, 2010, Joanna H. Kim ("Kim") from Akin Gump, contacted Spencer, and asked Spencer about some research from 2005 and 2006, which was contained in reports on his website, in advertisements, and in publications. Spencer Decl. ¶ 4, and Exhibits 1 and 2 attached thereto.  In that conversation, Kim said nothing to Spencer about whether she was working on an active case, what was going on in any case she was working on, who she was representing, or that she was

weintraub genshlea chediak
a law corporation

1  involved in a class action lawsuit, nor did she tell Spencer that she wanted to retain
2  Spencer as an expert. *Id.*

3        Plaintiffs had previously retained Clark to act as an expert witness.  On March
4  8, 2010, when Spencer first spoke to Clark, Clark explicitly identified himself as an
5  expert witness and told Spencer his client was an "evaluator," and stated he was
6  interested in retaining a testing lab to essentially perform testing of the same type
7  Spencer had previously conducted and published reports on, but for a much larger
8  quantity using more current printers.  Spencer Decl. ¶ 5.  Clark told Spencer that
9  Clark needed to use an independent testing lab because he did not have the facilities
10 to conduct testing at the scale that would be required for this job, and so he was
11 looking at Spencer as a prospective *tester*.  *Id.*  Spencer followed up with Clark
12 several times over the next few months, but was always advised no further progress
13 had been made.  Spencer Decl. ¶¶ 5, 6.

    **B.**    **Spencer Prepares the Bid, Using His Own Testing Parameters and
Methodology, Submits it to Paedia, After Which It is Not Accepted
by Paedia or Akin Gump, And the Bid Expires on November 30,
2010, With Spencer Hearing Nothing Further From Paedia or Akin
Gump.**

18       After several months of inactivity, on October 12, 2010, Spencer participated
19 in a conference call with Clark and Nelson regarding a bid for testing.  Spencer Decl.
20 ¶ 7.  Clark identified himself as the expert and said he wanted to test the efficiency of
21 ink-jet printers that are being used intermittently.  *Id.*  It became clear as they
22 discussed the testing Paedia was interested in having SpencerLab perform, that while
23 the testing Clark wanted SpencerLab to conduct was, in most respects, identical to
24 the testing Spencer had previously published research on in 2005 and 2006, the scope
25 of the testing was larger.  *Id.*  Spencer then prepared the testing bid, using his own
26 parameters and testing protocols, and without consulting Nelson or Kim, since Clark

27

28

**weintraub** genshlea chediak
a law corporation

had told Spencer he could change the parameters as Spencer saw fit.  Spencer Decl. ¶ 8.

On or about October 27, 2010, SpencerLab submitted the testing bid which totaled $297,800, the largest bid for Spencer that year.  Spencer Decl. ¶ 9.  Spencer calculated the bid using the rate that he and his staff charge for testing, not expert witness services (Spencer's rates for working as an expert witness are higher than his testing rates).  *Id.*  Spencer marked the bid as confidential, as was his custom and practice (to prevent his bidding prices from being shown to competitors.)  Spencer Decl. ¶¶ 9, 17.  The quote in the bid was open until November 30, 2010.  Spencer Decl. ¶ 9.

Not only did Clark and the attorneys at Akin Gump not sign the bid, they also never agreed to the quote. *Id.* Once again, they never responded to Spencer in any way about the testing bid, until Spencer requested to withdraw it. *Id.*

### C.    Spencer is Retained by HP, Becomes Concerned About A Potential Ethical Conflict, Contacts HP About It, Withdraws His Bid, and is Immediately Informed by Plaintiffs That No Ethical Conflict Exists Because Plaintiffs Do Not Intend To Use Spencer As an Expert.

HP, a longtime client of SpencerLab, contacted Spencer in November of 2010 and asked Spencer to perform some testing.  Spencer Decl. ¶ 10.  Spencer became concerned that there could be a conflict due to work for HP.  *Id.* (Spencer became concerned about Plaintiffs' engaging him to conduct tests when HP was also engaging Spencer to test their printers, even though Plaintiffs' contract was for considerably more money. *Id.*)  In late November, out of *Spencer's concern* that there could be an ethical conflict, Spencer contacted HP's attorney, Samuel Liversidge of Gibson Dunn & Crutcher, and asked him whether he thought Spencer's performing the testing contemplated by his proposal to Clark would be a problem for HP.  Mr. Liversidge said that, though he could not tell Spencer what to do, he did

weintraub genshlea chediak
a law corporation

think it could be a problem.  *Id.*  It was then that Spencer decided the best course of action was for Spencer to withdraw the bid that SpencerLab had submitted to Clark. *Id.*  This was before Spencer ever met or spoke to or was contacted by anyone from Quinn Emanuel or Epson.  Spencer Decl. ¶ 22.

On December 3, 2010, Spencer called Clark and withdrew SpencerLab's testing bid.  Spencer Decl. ¶ 11.  Over the next few days, Spencer received several calls from Akin Gump attorneys asking him to reconsider and insisting that there was no ethical conflict *because Spencer was not being considered as an expert*.  Spencer Decl. ¶¶ 11, 12.   On December 7, 2010, Spencer received a phone message from Nelson, in which Nelson states: "Hey, this is David Nelson, Akin Gump.  I know that you talked to Doug Clark yesterday, and he indicated that you, uh, may still have an interest in going forward with the testing?  I just want to follow up and see what your thinking was at this point. I seem to think that you felt a little uncomfortable with issues **if you had to be an expert witness or something to that extent.  As I explained to Doug, that is not our intent.**  So, if you have a chance to give me a call my number is 310 728 3020.   Thank you." (emphasis added).  Spencer Decl. ¶ 12, and Exhibit 3 attached thereto.  Spencer maintained that he would not reconsider the withdrawal of the testing bid.  *Id.*

### D. Quinn Emanuel Retains Spencer And Plaintiffs Move to Disqualify Spencer, Despite the Fact That No Confidential Relationship Existed Between Plaintiffs and Spencer and No Confidential Information Was Imparted to Spencer.

Spencer was not contacted by anyone from Quinn Emanuel until December of 2010, by which time he had already decided to withdraw his bid.  Spencer Decl. ¶ 22. Spencer was asked if he had been retained by or received confidential information from Akin Gump or Paedia.  Spencer Decl. ¶¶ 24, 25.  Spencer told them that he had not received any confidential information and was never retained by Akin Gump.  *Id.*

weintraub genshlea chediak
a law corporation

1   Spencer explained that he had been asked to provide a bid for testing, was not being

2   considered as an expert, and that the bid did not require confidential information. *Id.*

3   Spencer also explained that he was not being considered to provide expert testimony,

4   but rather was only asked to provide a testing bid and that he had already withdrawn

5   it.  Spencer Decl. ¶ 25.

6          Between the time Spencer was first contacted by Akin Gump on February 11,

7   2010, and the time he withdrew his bid, neither the attorneys at Akin Gump nor Clark

8   ever disclosed to Spencer any legal theories or gave impressions of the strengths or

9   weaknesses of any case.  Spencer Decl. ¶¶ 4, 5, 7, 11, 19.  Spencer had no idea what

10  case the testing would relate to, whether there was an active case, who the parties

11  were, what the claims were, and Spencer had never even heard of Jeff Adams, Gisele

12  Rogers, or Christopher O'Shea, until after he withdrew SpencerLab's testing bid.

13  Spencer Decl. ¶¶ 4, 5, 7, 19.  At no time did anyone tell Spencer that the

14  conversations they had should be considered confidential and at no point did Spencer

15  agree to keep the conversations confidential.  Spencer Decl. ¶¶ 4, 5, 6, 7, 11, 12, 18.

16  In fact, the information Spencer discussed with them was publicly available both on

17  his website, in technical journals, and in advertisements.  Spencer Decl. ¶¶ 3, 4, 17,

18  18, and Exhibits 1 and 2 attached thereto.  No one ever asked Spencer to run a

19  conflict check.  Spencer Decl. ¶ 19.  Spencer was repeatedly and consistently

20  informed by everyone he spoke to at Akin Gump and Paedia that Clark was the

21  expert, and that Spencer's laboratory was being considered for the testing.  Spencer

22  Decl. ¶¶ 5, 7, 8, 9, 11, 12, 13, 14, 15.  Neither Clark nor anyone at Akin Gump ever

23  even asked Spencer what his expert witness rate was.  Spencer Decl. ¶ 9.  No one

24  provided Spencer with an expert retention agreement or proposal, even though it is

25  Spencer's custom and practice to send or receive a draft retention agreement when

26  being retained as an expert, nor was Spencer asked to prepare one, nor did Paedia or

27

28

OPP. OF DAVID R. SPENCER TO PLAINTIFFS' MOTION TO DISQUALIFY

weintraub genshlea chediak
a law corporation

1 Akin Gump propose entering into a retention agreement. Spencer Decl. ¶ 15. By

2 contrast, Spencer sent Quinn Emanuel a proposed expert retention agreement,

3 consistent with his custom and practice. *Id.*

4       Spencer also was never compensated by Paedia or Akin Gump, nor did he

5 discuss with them an hourly arrangement, which is how Spencer bills for expert

6 witness services. Spencer Decl. ¶ 16. Spencer was never asked by Paedia or Akin

7 Gump to perform a conflict check, despite the fact that it is Spencer's standard

8 practice to request client names and run a conflict check if he is being considered to

9 be retained as an expert. Spencer Decl. ¶ 19. Spencer never received any documents

10 from Paedia or Akin Gump, much less any documents that were designated or

11 otherwise communicated to me as confidential. Spencer Decl. ¶ 20. Spencer never

12 signed a confidentiality agreement with Paedia or Akin Gump, nor was Spencer

13 asked to do so (the testing work contemplated by the bid Spencer provided to Paedia

14 would not require the receipt of any confidential information). Spencer Decl. ¶ 21.

15       Further, with respect to the report Spencer filed in support of Epson's

16 opposition to the class certification motion, Spencer did not base any opinions on

17 information he received from Akin Gump or Paedia and he has not done so. Spencer

18 Decl. ¶ 26. Spencer has never been asked to disclose or discuss any confidential

19 information from Akin Gump or Paedia. *Id.* Quinn Emanuel attorneys did not ask

20 Spencer to withdraw a bid nor has Spencer suggested that he would withdraw a bid to

21 take on this representation. Spencer Decl. ¶ 27.

## III.    FEDERAL LAW GOVERNS A MOTION TO DISQUALIFY AN EXPERT WITNESS IN FEDERAL COURT, AND THE FEDERAL COURTS HAVE ADOPTED A TWO-PART TEST TO DETERMINE WHETHER DISQUALIFICATION OF AN EXPERT IS NECESSARY.

25       Federal courts have adopted a two-part inquiry to determine whether

26 disqualification of an expert is necessary: (1) was it objectively reasonable for the

1  party seeking disqualification to have concluded that a confidential relationship
2  existed with the expert; and (2) was confidential or privileged information actually
3  disclosed to the expert.  *Stencel v. Fairchild Corp.,* 174 F. Supp. 2d 1080, 1083 (C.D.
4  Cal. 2000); *Crenshaw v. Mony Life Ins. Co.,* 318 F. Supp. 2d 1015, 1026 (S.D. Cal.
5  2004); *Mays v. Reassure Am. Life Ins. Co.,* 293 F. Supp. 2d 954, 957 (E.D. Ark.
6  2003).  If only one of these two factors is present, disqualification is inappropriate.
7  *Greene, Tweed of Delaware, Inc. v. DuPont Dow Elastomers, L.L.C.,* 202 F.R.D.
8  426, 428 (E.D. Pa. 2001); *Wang Labs., Inc. v. Toshiba Corp.,* 762 F. Supp. 1246,
9  1248 (E.D Va. 1991) ("But disqualification is likely inappropriate if either inquiry
10 yields a negative result.").

11      Under federal law, disqualification is "a drastic measure which courts should
12 hesitate to impose except when absolutely necessary." *Owen v. Wangerin,* 985 F.2d
13 312, 317 (7th Cir. 1993); *United States v. Salamanca,* 244 F. Supp. 2d 1023, 1025
14 (D.S.D. 2003); *see also Palmer v. Ozbek,* 144 F.R.D. 66, 67 (D. Md. 1992) ("Courts
15 are generally reluctant to disqualify expert witnesses.").  The party moving for
16 disqualification bears the burden of proof with respect each of the two factors.  *Koch*
17 *Ref. Co. v. Jennifer L. Boudreaux M/V,* 85 F.3d 1178, 1181 (5th Cir. 1996);
18 *Rodriguez v. Pataki,* 293 F. Supp. 2d 305, 312 (S.D.N.Y. 2003) (requiring the
19 moving party to proffer evidence and stating that a conclusory assertion is
20 insufficient); *United States ex rel. Cherry Hill Convalescent Ctr., Inc. v. Healthcare*
21 *Rehab. Sys., Inc.,* 994 F. Supp. 244, 249 (D. N.J. 1997); *English Feedlot, Inc. v.*
22 *Norden Labs., Inc.,* 833 F. Supp. 1498, 1501-02 (D. Colo. 1993).  In analyzing the
23 disqualification issue, courts also balance competing policy objectives and concerns
24 for fundamental fairness.  *Koch, supra,* 85 F.3d at 1182; *Cordy v. Sherwin-Williams*
25 *Co.,* 156 F.R.D. 575, 580 (D.N.J. 1994).

26
27
28

weintraub genshlea chediak
a law corporation

1    Plaintiffs' DQ Motion incorrectly argues that state law governs the

2  disqualification of an expert witness in federal court.  Plaintiffs' Mot. To Disq., p. 10,

3  Section I(A).  No federal California case dealing with disqualification of an expert

4  has applied the law Plaintiffs urge this Court to follow.  Other California federal

5  courts addressing the issue have applied the two-part test set forth above; the

6  controlling federal cases in California on the issue of disqualifying experts *cite to*

7  *other federal cases*, not state cases.

8    Plaintiffs cite this Court's order denying Defendants' Motion to Disqualify

9  Plaintiffs' Counsel issued on June 4, 2010 (the "Order"), Local Rule 83-3.1.2

10  (relating to attorney discipline), a series of unpublished district court cases that

11  involve disqualification of counsel, and *In re County of Los Angeles,* 223 F.3d 990,

12  995 (9th Cir. 2000) ("*County of L.A.*").  None of these authorities control the issue of

13  disqualification of an expert witness.

14    The Order Plaintiffs cite related to Defendants' motion to disqualify Plaintiffs'

15  counsel, not the disqualification of an expert witness.  The Court's Order provides:

16    Motions to disqualify counsel are decided under state law. See In re
17    County of Los Angeles, 223 F.3d 990, 995 (9th Cir. 2000); see also L.R.
      83-3.1.2 (adopting California's standards of professional conduct).
18

19    *O'Shea v. Epson Am., Inc.,* 2010 U.S. Dist. LEXIS 62809 at *4 (C.D. Cal.

20  2010).[2]  Local Rule 83-3.1.2 relates to the basis for disciplinary action of attorneys

21  appearing in the Central District, not the disqualification of expert witnesses.  District

22  courts require attorneys appearing before them to comply with state law on

23  professional conduct because the states regulate the professional ethics of attorneys

24  

25  _____

26  [2]   Spencer requests this Court take judicial notice of the Court's Order, Document
      Number 156, entered June 4, 2010.  Fed. Rule Civ. Proc. 201.

27

28                                                                          Case No. CV 09-8063 PSG (CWx)

weintraub genshlea chediak
a law corporation

1   admitted to practice in each state.  Further, the unpublished district court cases cited

2   by Plaintiffs also all involve instances where the issue was disqualification of

3   counsel, not disqualification of an expert witness.[3]

4       The only published federal case Plaintiffs rely on for their argument that

5   federal courts apply state law to the issue of disqualification of expert witnesses also

6   dealt with disqualification of counsel for a prior representation, not *disqualification of*

7   *an expert witness*.  *County of L.A., supra,* 223 F.3d 990.  Plaintiffs' argument that

8   federal courts are bound by state guidelines on attorney misconduct is contrary to

9   *Cord v. Smith*, 338 F.2d 516, 524 (9th Cir. 1964), in which the court rejected the view

10  that state rules of professional conduct bind federal courts.  *Galam v. Carmel* (In re

11  Larry's Apt., L.L.C.), 249 F.3d 832, 838 (9th Cir. 2001), *Pumphrey v. K.W.*

12  *Thompson Tool Co.,* 62 F.3d 1128, 1131 (9th Cir. 1995); *In re Pacific Homes,* 1 B.R.

13  574, 581-582 (Bankr. C.D. Cal. 1979).[4]  This is why federal courts addressing

14  _____

15  [3]  Plaintiffs' Opp. To Spencer's Joinder, III(B), fn. 3.  Plaintiffs also mischaracterize
16  the Court's ruling in *Plumley v. Doug Mockett & Co.*, 2008 WL 5382269 (C.D. Cal.
    Dec. 22, 2008) as "applying California law to motion to disqualify expert witness."
17  In fact, in *Plumley v. Doug Mockett & Co.*, the "expert witness" was an attorney
18  whose partner had consulted with Plaintiff's former counsel on previous disputes
    between the same parties to the current case.  Because it was the attorney's
19  assumption of employment adverse to a former client that was the basis of the
20  disqualification motion (as opposed to his working as an expert witness), the Court
    applied state law regarding the alleged attorney misconduct, as many Courts do.
21

22  [4]  *County of L.A.* does not comport with nor does it relate to the body of law on
23  disqualification of an expert witness or counsel based on the improper disclosure of
    confidential information.  The only support for the Court's findings in *County of L.A.*
24  was *Paul E. Iacono Structural Engineer, Inc. v. Humphrey*, 722 F.2d 435, 439 (9th
25  Cir. 1983) ("*Humphrey*"), in which the Court upheld a local rule of a district court
    that required lawyers to comply with the state rules of professional conduct on the
26  ground that "district courts are free to regulate the conduct of lawyers appearing
27  before them."  Thus, *Humphrey* simply stands for the principle that district courts

28

weintraub genshlea chediak
a law corporation

1   disqualification of counsel issues often consider both federal and state cases, though

2   for different reasons: federal cases are consulted to determine when disqualification

3   is appropriate or justified, and state cases are often consulted as authority for whether

4   an attorney's conduct violates state rules of professional conduct. *See, e.g.*

5   *Crenshaw, supra,* 318 F. Supp. 2d at 1020 (The Court's Opinion in Section II.A.,

6   relating to the disqualification of counsel, relies on federal law for when a

7   disqualification is appropriate and state law to evaluate whether attorney's conduct

8   violates ethics rules). Even when the expert's testimony relates to both state and

9   federal claims, federal law controls whether the witness should be disqualified.

10  *Nikkal Industries, Ltd. v. Salton, Inc.,* 689 F. Supp. 187, 191 (S.D.N.Y. 1988).

**IV.   IT IS NOT OBJECTIVELY REASONABLE TO CONCLUDE THAT A CONFIDENTIAL RELATIONSHIP EXISTED BETWEEN PLAINTIFFS AND SPENCER, OR THAT CONFIDENTIAL INFORMATION WAS IMPARTED TO SPENCER, AND PUBLIC POLICY WEIGHS AGAINST SPENCER'S DISQUALIFICATION.**

**A.   No Confidential Relationship Existed Between Spencer and Plaintiffs.**

The first prong of the test for disqualification of an expert witness requires Plaintiffs to show that it was objectively reasonable for them to conclude that a confidential relationship existed with Spencer. *Crenshaw, supra,* 318 F. Supp. 2d at 1026. "Unlike attorney-client communications, discussions between parties or counsel and experts do not carry the presumption that confidential information was exchanged." *Stencel, supra,* 174 F. Supp. 2d at 1083. Expert witnesses stand in

---

have discretion to develop their own standards for the conduct of lawyers appearing before them and that it is not an abuse of discretion to include state rules as part of these standards. 30 Moore's Federal Practice § 802.01, at 802-6 (3d ed. 2010) (noting that "[m]ost district courts regulate attorney conduct by local rules").

*(left margin: weintraub genshlea chediak a law corporation)*

weintraub genshlea chediak
a law corporation

1  shoes different from those of counsel. "An expert does not advocate during litigation

2  but acts as a source of information and opinion." *Crenshaw, supra,* 318 F. Supp. 2d

3  at 1026, *quoting Salamanca*, *supra*, 244 F. Supp. at 1024.  This element has been

4  deemed satisfied where there was a "longstanding series of interactions, which have

5  more likely than not coalesced to create a basic understanding of [the retaining

6  party's] modus operandi, patterns of operations, decision-making process, and the

7  like." *Koch Refining, supra,* 85 F.3d at 1183 (finding a long-term relationship where

8  an intended trial expert was paid $8,000 and produced several reports).  Other factors

9  the Courts consider include: (1) whether the parties entered into a formal

10  confidentiality agreement; (2) whether the expert was retained to assist in the

11  litigation; (3) whether the expert was paid a fee; (4) whether documents were

12  provided to the expert; (5) whether work product was discussed with the expert; (6)

13  the number of meetings between the expert and the attorneys; (7) whether the expert

14  was asked to agree not to discuss the case with the opposing parties or counsel; and

15  (8) whether the expert derived any of his specific ideas from work done under the

16  direction of the retaining party. *Hewlett-Packard v. EMC Corp.,* 330 F. Supp. 2d

17  1087, 1093 (N.D. Cal. 2004); *Stencel, supra,* 174 F. Supp. 2d at 1083; *Lacroix v. BIC*

18  *Corp.,* 339 F. Supp. 2d 196, 200 (D. Mass. 2004).  Here, every single factor weighs

19  against Spencer's disqualification.

20       With respect to the first factor, it is undisputed that Plaintiffs never sent

21  Spencer a confidentiality agreement, Spencer never sent Plaintiffs a confidentiality

22  agreement (nor was he asked to), and the parties never signed a confidentiality

23  agreement.  Spencer Decl. ¶ 21.  With respect to the second factor, it is undisputed

24  that Spencer was never retained by Plaintiffs.  Spencer's bid was open until

25  November 30, 2010.  Spencer Decl. ¶ 9.  Plaintiffs never signed the bid, never agreed

26

27

28

to the quoted price contained in the bid, and never gave Spencer any feedback on the
bid until after he withdrew it.  *Id.*  With respect to the third factor, it is undisputed
that Plaintiffs never paid Spencer a fee as either an expert or a tester.  Spencer Decl. ¶
16.  With respect to the fourth factor, it is undisputed that Plaintiffs never gave any
documents to Spencer.  Spencer Decl. ¶ 20.  With respect to the fifth factor, no one at
Akin Gump or Paedia ever discussed the specifics of any legal case with Spencer.
Spencer Decl. ¶¶ 4, 5, 7, 11, 19.  Spencer was not advised whether the testing they
discussed was for an active case, what was going on in any case Akin Gump was
working on, who Akin Gump was representing, the strengths and weaknesses of any
case, or any legal theories or impressions of any case.  *Id.*  With respect to the sixth
factor, almost all of Spencer's interaction was with Clark, who he believed was the
expert in the case.  Spencer Decl., ¶ 5, 6, 7.  Spencer spoke to Kim on February 11,
2011, and then didn't speak to Kim again until many months later, by which time
Spencer had learned Akin Gump did not intend to retain him as an expert.  Spencer
Decl., ¶ 4.  Spencer first spoke to Nelson on October 12, 2010, about the bid for
testing.  Spencer Decl., ¶ 7.  After Spencer submitted the bid at the end of October, he
heard no feedback from any of the attorneys about his quote or the bid.  Spencer
Decl., ¶ 9.  The attorneys said nothing to Spencer about the bid until after Spencer
withdrew it.  *Id.*  With respect to the seventh factor, Spencer was never asked to agree
not to discuss the case with anyone.  Spencer Decl., ¶ 12.  In fact, not only did
Spencer not know anything about the substance of the case, or whether in fact there
was an active case, Spencer had never heard the names Jeff Adams, Gisele Rogers, or
Christopher O'Shea until after he withdrew his bid.  Spencer Decl., ¶¶ 4, 5, 7, 19.
With respect to the eighth factor, none of the testing parameters or protocols Spencer
included in SpencerLab's bid came from Kim, Nelson, or Clark.  Spencer Decl., ¶ 8.
Spencer did not even speak to Kim or Nelson in preparing the bid and Clark told

Spencer to set the parameters and use the methodology he thought appropriate, which makes sense given that the testing was substantively almost identical to testing Spencer had performed in 2005 and 2006. *Id.* Spencer made only minor technical changes to the methodology based upon updates in the technology, but neither Clark nor the Akin Gump attorneys provided input in that decision. *Id.*

There are numerous other factors which show the nonexistence of a confidential relationship: Spencer was never asked to run a conflict check, he was never asked what his rate was as an expert witness, the testing bid he submitted included his testing rate (not his expert witness rate), Spencer was never listed as an expert in Plaintiffs' discovery, and Spencer was told, repeatedly, by Kim, Nelson, and Clark, that he was not their expert, and they did not intend to retain him as an expert. Spencer Decl., ¶¶ 5, 7, 8, 9, 11, 12, 13, 14, 15, 19. It is clear that, not only have Plaintiffs failed to establish that it was objectively reasonable to conclude they had a confidential relationship with Spencer, but *they, themselves, did not believe that they had a confidential relationship with Spencer*. Though Nelson has sworn under oath to this Court that "[b]y the time of our last conversation, I understood that Spencer would serve as an expert for Plaintiffs," at the exact same time this conversation was occurring, Nelson left a voicemail message for Spencer on December 7, 2010 in which Nelson stated, "Hey, this is David Nelson, Akin Gump. I know that you talked to Doug Clark yesterday, and he indicated that you, uh, may still have an interest in going forward with the testing? I just want to follow up and see what your thinking was at this point. I seem to think that you felt a little uncomfortable with issues **if you had to be an expert witness or something to that extent. As I explained to Doug, that is not our intent.**" Spencer Decl., ¶ 12; Nelson Stay Decl., ¶ 7; Nelson DQ Decl., ¶ 7. Akin Gump never thought Spencer *was* their expert, never thought Spencer was *going to be* their expert, and never told

Spencer anything other than what Nelson told Spencer on the phone on December 7, 2010, i.e. that Akin Gump had no intention of retaining Spencer as an expert and *knew* that they had no confidential relationship with him.

### B. No Confidential or Privileged Information was Disclosed to Spencer.

Plaintiffs have also failed to show that confidential or privileged information was actually disclosed to Spencer. Even when a party seeking disqualification does satisfy the first part of the test, disqualification still is not proper when "there appears to be little or nothing in the way of confidential information to which [the expert] was exposed." *Lacroix, supra,* 339 F. Supp. 2d at 201 (Court ruled that where expert had worked with Defendant for years the Defendant had shown there was a confidential relationship but since Defendant failed to show that actual confidential information was imparted, disqualification was not warranted); *Stencel, supra,* 174 F. Supp. 2d at 1083. The confidential information must be of "particular significance" or information that can be "readily identified" as attorney work-product or within the scope of the attorney-client privilege. *Hewlett-Packard, supra,* 330 F. Supp. 2d at 1094, *quoting Paul v. Rawlings Sporting Goods Co.,* 123 F.R.D. 271, 279 (S.D. Ohio 1988). "Such information would include discussions of "legal strategies, the types of experts to be called, the attorney's views on the relative strengths or merits of a claim or defense, the role of other witnesses at trial or anticipated defenses." *Stencel, supra,* 174 F. Supp. 2d at 1083, *citing Koch Refining, supra,* 85 F.3d at 1183. However, "communication based upon technical information as opposed to legal advice is not considered privileged." *Hewlett-Packard, supra,* 330 F. Supp. 2d at 1094, *quoting Nikkal Indus., Ltd., supra,* 689 F. Supp. at 191-92. Similarly, publicly available information cannot be considered confidential. *Stencel, supra,* 174 F. Supp. 2d at 1084 (noting that pleadings cannot be confidential information because they are public record).

weintraub genshlea chediak
a law corporation

1    To evaluate whether confidential information was passed to the expert, courts

2  look for evidence that a party's meetings and communications with the expert were

3  considered confidential, such as a letter confirming that the meeting was confidential,

4  or the proffering or executing of a confidentiality agreement.  *Mayer v. Dell,* 139

5  F.R.D. 1, 3 (D.D.C. 1991).  Here, it is undisputed that Plaintiffs never sent Spencer a

6  confidentiality agreement, Spencer never sent Plaintiffs a confidentiality agreement

7  (nor was he asked to), and the parties never signed a confidentiality agreement.

8  Spencer Decl. ¶ 21.  Akin Gump sent Spencer no letters, emails or voicemails in

9  which they asked him to keep the information they had told him confidential.

10  Spencer Decl. ¶ 12.  Spencer was also never asked to run a conflict check.  Spencer

11  Decl. ¶ 19.  By contrast, the attorneys at Quinn Emanuel asked Spencer to run a

12  conflict check in their first conversation with him.  Spencer Decl. ¶ 23.  And at no

13  point did either Kim, Clark, or Nelson ever state to Spencer that their conversations

14  should be considered confidential and at no point did Spencer agree to keep the

15  conversations confidential.  Spencer Decl. ¶¶ 4, 5, 6, 7, 11, 12, 18.

16    In fact, the testing work contemplated by Spencer's bid did not require the

17  receipt of any confidential information.  Spencer Decl., ¶ 21.  The information that

18  Spencer disclosed to Plaintiffs was publicly available, both online, in retail stores, in

19  publications, and in advertising materials circulated by HP, and therefore could not

20  be considered confidential information.  Spencer Decl., ¶¶ 3, 4, 17, 18; *Koch*

21  *Refining, supra,* 85 F.3d at 1183 (Disqualification cannot be granted if the

22  information provided is "routinely discoverable.)  Further, the only subjects of

23  discussion between Spencer and Akin Gump and Paedia were Spencer's research and

24  the testing for which Spencer prepared the bid.  It is clear that the discussion of mere

25  technical information about a case does not meet a party's burden under this

26  framework.  *Id.* ("[P]urely technical information is not confidential").

27

28

OPP. OF DAVID R. SPENCER TO PLAINTIFFS' MOTION TO DISQUALIFY

weintraub genshlea chediak
a law corporation

1   If, as Plaintiffs urge, they considered Spencer to be their expert, then Plaintiffs'

2   decision to not ask Spencer to sign a confidentiality agreement is also peculiar in

3   light of the fact that it is incumbent upon all licensed attorneys to preserve client

4   confidences[5], and when confidential information is imparted to non-attorney

5   associates/employees, attorneys must "prevent his employees, associates, and others

6   whose services are utilized from disclosing or using confidences or secrets of a

7   client."[6]

8   Plaintiffs have argued that the fact Spencer's bid was marked as confidential

9   supports an inference that he received confidential information.  Plaintiffs DQ

10  Motion, p. 5:17-6:2.  However, it was Spencer, not Plaintiffs, who marked the bid as

11  confidential, to ensure that the information would not be provided to a competitor.

12  Spencer Decl., ¶¶ 9, 17.  The law provides that confidentiality stamps on documents

13  sent for review *to the expert* may be proof of the attorney's intention to form a

14  confidential relationship with the expert. *Wang Laboratories, supra,* 762 F. Supp. at

15  1248.  Here, the document in question was sent *from* Spencer, because it was his

16  intention to keep his proprietary bids confidential. Spencer Decl., ¶¶ 9, 17.  Plaintiffs

17  sent Spencer nothing marked confidential, nor did send him a confidentiality

18  agreement, nor did they ask him to sign a confidentiality agreement.  Spencer Decl.,

19  ¶¶ 20, 21.

20  Plaintiffs' DQ Motion is also defective because it does not sufficiently describe

21  the nature of the information which gives rise to this motion.  Plaintiffs must identify

22  "specific and unambiguous disclosures that if revealed would prejudice the party."

23

24  _____

25  [5] Cal. Bus. & Prof. Code 6068(e).

26  [6] Canon 4 of the American Bar Association Code of Professional Responsibilty,
27  Disciplinary Rule 4-101(D).

28

weintraub genshlea chediak
a law corporation

1   *Mays, supra,* 293 F. Supp. 2d at 957 (requiring more than "vague assertions"); *In re*

2   *Ambassador Group, Inc., Litig.,* 879 F. Supp. 237, 243 (E.D.N.Y. 1994)); *Nikkal*

3   *Indus., Ltd., supra,* 689 F. Supp. at 191 (The party requesting disqualification may

4   not meet its burden with "mere conclusory or ipse dixit assertions."). Here, the only

5   evidence Plaintiffs have offered are the affidavits of Plaintiffs' counsel, the reliability

6   of which Spencer has already questioned and, even accepted as true, are insufficient:

> Plaintiff relies solely upon counsel's affidavit in an effort to demonstrate
> that information privileged by reason of the attorney work-product
> privilege was disclosed to Mr. Little. However, the affidavit contains but
> one conclusory sentence concerning disclosures by counsel to Mr. Little.
> The undersigned cannot find that discussion of "plaintiff's strategy in the
> litigation, the kinds of experts [plaintiff] expected to retain, plaintiff's
> view of the strengths and weaknesses of each side, the role of each of the
> plaintiff's experts to be hired and anticipated defenses[,]" [], revealed
> privileged information.

14   *Mayer, supra,* 139 F.R.D. at 9. Similarly to Mayer and numerous other cases,

15   Plaintiffs have sought to disqualify Spencer on the basis of counsel's affidavits,

16   which assert that "Kim disclosed to Spencer her legal theories of the case, gave her

17   impressions of the strengths and weaknesses of the case, [redacted material]."

18   Plaintiffs' DQ Motion, p. 4:4-6. This is a conclusory allegation which cannot provide

19   the basis for Spencer's disqualification and everything that follows in Plaintiffs'

20   Disqualification Motion and the attached Declarations is similarly vague. It is not

21   enough to state that Kim "disclosed" "legal impressions" to Spencer. Plaintiffs must

22   actually state what specific information was imparted to Spencer and how it was

23   confidential or privileged.

24   **C.    Public Policy Considerations Also Weigh in Favor of Not**
25   **        Disqualifying Spencer.**

*(left margin, vertical text)* **weintraub** genshlea chediak a law corporation

1       In deciding whether disqualification is appropriate, many courts also consider

2   the public interest in allowing or not allowing an expert to testify. *Hewlett Packard,*

3   *supra,* 330 F. Supp. 1095*; Koch Refining, supra,* 85 F.3d at 1182. A court

4   considering such interests should balance the "competing policy objectives in

5   determining expert disqualification." *Id.* The three main policy objectives Koch

6   Refining identifies are: (1) insuring parties have access to expert witnesses who

7   possess specialized knowledge; (2) allowing experts to pursue their professional

8   calling; and (3) deterring unscrupulous attorneys/clients from attempting to create a

9   relationship with potentially harmful experts solely to keep them from the opposing

10  party. *Id.* Here, there is evidence that Plaintiffs DQ Motion is entirely strategic, and

11  is not motivated by a genuine concern that Spencer will share confidential

12  information with Defendants' counsel, as evidenced by the fact that Plaintiffs never

13  responded to Spencer's bid until he withdrew it. Spencer Decl., ¶ 9. Plaintiffs

14  suffered no prejudice because when Spencer withdrew, he recommended another

15  independent laboratory that could do the same testing work Plaintiffs wanted.

16  Plaintiffs gamesmanship is precisely the type of conduct which has been strongly

17  criticized by the Courts:

18        I also recognize that if experts are too easily the subject of motions to
19        disqualify, unscrupulous attorneys or clients will be encouraged to
      engage in a race for expert witnesses, and to identify potentially harmful
20        experts and to create some type of inexpensive relationship with those
      experts, simply in order to keep them away from the other side.
21

22  *Paul, supra,* 123 F.R.D. at 281-82. Despite the fact that Plaintiffs never retained

23  Spencer, never had Spencer perform a conflict check, never signed an expert

24  retention agreement with him, never told him that information they imparted should

25  be treated as confidential, never had Spencer sign a confidentiality agreement, never

26  sent any documents to Spencer, never paid any money to Spencer, and explicitly told

27

28                                             Case No. CV 09-8063 PSG (CWx)

OPP. OF DAVID R. SPENCER TO PLAINTIFFS' MOTION TO DISQUALIFY

20

**weintraub** genshlea chediak
a law corporation

Spencer multiple times that he was only being considered as a tester and not as an
expert, Plaintiffs are seeking Spencer's disqualification.  Spencer Decl., ¶¶ 4, 5, 6, 7,
8, 9, 11, 12, 13, 14, 15, 16, 18, 19.  This violates fundamental public policy
considerations which the Court must consider in making its decision:

> [T]here are additional policy considerations which favor allowing
> experts to pursue their trade and allowing parties to select their own
> experts. [] If experts are too easily disqualified, unscrupulous attorneys
> may attempt to create relationships with numerous potential experts at a
> nominal fee hoping to preempt the ability of their adversaries to obtain
> expert assistance.

*Stencel, supra,* 174 F. Supp. 2d at 1083, *citing Paul, supra,* 123 F.R.D. at 281-
82.  Another policy consideration that militates against disqualification is that of
allowing experts to pursue their professional calling.  *English Feedlot, Inc., supra,*
833 F. Supp. at 1505.  Plaintiffs' DQ Motion is meritless and by bringing it, Plaintiffs
are infringing on Spencer's right to work in his chosen profession. [7]

## V.   CONCLUSION.

For the foregoing reasons, Spencer respectfully requests this Court deny
Plaintiffs' DQ Motion in its entirety.

Dated:  April 18, 2011

By: _Lauce M/ Berman_

Laurence M. Berman of
**weintraub** genshlea chediak
Attorneys for David Spencer

---

[7] California has a strong public policy favoring mobility even when there *has been* a
working relationship; here there was none at all.  *See* California Business and
Professions Code section 16600.