QUINN EMANUEL URQUHART & SULLIVAN, LLP
  Shon Morgan (Bar No. 187736)
  shonmorgan@quinnemanuel.com
  Ryan S. Goldstein (Bar No. 208444)
  ryangoldstein@quinnemanuel.com
  Valerie Roddy (Bar No. 235163)
  valerieroddy@quinnemanuel.com
865 South Figueroa Street, 10th Floor
Los Angeles, California  90017-2543
Telephone:   (213) 443-3000
Facsimile:   (213) 443-3100

Attorneys for Defendants Seiko Epson Corporation, Epson America, Inc., and Epson Accessories, Inc.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHRISTOPHER O'SHEA, GISELE ROGERS and JEFF ADAMS, individuals, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>EPSON AMERICA. INC., a California corporation; EPSON ACCESSORIES, INC., a California corporation; SEIKO EPSON CORPORATION, a Japanese Corporation; and DOES 1-100, inclusive,<br><br>Defendants. | CASE NO. CV 09-8063 PSG (CWx)<br><br>**EPSON'S OBJECTION TO PLAINTIFFS' HEAVILY-REDACTED REPLY BRIEF AND IMPROPER SUPPLEMENTAL DECLARATIONS**<br><br>Judge:           Hon. Philip S. Gutierrez<br>Date:            May 9, 2011<br>Time:           1:30 p.m.<br>Courtroom:  880, Roybal<br><br>Filing Date:            Aug. 28, 2009<br>Discovery Cutoff:    Oct. 17, 2011<br>Pretrial Conference: Oct. 31, 2011<br>Trial Date:             Nov. 15, 2011 |

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................ 1

ARGUMENT ............................................................................................................. 4

I.    PLAINTIFFS' REDACTIONS MUST BE TAILORED AND SUBSTANTIATED TO PROTECT THE ADVERSARIAL PROCESS AND EPSON'S RIGHTS TO DUE PROCESS ................................................. 4

II.    PLAINTIFFS IMPROPERLY SUBMIT NEW EVIDENCE ON REPLY ............................................................................................................ 10

CONCLUSION ........................................................................................................ 11

# TABLE OF AUTHORITIES

**Page**

## Cases

*Corvello v. New England Gas Co.*,
  243 F.R.D. 28 (D.R.I. 2007) ................................................................................ 7

*In re Grand Jury Proceedings*,
  974 F.2d 1068 (9th Cir. 1992) ............................................................................. 7

*Nishika, Ltd. v. Fuji Photo Film Co.*,
  181 F.R.D. 465 (D. Nev. 1998) ........................................................................... 7

*Ojo v. Farmer's Group*,
  565 F.3d 1175 (9th Cir. 2009) ........................................................................... 10

## Treatises

P. Rice, *Attorney-Client Privilege in the United States*
  § 11:15 (2d ed. 2010) .......................................................................................... 7

W. Schwarzer et al., Fed. Civ. Proc. Before Trial § 12:107.1
  (Cal. & 9th Cir. ed. Supp. 2011) ....................................................................... 10

## Preliminary Statement

Plaintiffs' heavy-handed redactions to their reply and improper "supplemental" declarations hide their entire factual argument from Epson (as well as Epson's counsel and expert of choice who plaintiffs seek to disqualify).[1] As Magistrate Judge Woehrle has previously found in connection with another motion in this case, factually supported, targeted redactions are permissible; obliterating the entire factual basis for a brief is not. Take, for example, the former Akin Gump associate's voicemail—which Epson and Mr. Spencer provided to the Court in opposing disqualification—that completely contradicts plaintiffs' claim that they recruited Mr. Spencer as an "expert witness": Epson *believes* plaintiffs try to explain it away with some factual argument on reply, but has no idea *how* because plaintiffs have redacted the entire discussion.

Each redaction—extending in some case for more than a page—represents an *ex parte* communication to the Court that is tolerated only to protect a privilege interest. *In camera* review requires a prima facie showing that the material being shared in secret with the Court is, in fact, privileged. Yet plaintiffs make none, and do not even provide a privilege log, a particularly conspicuous omission since plaintiffs successfully lobbied for such a requirement when Epson lodged briefs and evidence *in camera* in support of an unrelated discovery motion. Plaintiffs' *in camera* lodging should be returned unreviewed or, at minimum, ordered reworked with only narrowly-tailored, substantiated and privilege-logged redactions.

Plaintiffs' supplemental declarations also proffer improper new evidence on reply, including (also heavily redacted) time sheets, internal emails and declaration testimony that plaintiffs were required to submit with their opening papers. This evidence is improper for this additional reason as well.

---

[1] Epson filed a *ex parte* application for an order requiring plaintiffs to share unredacted versions of their opening papers with Mr. Spencer, the expert witness plaintiffs seek to disqualify, on which no ruling has issued. *See* Epson Defendants' *Ex Parte* Application Objecting to Redacted Motion and Declarations and Request for Relief, Apr. 4, 2011 (Docket No. 432).

**Plaintiffs' Redactions on Reply**

<u>Plaintiffs' Reply Brief.</u>  Plaintiffs' twelve-page brief redacts virtually every reference to any factual support plaintiffs offer on reply, leaving Epson without so much as a hint of what plaintiffs are arguing to the Court, as the following examples illustrate:

- "Tellingly, Plaintiffs' internal documents [REDACTED]." Reply at 1 n.1 (citing three completely redacted exhibits to the Supplemental Kim Declaration).

- "[A]s Ms. Kim, Mr. Nelson, and Mr. Clark have all testified, Plaintiffs provided Mr. Spencer with confidential information [REDACTED]. Their testimony [REDACTED for a full 29 lines (over a full page), followed by citations to heavily redacted supplemental declarations]. Accordingly, this Court should find that Plaintiffs meet the *Koch* test because it was objectively reasonable for them to believe they had a confidential relationship with Mr. Spencer, and because Plaintiffs imparted confidential information to Mr. Spencer." *Id.* at 7:13-8:21.

- Arguing that *Shadow Traffic*—the case on which plaintiffs hang their hats for disqualification—is indistinguishable from the facts here for two reasons, plaintiffs then state: "Second, [REDACTED]." *Id.* at 5:15-17.

- "As Mr. Nelson explains in his concurrently filed declaration, [REDACTED for four lines]." *Id.* at 1:19-23.

As with other questionable redactions, such as plaintiffs' inconsistent redaction of the mere *title* of Mr. Spencer's printer testing bid, some redactions in plaintiffs' reply brief confirm plaintiffs' redactions are unprincipled and heavy-handed. For example, complaining that "the proverbial cat is out of the bag" regarding the amount of Mr. Spencer's printer testing bid and that the amount is a matter of public record, in the

same breath plaintiffs nevertheless redact this public fact from their brief.[2] Even if Mr. Spencer had not disclosed the amount in his declaration, plaintiffs fail to explain how the amount of a bid—which expired without ever being accepted by plaintiffs—could have been privileged in the first place.

<u>Plaintiffs' Supplemental Declarations.</u>  Plaintiffs submit three "supplemental" declarations with their reply, each providing new evidence, most of which is redacted. Ms. Kim's supplemental declaration includes three time sheets, a November 4, 2010 email from Ms. Kim to two other Akin Gump partners (a 25-line description of which is completely redacted), and four other emails between Ms. Kim and other plaintiffs' attorneys offered for the first time on reply.  All of these new exhibits are completely redacted, except for email headers which remain (in some–but not all—instances).[3]  Mr. Nelson's supplemental declaration is 70 lines long (including prefatory and concluding paragraphs), of which 46 lines are redacted.  It also includes new evidence—a November 3, 2010 email from Mr. Nelson to Ms. Kim—that is completely redacted.[4] Finally, Mr. Clark (plaintiffs' expert) also submitted a supplemental declaration that provides a full 20 lines of redacted testimony "specifically" describing topics Mr. Nelson supposedly discussed with Mr. Spencer that Mr. Clark did not identify in his opening declaration.  The declaration also purports to describe a conversation in which Mr. Nelson cleared conflicts with Mr. Spencer (something *no one* has testified to previously).[5]

---

[2]  Redacted Reply to Epson's Opposition to Plaintiffs' Motion to Disqualify David R. Spencer and the Law Firm of Quinn Emanuel Urquhart & Sullivan, LLP. Apr. 25, 2011 (Docket No. 458) at 6 n.4 and 10:13 (on belief based on redaction and context).

[3]  Redacted Supplemental Declaration of Joanna Kim in Support of Plaintiffs' Motion to Disqualify David R. Spencer and the Law Firm of Quinn Emanuel Urquhart & Sullivan, LLP, Apr. 25, 2011 (Docket No. 458).

[4]  Redacted Supplemental Declaration of David Nelson in Support of Plaintiffs' Motion to Disqualify David R. Spencer and the Law Firm of Quinn Emanuel Urquhart & Sullivan, LLP, Apr. 25, 2011 (Docket No. 458-10).

[5]  Redacted Supplemental Declaration o fL. Douglas Clark, Ph.D in Support of Plaintiffs' Motion to Disqualify David R. Spencer and the Law Firm of Quinn Emanuel Urquhart & Sullivan, LLP, Apr. 25, 2011 (Docket No. 458-12).

<u>Plaintiffs' Sealing Papers.</u>  Plaintiffs contend that the "supplemental" declarations in support of their reply "contain detailed privileged and work product communications."[6]  The application is supported only by the cursory declaration of Ms. Petmecky, an attorney who, by all outward appearances, did not become involved in this case until after Mr. Nelson left Akin Gump (and *after* all of the communications at issue).[7]  Other than identifying herself as an attorney for plaintiffs and attesting to her personal knowledge, Ms. Petmecky declares only that she has reviewed plaintiffs' unredacted reply and supplemental declarations and:

> 3.   Based on my review of the unredacted *ex parte* application and unredacted supporting declarations these documents contain Plaintiffs' attorney-client privileged, attorney work product, and otherwise privileged information.[8]

Ms. Petmecky submitted essentially identical declarations in support of plaintiffs' *ex parte* application for a stay and plaintiffs' moving papers on this motion.[9]

## Argument

### I.   PLAINTIFFS' REDACTIONS MUST BE TAILORED AND SUBSTANTIATED TO PROTECT THE ADVERSARIAL PROCESS AND EPSON'S RIGHTS TO DUE PROCESS

Plaintiffs' redactions leave their reply brief bereft of any factual argument.  How can Epson evaluate or respond to such papers?  It cannot—which is why, when plaintiffs claimed that Epson's redactions of literal quotes from privileged

---

[6]  Plaintiffs' Application to Lodge Plaintiffs' Unredacted (1) Reply to Epson's Opposition to Plaintiffs' Motion to Disqualify; and (2) Declarations of Joanna H. Kim, David Nelson, and L. Douglas Clark for *In Camera/Ex Parte Review*; Declaration of Kalia Petmecky in Support Thereof, filed Apr. 25 (Docket No. 463) at 1:21-23.

[7]  For example, the first declaration Ms. Petmecky submitted in this case was filed on March 23, 2011 in support of plaintiffs' *ex parte* application to stay.

[8]  *Id.* at ¶ 3 (4:15-17).

[9]  *See, e.g.*, Plaintiffs' Application to Lodge Unredacted *Ex Parte* Application and Declarations of Joanna H. Kim, David Nelson, and Douglas Clark for *In Camera/Ex Parte* Review; Declaration of Kalia Petmecky in Support Thereof, Mar. 23, 2011 (Docket No. 397).

communications were too extensive[10]—Magistrate Judge Woehrle declined to review those papers *in camera* and allowed Epson to rework its brief to minimize the need for redaction. Specifically, Judge Woehrle was concerned with the redactions in Epson's *brief* (more than the exhibits or testimony in the supporting declarations) because they could compromise plaintiffs' ability to respond.[11] Magistrate Judge Woehrle also recognized that depriving the responding party of any information—and certainly the entire gist of an argument made to the Court *ex parte*—was "troubling" in itself:

> It's the wholly ex parte aspect of it that troubles me – that to the extent possible that the redactions be minimized because those are – those are going to be troubling in any event.[12]

Plaintiffs, however, made *no* efforts to minimize the redactions in their reply brief. Ironically, plaintiffs have vociferously condemned their own conduct: Even after Epson reworked its 22-page memorandum to Magistrate Judge Woehrle's satisfaction to include only thirteen short, targeted redactions, plaintiffs still complained that "[t]he intent and effect [of the 13 redacted statements] was to obstruct an effective adversarial process."[13] By plaintiffs' standard, the "obstructionist intent" behind a brief completely redacting *all* factual argument on an issue as fact-dependent and serious as expert and attorney disqualification must be off the charts.

Leaving Epson (and Mr. Spencer) completely in the dark as it does, plaintiffs' *ex parte* reply deprives Epson of due process, as plaintiffs themselves noted in an argument that is particularly apt here:

---

[10] Although Epson's original brief appeared heavily redacted, it quoted significant portions of privileged emails, unlike plaintiffs' reply, which appears to redact *all* of plaintiffs' factual argument.

[11] Discovery Conference Tr., Sept. 3, 2010 (Docket No. 228) 7:14-16 ("I'm just really concerned about all of the – as much of the argument as is redacted there not being shared.").

[12] Discovery Conference Tr., Sept. 3, 2010 (Docket No. 228) 15:3-7.

[13] Plaintiffs' Status Report for Discovery Conference, Oct. 20, 2010 (Docket No. 279) at 1:10-11.

> The practical effect of granting Defendants' Application *would be to prevent Plaintiffs from effectively responding to Defendants' factual and legal arguments, the substance of which is largely concealed from Plaintiffs by extensive redaction.* This is a blatant misuse of the attorney-client privilege, which was intended to shield confidential communications, as a sword to circumvent the adversary process and Plaintiffs' due process rights.[14]

Even after Epson reworked its brief to contain only 13 targeted redactions, plaintiffs still complained:

> In essence Defendants ask the Court to sanction their attempt to largely avoid an essential part of the adversarial process—the contest of potentially invalid and misleading evidence—by withholding from Plaintiffs a substantial portion of the unredacted declarations and virtually all of the supporting evidence attached thereto.[15]

Although they lacked in merit at the time they were made, plaintiffs' arguments accurately describe their own reply papers: "factual . . . arguments, the substance of which is largely concealed . . . by extensive redaction," an "attempt to largely avoid . . . the contest of potentially invalid and misleading evidence," and "withholding . . . a substantial portion of the unredacted declarations and virtually all of the supporting evidence attached thereto." Plaintiffs offer no explanation why they deserved *more* due process on Epson's motion to establish the privileged nature of a stolen document than Epson deserves when plaintiffs now attempt to disqualify its expert and counsel of choice.

    Not only have plaintiffs failed to tailor their redactions at all, they have also failed to provide any foundation to support them. Each broad-brush redaction in plaintiffs' reply papers is an *ex parte* submission to the Court that is proper only to the extent that it discloses otherwise privileged information. Thus, plaintiffs—as

---

[14] Opposition to Defendants' Application to Lodge the Unredacted Motion and Declarations for *In Camera/Ex Parte* Review, Sept. 1, 2010 (Docket No. 213) at 1:20-2:3.

[15] Plaintiffs' Opposition to Defendants' Application to Lodge the Unredacted Motion and Declarations for *In Camera/Ex Parte* Review, Sept. 28, 2010 (Docket No. 246) at 1:7-11.

proponents of the privilege—bore the responsibility of making a prima facie showing that some privilege applies. *See, e.g.*, *Nishika, Ltd. v. Fuji Photo Film Co.*, 181 F.R.D. 465, 467 (D. Nev. 1998) ("[T]he court should not conduct [an *in camera*] review solely because a party begs it to do so. There must first be a sufficient evidentiary showing which creates a legitimate issue as to the application of the privilege asserted.") (citations omitted); *Corvello v. New England Gas Co.*, 243 F.R.D. 28, 34 (D.R.I. 2007) (*in camera* inspection not appropriate until prima facie evidence of the validity of privilege assertion has been presented); P. Rice, *Attorney-Client Privilege in the United States* § 11:15 (2d ed. 2010) ("In camera inspection is not a substitute for the proponent providing affidavits and other supporting materials to substantiate the privilege claim."). Here, plaintiffs are not only asserting a privilege with respect to individual emails or time sheets, but also—and more critically— to the communications they had with Mr. Spencer. Epson is entitled to sufficient factual detail to test those assertions.

"[T]he universally accepted means of claiming that [documents or information is] privileged is the production of a privilege log." *Corvello*, 243 F.R.D. at 33; *In re Grand Jury Proceedings*, 974 F.2d 1068, 1071 (9th Cir. 1992) (approving use of privilege log to make prima facie showing of privilege). Thus, at plaintiffs' urging, Magistrate Judge Woehrle correctly required Epson to submit a privilege log describing each of the redactions it made from its briefing on whether the attorney-client privilege or work product immunity applied to a particular document. Epson provided such logs, detailing each redaction from both its opening and its reply briefs on that motion and for the supporting declarations. As Magistrate Judge Woehrle explained:

> I accept and understand the proposition that to the extent you need to refer to privileged communications to provide the context for the claim that the document under consideration is privileged, that it makes sense that the privileged communications themselves that you're relying on could be submitted on an *ex parte* basis and the –

> *as long as there's enough identifying information about what those documents are to support a prima facie privilege showing.*[16]

Therefore, Magistrate Judge Woehle required a privilege log for all redacted exhibits and, most importantly and as noted above, all redactions in Epson's briefs.[17]

Plaintiffs' counsel apparently assumes that—because they are attorneys—their every internal email and every statement uttered to Mr. Spencer is facially privileged.[18] Of course, they are wrong; that is why a reasonably detailed privilege log is required to establish that some privilege applies, as plaintiffs themselves have argued in claiming that "nothing more . . . than a conclusory statement that the document was 'for attorney review regarding legal advice . . . .'" was insufficient to establish the privileged nature of documents in a privilege log addressing 4,192 documents.[19] Where, as here, plaintiffs seek to disqualify an expert and counsel, they should provide at *least* the level of detailed prima facie evidence they demanded for every one of the thousands of privileged documents swept up by their burdensome document requests. With respect to Epson's submission of privileged communications for *in camera* review, for example, plaintiffs demanded "[a]t the very least" for every redacted communication, whether oral or written, "the identity of the participants, the date of the communication, and a general subject matter."[20] Yet plaintiffs provide no such detail here.

The *only* showing plaintiffs have offered—other than their "trust us, we're lawyers" approach to redactions—is Ms. Petmecky's summary declaration that she

---

[16] Discovery Conference Tr., Sept. 3, 2010 (Docket No. 228) 5:10-18 (emphasis added).

[17] Discovery Conference Tr., Sept. 3, 2010 (Docket No. 228) 10:21-12:18.

[18] *But see* Plaintiffs' Opposition to Defendants' Application to Lodge the Unredacted Motion and Declarations for *In Camera/Ex Parte* Review, Sept. 28, 2010 (Docket No. 246) at 5:2 ("Simply saying 'legal' over and over again, however does not make it so.").

[19] Plaintiffs' Status Report for Discovery Conference, Feb. 11, 2011 (Docket No. 340) at 2:21-3:18.

[20] Plaintiffs' Opposition to Defendants' Application to Lodge the Unredacted Motion and Declarations for *In Camera/Ex Parte* Review, Sept. 28, 2010 (Docket No. 246) at 4:7, 17-20.

reviewed the unredacted materials and they contain "Plaintiffs' attorney-client privileged, attorney work product, and otherwise privileged information." Importantly, this statement on its face appears false; there is no indication anywhere in the redacted filings that *attorney-client privileged* information has anything to do with plaintiffs' motion; indeed, plaintiffs' letters demanding Mr. Spencer's deposition, and subsequently his and Quinn Emanuel's withdrawal, aver *only* to purported communications of "highly confidential attorney work product" to Mr. Spencer. Moreover, as a consumer class action with figurehead plaintiffs who admit they were recruited for this lawsuit, it is hard to imagine what attorney-client privileged communications could possibly be relevant to counsel's discussions with Mr. Spencer about testing projects. In any event, plaintiffs themselves have rejected declarations of counsel as any substitute for a privilege log:

> Based on no more than Defendants' current outside counsel's self-serving conclusory declaration that Defendants' Motion and its supporting evidence contain unspecified 'attorney-client privileged, attorney work product, confidential, proprietary and trade secret information," Defendants ask the Court for a wholesale Order authorizing them to submit *ex parte* for *in camera* review (1) the exhibits attached to the six fact witness declarations, (2) substantial portions of the legal memorandum, and (3) substantial portions of the six fact witness declarations.
>
> . . .
>
> Moreover, as Defendants' current outside counsel, *who did not participate in any of the communications at issue*, Ms. Roddy would be incompetent to declare that any of the information Defendants seek to submit *ex parte* for *in camera* review meets the factual requirements to qualify for attorney-client privilege and/or work product protection.[21]

Plaintiffs do not explain why the declaration of Ms. Petmecky, an attorney who was not involved in any of the relevant events, should suffice to establish a prima facie case of

---

[21] Opposition to Defendants' Application to Lodge the Unredacted Motion and Declarations for *In Camera/Ex Parte* Review, Sept. 1, 2010 (Docket No. 213) at 1:6-12, 2:23-27 (emphasis added).

privilege when plaintiffs have argued precisely to the contrary before. Plaintiffs' (hypocritical) failure to provide so much as a privilege log or other prima facie evidence that the vast portions of plaintiffs' reply and supporting declarations that have been redacted are, in fact, privileged is sufficient reason alone not to review plaintiffs' unredacted materials; at the very least, however, plaintiffs should be required to provide a brief with only targeted redactions and the detailed privilege log they have previously demanded of Epson.[22]

## II. PLAINTIFFS IMPROPERLY SUBMIT NEW EVIDENCE ON REPLY

Although Epson does not get to see it, plaintiffs for the first time on reply submit new evidence, including time cards and internal emails, additional details of conversations with Mr. Spencer suddenly remembered by Mr. Clark, and testimony about a "conflict check" never mentioned before, in a blatant attempt to address the evidentiary deficiencies in their moving papers that Epson highlighted in its opposition. All of this evidence was reasonably foreseeable and is not properly submitted for the first time on reply. *See, e.g.*, *Ojo v. Farmer's Group*, 565 F.3d 1175, 1186 n.13 (9th Cir. 2009) ("[I]t is generally 'improper for the moving party to ... introduce new facts or different legal arguments in the reply brief [beyond] ... [those that were] presented in the moving papers.'") (citations omitted); *cf.* W. Schwarzer et al., Fed. Civ. Proc. Before Trial § 12:107.1 (Cal. & 9th Cir. ed. Supp. 2011) (contrasting propriety of introducing new facts on reply if "reasonably . . . unforeseen at the time of the opening brief"). This evidence—specifically including at least Exhibits A-G of the Supplemental Kim Declaration (time sheets and emails with co-counsel), Exhibit A to the Supplemental Nelson Declaration (internal email), Exhibit A (email with Mr. Spencer) and lines 2:7-3:4 ("specifics" of conversations with Mr. Spencer including a

---

[22] *See, e.g.*, Opposition to Defendants' Application to Lodge the Unredacted Motion and Declarations for *In Camera/Ex Parte* Review, Sept. 1, 2010 (Docket No. 213) at 4:21-23 ("For the adversarial process to work, Defendants must justify their privilege claim to both the Court and Plaintiffs, so that Plaintiffs may challenge the basis for Defendants' claim.").

newly-remembered conflict check) of the Supplemental Clark Declaration—is improper on reply and should be disregarded.[23]

Finally, and on a related note, plaintiffs take a number of parting shots at a reputable expert's credibility on reply in hopes it will preclude a response. Should the Court having remaining questions about witness credibility, Epson respectfully suggests that the Court schedule an evidentiary hearing at which it can question Mr. Nelson, Mr. Clark, the Akin Gump attorneys and/or Mr. Spencer.

### Conclusion

For all of the above reasons, Epson respectfully request that the Court decline to consider plaintiffs' *in camera* reply papers, or alternatively order them to provide a detailed privilege log for any and all redactions and provide Epson with a brief with only narrowly tailored redactions, and in any event decline to consider any evidence improperly submitted for the first time on reply, including Exhibits A-G of the Supplemental Kim Declaration, Exhibit A to the Supplemental Nelson Declaration, and Exhibit A and lines 2:7-3:4 of the Supplemental Clark Declaration.

DATED: April 28, 2011         Respectfully submitted,

                                            QUINN EMANUEL URQUHART & SULLIVAN, LLP

                                            By /s/ Shon Morgan
                                               Shon Morgan
                                               Attorneys for Defendants Seiko Epson Corporation, Epson America, Inc., and Epson Accessories, Inc.

---

[23] There may be additional improper reply evidence that Epson cannot identify because of plaintiffs' extensive redactions.