QUINN EMANUEL URQUHART & SULLIVAN, LLP
  Shon Morgan (Bar No. 187736)
  shonmorgan@quinnemanuel.com
  Ryan S. Goldstein (Bar No. 208444)
  ryangoldstein@quinnemanuel.com
  Valerie Roddy (Bar No. 235163)
  valerieroddy@quinnemanuel.com
865 South Figueroa Street, 10th Floor
Los Angeles, California  90017-2543
Telephone:   (213) 443-3000
Facsimile:   (213) 443-3100

Attorneys for Defendants Epson America, Inc., and Epson Accessories, Inc.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHRISTOPHER O'SHEA, GISELE ROGERS and JEFF ADAMS, individuals, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>EPSON AMERICA. INC., a California corporation; EPSON ACCESSORIES, INC., a California corporation; SEIKO EPSON CORPORATION, a Japanese Corporation, and DOES 1-100, inclusive,<br><br>Defendants. | CASE NO. CV 09-8063 PSG (CWx)<br><br>**EPSON DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**<br><br>Judge:     Hon. Philip S. Gutierrez<br>Date:      July 7, 2011<br>Time:      1:30 p.m.<br>Courtroom: 880, Roybal<br><br>Filing Date:        Aug. 28, 2009<br>Discovery Cutoff:   Oct. 17, 2011<br>Pretrial Conference: Oct. 31, 2011<br>Trial Date:         Nov. 15, 2011 |

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................ 1

I. EPSON OWED NO DUTY TO ANTICIPATE AND ADDRESS PLAINTIFFS' UNINFORMED, SUBJECTIVE EXPECTATIONS .............. 2

II. *THESE* PLAINTIFFS CANNOT ESTABLISH CAUSATION ....................... 6

III. THERE IS NO DISPUTE OF FACT THAT THE SUBCLASS "MISREPRESENTATION" WAS IMMATERIAL TO MS. ROGERS ........ 10

IV. PLAINTIFFS CONCEDE THE CLASS PERIOD SHOULD BE LIMITED ............................................................................................................. 11

CONCLUSION ........................................................................................................ 12

**TABLE OF AUTHORITIES**

Page

**Cases**

*In re Apple & AT & TM Antitrust Litigation*,
  596 F. Supp. 2d 1288 (N.D. Cal. 2008)...................................................................... 3

*Appliance Recycling Ctrs. of Am., Inc. v. JACO Env'l, Inc.*,
  378 Fed. Appx. 652, 2010 WL 1767313 (9th Cir. May 4, 2010) ........................ 10

*Baba v. Hewlett-Packard Co.*,
  2010 WL 2486353 (N.D. Cal. June 16, 2010) ......................................................... 3

*CG Roxane LLC v. Fiji Water Co. LLC*,
  569 F. Supp. 2d 1019 (N.D. Cal. 2008)................................................................... 10

*Chamberlan v. Ford Motor Co.*,
  369 F. Supp. 2d 1138 (N.D. Cal. 2005).................................................................3, 6

*Falk v. Gen. Motors Corp.*,
  496 F. Supp. 2d 1088 (N.D. Cal. 2000)..................................................................3, 5

*Grisham v. Philip Morris, Inc.*,
  670 F. Supp. 2d 1014 (C.D. Cal. 2009)..................................................................... 3

*Gutierrez v. Wells Fargo,*,
  2009 WL 1246689 (N.D. Cal. May 5, 2009) ........................................................... 9

*Kowalsky v. Hewlett-Packard Co.*,
  2010 WL 5141869 (N.D. Cal. Dec. 13, 2010), *vacated in part on
  reconsideration*, 2011 WL 1466136 (N.D.Cal. Apr 15, 2011) ..........................6, 7

*Laster v. T-Mobile USA, Inc.*,
  2009 WL 4842801 (S.D. Cal. 2009).......................................................................... 9

*LiMandri v. Judkins*,
  52 Cal. App. 4th 326 (4th Dist. 1997) ...................................................................... 5

*Marolda v. Symantec Corp.*,
  672 F. Supp. 2d 992 (N.D. Cal. 2009)...................................................................... 9

*Medimatch, Inc. v. Lucent Technologies, Inc*,
  120 F. Supp. 2d 842 (N.D. Cal. 2000)...................................................................... 5

*Shin v. BMW of North America*,
  2009 WL 2163509 (C.D. Cal. July 16, 2009) .......................................................... 8

*Starbucks Corp. v. Superior Court*,
  168 Cal. App. 4th 1436 (4th Dist. 2008) ........................................................... 1, 7, 8

*Williams v. Gerber Prods. Co.*,
  552 F.3d 934 (9th Cir. 2008) ..................................................................................... 8

**Preliminary Statement**

Even California's liberal consumer laws don't allow lawsuits over simple dissatisfaction with a product. Plaintiffs acknowledge as much by their ever-shifting but consistently vain attempts to articulate just what Epson purportedly did wrong. First they said this case was about supposed affirmative misrepresentations. They abandoned that theory because Epson's disclosures were entirely accurate and the named plaintiffs admittedly never relied on them. Next, in an effort to secure class certification, plaintiffs claimed Epson failed to disclose purported poor performance relative to competitors. That theory was also jettisoned when the expert that plaintiffs cited embarrassingly identified myriad ways plaintiffs had mischaracterized his test results. Down to their last card, plaintiffs now press the most vacuous and unsupportable theory of them all: that Epson failed to disclose that all its inkjet printers "do not operate efficiently."

Although plaintiffs misrepresent (to be kind) the facts (such as claiming that Epson has yet to produce *any* documents)[1] and the legal authorities they cite (such as *Starbucks*, defended by plaintiffs' counsel, that *supports* Epson's motion), there are no material disputes of fact at issue in this motion, just the impropriety of an absurd theory.

The dispositive issue in this case is that no statute or principle of law imposes a duty to anticipate and disclose the type of information over which plaintiffs now

---

[1] Plaintiffs' allegation that "[d]efendants have refused to produce anything in response to Plaintiffs' document requests or to produce anyone for Plaintiffs' Rule 30(b)(6) deposition notice" is unquestionably false, Opp. 12 n.3, since Epson has produced more than 330,000 pages and 26,500 documents in this case and made a 30(b)(6) deponent available twice. (Declaration of Valerie Roddy, filed concurrently herewith ("Roddy Reply Decl.") ¶ 3 & Exs. 4 & 5. Indeed, the Akin Gump firm recently bragged that "it fought for and obtained *substantial* discovery from [D]efendants" in support of plaintiffs' motion for class certification. Declaration of Joanna Kim, filed Feb. 7, 2011 (Dkt No. 422) ¶ 3 (emphasis added).

sue.  Such a duty would be particularly absurd where, as here, the manufacturer provides consumers with both detailed information about the attribute (its products' performance) according to an internationally-recognized objective performance standard, information about how and why that performance may vary, and court-approved disclosures to educate consumer expectations.

To allow these claims to proceed would sanction frivolous suits of all stripes, based on "injuries" to the effect that "the red ink wasn't as red as I thought it would be," or "my printer was louder than I expected" or "I feel like it used more electricity than my old printer."  Enough is enough.  These three plaintiffs indisputably did not care enough about ink yields to consider Epson's admittedly accurate disclosures—which included discussion of the effect of non-continuous use—and cannot pursue claims based only on their subjective expectations untethered to anything Epson said.

### I. EPSON OWED NO DUTY TO ANTICIPATE AND ADDRESS PLAINTIFFS' UNINFORMED, SUBJECTIVE EXPECTATIONS

With the sole exception of Ms. Rogers' claim that "replace only the cartridge you need" was deceptive, plaintiffs no longer claim that Epson made *any* affirmative misrepresentations.  Rather, they claim that Epson had "a duty to disclose that their printers do not operate efficiently under non-continuous printing conditions."  Opp. at 13:3-5.  Plaintiffs' theory would make liability for misrepresentation by omission limitless and entirely subjective.  Not surprisingly, no such duty exists.

This is not a case, as plaintiffs contend, *see* Opp. at 11:1-3, 20-12:2, where Epson had exclusive knowledge of or concealed the supposed product attribute. Rather, not only did Epson disclose its print yields pursuant to an internationally recognized standard for anyone who cared to view them, it also disclosed that performance would differ based on printing conditions which, although plaintiffs

use more sensationalistic terms, is exactly what plaintiffs allege Epson should have disclosed.[2]  In contrast, *all* of the cases cited by plaintiffs in support of an alleged duty to disclose concern product defects that were either concealed from or unknowable by consumers.  *Cf. Grisham v. Philip Morris, Inc.*, 670 F. Supp. 2d 1014, 1039-41 (C.D. Cal. 2009) (chemical additives in manufacture of cigarettes causing disease); *Falk v. Gen. Motors Corp.*, 496 F. Supp. 2d 1088, 1092, 1097(N.D. Cal. 2000) (manufacturer allegedly concealed systemically defective speedometers that failed prematurely); *Chamberlan v. Ford Motor Co.*, 369 F. Supp. 2d 1138 (N.D. Cal. 2005) (prematurely failing defective engine manifolds).[3]  These cases are particularly unavailing since, as noted above, plaintiffs have disclaimed any "product defect" theory of liability.  Morgan Decl. Ex. 9 (Tr. at 14:15-25).

In yet another about-face, plaintiffs now disclaim their argument that Epson was "required to compare its printers to any other brand." Opp. at 13:1-5.[4]  Indeed, plaintiffs argue exactly the contrary in their pending motion for class certification,[5]

---

[2]  Print yield (under any condition) is not something Epson could keep secret from consumers, unlike a "defect" that manifests only partway through a product lifecycle.

[3]  Although the court in *In re Apple & AT & TM Antitrust Litigation*, 596 F. Supp. 2d 1288, 1310 (N.D. Cal. 2008) found that failure to disclose "legal and technical limitations" of iPhones could theoretically be actionable under the CLRA, it dismissed plaintiffs' CLRA claim because plaintiffs failed to plead materiality. *See also Baba v. Hewlett-Packard Co.*, 2010 WL 2486353, *3-5 (N.D. Cal. June 16, 2010) (no alleged reliance).

[4]  Epson is at a loss to understand *how* "efficiency"—an inherently relative construct—can be considered by any non-comparative metric under plaintiffs' view. Although a consumer who considered Epson's published ink yields could theoretically measure "efficiency" against them, no plaintiff did that here and in fact, plaintiffs base their unarticulated "efficiency" standard entirely on their perceptions of HP printers' yields.  *See infra* n.6.

[5]  *See, e.g.*, Plaintiffs' Notice of Motion and Motion for Class Certification; Motion for Class Certification; Mem. of Points & Authorities in Support Thereof, filed Feb. 7, 2011 (Docket No. 336) at 8:5-13 ("The Class claims are based on the
  (footnote continued)

and plaintiffs' deposition testimony makes clear they measured "efficiency" by their (rose-colored view of) prior experience with printers by another manufacturer.[6] That plaintiffs now disclaim this argument—when it was the exact one they were making—simply confirms its ridiculousness.

Finally, plaintiffs mischaracterize Epson's argument as imposing "an obligation to conduct an internet search before buying" a printer. Opp. at 13:6-14:2. The point of Epson's argument is much simpler: *These* plaintiffs cannot prove reliance or causation because they could not have relied on ISO print yields that they undisputedly never saw. Even in the absence of a duty to investigate, plaintiffs' causes of action still require reliance.

A subjective expectation based even on past experience with another brand of printer—to which plaintiffs now cling to establish reliance—is still just that: a subjective expectation that Epson has no duty to meet. Under plaintiffs' argument, a plaintiff who never consulted the miles-per-gallon rating for a Suburban could sue

---

fact that Defendants knew that the printers they manufactured, marketed and sold to consumers were significantly less efficient *than other brands*, resulting in a material difference between the "real-life" page yields provided by Defendants' printers and the "real-life" page yields provided *by other brands*. . . . [C]onsumers purchased Defendants ' printers with a false expectation – consumers reasonably expected that the efficiency of Defendants' printers would be comparable to other brands.") (emphasis added).

[6] O'Shea Tr. at 154:23-155:5 (Roddy Reply Decl. Ex. 3) (explaining frequency of changing cartridges in his Epson printer as being "a lot more than I had experienced with all the other HP All-In-Ones I had"); Rogers Tr. at 201:24-203:15 (Roddy Reply Decl. Ex. 2) ("I just looked at the efficiency of it.  I knew that Epson was inefficient and Hewlett Packard was an efficient model. I mean, efficient printer."); Adams Tr. at 56:5-17 (Roddy Reply Decl. Ex. 1) ("I had experience with printers.  I had a general feeling for how long these ink things last.  I had that HP before, and I had a perception of how long – how often I had to replace the ink. . . . I purchased [my Epson printer], and the ink went very fast.").

1  Chevrolet upon discovering it gets fewer miles per gallon than the Honda Civic he
2  previously owned.  Obviously, this cannot be the law.
3        Neither *Falk v. General Motors Corp.* nor *Medimatch, Inc. v. Lucent*
4  *Technologies, Inc.*, cited by plaintiffs, says otherwise.  *Falk* is inapposite, discussing
5  the "exclusive knowledge" aspect of *LiMandri v. Judkins*,[7] and specifically whether
6  consumers should be charged with constructive knowledge of complaints regarding
7  GM truck and SUV speedometers posted by other *consumers* on the Internet.  *Falk*
8  *v. Gen. Motors Corp.*, 496 F. Supp. 2d 1088, 1096-97 (N.D. Cal. 2000).  Unlike in
9  *Falk*, where GM was also accused of attempting to *conceal* the speedometer defect
10 from the marketplace, here *Epson* itself—not just consumers—posts extensively
11 detailed ink yield information on or linked to the relevant product pages, as well as
12 notice on product packaging that numerous use conditions may affect yield.
13 Likewise, the *Medimatch* court, applying New Jersey law, merely held that an
14 Internet posting about Y2K compliance did not necessarily give inquiry notice for
15 purposes of a statute of limitations defense.  Importantly, the plaintiff in *Medimatch*
16 had *already* purchased the products in question.  *Medimatch*, 120 F. Supp. 2d 842,
17 853 (N.D. Cal. 2000) (noting that "plaintiffs . . . had no reason to be checking the
18 web sites of the manufacturers of their office equipment.").  Neither case supports
19 the notion that a manufacturer can be liable for disappointed, subjective, and
20 uninformed expectations when the manufacturer has provided undisputedly

---

[7] *LiMandri* held that under California law, a claim for common law fraud by omission can be based only on one of four circumstances: "(1) when the defendant is in a fiduciary relationship with the plaintiff; (2) when the defendant had exclusive knowledge of material facts not known to the plaintiff; (3) when the defendant actively conceals a material fact from the plaintiff; and (4) when the defendant makes partial representations but also suppresses some material facts." *LiMandri v. Judkins*, 52 Cal. App. 4th 326, 336 (4th Dist. 1997).

accurate, objective disclosures on the very website it uses to promote its products and on the packages themselves.[8]

## II. *THESE* PLAINTIFFS CANNOT ESTABLISH CAUSATION

As plaintiffs admit, the "[n]amed plaintiffs must [] show causation, in the form of reliance" to prevail on their claims. Opp. at 11:10-12. Even though all three plaintiffs admitted at their depositions that they did not do *any* research regarding or consider print yields *at all* prior to purchasing their Epson printers, plaintiffs nevertheless claim that they have "ample evidence of materiality," relying on *Kowalsky v. Hewlett-Packard Co.*, 2010 WL 5141869, *8 (N.D. Cal. Dec. 13, 2010), *vacated in part on reconsideration*, 2011 WL 1466136 (N.D.Cal. Apr 15, 2011). Plaintiffs contend *Kowalksy* shows materiality can be established through evidence consumers "returned [the] product or bought a new one," Opp. at 14:23-28, *see also id.* at 15:24-16:3 (incorporating argument in support of causation and plaintiffs' reliance). *Kowalsky*, yet another product defect case, is not availing to plaintiffs at all, however and, in fact, highlights the deficiencies in plaintiffs' case.

Indeed, unlike plaintiffs, Mr. Kowalsky researched the printer's specifications on the feature at issue—the auto document feeder performance—before purchase "on the HP website and other third-party sites" and "relied on the description and specification on HP's website and purchased the 8500 Printer specifically because he needed a printer with an ADF capable of printing, scanning and faxing multi-page documents." *Id.* at *1 (relied on "HP's representations that the HP 8500 Printer was able to scan and copy at speeds of up to 34 pages per minute in color, and 35 pages per minute in black and white via the 50–page capacity ADF"). Believing

---

[8] Plaintiffs' discussion of ink yield "click-through" statistics, *see* Opp. at 13:15-14:2, is flawed but in any event irrelevant. Regardless of how many customers "click-through" to ink yield information on the Internet, it is undisputed that *these* three plaintiffs never consulted Epson's ink yield information.

there was a problem because the ADF did not perform as described, Mr. Kowalsky also contacted HP about the defect, and received *two* replacement printers. In sharp contrast, plaintiffs did not contact Epson at all when their printers did not meet their uninformed, subjective expectations; they simply went out and—again uninformed about print yields—bought another brand of printer.[9] In any event, the portion of *Kowalsky* cited by plaintiffs discusses likelihood to deceive, not proof of materiality. *Id.* at *8. *Kowalsky* in no way supports plaintiffs' claim that they can sue Epson simply because they bought new printers when their subjective expectations of how their Epson printers would perform were disappointed.

Plaintiffs criticize Epson for "ignor[ing] the reasonable consumer test" determining whether a statement or omission is likely to deceive the public. Opp. at 2:12-15. Epson "ignored" it only because it does not govern Epson's motion. Epson's argument that ink yields were not material to plaintiffs is directed towards plaintiffs' inability to prove reliance, not whether a statement or omission is likely to deceive for purposes of the UCL.

Finally, plaintiffs' reliance on *Starbucks Corp. v. Superior Court*, 168 Cal. App. 4th 1436, 1444-45 (4th Dist. 2008) is particularly curious, since not only did the *Starbucks* court order the trial court to enter summary judgment on behalf of the "disclosing" defendant, but defendant Starbucks was represented by plaintiffs' counsel Mr. Heinke and Ms. Conway. As plaintiffs' counsel must know, although the court found there was a question of fact whether a reasonable job applicant (not "consumer") would view the disclaimer that applicants should not disclose marijuana convictions more than two years old, it nevertheless ordered that the trial court enter summary judgment on behalf of defendant Starbucks because, among

---

[9] UF 11, 16, 23; O'Shea Dep. 188:7-9, 194:6-14 (Roddy Reply Decl. Ex. 3); Rogers Dep. at 203:4-6 (Roddy Reply Decl. Ex. 2); Adams Dep. at 125:12-21 (Roddy Reply Decl. Ex. 1).

other things, two of the three plaintiffs were never actually deceived by the application. *Id*. at 1446-1448. The *Starbucks* court stated:

> By analogy, California does not sanction lawsuits for fraudulent misrepresentations brought by persons who, rather than having been deceived, act for the sole purpose of bringing a lawsuit against "potential targets for litigation." "'The maker of a fraudulent misrepresentation is not liable to one who does not rely upon its truth but upon the expectation that the maker will be held liable in damages for its falsity.'" "[A]ctual reliance for the purpose of fraud by omission occurs only when the plaintiff reposes confidence in the material completeness of the defendant's representations, and acts upon this confidence."

*Id*. at 1446-47 (citations omitted).[10] Having failed to even consider Epson's representations regarding ink yield, plaintiffs can hardly have "repose[d] any confidence in the[ir] material completeness."

Nor is there any merit to plaintiffs' argument that whether they relied on any false statement or omission by Epson is a question of credibility that must go the

---

[10] *Williams* and *Shin*, also cited by plaintiffs, are likewise unavailing. In *Williams v. Gerber Prods. Co.*, 552 F.3d 934, 939-40 (9th Cir. 2008), the Ninth Circuit distinguished between two types of advertising on review of an order granting a motion to dismiss: (1) advertisements where "the advertisement itself made it impossible for the plaintiff to prove that a reasonable consumer was likely to be deceived"; and (2) advertisements like Gerber's "Fruit Juice Snacks" labels, that picture fruits not contained in the product and features other statements "add[ing] to the potential deception." The *Gerber* court held that where a manufacturer makes misleading misrepresentations, those misrepresentations cannot be dismissed on the basis of fine-print disclosures. *Id*. at 939-40. In other words, Gerber addresses whether disclosures can negate affirmative misrepresentations as a matter of law—not allegations of fraud by omission.

In *Shin v. BMW of North America*, 2009 WL 2163509, *2 (C.D. Cal. July 16, 2009), the court merely held—on a motion to dismiss—that the defendant's disclosure that low-profile wheels and tires were "more susceptible to road hazard and consequential damages" did not amount to a disclosure that they were subject to premature cracking and would need to be replaced more frequently.

jury. Opp. 15:23-16:3. First, Epson's proof of non-reliance is based on plaintiffs' own admissions that they did not consider print yields, either when they purchased their Epson printers or even when they purchased their replacement printers. There is no dispute that plaintiffs' disappointed expectation of "real life" print yields was not based on anything Epson said or didn't say, but rather on their prior experience with another brand of printer. Indeed, plaintiffs concede that Epson said *nothing* about "real life" print yields, Opp. at 18:10-11 ("Defendants did not say anything about their printers' performance under real life conditions"), Opp. at 13:10-11, and even if Epson *had*, these plaintiffs would have never seen it anyway. Plaintiffs likewise concede what Epson *did* say about print yields—*i.e.*, its ISO yields—did not contribute to any "objective expectation" by plaintiffs regarding ink yield either. Opp. at. 16:5-14.

In any event, a plaintiff's lack of reliance is routinely decided on summary judgment and even on motions to dismiss where, as here, the facts are not in dispute.[11] *Laster v. T-Mobile USA, Inc.*, 2009 WL 4842801 (S.D. Cal. 2009) (granting summary judgment for lack of reliance); *Gutierrez v. Wells Fargo*, 2009 WL 1246689, *5 (N.D. Cal. May 5, 2009) ("[P]laintiff Smith has not established reliance or causation regarding any challenged Wells Fargo advertising and marketing materials. Accordingly, Wells Fargo's motion for partial summary judgment as to the individual claims asserted by plaintiff Smith under the CLRA, Section 17200, and Section 17500 and for fraud and negligent misrepresentation as to alleged misrepresentations is [granted]."); *Marolda v. Symantec Corp.*, 672 F.

---

[11] Citing *Chamberlan*, plaintiffs again rely on a product defect case for the notion that a feature can be material to a plaintiff even where the plaintiff did no research in advance of purchase. As noted above, *Chamberlan* concerned prematurely failing engine manifolds, a defect that is unknowable to the consumer at the time of purchase. In sharp contrast are ink yields, on which Epson specifically publishes statistics and discloses how and why yields may vary.

Supp. 2d 992, 1003 (N.D. Cal. 2009) ("[T]o plead the circumstances of omission with specificity, plaintiff must describe the content of the omission and where the omitted information should or could have been revealed, as well as provide representative samples of advertisements, offers, or other representations that plaintiff relied on to make her purchase and that failed to include the allegedly omitted information.").

### III. THERE IS NO DISPUTE OF FACT THAT THE SUBCLASS "MISREPRESENTATION" WAS IMMATERIAL TO MS. ROGERS

Likewise, plaintiffs fail to raise a material issue of disputed fact with respect to Ms. Rogers' claim that she was somehow defrauded by Epson's statement that she could "replace only the color [she] need[ed]" in her NX200 because of its individual ink cartridges. Even leaving aside the obvious (and conceded) truth of Epson's statement,[12] it is undisputed that Ms. Rogers neither relied on, nor suffered

---

[12] Plaintiffs attempt to manufacture a disputed fact by averring to the surveys they would take to establish that this statement is likely to deceive the public. Some statements, however, are simply true, until some distorted, convoluted meaning is ascribed to them by attorneys in search of a plaintiff (as happened here) and no survey is needed to establish that on summary judgment. Plaintiffs concede as much. Opp. at 23:15-17 ("*Veloff* merely stands for the unremarkable proposition that the reasonableness of an interpretation may be decided as a matter of law in an appropriate case."). Apparently concerned the Court would find this an "appropriate case," however, plaintiffs then blatantly misrepresent *CG Roxane LLC v. Fiji Water Co. LLC*, 569 F. Supp. 2d. 1019 (N.D. Cal. 2008) (cited by Epson) as a trademark case that "does not discuss the UCL." *See* Opp. at 23 n.10 (citing *CG Roxane* at 569 F. Supp. 2d at 1034-35 as "rejecting Plaintiffs' trademark claims because, *inter alia*, 'Defendant[] presents evidence that the mark is not used as a trademark, but as a factual statement since the water is indeed bottled at a source in Fiji'"). In fact, on one of the very pages cited by plaintiffs, the *CG Roxane* court continued: "Plaintiff's false advertising and misrepresentation claims [brought under California state law] fail because, as stated previously, defendant's use of the phrase 'bottled at source' is a factual statement about its product." 569 F. Supp. 2d at 1035. *See also Appliance Recycling Ctrs. of Am., Inc. v. JACO Env'l, Inc.*, 378 Fed. Appx. 652, 656, 2010 WL
(footnote continued)

any injury from, this statement. First, Ms. Rogers admitted—and plaintiffs do not dispute—that she would have purchased her Epson printer even had she known that it expended some color ink during black printing. (UF 33). (Of course, when black ink is expended during color printing, the printer needs to *have* color ink in it for black printing.) Plaintiffs' retort—that Epson's failure to advise Ms. Rogers that her printer would consume "copious amounts of ink" made Epson's statement that she could replace only the color she needed "all the more misleading," Opp. at 24:7-16, is no response at all. Reliance is a distinct element relating to materiality, not falsity, and there is no dispute that Ms. Rogers cannot establish this required element of all of her claims.

Second, with respect to actual injury, plaintiffs fail to specify what harm Ms. Rogers suffered other than a conclusory recitation that she did not get what she paid for, apparently because she occasionally had to go to the store to buy a color cartridge (which she would use anyway) if it ran out and she wanted to continue printing in black. Opp. at 24:17-25:4. Not only is this argument completely lacking in evidentiary support, Ms. Rogers' failure to plan ahead for her printing needs is hardly an "actual injury" caused by Epson's statement. As with reliance, plaintiffs have failed to present any evidence that could raise a triable issue of material fact with respect to injury.

### IV. PLAINTIFFS CONCEDE THE CLASS PERIOD SHOULD BE LIMITED

In the event the Court denies Epson's motion for summary judgment with respect to any of plaintiffs' claims, the putative class should be limited as described

---

1767313, *2-3 (9th Cir. May 4, 2010) (unpublished) (affirming summary judgment of UCL false advertising claims based on statements that were true or could not cause actual deception). In any event, although Epson's statement was both literally and actually true, this issue need not be decided on this motion because Ms. Rogers' lack of actual reliance remains undisputed.

in Epson's motion based on plaintiffs' lack of opposition on this point. L.R. 56-3 ("In determining any motion for summary judgment or partial summary judgment, the Court may assume that the material facts as claimed and adequately supported by the moving party are admitted to exist without controversy except to the extent that such material facts are (a) included in the "Statement of Genuine Disputes" and (b) controverted by declaration or other written evidence filed in opposition to the motion.").

### Conclusion

For all of the foregoing reasons, Epson's motion for summary judgment should be granted in its entirety.

DATED:  June 16, 2011    QUINN EMANUEL URQUHART & SULLIVAN, LLP


By  /s/ Shon Morgan
    Shon Morgan
    Attorneys for Defendants Epson America, Inc. and Epson Accessories, Inc.