| Case No. | CV 09 -8063 PSG (CWx) | Date | July 29, 2011 |
|---|---|---|---|
| Title | Christopher O'Shea *et al.* v. Epson America, Inc. *et al.* | | |

| Present: | The Honorable Philip S. Gutierrez, United States District Judge | | |
|---|---|---|---|
| Wendy K. Hernandez | Not Present | n/a |
| Deputy Clerk | Court Reporter | Tape No. |

| Attorneys Present for Plaintiff(s): | Attorneys Present for Defendant(s): |
|---|---|
| Not Present | Not Present |

**Proceedings:** (In Chambers) Order GRANTING in part and DENYING in part Defendants' motion for summary judgment

Before the Court is Defendants Epson America, Inc., Epson Accessories, Inc., and Seiko Epson Corporation's motion for summary judgment. A hearing on the motion was held on July 11, 2011. After considering the papers submitted in support of and in opposition to the motion, the Court GRANTS in part and DENIES in part the motion.

I.  Introduction

Plaintiffs Christopher O'Shea, Gisele Rogers, and Jeff Adams (collectively, "Plaintiffs") bring this putative class action against Defendants Epson America, Inc., Epson Accessories, Inc., and Seiko Epson Corporation (collectively, "Epson"), claiming that Epson affirmatively misrepresented and failed to disclose material information regarding the performance and/or value of Epson inkjet printers and ink cartridges. *TAC* ¶ 1 [Dkt. # 282 (Oct. 27, 2010)]. Specifically, the operative pleading asserts causes of action for: (1) unfair business practices in violation of Cal. Bus. & Prof. Code § 17200, *et seq.* ("UCL"); (2) false advertising in violation of Cal. Bus. & Prof. Code § 17500, *et seq.* ("FAL"); (3) violation of the Consumer Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1750, *et seq.*; and (4) common law fraud. *Id.* Now,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**O**

**#353**

CIVIL MINUTES - GENERAL

| Case No. | CV 09 -8063 PSG (CWx) | Date | July 29, 2011 |
|---|---|---|---|
| Title | Christopher O'Shea *et al.* v. Epson America, Inc. *et al.* | | |

pending before the Court is Epson's motion for summary judgment.[1] *See* Dkt. # 353 (Feb. 25, 2011).

II.     Factual Background

The salient facts in this action are almost entirely undisputed. Epson is in the business of manufacturing, marketing, and selling inkjet printers and printer ink cartridges. Epson tests the ink yields of its printers, *i.e.* the number of pages which can be printed with an ink cartridge, "in accordance with the ISO [International Organization of Standardization] standard." *TAC* ¶ 53; *see Watson Decl.*, Ex. 4 [Dkt. # 353-9 (Feb. 25, 2011)]. Under the ISO standard, ink yield is measured by "continuous printing," that is, printing without interruption until all ink is exhausted from the cartridge.[2] *Id.*

Epson discloses that its printers are tested in accordance with ISO standards, and makes available to consumers detailed information about how ink yields are calculated, including the fact that testing is conducted based on continuous printing. *Id.* ¶¶ 3(b), 4, Ex. 1 (disclosures on Epson's website for the Artisan 800 printer model); Ex. 2 (disclosures on Epson's website for the NX200 printer model); Ex. 3 (disclosures on Epson's website for the Workforce 310 printer model). Potential consumers, further, are expressly cautioned that "since no single yield standard can duplicate a customer's actual printer usage, Epson recommends that customers also consider print yield comparisons from reputable independent sources." *Id.* ¶¶ 3 (c), 4, Exs. 1-3. In the same vein, Epson discloses on the packaging of its printers that actual cartridge yields may "vary considerably for reasons including images printed, print settings, temperature and humidity." *Suess Decl.* ¶ 6, Exs. 7-8 (package for WorkForce 310 printer); *see also id.* ¶¶ 4-5, Exs. 1-5 (packages for Artisan 800 and NX200 printers, stating that "[c]artridge yields vary

---

[1] The Court, in its discretion, considers Epson's motion for summary judgment before evaluating Plaintiffs' pending motion for class certification. *Lierboe v. State Farm Mut. Auto. Ins. Co.*, 350 F. 3d 1018, 1023 n.6 (9th Cir. 2003); *O'Shea v. Littleton*, 414 U.S. 488, 494, 94 S.Ct. 669, 38 L. Ed. 2d 674 (1974) ("[I]f none of the named plaintiffs purporting to represent a class establishes the requisite of a case or controversy with the defendants, none may seek relief on behalf of himself or any other member of the class.").

[2] As discussed *infra*, Plaintiffs claim that the ISO's "continuous printing" standard minimizes the inefficiency of Epson's cartridges and does not reflect the typical consumer's printing practices. *TAC* ¶ 53.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**O**

**#353**

CIVIL MINUTES - GENERAL

| Case No. | CV 09 -8063 PSG (CWx) | Date | July 29, 2011 |
|---|---|---|---|
| Title | Christopher O'Shea *et al.* v. Epson America, Inc. *et al.* | | |

considerably based on images printed, print settings, paper type, frequency of use and temperature.").

Plaintiffs are customers who were dissatisfied with the Epson inkjet printers and Epson ink cartridges they purchased. Plaintiff Christopher O'Shea ("O'Shea") purchased an "Artisan 800" Epson inkjet printer on November 18, 2008. *TAC* ¶ 26; *Kim Decl.,* Ex. 31 (*O'Shea Decl.* ¶ 2). O'Shea testified that he was frustrated with the amount of ink his Epson printer consumed, explaining that he had to buy new cartridges every three months, which "was a lot more than [he] had experienced with all the other [Hewlett-Packard ("HP") printers he] had." *Kim Decl.*, Ex. 32 (*O'Shea Depo.* 155:1-5). Plaintiff Jeff Adams ("Adams"), similarly, purchased a "Workforce 310" Epson inkjet printer on July 29, 2009. *TAC* ¶ 28; *Kim Decl.,* Ex. 33 (*Adams Decl.* ¶ 2). Adams testified that he knew his printer was "guzzl[ing]" ink because he had to replace the ink cartridges "approximately every two weeks," whereas "[i]n the past, [he shopped for replacement ink cartridges] maybe [every] six months." *Kim Decl.*, Ex. 34 (*Adams Depo.* 56:12-13; 58: 9-12). Plaintiff Gisele Rogers purchased a "Stylus NX200" Epson inkjet printer on May 13, 2009. *TAC* ¶ 27; *Kim Decl.,* Ex. 35 (*Rogers Decl.* ¶ 2). She likewise testified that whereas with her old HP printer, "the black ink cartridge would last [her] 3 months[,]" her new Epson printer ran out of ink every month, even though she was printing "significantly less" than she had in the past. *Kim Decl.*, Ex. 36 (*Rogers Depo.* 140:17-18, 23-25).

Within months of purchasing their Epson printers, all three plaintiffs replaced them with similar models manufactured by HP. *Kim Decl.*, Ex. 32 (*O'Shea Depo.* 202:22-25); Ex. 34 (*Adams Depo.* 56:14-20); Ex. 36 (*Rogers Depo.* 135:21-25). Further, on October 2, 2009, Plaintiffs initiated this putative consumer class action, claiming that Epson engaged in fraud, false advertising, and unfair business practices by "misrepresenting and concealing the grossly inefficient print yields generated by its ink cartridges, which are well below reasonable consumer expectations and the yields of other manufacturers' printers."[3] *TAC* ¶ 1 [Dkt. # 282 (Oct. 27, 2010)]. According to Plaintiffs, Epson's purported misrepresentations and omissions

---

[3] The putative class is comprised of "[a]ll persons throughout the United States who, between August 28, 2005 and class certification, purchased, not for resale, an Epson Stylus, Workforce or Artisan printer." *Mot. for Class Certification* at 7:26-28; *see also TAC* ¶ 66. Plaintiffs also seek to certify a subclass comprise of "[a]ll persons throughout the United States who, between August 28, 2005 and class certification, purchased, not for resale, an Epson Stylus NX-series printer." *Id.* at 8:18-20; *TAC* ¶ 66.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

O

#353

| Case No. | CV 09 -8063 PSG (CWx) | Date | July 29, 2011 |
|---|---|---|---|
| Title | Christopher O'Shea *et al.* v. Epson America, Inc. *et al.* | | |

were part of a "scheme to wrongfully profit from sales of ink resulting from ink waste" by which Epson "sought to drive sales of their printers so as to take advantage of the printers' defects and/or ink waste to profit from increased sales of ink with high profit margins." *Id.* ¶¶ 60, 63.

III.     Legal Standard

Federal Rule of Civil Procedure 56(c) establishes that summary judgment is proper only when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party has the burden of demonstrating the absence of a genuine issue of fact for trial. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 256, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). If the moving party satisfies the burden, the party opposing the motion must set forth specific facts showing that there remains a genuine issue for trial, and "may not rest upon mere allegations or denials of his pleading." *See id.* at 248, 257 (citations omitted).

A non-moving party who bears the burden of proving at trial an element essential to its case must sufficiently establish a genuine dispute of fact with respect to that element or face summary judgment. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). Such an issue of fact is a genuine and material issue if it cannot be reasonably resolved in favor of either party and may affect the outcome of the suit. *See Anderson*, 477 U.S. at 248, 250-51. If the moving party seeks summary judgment on a claim or defense for which it bears the burden of proof at trial, the moving party must use affirmative, admissible evidence. Admissible declarations or affidavits must be based on personal knowledge, must set forth facts that would be admissible evidence at trial, and must show that the declarant or affiant is competent to testify as to the facts at issue. *See* Fed. R. Civ. P. 56(e).

IV.     Discussion

Counsel for Plaintiffs confirmed at the hearing on this motion that, notwithstanding the broad range of allegations asserted in the Third Amended Complaint, Plaintiffs' case has been pared down to two theories of liability: (1) an omission theory, based on allegations that Epson failed to disclose the "grossly inefficient print yields generated by its ink cartridges, which are well below reasonable consumer expectations and the yields of other manufacturers' printers[,]" *TAC* ¶ 1; *see also Plaintiffs' Statement of Genuine Issues of Material Fact* ("*SGI*") ¶ 1 [Dkt. #

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

#353

CIVIL MINUTES - GENERAL

| Case No. | CV 09 -8063 PSG (CWx) | Date | July 29, 2011 |
|---|---|---|---|
| Title | Christopher O'Shea *et al.* v. Epson America, Inc. *et al.* | | |

481-2 (June 13, 2011)]; and (2) an affirmative misrepresentation theory asserted by Plaintiff Rogers relating to a statement on the packaging of Epson's "NX series" printers that reads: "Replace only the color that you need with individual ink cartridges."[4]  *TAC* ¶ 64; *see also Kim Decl.*, Ex. 37 [Dkt. # 422 (Mar. 29, 2011)].  Both theories, according to Plaintiffs, encompass conduct that violates California's CLRA, UCL, and FAL, and that constitutes common-law fraud.  *See generally TAC*.

Epson now moves for summary judgment on this action in its entirety, arguing that: (1) Plaintiffs cannot establish any actionable omissions; (2) Plaintiffs have not alleged any actionable misrepresentations; (3) Plaintiffs cannot establish an actual injury or ascertainable loss; and (4) there is no evidence of any unlawful, unfair or fraudulent business practices.  Alternatively, Epson asserts that in the event summary judgment is not granted entirely, the class period should be limited in accordance with a previous ink-related class action settlement.

After outlining the law governing Plaintiffs' claims, the Court will address in turn Epson's arguments with respect to both Plaintiffs' omission-based and affirmative misrepresentation-based theories of liability.

    A.    <u>Plaintiffs' UCL, FAL, and CLRA Claims (First, Second, and Third Causes of Action)</u>

---

[4] Although Plaintiffs initially alleged that Epson made a number of affirmative misrepresentations upon which Plaintiffs relied, following concessions made in their depositions, O'Shea and Adams have narrowed their claims to assert only a "pure omission" theory of liability.  *See, e.g., Morgan Decl.,* Ex. 6 (*O'Shea Depo.* 95:4-14) (doesn't recall anything in Epson's advertising and marketing that led him to purchase the printer) [Dkt. # 353-4 (Feb. 25, 2011)]; *Morgan Decl.*, Ex. 1 (*Adams Depo.* 76:25-78:2) (cannot recall any statements that were important to him in his decision to purchase the Epson Workforce 310 other than it was a "good product") [Dkt. # 353-4 (Feb. 25, 2011)].  The same goes for allegations asserted by Ms. Rogers, *Morgan Decl.*, Ex. 4 (*Rogers Depo.* 134:6-19 (did not see any representations regarding ink yields); 173:17-21 (did not see any information regarding prints per cartridge)) [Dkt. # 353-4 (Feb. 25, 2011)], with one notable exception.  As discussed below, Ms. Rogers' affirmative misrepresentation claim relating to the specific statement "replace only the individual ink color you need" remains viable.

**O**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**#353**

**CIVIL MINUTES - GENERAL**

| Case No. | CV 09 -8063 PSG (CWx) | Date | July 29, 2011 |
|---|---|---|---|
| Title | Christopher O'Shea *et al.* v. Epson America, Inc. *et al.* | | |

1.  *Applicable Law*

Plaintiffs' first cause of action is for unfair business practices in violation of California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200. The UCL prohibits any "unlawful, unfair or fraudulent business practice and unfair, deceptive, untrue or misleading advertising[.]" Cal. Bus. & Prof. Code § 17200. A cause of action under the UCL may not only be based on untrue representations to the public, but can also arise from representations "which may be accurate on some level, but will nonetheless tend to mislead or deceive." *Paduano v. Am. Honda Motor Co., Inc.*, 169 Cal. App. 4th 1453, 1469, 88 Cal. Rptr. 3d 90, 104 (2009) ("A perfectly true statement couched in such a manner that it is likely to mislead or deceive the consumer, such as by failure to disclose other relevant information, is actionable under the UCL.") (internal citations omitted). Because the statute is written in the disjunctive, it prohibits three separate types of unfair competition: (1) unlawful acts or practices, (2) unfair acts or practices, and (3) fraudulent acts or practices. *Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal. 4th 163, 83 Cal. Rptr. 2d 548, 561 (1999). To succeed on a UCL claim under any of these theories, a plaintiff must establish that the defendant engaged in one of the practices prohibited by the statute and that, as a result of the defendant's actions, he or she suffered actual injury. *Marolda v. Symantec Corp.*, 672 F. Supp. 2d 992, 1003 (N.D. Cal. 2009).

Plaintiff second cause of action arises under California's False Advertising Law ("FAL"), Cal. Bus. & Prof. Code § 17500 *et seq*. This statute makes it unlawful, in connection with the sale of goods or services, to make or disseminate "any statement . . .which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading." *Id.* To succeed on a cause of action for injunctive relief under the FAL, a plaintiff must show that "members of the public are likely to be deceived" by an advertisement. *Day v. AT & T Corp.,* 63 Cal. App. 4th 325, 74 Cal. Rptr. 2d 55, 59 (1998); *see also Arizona Cartridge Remanufacturers Ass'n, Inc. v. Lexmark Intern., Inc.*, 421 F.3d 981, 985-86 (9th Cir. 2005) (noting that "[t]he plaintiff has the burden of proving that the challenged advertising is false or misleading to a reasonable consumer") (internal citations omitted).

Third, Plaintiffs allege that Epson violated the California Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code §§ 1750 *et seq*. CLRA proscribes specified "unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale or lease of goods or services to any consumer." Cal. Civ. Code § 1770(a). Such acts and practices include, *inter alia*, "[r]epresenting that goods

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

**O**

**#353**

| Case No. | CV 09 -8063 PSG (CWx) | Date | July 29, 2011 |
|---|---|---|---|
| Title | Christopher O'Shea *et al.* v. Epson America, Inc. *et al.* | | |

or services have. . .characteristics, ingredients, uses, benefits, or qualities which they do not have," Cal. Civ. Code § 1770(a)(5), and "[r]epresenting that goods or services are of a particular standard, quality or grade. . .if they are of another." Cal. Civ. Code § 1770(a)(7).

Because the standard for deceptive practices under the "fraudulent" prong of the UCL applies equally to misrepresentation-based claims under the CLRA and FAL, *see Consumer Advocates v. Echostar Satellite Corp.*, 113 Cal. App. 4th 1351, 1360, 8 Cal. Rptr. 3d 22 (2003), courts often address these claims in tandem. *See Kowalsky v. Hewlett-Packard Co.*, No.: 10–CV–02176–LHK, 2011 WL 1466136, at *4 (N.D. Cal. Apr. 15, 2011); *see also Paduano*, 169 Cal. App. 4th at 1468-73 (analyzing UCL and CLRA claims together); *Neu v. Terminix Intern., Inc.*, No. C 07-6472 CW, 2008 WL 2951390, at *3-4 (N.D. Cal. July 24, 2008) (analyzing UCL, FAL, and CLRA claims together); *Chacanaca v. Quaker Oats Co.,* No. C 10–0502 RS, 2010 WL 4055954, at *11–12 (N.D. Cal. Oct. 14, 2010) (analyzing UCL, FAL, and CLRA claims together). Analyzing the statutes together is particularly appropriate where, as here, the UCL claim is brought solely under Section 17200's "fraudulent" prong. *See Opp'n* 18:18 ("Plaintiffs' claims arise under the UCL's fraud prong."). Accordingly, the following analysis encompasses Plaintiffs' claims under all three California statutes invoked in the pleading.

    2.    *Analysis*

        a.    <u>Omission Theory of Liability</u>

            i.    *Nature of the Alleged Disclosure Obligation*

As previously indicated, it is undisputed that the gravamen of Plaintiffs' case now rests in allegations that Epson failed to disclose material information regarding the performance and value of its inkjet printers and ink cartridges. The record nonetheless reflects some confusion as to what, precisely, Plaintiffs claim Epson failed to disclose. Thus, it is to this threshold matter that the Court must first turn its attention.

In moving for summary judgment, Epson characterizes Plaintiffs' omission-based claims as seeking to impose a "duty to compare a feature of its printers to competitors' products." *Mot.* 9:3-4. This view, notwithstanding Plaintiffs' protestations to the contrary, is not off the mark. The first paragraph of Plaintiffs' complaint expressly refers to Epson's purported failure to

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

#353

CIVIL MINUTES - GENERAL

| Case No. | CV 09 -8063 PSG (CWx) | Date | July 29, 2011 |
|---|---|---|---|
| Title | Christopher O'Shea *et al.* v. Epson America, Inc. *et al.* | | |

disclose the "grossly inefficient print yields generated by its ink cartridges, which are well below reasonable consumer expectations *and the yields of other manufacturers' printers*." TAC ¶ 1 (emphasis added). Plaintiffs' motion for class certification is likewise replete with comparative depictions of Plaintiffs' omission-based claims. *See, e.g., Mot. for Class Cert.* 8:5-9 ("[t]he Class claims are based on the fact that Defendants knew that the printers they manufactured, marketed and sold to consumers were significantly less efficient *than other brands*, resulting in a material difference between the 'real life' page yields provided by Defendants' printers and the 'real-life' page yields *provided by other brands*.") (emphasis added); *id.* 12:12-15 ("the claims of Plaintiffs and the Class are based on identical conduct: Defendants' failure to disclose that their printers and ink cartridges were significantly *less efficient than other brand[s]* under non-continuous printing conditions.") (emphasis added) [Dkt. # 325 (Feb. 7, 2011)]. The comparative nature of this claim is further echoed in Plaintiffs' actual testimony. *See, e.g., Morgan Decl.*, Ex. 4 (*Rogers Depo*. 200:3-11) (in Ms. Rogers' opinion, the printer box should have said "this printer would not print as efficiently as the Hewlett-Packard and other like models.").

Plaintiffs now appear to retreat from these assertions, however. Their opposing papers state that "Plaintiffs are not arguing that Defendants were required to compare their printers to any other brand. Rather, they contend that Defendants had a duty to disclose that their printers do not operate efficiently under non-continuous printing conditions." *Opp'n* 13:2-5. The distinction Plaintiffs appear to be drawing here, however, rests on a fallacy. Efficiency is an inherently relative construct; a product is either more efficient or less efficient than *something else*. It makes no difference whether the metric of efficiency is "other manufacturer's brands" or "reasonable consumer expectations." As Plaintiffs' own statements confirm, in this particular context, the two are one and the same: a consumer's reasonable expectation about ink yields can (and usually does) derive from his or her prior experiences with printers manufactured by competitive brands. Plaintiffs appear to recognize as much. *See Class Cert. Mot.* 21:23-24 ("The second variable is the difference between the ink efficiency that Class members expected *(performance consistent with comparable brands)*, and the efficiency they actually received.") (emphasis added); *see also Roddy Decl.*, Ex. 1 (*Adams Depo*. 56:5-8 ("I had experience with printers. I had a general feeling for how long these ink things last. I had that HP before, and I had a perception of how long – how often I had to replace the ink.")) [Dkt. # 495 (June 16, 2011)]. Accordingly, Plaintiffs' position – that requiring Epson to disclose that its printers "do not operate efficiently under non-continuous printing conditions" is somehow materially

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

#353

CIVIL MINUTES - GENERAL

| Case No. | CV 09 -8063 PSG (CWx) | Date | July 29, 2011 |
|---|---|---|---|
| Title | Christopher O'Shea *et al.* v. Epson America, Inc. *et al.* | | |

different from requiring Epson to compare its printers with those made by competitive brands – is belied by logic and their own admissions.

Notably, while Plaintiffs argued on paper that Epson was obligated to disclose that its printers "do not operate efficiently under non-continuous printing conditions," counsel for Plaintiffs presented a different, and novel, theory of omission liability at the hearing on this motion, as the following exchange illustrates:

> The Court: Make it clear to me, what disclosures should Epson have made in this particular case as it relates to those two printers.
>
> Counsel:
>
> With regard to that, an example would be they could say: The -- based on average consumer use, they print out; you will need to replace your cartridges once every month based on a three times per week usage printing printing five pages per day on a standard print page, for example.

*July 11, 2011 Hearing Tr.* 15:18-25. For several reasons, the Court cannot accept this newly-articulated theory as the predicate for Plaintiffs' omission-based claims.[5] At no point in this two-year litigation have Plaintiffs cast their claims in such terms. Counsel's replacement-per-month-based-on-average-consumer-use metric is absent from Plaintiffs' pleading, as well as from the numerous filings Plaintiffs have submitted to-date. Concerns of due process thus prevent the Court from permitting counsel to debut its new number-of-replacement-cartridges-per-month theory in a summary judgment motion, much less at the hearing for such.

---

[6] Though they might contend otherwise, Counsel's response at the hearing is not consistent with their previous characterization of their claim in their opposing papers or in their pleading. At no point in this litigation have Plaintiffs equated the concept of "efficiency" with a replacement-per-month-based-on-average-consumer-use metric. Rather, as previously noted, Plaintiffs' repeatedly define "inefficiency" as against other manufacturer's brands/reasonable consumer expectations.

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

#353

CIVIL MINUTES - GENERAL

| Case No. | CV 09 -8063 PSG (CWx) | Date | July 29, 2011 |
|---|---|---|---|
| Title | Christopher O'Shea *et al.* v. Epson America, Inc. *et al.* | | |

Therefore, for the foregoing reasons, the Court will analyze Plaintiffs' omission-based claim as it is articulated in Plaintiffs' pleading and, accordingly, inquire as to whether Epson had a duty to disclose the "grossly inefficient print yields generated by its ink cartridges, which are well below reasonable consumer expectations and the yields of other manufacturers' printers." *TAC* ¶ 1.

        ii.    *Whether Epson Had A Duty to Disclose Its "Inefficient" Ink Yields*

The California Court of Appeal has held that for an omission to be actionable for purposes of CLRA or the UCL, it must be either (1) "contrary to a representation actually made by the defendant" or (2) a "fact the defendant was obligated to disclose." *Daugherty v. Am. Honda Motor Co., Inc.*, 144 Cal. App. 4th 824, 835-36, 51 Cal. Rptr. 3d 118, 128 (2006). Here, because there is no allegation that the "omitted" information was contrary to an actual representation, to defeat summary judgment and prevail on an omission-based theory of liability, Plaintiffs must establish that Epson was affirmatively obligated to disclose the information. *See id.* at 838 (noting that a failure to disclose a fact one has no affirmative duty to disclose is not "likely to deceive" anyone in violation of California consumer protection laws). Under California law, a duty to disclose can arise when, *inter alia*, a defendant has exclusive knowledge of material facts not known to the plaintiff and/or when the defendant conceals a material fact from the plaintiff.[6] *Grisham v. Philip Morris, Inc.*, 670 F. Supp. 2d 1014, 1043 (C.D. Cal. 2009). Materiality exists if the omitted information would cause a reasonable consumer to behave differently if he or she were aware of it. *See Oestreicher v. Alienware Corp.*, 544 F. Supp. 2d 964, 971 (N.D. Cal. 2008), *aff'd*, 322 Fed. Appx. 489 (9th Cir. 2009).

---

[6] California law recognizes four circumstances in which an obligation to disclose may arise: "(1) when the defendant is in a fiduciary relationship with the plaintiff; (2) when the defendant had exclusive knowledge of material facts not known to the plaintiff; (3) when the defendant actively conceals a material fact from the plaintiff; and (4) when the defendant makes partial representations but also suppresses some material facts." *LiMandri v. Judkins*, 52 Cal. App. 4th 326, 337, 60 Cal. Rptr. 2d 539 (1997).
        As Plaintiffs do not allege that a fiduciary duty existed and appear to have abandoned any theory of liability based on partial representation, only the second and third of the above-referenced circumstances are implicated in this motion. *Opp'n* 11: 1-3. Both, as noted, require a showing of "materiality."

**O**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**#353**

**CIVIL MINUTES - GENERAL**

| Case No. | CV 09 -8063 PSG (CWx) | Date | July 29, 2011 |
|---|---|---|---|
| Title | Christopher O'Shea *et al.* v. Epson America, Inc. *et al.* | | |

Plaintiffs argue that a disclosure duty existed in this case because: "(1) Epson had exclusive knowledge that their printers use a technology which is highly inefficient when operated in the 'real-life,' non-continuous mode used by consumers…;(2) Epson concealed this information from consumers by failing to disclose it – anywhere – and by actively repressing efforts to bring the information to consumers' attention; and (3) this information was material, to [Epson] and other consumers." *Opp'n* 11:20-12:2. Further, as evidence of materiality, Plaintiffs point to their declarations that:

> At the time that I purchased the printer, I had an expectation that the printer would provide print yields similar to comparable products. I did not know that the printer would provide non-continuous print yields significantly less than comparable products. If I had known that the printer would provide non-continuous print yields significantly less than comparable products, I would not have purchased the printer at the offered retail price.

*Rogers Decl. in Support of Plaintiffs' Motion for Class Cert.* ¶ 3 [Dkt. # 328 (Feb. 7, 2011)]; *see also Kim Decl.*, Ex. 36 [Dkt. # 422 (Mar. 29, 2011)]; *O'Shea Decl. in Support of Plaintiffs' Motion for Class Cert.* ¶ 3 [Dkt. # 327 (Feb. 7, 2011)]; *see also Kim Decl.*, Ex. 31 [Dkt. # 422 (Mar. 29, 2011)]; *Adams Decl. in Support of Plaintiffs' Motion for Class Cert.* ¶ 3 [Dkt. # 329 (Feb. 7, 2011)]; *see also Kim Decl.*, Ex. 33 [Dkt. # 422 (Mar. 29, 2011)]. Thus, Plaintiffs conclude that Epson was obligated to disclose the "grossly inefficient" ink yields generated by its printers in "real-life."

      The Court, however, disagrees. To start, Plaintiffs fail to identify – and the Court is unable to find – any case in any jurisdiction in which a court imposed an affirmative, legal obligation upon a manufacturer to disclose on its packaging that its products performed less efficiently than similar products from competing manufacturers (or, less efficiently than "reasonable consumer expectations"). To the contrary, as Epson points out, courts have unequivocally rejected this proposition. As one federal court explained, "in the absence of some special circumstance, any [duty to disclose information about a competitor's products] would be anathema in a competitive free-market economy." *Francis v. Mead Johnson & Co.,* 2010 WL 5313540 at *5 (D. Colo. 2010); *see also Castillo v. Dean Witter Discover & Co.,* 1998 WL 342050, at *8 (S.D.N.Y. June 25, 1998) ("Plaintiffs have not come forth with anything from

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

#353

CIVIL MINUTES - GENERAL

| Case No. | CV 09 -8063 PSG (CWx) | Date | July 29, 2011 |
|---|---|---|---|
| Title | Christopher O'Shea *et al.* v. Epson America, Inc. *et al.* | | |

which to conclude that defendants have the duty to disclose to its customers facts concerning comparable products of Dean Witter's competitors…."); *Adamson v. Ortho-McNeil Pharmaceutical, Inc.*, 463 F. Supp. 2d 496, 504 (D.N.J. 2006) ("courts have routinely held that competitors have no duty to advertise or sell a competitor's products.") (citing *Olympia Equip. Leasing Co. v. W. Union Tel. Co.*, 797 F. 2d 370, 375-379 (7th Cir. 1986); *Morgan v. Microsoft Corp.*, 107 Wash. App. 1001, 2001 WL 783758 at *3 (2001)).

Further, the Court finds Plaintiffs' reliance on cases purportedly imposing such a duty, *see, e.g., Falk v. General Motors Corp.*, 496 F. Supp. 2d 1088, 1096 (N.D. Cal. 2007); *Chamberlan v. Ford Motor Co.*, 369 F. Supp. 2d 1138, 1145 (N.D. Cal. 2005); *Grisham v. Philip Morris, Inc.*, 670 F. Supp. 2d 1014 (C.D. Cal. 2009), unconvincing. These cases are factually distinguishable in that the allegedly omitted information concerned safety-related product defects.[7] *See, e.g., Daugherty*, 144 Cal. App. 4th at 839 n.8 (distinguishing *Chamberlan* as involving "dangerous manifold defect"); *Oestreicher v. Alienware Corp.*, 544 F. Supp. 2d 964, 971 (N.D. Cal. 2008) (distinguishing *Falk* on grounds that the "safety consideration" presented by a defective speedometer was "integral" to the district court's finding of materiality); *see also Grisham*, 670 F. Supp. 2d at 1043 (plaintiff brought CLRA and UCL claim based on allegations that defendants fraudulently concealed information that chemicals in defendants' cigarettes caused periodontal disease and chronic obstructive pulmonary disease).

Although California courts are split on this issue, the weight of authority suggests that a "manufacturer's duty to consumers is limited to its warranty obligations absent either an

---

[7] The two additional cases Plaintiffs cite in a footnote, *In re Apple & AT & TM Antitrust Litig.*, 596 F. Supp. 2d 1288, 1311 (N.D. Cal. 2008) and *Baba v. Hewlett Packard Co.*, No. C 09-05946 RS, 2010 WL 2486353,at *3-4 (N.D. Cal. June 16, 2010) are similarly unhelpful. In *AT & TM Antitrust Litig.*, the court dismissed plaintiffs' CLRA omission claim upon finding that, because the complaint did not allege facts showing that a reasonable consumer "would have behaved differently," plaintiffs could not establish that a duty to disclose existed as a matter of law. Accordingly, the Court is not persuaded that this case supports the holding Plaintiffs seek.

Plaintiffs also cite *Baba v. Hewlett Packard Co.* as an example of a court that "reject[ed] [the] argument [that a] defendant is 'obliged to disclose' only when there are safety concerns posed by a defect." In *Baba,* however, the court merely stated that "*Oestreicher* and *Daugherty...* are factually distinguishable from this case in that they both involved alleged defects that had manifested themselves after expiration of the warranty period." *Id.* at *4.

**O**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**#353**

**CIVIL MINUTES - GENERAL**

| Case No. | CV 09 -8063 PSG (CWx) | Date | July 29, 2011 |
|---|---|---|---|
| Title | Christopher O'Shea *et al.* v. Epson America, Inc. *et al.* | | |

affirmative misrepresentation or a safety issue." *Oestreicher v. Alienware Corp.*, 322 Fed. Appx. 489, 493, 2009 WL 902341, at *3 (9th Cir. 2009). In *Oestreicher*, Judge Patel held that the plaintiff could not maintain CRLA, UCL, and fraudulent concealment claims based on the defendant's failure to disclose a purported design defect in a notebook computer's heat management system because the defendant was under no affirmative duty to disclose this information. *Oestreicher v. Alienware Corp.*, 544 F. Supp. 2d 964 (N.D. Cal. 2008). On appeal, the Ninth Circuit affirmed the court's dismissal of these claims, holding that the plaintiff's failure to allege that the defendant "affirmatively misrepresented its products" or that the alleged defect "posed a threat to his own safety or the safety of others" was fatal to his CLRA, UCL, and fraudulent concealment claims. *Oestreicher*, 322 Fed. Appx. at 493.

Similarly, in *Smith v. Ford Motor Co.,* the plaintiffs brought a CRLA omission claim based on Ford's alleged failure to disclose the risk that ignition locks in certain vehicles could result in an inability to start the vehicle. 749 F. Supp. 2d 980, 987 (N.D. Cal. 2010). The court, relying on *Daughtry,* held that, absent evidence of a safety concern, the plaintiff could not succeed as a matter of law. *Id.* at 988; *accord Morgan v. Harmonix Music Systems, Inc.,* 2009 WL 2031765, at *4 (N.D. Cal. 2009) (dismissing claims based on allegedly defective video game drum pedals) ("[a]ccording to all of the relevant case law, defendants are only under a duty to disclose a known defect in a consumer product when there are safety concerns associated with the product's use"); *Wilson v. Hewlett–Packard Co.,* 2009 WL 3021240, *1 (N.D. Cal. 2009) (dismissing plaintiff's CLRA claim based on the defendant manufacturer's alleged duty to disclose an omitted fact where safety concerns were not implicated); *Hoey v. Sony Electronics, Inc.,* 515 F. Supp. 2d 1099, 1105 (N.D. Cal. 2007) (holding "[t]here is no authority that provides that the mere sale of a consumer electronics product in California can create a duty to disclose any defect that may occur during the useful life of the product"). While there may exist some circumstances under which a defendant is obligated to disclose information not concerning a safety-related defect, the Court finds that the facts of this particular case fall more in line with *Daughtry, Oestreicher, and Smith,* than with *Falk* and other cases where courts have recognized a broader duty to disclose.

Further, it bears emphasis that this case differs from all the cases discussed above in one significant respect: this is not a products liability case. Plaintiffs do not allege that Epson's printers were defective, let alone dangerously defective. Their claim, rather, is that they were unhappy upon discovering that Epson's printers "wasted" more ink than the HP printers they previously owned. It is telling that Plaintiffs are unable to identify any case where a court

**O**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**#353**

**CIVIL MINUTES - GENERAL**

| Case No. | CV 09 -8063 PSG (CWx) | Date | July 29, 2011 |
|---|---|---|---|
| Title | Christopher O'Shea *et al.* v. Epson America, Inc. *et al.* | | |

imposed a factually analogous duty. California's consumer protection laws, though broad, do not extend so far as to require a company to denigrate its own products or promote those of its competitors just because consumers might be interested in the comparison. The duty Plaintiffs seek to impose upon Epson is properly served by independent consumer reports.

Thus, for the foregoing reasons, the Court holds that Epson was not legally obligated to disclose that actual print yields generated by its printers and ink cartridges are "grossly inefficient" vis à vis "reasonable consumer expectations and the yields of other manufacturers' printers." *TAC* ¶ 1. Because Epson was not obligated to disclose the purportedly "omitted" information, Plaintiffs' omission-based claims under CLRA, the UCL, and the FAL consequently fail as a matter of law.[8] Summary judgment is therefore GRANTED with respect to Plaintiffs O'Shea and Adams' first three causes of actions in their entirety; and GRANTED with respect to Plaintiff Rogers' omission-based claims under CLRA, the UCL, and the FAL.

b. <u>Affirmative Misrepresentation Theory of Liability</u>

Plaintiff Rogers also asserts CLRA, UCL, and FAL claims based on a statement on the packaging of Epson's NX200 Series printers that a user need "[r]eplace only the color you need with individual ink cartridges." *TAC* ¶ 64; *Kim Decl.,* Ex. 37 [Dkt. # 422 (Mar. 29, 2011)]. According to Ms. Rogers, this representation misleads consumers into believing that the printers will print even if an ink cartridge is expended or not installed, enabling them, for instance, to print a black-and-white document even though the magenta cartridge is empty. *Id.* In actuality, however, Epson NX Series printers will not operate under such conditions; all cartridges are required for the printer to function. *Morgan Decl*., Ex. 5 [Dkt. # 353-4 (Feb. 25, 2011)].

Epson presents three arguments as to why it is entitled to summary judgment on Ms. Rogers' affirmative misrepresentation-based claims. First, it contends that the statement at issue is not actionable because it is "unquestionably true." *Mot.* 14:13. Second, Epson argues that the representation was immaterial. *Id.* 15:17-16:11. Lastly, it asserts that Ms. Rogers' claims fail as a matter of law because she did not suffer a cognizable injury. However, as discussed below, the Court finds that none of these grounds justify summary judgment.

---

[8] The Court accordingly need not evaluate Epson's additional arguments regarding materiality, actual injury and ascertainable loss with respect to the omission-based claims.

**O**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**#353**

**CIVIL MINUTES - GENERAL**

| Case No. | CV 09 -8063 PSG (CWx) | Date | July 29, 2011 |
|---|---|---|---|
| Title | Christopher O'Shea *et al.* v. Epson America, Inc. *et al.* | | |

First, while it is undisputed that Epson's representation, "replace only the color you need" is literally true,[9] truth does not necessarily foreclose liability under the UCL, FAL, or CLRA. As one California appellate court explained, "a perfectly true statement couched in such a manner that it is likely to mislead or deceive the consumer, such as by failure to disclose other relevant information, is actionable under Section 17200." *Morgan v. AT & T Wireless Servs., Inc.*, 177 Cal. App. 4th 1235, 1255, 99 Cal. Rptr. 3d 768, 785 (2009) (emphasis omitted); *see also Gutierrez v. Wells Fargo Bank, N.A.,* 730 F. Supp. 2d 1080, 1127 (N.D. Cal. 2010). Here, Ms. Rogers understood Epson's representation to mean that, if she wanted to print only black text, the printer would require only a black ink cartridge. *Kim Decl.*, Ex. 36 (*Rogers Depo.* 43:7-12) [Dkt. # 422 (Mar. 29, 2011)]. Although Plaintiff's understanding of this statement was not correct as a matter of fact, neither was it unreasonable as a matter of law. Contrary to what Epson suggests, Ms. Rogers' affirmative misrepresentation claims are not predicated on a "strained and unjustified interpretation of the [defendant's] advertisements." *Veloff v. Pac. Bell Wireless*, 2002 WL 31429802, at *3 (Cal. App. Oct. 31, 2002) (internal citations and quotations omitted); *Mot.* 16:4. Epson errs in assuming that the average consumer is familiar enough with printer technology and operations to know that small amounts of colored ink are used when printing black-and-white documents to "keep the print head clear." *Utter Decl.,* Ex. 2 (*FAQ under the "Ink" category for the Epson NX200 printer model*) [Dkt. # 353-8 (Feb. 25, 2011)]. It follows, then, that if a reasonable consumer might not know that all colors of ink are "needed" to print, he or she could reasonably understand the statement "replace only the color you need" to mean he or she would only "need" to replace whatever ink cartridge matches the color that appears on the printed page. Accordingly, the Court concludes that the question of whether a reasonable consumer would likely have been deceived by Epson's representation, "replace only the color you need," is properly resolved by a jury.[10] *See Miletak v. Allstate Ins. Co.*, No. C 06-

---

[9] The NX series printer has individual cartridges that can be replaced when only a single color is expended (as opposed to a single cartridge multi-ink format that forces a consumer to discard all colors even when only one has been used). *SUF* ¶ 41; *SGI* ¶ 41.

[10] This holding is consistent with the Court's prior Order granting in part and denying in part Epson's motion to dismiss Plaintiff's Second Amended Complaint, *see* Dkt. # 48 (Mar. 5, 2010) at 7 ("[T]he Court disagrees that, as a matter of law, [the statements identified in the Complaint relating to Epson's NX series printers] are not reasonably susceptible to Plaintiffs' interpretation of them, especially since the allegedly misleading statements appeared on the printers' packaging, while the additional disclosures to which Epson points are purportedly found on Epson's website.").

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

#353

CIVIL MINUTES - GENERAL

| Case No. | CV 09 -8063 PSG (CWx) | Date | July 29, 2011 |
|---|---|---|---|
| Title | Christopher O'Shea *et al.* v. Epson America, Inc. *et al.* | | |

03778 JW, 2010 WL 809579, at *7 (N.D. Cal. Mar. 5, 2010) (finding a triable issue of fact existed as to whether the defendant's conduct was fraudulent within the meaning of the UCL because "reasonable minds could differ" as to whether a reasonable consumer would likely have been deceived by defendant's billing statement and accompanying explanatory materials).

      The Court is also not persuaded by Epson's second argument that the record lacks evidence of materiality. Epson suggests that the fact that color ink was used during black printing was not material to Ms. Rogers because she did not "disabuse" herself of her misperception even though correct information was available on Epson's website. *Mot.* 16:3-7. This position, however, sets too high a bar. As the California Supreme Court recently explained in *Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 332-33, 120 Cal. Rptr. 3d 741, 759 (2011), "[a] misrepresentation is judged to be 'material' if 'a reasonable man would attach importance to its existence or nonexistence in determining his choice of action in the transaction in question[.]" (internal quotations omitted). Here, Ms. Rogers expressly testified that she "made [her] decision [to purchase the Epson NX200 series printer] based on what information was provided on the [printer] boxes" in the store, *Kim Decl.*, Ex. 36 (*Rogers Depo.* 70:11-18), and that she would not have purchased the printer but for Epson's misleading representation and failure to disclose how the printer actually functioned. *Id.* at 200:13-22; *see also Kim Decl.*, Ex. 35 (*Rogers Decl.* ¶ 4) ("I would not have purchased the printer at the offered retail price if I had not read [the statement on the printer box that read: "Replace only the color you need with individual ink cartridges"], or if I had been told otherwise that all of the ink cartridges would be required even if I only wanted to print black text only documents."). These averments, at minimum, create a triable issue of fact as to whether Ms. Rogers relied on a material misrepresentation. Accordingly, materiality is not a proper basis upon which to summarily adjudicate this case.

      Nor is the Court persuaded by Epson's third argument that Ms. Rogers' claim fails as a matter of law because she has not suffered a cognizable injury based on the printer's failure to print in black when a color cartridge is missing. Epson contends that, as it is undisputed that Ms. Rogers printed in color approximately 25% of the time, *see Morgan Decl.*, Ex. 4 (*Rogers Depo.* at 172:21-173:3), she suffered no injury because she would have eventually needed to replace all her color cartridges to print in color anyway. *Mot.* 16:12-17:5. This position, however, misconstrues the nature of Ms. Rogers' alleged injury. Under the rule articulated in *Kwikset Corp. v. Superior Court*, Ms. Rogers sufficiently alleged injury simply by asserting that she spent money on an allegedly mislabeled product. *See Kwikset Corp.*, 51 Cal. 4th at 332 ("[L]ost money or property—economic injury—is itself a classic form of injury in fact."). As previously

**O**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**#353**

CIVIL MINUTES - GENERAL

| Case No. | CV 09 -8063 PSG (CWx) | Date | July 29, 2011 |
|---|---|---|---|
| Title | Christopher O'Shea *et al.* v. Epson America, Inc. *et al.* | | |

noted, Ms. Rogers testified that she purchased an Epson NX200 series printer after reading Epson's representation that a user need "replace only the color you need with individual ink cartridges," and that she would not have purchased the printer and replacement ink cartridges at the offered retail price if she had not read and relied on the representation, or was otherwise informed that all cartridges were required to print documents in black ink only. *See Kim Decl.*, Ex. 35 (*Rogers Decl.* ¶¶ 2-4). Such averments create a triable issue of fact sufficient to defeat Epson's motion for summary judgment on this basis.

Thus, for the foregoing reasons, the Court holds that the record in this case does not support summary judgment on Ms. Rogers' affirmative misrepresentation claims. Epson's motion for summary judgment on this set of claims is therefore DENIED.[11]

### B. Common Law Fraud Claim (Fourth Cause of Action)

Plaintiffs' final cause of action is for common-law fraud. The elements of a common-law fraud claim are: (1) a misrepresentation (false representation, concealment, or nondisclosure); (2) knowledge of falsity (or scienter); (3) intent to defraud, *i.e.,* to induce reliance; (4) justifiable reliance; and (5) resulting damage. *Robinson Helicopter Co., Inc. v. Dana Corp.*, 34 Cal. 4th 979, 990, 22 Cal. Rptr. 3d 352, 359 (2004) (citing *Lazar v. Superior Court*, 12 Cal. 4th 631, 638, 49 Cal. Rptr. 2d 377 (1996)).

To establish fraud through nondisclosure or concealment of facts, it is necessary to show that the defendant "was under a legal duty to disclose them." *Buckland v. Threshold Enters., Ltd.*, 155 Cal. App. 4th 798, 807, 66 Cal. Rptr. 3d 543, 548 (2007). Accordingly, for the same reasons that Plaintiffs' omission-based claims failed under CLRA, the UCL, and the FAL, summary judgment is also appropriate on Plaintiffs' common-law fraud claim based on Epson's alleged failure to disclose its inefficient ink yields. *See Falk v. General Motors Corp.,* 496 F. Supp. 2d 1088, 1094-95 (N.D. Cal. 2007) (stating that the circumstances giving rise to a duty to

---

[11] Epson also argues that in the event summary judgment is not granted entirely, the class period should be limited in accordance with a previous ink-related class action settlement. *See Def. Request for Judicial Notice ("RJN")*, Exs. 4, 5. While the Court declines to take up the scope of the putative Subclass (on behalf of whom Ms. Rogers makes her affirmative misrepresentation claim) at this time, it finds Epson's position regarding this issue to be sound and will consider this limitation in ruling on Plaintiffs' pending motion for class certification.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**O**

**#353**

CIVIL MINUTES - GENERAL

| Case No. | CV 09 -8063 PSG (CWx) | Date | July 29, 2011 |
|---|---|---|---|
| Title | Christopher O'Shea *et al.* v. Epson America, Inc. *et al.* | | |

disclose in the context of a CLRA claim are the same as those giving rise to such a duty in the context of a common-law fraudulent concealment claim).

Although it is not clear whether Plaintiff Rogers intends to proceed with a common-law fraud claim based on the "Replace only what you need" statement, the operative pleading asserts this as a basis for the fourth cause of action. *TAC* ¶¶ 128, 130, 133. As the moving and opposing papers do not specifically address the viability of this common-law fraud claim, the Court declines to grant summary judgment on Ms. Rogers' fourth cause of action.

V.  Conclusion

Thus, based on the foregoing, Epson's motion for summary judgment is GRANTED with respect to Plaintiffs' omission-based claims and DENIED with respect to Plaintiff Rogers' affirmative misrepresentation-based claims.

**IT IS SO ORDERED.**