O

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES - GENERAL

| Case No. | CV 09-8063 PSG (CWx) | Date | Sept. 19, 2011 |
|---|---|---|---|
| Title | Christopher O'Shea *et al.* v. Epson America, Inc. *et al.* | | |

| Present: | The Honorable Philip S. Gutierrez, United States District Judge |
|---|---|

| Wendy K. Hernandez | Not Present | n/a |
|---|---|---|
| Deputy Clerk | Court Reporter | Tape No. |

| Attorneys Present for Plaintiff(s): | Attorneys Present for Defendant(s): |
|---|---|
| Not Present | Not Present |

**Proceedings:**      **(In Chambers) Order DENYING Plaintiff's motion for class certification**

Before the Court is Plaintiff Gisele Rogers' ("Plaintiff") motion for class certification. A hearing on the motion was held on September 2, 2011. After considering the papers submitted in support of and in opposition to the motion, as well as arguments presented at the hearing, the Court DENIES the motion.

I.      <u>Background</u>

In May 2009, Plaintiff Gisele Rogers ("Plaintiff") purchased a "Stylus NX 200" ("NX 200") inkjet printer manufactured by Defendants Epson America, Inc., Epson Accessories, Inc., and Seiko Epson Corporation (collectively, "Epson"). *TAC* ¶ 27 [Dkt. # 282 (Oct. 27, 2010)]. Her decision to purchase this printer was allegedly based, in part, on a statement on the printer box that read: "Replace only the color you need with individual ink cartridges." *TAC* ¶ 64. Plaintiff allegedly understood this statement to mean that the printer would only require a black cartridge to print black text. *Kim Decl.*, Ex. 36 (*Rogers Depo.* 43:7-12) [Dkt. # 422 (Mar. 29, 2011)]. In actuality, as Plaintiff soon discovered, the Epson NX 200 printer requires all cartridges to function. *Id.*; *see also Utter Decl.* ¶ 4, Ex. 1 [Dkt. # 353-8 (Feb. 25, 2011)].

Unhappy about how frequently she had to purchase replacement ink cartridges, Ms. Rogers ultimately discarded her Epson printer and replaced it with a similar model manufactured by Hewlett-Packard. *Kim Decl.*, Ex. 36 (*Rogers Depo.* 135:21-25) [Dkt. # 422 (Mar. 29, 2011)]. She subsequently filed suit against Epson (along with now-dismissed plaintiffs Christopher O'Shea and Jeff Adams) claiming that Epson failed to disclose and affirmatively misrepresented

O

### UNITED STATES DISTRICT COURT
### CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | CV 09-8063 PSG (CWx) | Date | Sept. 19, 2011 |
|---|---|---|---|
| Title | Christopher O'Shea *et al.* v. Epson America, Inc. *et al.* | | |

material information regarding the functionality and value of its printers.[1]  Specifically, Ms. Rogers asserts claims for unfair business practices under Cal. Bus. & Prof. Code § 17200, *et seq.* ("UCL"), and false advertising in violation of Cal. Bus. & Prof. Code § 17500, *et seq.* ("FAL"), alleging that Epson's statement that users need "[r]eplace only the color that [they] need with individual ink cartridges" was "false, untrue, and/or misleading."  *TAC* ¶ 64.

Plaintiff now brings this motion pursuant to Federal Rule of Civil Procedure 23(b)(3), asking this Court to certify a nation-wide class of individuals who "between August 28, 2005 and class certification, purchased, not for resale, an Epson Stylus NX-series printer."[2]  *Mot. for Class Certification* at 8:18-20; *TAC* ¶ 66.

II.    Legal Standard

"The class action is 'an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only.'"  *Wal–Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011) (citing *Califano v. Yamasaki*, 442 U.S. 682, 700–01 (1979)).  Class certification is appropriate when it "saves the resources of both the courts and the parties by permitting an issue potentially affecting every [class member] to be litigated in an economical fashion under Rule 23 [of the Federal Rules of Civil Procedure]."  *Gen. Tel. Co. of the Sw. v. Falcon,* 457 U.S. 147, 155 (1982) (quoting *Califano*, 442 U.S. at 701).  To certify a class action, a plaintiff must first show that the elements of Rule 23(a) have been met.  *In re Mego Fin. Corp. Sec. Litig.,* 213 F.3d 454, 462 (9th Cir. 2000).  Rule 23(a) imposes four prerequisites for a proper class action:

---

[1] Plaintiffs' original complaint also asserted omission-based claims for unfair business practices, false advertising, violation of the Consumer Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1750, *et seq.*, and common law fraud, based on allegations that Epson "misrepresent[ed] and conceal[ed] the grossly inefficient print yields generated by its ink cartridges, which are well below reasonable consumer expectations and the yields other manufacturers' printers."  *See TAC* ¶ 1 [Dkt. # 282 (Oct. 27, 2010)]; *see also Notice of Removal* [Dkt. # 1 (Nov. 4, 2009)].  As the parties are well aware, on July 29, 2011, the Court granted summary judgment in Epson's favor on Plaintiffs' omission-based claims, thereby dismissing Plaintiffs O'Shea and Adams from this action, and narrowing the case to consist of only Ms. Rogers' affirmative misrepresentation-based claims under the UCL and FAL.

[2] The Court refers to Ms. Rogers' claim as the "class claim," notwithstanding that the moving and opposing papers – which were drafted before the Court's July 29, 2011 summary judgment Order – refer to this claim as the "subclass" claim.

O

### UNITED STATES DISTRICT COURT
### CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | CV 09-8063 PSG (CWx) | Date | Sept. 19, 2011 |
|---|---|---|---|
| Title | Christopher O'Shea *et al.* v. Epson America, Inc. *et al.* | | |

> (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).  More than a pleading standard, Rule 23 requires the party seeking class certification to "affirmatively demonstrate ... compliance with the rule — that is, he must be prepared to prove that there are in fact sufficiently numerous parties, common questions of law or fact, etc." *Dukes*, 131 S. Ct. at 2551.

If the district court finds that all four of the Rule 23(a) requirements are satisfied, the plaintiff must then establish that at least one of the three requirements set forth in Rule 23(b) is met.  Under Rule 23(b), a class may be maintained if there is either (1) a risk of substantial prejudice from separate actions; (2) if declaratory or injunctive relief benefitting the class as a whole would be appropriate; or (3) if common questions of law or fact predominate and the class action is superior to other available methods of adjudication.  *See* Fed. R. Civ. P. 23(b).

III.   Discussion

A.   Rule 23(a) Requirements

In determining whether the prerequisites of Rule 23 have been met, the Court must conduct a "rigorous analysis."  *Falcon*, 457 U.S. at 161.  It thus addresses in turn the requirements set forth in Rule 23(a) —numerosity, commonality, typicality, and adequacy of representation.

1.   *Numerosity*

The first requirement for maintaining a class action under Rule 23(a) is that the class is so numerous that joinder of all members would be "impracticable."  *See* Fed. R. Civ. P. 23(a)(1). "The specific requirement that the class be so numerous that joinder of all members is impractical does not mean that joinder must be impossible, but rather means only that the court must find that the difficulty or inconvenience of joining all members of the class makes class litigation desirable."  *In re Itel Securities Litigation*, 89 F.R.D. 104, 112 (N.D. Cal. 1981). Courts have routinely found the numerosity requirement satisfied where the putative class

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 09-8063 PSG (CWx) | Date | Sept. 19, 2011 |
|---|---|---|---|
| Title | Christopher O'Shea *et al.* v. Epson America, Inc. *et al.* | | |

consists of forty or more members.  *See Bond v. Ferguson Enterprises, Inc.*, No. 1:09–CV–1662 OWW, 2011 WL 2648879, at *4 (E.D. Cal. June 30, 2011).  Here, Plaintiff has proffered evidence that "at least 10,000 units [of the NX Series printers] were sold" during the class period.  *Kim Decl.*, Ex. B (*Leung Depo.* 551:25-552:23) [Dkt. # 332-2 (Feb. 7, 2011)].  In light of this evidence, and because Epson does not dispute this issue, the Court thus concludes that the numerosity requirement is met.

        2.    *Commonality*

      To satisfy Rule 23(a)'s commonality requirement, a class claim "must depend upon a common contention ... of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke."  *Wal–Mart Stores, Inc. v. Dukes*, 131 S.Ct. 2541, 2551 (2011).  As the Supreme Court explained in *Dukes*, the key consideration in assessing commonality is "not the raising of common questions – even in droves – but, rather, the capacity of a classwide proceeding to generate common *answers* apt to drive the resolution of the litigation."  *Id.* (internal citations and quotation omitted).

      Here, the parties disagree about whether class proceedings will generate common answers – not surprising, perhaps, given that they ask different questions.  According to Plaintiff, common questions in this case include "whether the packaging of the [] class printers contained representations that a consumer would need to '(r)eplace only the color that you need with individual ink cartridges'" and "whether Defendants' representation…would be likely to deceive a reasonable consumer."[3]  *Mot.* 11:14-22.  Epson, in contrast, characterizes the question as "whether the purported subclass was aware of how Epson's cartridge technology worked before buying their NX Printer."  *Supp. Opp'n* 4:22-24 [Dkt. # 559 (Aug. 11, 2011)].

      In the Court's estimation, Plaintiff has the better view.  Epson may well be correct that whether putative class members were aware of how Epson's printers functioned is a question that would fail to generate common answers.  But this is not the salient inquiry.  As previously noted, Ms. Rogers asserts a claim under the UCL's "fraudulent" prong and a claim under

---

[3] It bears mention that while Plaintiff's moving papers also articulate common questions sounding in a theory of omission liability, this has subsequently been disclaimed as a basis for liability.  *See Opp'n to Def. Summary Judgment* 24:9-16 [Dkt. # 407 (Mar. 28, 2011)]; *Reply* 5:6-10 [Dkt. # 563 (Aug. 15, 2011)].

O

### UNITED STATES DISTRICT COURT
### CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | CV 09-8063 PSG (CWx) | Date | Sept. 19, 2011 |
|---|---|---|---|
| Title | Christopher O'Shea *et al.* v. Epson America, Inc. *et al.* | | |

California's FAL.  *See TAC*; *see also Pl. Opp'n to Def. Summary Judgment Mtn.* 18:18
("Plaintiffs' claims arise under the UCL's fraud prong.") [Dkt. # 407 (Mar. 28, 2011)].  For
liability to attach under either of these statutes based on false advertising or promotional
practices, it is necessary only to show that members of the public are "likely to be deceived" by
the advertising or promotion.  *Morgan v. AT & T Wireless Servs., Inc.*, 177 Cal. App. 4th 1235,
1254, 99 Cal. Rptr. 3d 768 (2009); *see also In re Tobacco II Cases,* 46 Cal. 4th 298, 312 n.8, 93
Cal. Rptr. 3d 559 (2009) ("A violation of the UCL's fraud prong is also a violation of the false
advertising law") (internal citations omitted).  Accordingly, as Plaintiff correctly asserts, the
central inquiry is whether Epson's representation that users need "[r]eplace only the ink that
[they] need" is likely to deceive a reasonable consumer.  This question is common to all
members of the putative class and, when answered, will be dispositive of this entire litigation.
The Court therefore holds that the commonality requirement set forth in Rule 23(a)(2) is met.
*See Dukes*, 131 S.Ct. at 2556 ("We quite agree that for purposes of Rule 23(a)(2) '[e]ven a single
[common] question' will do.") (internal quotations and citations omitted); *see also Hanlon v.
Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998) ("All questions of fact and law need not be
common to satisfy [Rule 23].").

        3.      *Typicality*

        The next Rule 23(a) consideration is typicality, which requires "the claims or defenses of
the representative parties [to be] typical of the claims or defenses of the class."  Fed. R. Civ. P.
23(a)(3).  "The test of typicality 'is whether other members have the same or similar injury,
whether the action is based on conduct which is not unique to the named plaintiffs, and whether
other class members have been injured by the same course of conduct.'"  *Hanon v. Dataproducts
Corp.*, 976 F.2d 497, 508 (9th Cir. 1992) (internal citations omitted); *see also Armstrong v.
Davis,* 275 F.3d 849, 868 (9th Cir. 2001) (typicality requirement is satisfied when each class
member's claim arises from the same course of events, and each class member makes similar
legal arguments to prove the defendant's liability).

        Here, the Court agrees with Plaintiff that her claim is typical of the claims of all
members of the proposed class.  As noted, Ms. Rogers' claims arise from a purported
misrepresentation relating to replacement ink cartridges on the packaging of the Epson NX 200
printer she purchased.  The claims of other putative class members arise from the same allegedly
deceptive representation.  In addition, the nature of Ms. Rogers' purported injury supports a
finding of typicality.  The injury she purportedly suffered is a quintessential UCL injury: she
claims that, absent Epson's purported misrepresentation, she would not have purchased the

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 09-8063 PSG (CWx) | Date | Sept. 19, 2011 |
|---|---|---|---|
| Title | Christopher O'Shea *et al.* v. Epson America, Inc. *et al.* | | |

printer or, alternatively, would have paid less for it.  The injury allegedly suffered by members of the putative class is identical.

While Epson invokes the test for typicality articulated above, it appears to apply a different analysis.  Specifically, in challenging the typicality of the class, Epson argues that because Ms. Rogers purportedly conceded that she would have bought her NX Series printer regardless of whether the printer used color ink to print black images, she therefore cannot establish materiality.  *See Opp'n* 15:22-17:2 [Dkt. # 392 (Mar. 17, 2011)].  This argument fails, however, for two reasons.  First, application of the Ninth Circuit's test for typicality as set forth in *Hanon* and its progeny does not require inquiry into whether Epson's statement on the packaging of its printers was material.  *Hanon*, 976 F.2d at 508; *see also Kingsbury v. U.S. Greenfiber, LLC*, No. CV 08–00151 AHM, 2011 WL 2619231, at *5 (C.D. Cal. May 23, 2011) (applying *Hanon*).  Second, the Court rejected this same argument about materiality in denying summary judgment on Ms. Rogers' affirmative misrepresentation-based claims.  *See Order Granting in Part and Denying in Part Defendants' Mot. for Summary Judgment* at 16 (holding that a question of fact regarding materiality was created by Ms. Rogers' testimony that "[she] would not have purchased the printer at the offered retail price if [she] had not read [the statement on the printer box that read: "Replace only the color you need with individual ink cartridges"], or if [she] had been told otherwise that all of the ink cartridges would be required even if [she] only wanted to print black text only documents.") (internal citations omitted) [Dkt. # 542 (July 29, 2011)].

Thus, based on the foregoing, the Court concludes that the typicality requirement set forth in Rule 23(a)(3) is satisfied in this case.

4.     *Adequate Representation*

Rule 23(a)'s final requirement is that "the representative parties will fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a)(4).  "To satisfy constitutional due process concerns, absent class members must be afforded adequate representation before entry of a judgment which binds them."  *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998) (citing *Hansberry v. Lee,* 311 U.S. 32, 42-43 (1940)).  In assessing whether representation is adequate, courts in this Circuit engage in a two-pronged inquiry, asking: (1) whether the named plaintiffs and their counsel have any conflicts of interest with other class members; and (2) whether the named plaintiffs and their counsel will prosecute the action vigorously on behalf of the class.  *Id.* (citing *Lerwill v. Inflight Motion Pictures, Inc.*, 582 F.2d 507, 512 (9th Cir. 1978)).

O

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | CV 09-8063 PSG (CWx) | Date | Sept. 19, 2011 |
|---|---|---|---|
| Title | Christopher O'Shea *et al.* v. Epson America, Inc. *et al.* | | |

Taking these inquiries out of order, the Court first notes that the extensive history of this contentious litigation leaves little room for doubt as to whether Plaintiff and her counsel intend to prosecute this action vigorously on behalf of the class. Accordingly, finding the second element of this analysis readily satisfied, the Court turns to the central point of contention, namely, whether a conflict of interest between Plaintiff, her counsel, and putative class members precludes satisfaction of Rule 23(a)(4).

Although Plaintiff asserts that "no conflicts of interest or antagonistic interests" exist between her and the putative class, Epson contends otherwise, challenging the adequacy of representation on two grounds. First, it argues that Plaintiff is an inadequate class representative because, as a former Yuhl Stoner attorney, she has "a pre-existing financial relationship with counsel and motivation to appease counsel at the expense of class members." *Opp'n* 18:23-25 [Dkt. # 392 (Mar. 17, 2011)]. Second, it maintains that Plaintiff's counsel's concurrent representation of former Epson executive Fabrice Commelin in a state court lawsuit against Epson renders the Yuhl Stoner and Akin Gump firms inadequate as counsel. *Id.* 19:12-20:18; *see also Supp. Opp'n* 6:20-8:2 [Dkt. # 559 (Aug. 11, 2011)].

Neither argument, in the Court's view, suffices to defeat class certification. First, the fact that Ms. Rogers was recruited to serve as class counsel does not necessarily affect her adequacy as a class representative. *See Poulos v. Caesars World, Inc.,* No. CV-S-94-1126-RLH-RJJ, 2002 WL 1991180, at *6 (D. Nev. June 25, 2002); *see also Roberts v. Source for Public Data*, No. 2:08-cv-04167-NKL, 2009 WL 3837502, at *4 (W.D. Mo. 2009) (stating that "the mere fact that Plaintiffs agreed to serve as representatives of the class after meeting with Plaintiffs' attorneys is not sufficient to deny class certification"). Nor does Plaintiff's status as a former part-time contract attorney at Yuhl Stoner, *Reply* 6:11-15 (citing *Morgan Decl.*, Ex. 2 at 16:21-25), necessarily preclude her from acting as a fair and adequate class representative. The mere potential for a conflict of interest is not sufficient to defeat class certification; the conflict must be actual, not hypothetical. *See Cummings v. Connell*, 316 F.3d 886, 896 (9th Cir. 2003) (citing *Soc. Servs. Union, Local 535 v. County of Santa Clara*, 609 F.2d 944, 948 (9th Cir. 1979) ("Mere speculation as to conflicts that may develop at the remedy stage is insufficient to support denial of initial class certification.")). Here, because Epson presents no evidence showing that Ms. Rogers' prior association with the Yuhl Stoner firm has manifested in an *actual* conflict, denial of class certification on this basis is inappropriate. The Court therefore concludes that Ms. Rogers is an adequate representative within the meaning of Rule 23(a)(4). *See In re Static Random Access Memory (SRAM) Antitrust Litigation*, 264 F.R.D. 603, 609 (N.D. Cal. 2009) (rejecting defendant's argument that several proposed representatives were inadequate under

**O**

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES - GENERAL

| Case No. | CV 09-8063 PSG (CWx) | Date | Sept. 19, 2011 |
|---|---|---|---|
| Title | Christopher O'Shea *et al.* v. Epson America, Inc. *et al.* | | |

Rule 23(a)(4) based on business or personal relationships with the attorneys who represented them in the class action litigation).

Epson's second set of arguments about Plaintiff's counsel's purported conflict are similarly unpersuasive. Contrary to Epson's contention, it is not apparent at this juncture that the interests of the putative class actually conflict with the interests of Fabrice Commelin, the former Epson executive represented by Yuhl Stoner and Akin Gump in a wrongful termination action. Mr. Commelin's lawsuit arises from allegations that he was fired in retaliation for complaining about problems with Epson's printers' ink yields. *Baldocchi Decl.* ¶ 2 [Dkt. # 527 (July 14, 2011)]. On June 28, 2011, the state court issued a decision granting Epson summary adjudication on its cross-claims against Commelin for conversion and breach of his confidentiality agreement. *Id.*, Ex. 2 at 1:18-23. Epson now asserts that a conflict precluding class certification has ripened because "[a]mong the damages it will seek for [its state court cross-claims] are its attorneys' fees and costs for defending [this litigation] because it was launched as a direct result of Commelin's conversion and breach." *Supp. Opp'n* 7:1-4.

To be sure, the Court recognizes that a conflict could arise from Akin Gump and Yuhl Stoner's concurrent representation of a class seeking damages against Epson and an individual who may have to compensate Epson for the costs it occurred in defending the same class action.[4] Nonetheless, it is unconvinced that this scenario warrants denial of Plaintiff's motion at this time. The law of this Circuit "does not favor denial of class certification on the basis of speculative conflicts." *Cummings*, 316 F.3d at 896; *see also Blackie v. Barrack*, 524 F.2d 891, 909 (9th Cir. 1975) (noting that class members might have differing interests at later stages of litigation, but that "potential conflicts" do not present a valid reason for refusing to certify a class). Although Epson contends that Plaintiff's counsel's conflict has "irrevocably ripened," the only evidence proffered in support of this assertion is (1) a Daily Journal article discussing the situation, *see Morgan Decl.*, Ex. 5 [Dkt. # 526 (July 14, 2011)]; and (2) a statement by the state court judge during state court summary judgment proceedings that he "*suppose[d]* [Epson] could recover [its] attorney's fees if the *O'Shea* litigation is pursued if [Epson] can show that there is damage there by disclosing the information." *Baldocchi Decl.*, Ex. 2 at 45 (emphasis added) [Dkt. # 527 (July 14, 2011)]. This evidence does not suffice to show that, at present, an

---

[4] Incidentally, the Court notes that its July 2011 Order granting summary judgment in Epson's favor on the omission-based claims renders the connection between the state litigation (which arose from disclosure of a document pertaining to Epson's printers' allegedly inefficient ink yields) and the federal class action (which no longer involves any claims regarding inefficient ink yields) more tenuous.

O

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | CV 09-8063 PSG (CWx) | Date | Sept. 19, 2011 |
|---|---|---|---|
| Title | Christopher O'Shea *et al.* v. Epson America, Inc. *et al.* | | |

actual conflict of interest exists as would renders class counsel inadequate. Accordingly, the Court finds that Rule 23(a)(4) is met.[5]

    **B.**    <u>Rule 23(b) Requirements</u>

    Having found that Plaintiff satisfied the requirements of Rule 23(a), the Court next considers whether Plaintiff has shown that at least one of the requirements of Rule 23(b) is met. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 614-15 (1997). Here, Plaintiff seeks certification under Rule 23(b)(3), which requires that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Certification under Rule 23(b)(3) is proper "whenever the actual interests of the parties can be served best by seling their differences in a single action." *Aho v. AmeriCredit Financial Services, Inc*., No. 10-CV-1373 DMS, 2011 WL 3047677, at *8 (S.D. Cal. July 25, 2011) (quoting *Hanlon*, 150 F.3d at 1022). Analysis under Rule 23(b)(3) entails two separate inquiries: (1) whether issues common to the class "predominate" over issues unique to individual class members, and (2) whether the proposed class action is "superior" to the other methods available for adjudicating the controversy. Fed. R. Civ. P. 23(b)(3). The Court will address each in turn.

        **1.**    *Predominance Requirement*

    The predominance test under Rule 23(b)(3) is used to evaluate whether "adjudication of common issues will help achieve judicial economy." *Vinole v. Countrywide Home Loans, Inc.,* 571 F.3d 935, 944 (9th Cir. 2009) (quoting *Zinser v. Accufix Research Inst., Inc.,* 253 F.3d 1180, 1189 (9th Cir. 2001)). To this end, it requires courts to determine whether common issues constitute such a significant aspect of the action that "there is a clear justification for handling the dispute on a representative rather than on an individual basis." *Aho*, 2011 WL 3047677 at *8 (internal citations omitted). To satisfy the predominance inquiry under Rule 23(b)(3), a plaintiff must show more than the mere existence of a common question of law or fact (as Rule 23(a)(2) requires); he or she must show that the common question of law or fact predominates. *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2556 (2011).

---

[5] Following the process used by the district court and approved by the Ninth Circuit in *Cummings v. Connell,* 316 F.3d 886 (9th Cir. 2003), if Epson is subsequently able to provide proof of an actual conflict, it may present such proof in the form of a motion to decertify.

O

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | CV 09-8063 PSG (CWx) | Date | Sept. 19, 2011 |
| --- | --- | --- | --- |
| Title | Christopher O'Shea *et al.* v. Epson America, Inc. *et al.* | | |

Plaintiff argues that common issues predominate for three reasons: first, because California law will be applied to the claims of all class members; second, because the question of whether Epson's representation on the packaging was false and misleading can be determined according to common proof; and third, because common evidence will prove class-wide restitution.[6]  *Mot.* 16:7-18:6; 24:1-9.  While the Court does not take issue with any of these assertions, it is nonetheless unconvinced that such commonalities predominate over questions affecting individual members of the putative class.

This is not to say that the Court accepts Epson's argument that individualized questions of reliance and materiality pervade the class claims, however.  *Opp'n* 11:22-12:14.  As previously noted, Plaintiff's UCL and FAL claims are governed by the "reasonable consumer" test, which requires Plaintiff to "show that members of the public are likely to be deceived." *Williams v. Gerber Products Co.*, 523 F.3d 934, 938 (9th Cir. 2008) (internal citations omitted). Because the focus of the UCL is on a defendant's conduct, rather than a plaintiff's damages, "relief under the UCL is available without individualized proof of deception, reliance and injury."  *Stearns v. Ticketmaster Corp.*, --- F.3d. ---, 2011 WL 3659354, at *4 (9th Cir. Aug. 22, 2011) (quoting *In re Tobacco II Cases*, 46 Cal. 4th 298, 312, 93 Cal. Rptr. 3d 559 (2009)). Thus, given that reliance and materiality are not elements of Plaintiff's claims, issues of reliance and materiality thus do not predominate over common issues shared by class members.  *See Aho*, 2011 WL 3047677, at *9 (rejecting argument that questions of individual reliance would predominate over common issues in a UCL claim).  Accordingly, class certification is not defeated on this basis.

Yet while the Court is not persuaded by Epson's contention that questions of reliance predominate, neither is it convinced that members of the putative class have standing to pursue their claims in federal court.  To have standing under Article III, a plaintiff must "present an injury that is concrete, particularized, and actual or imminent; fairly traceable to the defendant's challenged action; and redressable by a favorable ruling."  *Horne v. Flores,* 129 S.Ct. 2579, 2592 (2009) (citing *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560 (1992)).  As the Second Circuit has noted, "[t]he filing of suit as a class action does not relax this jurisdictional requirement."  *Denney v. Deutsche Bank AG*, 443 F.3d 253, 263 (2d Cir. 2006).

---

[6] According to Plaintiff, the "amount of restitution will be determined as the difference between the market price that Defendants charged for the Subclass Printers, with packaging containing the deceptive representation, and what the market value of the Subclass Printers would have been without the deceptive representation."  *Mot.* 24:12-16 (citing *Kriegler Decl.* ¶¶ 13-24; *Leitzinger Decl.* ¶ 9).

O

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | CV 09-8063 PSG (CWx) | Date | Sept. 19, 2011 |
|---|---|---|---|
| Title | Christopher O'Shea *et al.* v. Epson America, Inc. *et al.* | | |

In the context of Rule 23(b)(3), questions of Article III standing amount to an inquiry as to whether individual issues of injury-in-fact and causation predominate over common issues. *See Aho*, 2011 WL 3047677 at \*9-11.  Before engaging in this analysis, however, the Court must first address the threshold question of whether absent class members are required to have Article III standing to bring a UCL or FAL claim.  Plaintiff thinks not, citing the California Supreme Court's decision in *In re Tobacco II Cases*, 46 Cal. 4th 298, 93 Cal. Rptr. 3d 559, for the proposition that only class representatives have to meet standing requirements.  *Id.* at 306 ("We conclude that standing requirements are applicable only to the class representatives, and not all absent class members.").

The Court, however, disagrees with Plaintiff's contention that *Tobacco II* resolves this issue.  As another federal district court reasoned, *Tobacco II* addressed "only the *statutory standing* requirements of California's UCL as codified in Section 17204 of the Business & Professions Code; it did not address Article III standing in federal court."  *Aho*, 2011 WL 3047677 at \*9-11; *see also Webb v. Carter's Inc.*, 272 F.R.D. 489, 498 (C.D. Cal. 2011) (stating that the *Tobacco II* decision "did not, and could not, hold that uninjured parties could be class members in a class action brought in *federal* court, despite their lack of Article III standing"); *Burdick v. Union Sec. Ins. Co.*, No. CV 07-4028 ABC, 2009 WL 4798873, at \*4 (C.D. Cal. Dec. 9, 2009) ("Defendant is correct that, regardless of whether Plaintiffs state a claim under the UCL or FAL, they must still establish the Article III standing requirements set forth above.") (internal citation omitted); *accord Avritt v. Reliastar Life Ins. Co.*, 615 F.3d 1023, 1034 (8th Cir. 2010) (holding that "to the extent that *Tobacco II* holds that a single injured plaintiff may bring a class action on behalf of a group of individuals who may not have a cause of action themselves, it is inconsistent with the doctrine of standing as applied by federal courts").  The Court finds this authority persuasive, and likewise concludes that *Tobacco II* does not permit a federal class action to proceed where class members lack Article III standing.

Plaintiff's position that absent class members need not satisfy the Article III standing requirements is also directly at odds with a number of well-reasoned decisions by federal district courts sitting in California.  *See, e.g., Burdick*, 2009 WL 4798873 at \*4 (observing that requiring all class members to satisfy Article III's requirements "conforms to the Supreme Court's instruction that courts be 'mindful that Rule 23's requirements must be interpreted in keeping with Article III constraints.'") (internal quotations omitted); *Webb*, 272 F.R.D. at 497 ("Although there is no controlling authority requiring absent class members, as opposed to the named plaintiffs, to satisfy Article III's standing requirements, the Court is persuaded by authority indicating that they must."); *Aho*, 2011 WL 3047677 at \*10 ("The requirement that all members of the class have Article III standing makes sense. If that were not the rule, a class

O

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES - GENERAL

| Case No. | CV 09-8063 PSG (CWx) | Date | Sept. 19, 2011 |
|---|---|---|---|
| Title | Christopher O'Shea *et al.* v. Epson America, Inc. *et al.* | | |

could include members who could not themselves bring suit to recover, thus permitting a windfall to those class members and allowing Rule 23 to enlarge substantive rights."). The holdings in these cases comport with the views of other federal appellate courts as well. *See, e.g., Denney v. Deutsch Bank AG*, 443 F.3d 253, 263–64 (2d Cir. 2006) (stating class must be defined in such a way that all members have Article III standing); *Adashunas v. Negley*, 626 F.2d 600 (7th Cir. 1980) (affirming denial of class certification where it was unclear "that the proposed class members have all suffered a constitutional or statutory violation warranting some relief.").

Plaintiff suggests that these cases are inconsistent with *Bates v. United Parcel Serv., Inc.*, 511 F.3d 974 (9th Cir. 2007), in which the Ninth Circuit stated that "[i]n a class action, standing is satisfied if at least one named plaintiff meets the requirements."[7] *Id.* at 985. However, as other courts have noted, *Bates* did not resolve the question of whether *all* members of a class must satisfy Article III requirements. *See, e.g., Burdick v. Union Security Ins. Co.*, No. CV07–4028 ABC (JCx), 2009 WL 4798873, at *4 (C.D. Cal. 2009) ("As an initial matter, nowhere in *Bates* does the Ninth Circuit actually address whether absent class members are required to have Article III standing."); *Aho*, 2011 WL 3047677 at *9 (distinguishing *Bates*). Unlike the parties in this case, who do not contest that Ms. Rogers has standing to pursue her claims, the defendants in *Bates* argued that the class representatives did not have standing at all. The narrow scope of the analysis in *Bates* is also made manifest in the court's statement that "[it would] consider *only* whether at least one named plaintiff satisfies the standing requirements for injunctive relief." *Bates*, 511 F.3d at 985-86 (emphasis added).

This limited reading of *Bates* finds further support in *Bates*' citation to *Armstrong v. Davis*, 275 F.3d 849 (9th Cir. 2001), for the proposition upon which Plaintiff now relies. *Armstrong*, like *Bates*, involved a challenge to the class representative's standing. *Id.* at 860. Accordingly, *Bates* can sensibly be read as reiterating the rule in *Armstrong* that "[t]o assert claims on behalf of a class, a named plaintiff must have personally sustained or be in immediate danger of sustaining 'some direct injury as a result of the challenged statute or official conduct.'" *Id.* (internal citations omitted); *see also Arevalo v. Bank of America Corp.*, No. C10–4959 THE, --- F. Supp. 2d ---, 2011 WL 1195973, at * 5 (N.D. Cal., Mar. 29, 2011) (stating that *Armstrong*

---

[7] Plaintiff also argues that Epson's Article III standing argument was only applicable to the now-dismissed omission-based claims, and can be disregarded accordingly. This position is misguided, given that Plaintiff is asking to certify a class of approximately 10,000 members in connection with her affirmative-misrepresentation based claims.

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 09-8063 PSG (CWx) | Date | Sept. 19, 2011 |
|---|---|---|---|
| Title | Christopher O'Shea *et al.* v. Epson America, Inc. *et al.* | | |

"does not explain how a Court should approach a standing challenge based upon intra-class differences").

Moreover, contrary to what Plaintiff asserts, this conclusion is not undermined by the Ninth Circuit's recent decision in *Stearns v. Ticketmaster Corp.*, --- F.3d ---, 2011 WL 3659354 (9th Cir. Aug. 22, 2011). The *Stearns* court addressed *Bates*, and noted that the defendants did not assert that no named plaintiff had standing. *Id.* at *5. Under Plaintiff's reading of *Bates*, the court's acknowledgment that there was no dispute about whether the class representative had standing should have ended the analysis in *Stearns*. But instead, applying the criteria set forth in *Lujan*, the *Stearns* court analyzed whether the requirements of Article III were satisfied with respect to *all* of the putative class members.[8] *Id.* at *4-5. Thus, if anything, *Stearns* suggests that absent class members do have to satisfy Article III's requirements.

In sum, while the Ninth Circuit has clearly spoken to the question of whether a *named* plaintiff must have standing, *see, e.g., Armstrong*, 275 F.3d at 860; *Bates*, 511 F.3d at 985; *see also Casey v. Lewis*, 4 F.3d 1516 (9th Cir. 1993), this precedent does not compel the conclusion that a class may be certified where members lack standing. For all the reasons set forth above, this Court therefore holds that absent class members must satisfy the requirements of Article III.

Having determined that a class may not be satisfied where its members lack standing under Article III, the Court next turns to the question of whether satisfaction of Article III's requirements raises individualized issues that defeat certification under Rule 23(b)(3) in this case. The answer, in the Court's view, is yes. Even though California's FAL and the UCL's "fraudulent" prong do not require proof of reliance, Article III nonetheless requires some showing of injury and causation for a plaintiff to recover. In this regard, *Webb v. Carter's Inc.*, 272 F.R.D. 489, 504 (C.D. Cal. 2011), is directly on point. *Webb* involved UCL and FAL claims brought by a putative class of consumers who purchased children's clothing with tagless labels that allegedly contained toxic chemicals. *Id.* at 494. In denying the plaintiffs' motion for class certification, the court held that the plaintiffs failed to satisfy the predominance requirement with respect to both their FAL and "fraudulent" UCL claims. *Id.* at 503-04. It reasoned that although the defendants' liability for failing to disseminate truthful information about the clothing would be subject to common proof, whether each class member was entitled to recover was not susceptible to proof on a class-wide basis because, to establish standing under Article

---

[8] As discussed below, the *Stearns* court found that the unnamed class members' alleged injury was both "concrete and particularized," as well as traceable to the defendant's conduct. *Id.* at *5. In this regard, the facts of *Stearns* differ markedly from the case at hand.

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 09-8063 PSG (CWx) | Date | Sept. 19, 2011 |
|---|---|---|---|
| Title | Christopher O'Shea *et al.* v. Epson America, Inc. *et al.* | | |

III, each class member was required to show that they suffered some injury as a result of using or buying the clothing. *Id.*

 *Sanders v. Apple Inc.*, 672 F. Supp. 2d 978 (N.D. Cal. 2009), is also instructive. In *Sanders,* the plaintiffs brought a putative class action on behalf of themselves and all persons who purchased a 2007 twenty-inch Aluminum iMac desktop computer, alleging violations of the UCL's "fraudulent" prong. *Id.* at 982. The court granted the defendant's motion to strike the class claims upon finding, *inter alia,* that the class was not ascertainable. *Id.* at 992. Reasoning that "no class may be certified that contains members lacking Article III standing," the court held that the class definition "necessarily include[d] individuals who did not purchase their 20-inch Aluminum iMac, individuals who either did not see or were not deceived by advertisements, and individuals who suffered no damages." *Id.* Accordingly, it struck the class allegations.

 Additional guidance can likewise be drawn from the Ninth Circuit's decision in *Stearns v. Ticketmaster Corp.*, --- F.3d. ---, 2011 WL 3659354 (9th Cir. Aug. 22, 2011), discussed above. The plaintiffs in *Stearns* brought a putative class action against companies alleged to have "participated in a deceptive internet scheme, which induced numerous individuals to unwittingly sign up for a fee-based rewards program where amounts were charged to their credit cards or directly deducted from their bank accounts." *Id.* at *1. They sought certification of a class comprised of:

> [a]ll persons in the United States who: (1) made a purchase at Ticketmaster.com between September 27, 2004, and the present ..., (2) were enrolled in Entertainment Rewards by Ticketmaster passing their credit or debit card information to [EPI], (3) were charged for Entertainment Rewards, and (4) did not print any coupon or apply for any cashback award from Entertainment Rewards....

*Id.* at *2. In addressing whether the standing requirements under Article III were satisfied, the court held that both the injury-in-fact and causation elements were satisfied with respect to each class member because each class member lost money in the transaction, and their losses were traceable to the defendants' conduct. *See id.* at *5. [9]

---

[9] The *Stearns* court also acknowledged in dicta: "[w]e do not, of course, suggest that predominance would be shown in every California UCL case." 2011 WL 3659354 at *4 (citing

O

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | CV 09-8063 PSG (CWx) | Date | Sept. 19, 2011 |
|---|---|---|---|
| Title | Christopher O'Shea *et al.* v. Epson America, Inc. *et al.* | | |

Here, as previously noted, Plaintiff seeks to certify a class comprised of:

> All persons throughout the United States that purchased an inkjet printer and for ink cartridges manufactured, marketed and/or sold by Epson America, Inc. and/or Epson Accessories Inc. under the NX series at any time within four years of filing this complaint.

*TAC* ¶ 66. As the party asserting federal jurisdiction, Plaintiff carries the burden of establishing standing under Article III. *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 342 (2006). To do so, she therefore must show that all persons in the United States who purchased an Epson NX series printer during the class period suffered an injury which was caused by Epson's alleged misrepresentation, and which is likely to be redressed by a decision in Plaintiff's favor. *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560 (1992). Plaintiff has failed to make such a showing in this case.[10]

In particular, the Court is concerned with the absence of class-wide proof of a "causal connection between the injury and the conduct complained of, such that the injury is fairly traceable to the action challenged." *Renee v. Duncan*, 623 F.3d 787, 796-98 (9th Cir. 2010). Not only does the record in this case lack affirmative evidence relating to causation, it contains evidence indicating that the injury purportedly suffered by some members of the putative class *cannot* fairly be traced to Epson's allegedly deceptive representation that users need "replace only the ink that [they] need." Specifically, in opposing Plaintiff's motion, Epson points to evidence showing that individuals who purchased certain models of class printers from certain third-party online sources, such as Amazon.com, were not exposed to the allegedly deceptive representation before they purchased their printers. *See Stayton Decl.*, Ex. 9 at 165-67 (Target.com); Ex. 15 at 749-755 (Amazon.com); Ex. 12 at 306-311 (OfficeDepot.com) [Dkt. # 369 (Mar. 14, 2011)]. In this regard, this case is not akin to *Stearns*, where each member had

---

*Dukes*, 131 S.Ct. at 2554–57; *Kaldenbach v. Mut. of Omaha Life Ins. Co.,* 178 Cal. App. 4th 830, 849–50, 100 Cal. Rptr. 3d 637, 652 (2009)).

[10] In fact, Plaintiff has not even attempted to show that all class members satisfy the requirements of Article III, choosing instead to argue that such a showing was not required under California and Ninth Circuit law. *See Reply* 5:4-5.

O

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES - GENERAL

| Case No. | CV 09-8063 PSG (CWx) | Date | Sept. 19, 2011 |
|----------|----------------------|------|----------------|
| Title | Christopher O'Shea *et al.* v. Epson America, Inc. *et al.* | | |

purportedly been victimized by the allegedly fraudulent scheme.[11]  *Stearns*, 2011 WL 3659354 at *4-5.  Rather, as in *Sanders,* the putative class is defined such that it necessarily encompasses individuals whose purported injury cannot fairly be traced to Epson's alleged misrepresentation on the printer box.

At the hearing on this motion, Plaintiff stressed that "nearly all" consumers who purchased an NX200 printer bought it at a retail store.  *Sept. 2, 2011 Hearing Tr.* 24:25; *Offut Decl.*, Ex. 4 (RICE report).  Such equivocation, however, is itself testament to the individualized inquiry facing the Court.  The Epson Stylus NX200 printer, moreover,  is only one out of seventeen different models included within the class definition.  *See Supp. Seuss Decl.* ¶ 4 [Dkt. # 552 (Aug. 8, 2011)].  Thus, even if all (as opposed to "nearly all") class members who purchased a NX200 printer did so from Target, there still may be other consumers who purchased different models of class printers from websites which did not publish the alleged misrepresentation.

Nor can standing be established by Plaintiff's (unsupported) assertion at the hearing that "the misrepresentation is on every box of the subclass."  *Sept. 2, 2011 Hearing Tr.* 24:14-17.  As noted above, there is evidence in the record that some individuals purchased class printers without ever having been exposed to the allegedly deceptive representation.  *See, e.g., Stayton Decl.,* Ex. 15 at 749-755.  The fact that these individuals may have subsequently seen the misrepresentation when the package arrived in the mail is beside the point.  In this scenario, there cannot be a causal connection between the consumer's injury (the money spent on the printer) and Epson's alleged misconduct (the purportedly deceptive advertising) because the consumers purchased the printers without ever seeing the purported misrepresentation.  While

---

[11] For the same reasons, this case is also distinguishable from *Cole v. Asurion Corp.*, CV 06-6649 PSG (JCx), upon which Plaintiff's papers heavily rely. The plaintiff in *Cole* brought claims under the UCL based on allegations that when the defendants marketed a cell phone insurance plan to her, they misrepresented the terms of the plan.  *See* Dkt. # 1 (Oct. 18, 2006).  She subsequently sought to certify a class composed of all persons who purchased the cell phone insurance plan.  In granting her motion for class certification, the Court found that common questions of fact or law predominated because, among other things, all members of the putative class were subjected to essentially the same sales pitch regarding cell phone insurance.  *See Order Granting in Part And Denying in Part Pl. Mot. for Class Cert.* at 10-12 [Dkt. # 664 (Apr. 19, 2011)].  In this regard, it is different from the facts at hand.  Moreover, because the issue of whether absent class members had Article III standing was not raised by the parties in *Cole*, it was not discussed by the Court in granting the motion for class certification.

O

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | CV 09-8063 PSG (CWx) | Date | Sept. 19, 2011 |
|---|---|---|---|
| Title | Christopher O'Shea *et al.* v. Epson America, Inc. *et al.* | | |

the Court recognizes that unnamed class members need not establish that they *relied* on the alleged misrepresentation to recover under the FAL and the "fraudulent" prong of the UCL, absent a showing that their injury was *caused* by the allegedly deceptive advertising, they lack standing to proceed in federal court. California law, as discussed above, cannot and does not permit unnamed class members to circumvent the requirements of Article III. *See Avritt v. Reliastar Life Ins. Co.,* 615 F.3d 1023, 1034 (8th Cir. 2010).

Based on the foregoing, the Court finds that individualized issues of injury and causation permeate the class claims. In light of such, it concludes that the proposed class is not "sufficiently cohesive to warrant adjudication by representation." *Amchem Prods., Inc. v. Windsor,* 521 U.S. 591, 623 (1997). Plaintiff therefore fails to satisfy Rule 23(b)(3)'s requirement that common issues predominate.[12]

## IV.   Conclusion

Thus, for the foregoing reasons, the Court DENIES Plaintiff's motion for class certification. This matter is re-set for a scheduling conference to be held on **October 3, 2011** at 3:00 p.m.

### IT IS SO ORDERED.

---

[12] Because the Court finds that individualized issues of injury and causation preclude satisfaction of the predominance requirement set forth in Rule 23(b)(3), it does not reach the remaining inquiry of whether the proposed class action is "superior" to the other methods available for adjudicating the controversy. Fed. R. Civ. P. 23(b)(3).